1  GAIL E. LEES, SBN 90363
   glees@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
3  Los Angeles, CA 90071-3197
   Telephone: 213.229.7000
4  Facsimile: 213.229.7520

5  MATTHEW S. KAHN, SBN 261679
   mkahn@gibsondunn.com
6  BENJAMIN M. GLICKMAN, SBN 247907
   bglickman@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
8  San Francisco, CA 94105-2933
   Telephone: 415.393.8200
9  Facsimile: 415.393.8306

10 Attorneys for Defendant APPLE INC.

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                   OAKLAND DIVISION

15 |                              | Master File No. 4:12-cv-01127-CW

16 |                              | CLASS ACTION
   | In re iPHONE 4S CONSUMER LITIGATION
17 |                              | APPLE INC.'S NOTICE OF MOTION AND
   |                              | MOTION TO DISMISS CONSOLIDATED
18 |                              | CLASS ACTION COMPLAINT;
   |                              | MEMORANDUM OF POINTS AND
19 | This Document Relates To:    | AUTHORITIES IN SUPPORT OF MOTION

20 |    ALL ACTIONS.              | [REQUEST FOR JUDICIAL NOTICE;
   |                              | DECLARATION OF SCOTT MAIER; AND
21 |                              | [PROPOSED] ORDERS FILED
   |                              | CONCURRENTLY]
22 |
   |                              | Hearing Date: June 21, 2012
23 |                              | Hearing Time: 2:00 p.m.
   |                              | Location:     Courtroom 2, 4th Floor
24 |                              | Judge:        The Honorable Claudia Wilken

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................ 1

I.     ISSUES TO BE DECIDED .......................................................................... 1

II.    INTRODUCTION ........................................................................................ 1

III.   FACTUAL BACKGROUND ......................................................................... 4

       A.     iPhone 4S And Its Siri Software ...................................................... 4

       B.     Plaintiffs' Allegations ...................................................................... 6

              1.     Frank M. Fazio ...................................................................... 6

              2.     Carlisa S. Hamagaki ............................................................. 7

              3.     Daniel M. Balassone ............................................................. 8

              4.     Benjamin Swartzman ............................................................ 9

IV.    ARGUMENT ............................................................................................... 9

       A.     Legal Standard .................................................................................. 9

       B.     Out-Of-State Plaintiffs Lack Standing To Pursue UCL, FAL, And CLRA
              Claims ............................................................................................. 10

       C.     Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To Satisfy
              Rule 9(b) ......................................................................................... 11

              1.     Plaintiffs Do Not Allege Any Misrepresentation With Particularity ............. 12

              2.     Plaintiffs Do Not Allege Reliance With Particularity .................................... 15

       D.     Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To State A
              Claim Under Rule 12(b)(6) Because They Are Premised On A Selective
              Reading Of The Challenged Representations And Rely On Non-Actionable
              Statements ....................................................................................... 16

       E.     Plaintiffs' Claims Fail Under Rule 12(b)(6) For Additional Reasons ..................... 17

              1.     Plaintiffs Fail To State A Claim Under The UCL ............................................ 18

              2.     Plaintiffs Fail To State A Claim Under The CLRA ......................................... 20

              3.     Plaintiffs Fail To State A Claim For Breach Of Express Warranty ................ 20

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**
(continued)

2

Page

3          4.    Plaintiffs Fail To State A Claim For Breach Of Implied Warranty ............... 22

4
           5.    Plaintiffs' Failure To State A Claim For Breach Of Warranty Under
5                State Law Necessarily Constitutes A Failure To State A Claim Under
                 The Magnuson-Moss Warranty Act .................................................... 24

6
           6.    Plaintiffs Fail To State A Claim For Unjust Enrichment .............................. 24

7

8    V.    CONCLUSION .......................................................................................... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011)..................................................................21

5

*Ashcroft v. Iqbal*,
6     556 U.S. 662 (2009)..............................................................................9

7

*Baltazar v. Apple Inc.*,
   No. 10-CV-3231, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ........................... passim

8

*Bell Atl. Corp. v. Twombly*,
9     550 U.S. 544 (2007)...........................................................................9, 19

10

*Birdsong v. Apple Inc.*,
   590 F.3d 955 (9th Cir. 2009)................................................................22, 24

11

*Buena Vista, LLC v. New Res. Bank*,
12     No. 10-CV-1502, 2010 WL 3448561 (N.D. Cal. Aug. 31, 2010).........................19

13

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011)...............................................................10, 11

14

*Cahill v. Liberty Mut. Ins. Co.*,
15     80 F.3d 336 (9th Cir. 1996)...................................................................9

16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999).........................................................................19

17

*Clemens v. DaimlerChrysler Corp.*,
18     534 F.3d 1017 (9th Cir. 2008)..............................................................24

19

*Clerkin v. MyLife.com, Inc.*,
   No. 11-CV-0527, 2011 WL 3809912 (N.D. Cal. Aug. 29, 2011)........................4

20

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
21     173 F.3d 725 (9th Cir. 1999)................................................................17

22

*Ferrington v. McAfee, Inc.*,
   No. 10-CV-1455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)..........................20

23

*Freeman v. Time, Inc.*,
24     68 F.3d 285 (9th Cir. 1995)...............................................................16, 17

25

*Herrington v. Johnson & Johnson Consumer Co.*,
   No. 09-CV-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................ passim

26

*In re Actimmune Marketing Litig.*,
27     No. 08-CV-2376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)......................18, 19

28

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011)...............................................11, 24

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re iPhone Application Litig.*,
No. 11-MD-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................ 20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)............................................................................................ passim

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................................................................................................... 4

*Kowalsky v. Hewlett-Packard Co.*,
771 F. Supp. 2d 1138 (N.D. Cal. 2010) ...................................................................................... 23

*Kowalsky v. Hewlett-Packard Co.*,
771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................................................... 23

*Kowalsky v. Hewlett-Packard Co.*,
No. 10-CV-2176, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012)................................................. 10

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...................................................................................................... 10

*McDonald v. Coldwell Banker*,
543 F.3d 498 (9th Cir. 2008)....................................................................................................... 19

*Nabors v. Google. Inc.*.
No. 10-CV-3897, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011)............................................... 22

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001).......................................................................................................... 9

*Oestreicher v. Alienware Corp.*,
322 F. App'x 489 (9th Cir. 2009) ............................................................................................... 17

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) .................................................................................. 16, 17

*Rhynes v. Stryker Corp.*,
No. 10-CV-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................................ 25

*Rosal v. First Fed. Bank of Cal.*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................................................... 24

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
No. 04-CV-1664, 2004 WL 2496163 (N.D. Cal. Nov. 5, 2004)................................................. 19

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)..................................................................................................... 17

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................................................ 20, 21

Gibson, Dunn &
Crutcher LLP

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................ 20, 22, 23

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 10, 11

*Wehlage v. EmpRes Healthcare, Inc.*,
    791 F. Supp. 2d 774 (N.D. Cal. 2011) ..................................................... 11, 14

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986) .......................................................................... 20

*Wofford v. Apple Inc.*,
    No. 11-CV-0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ..................... 20

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 18

Cal. Civ. Code § 1572 ........................................................................................... 18

Cal. Civ. Code § 1573 ........................................................................................... 18

Cal. Civ. Code § 1709 ........................................................................................... 18

Cal. Civ. Code § 1710 ........................................................................................... 18

Cal. Civ. Code § 1711 ........................................................................................... 18

Cal. Civ. Code § 1761 ........................................................................................... 20

Cal. Civ. Code § 1770 ........................................................................................... 20

Cal. Com. Code § 2314(2)(c) ............................................................................... 22

Cal. Com. Code § 2316(2) .................................................................................... 23

U.C.C. § 2-607(3)(A) ........................................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 9, 16, 18

Fed. R. Civ. P. 8(a) ............................................................................................ 9, 19

Fed. R. Civ. P. 9(b) ......................................................................................... passim

**Other Authorities**

Hardware Warranty, *available at* http://www.apple.com/legal/warranty/products/iphone-
    english.html ............................................................................................. 21, 23

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

iPhone 4S Features Webpage, http://www.apple.com/iphone/features/#siri ....................................... 5

Press Release, Apple Launches iPhone 4S, iOS 5, and iCloud (Oct. 4, 2011), *available at* http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud.html ............................................................................................................ 4, 8, 17

Siri FAQ Webpage, http://www.apple.com/iphone/features/siri-faq.html ......................................... 5

Siri Features Webpage, http://www.apple.com/iphone/features/siri.html ........................................... 5

Software License Agreements, *available at* http://images.apple.com/legal/sla/docs/ios5.pdf *and* http://images.apple.com/legal/sla/docs/ios51.pdf ......................................... 10, 23

TV Ads Webpage, http://www.apple.com/iphone/videos/ ................................................................ 6

Video: Apple Special Event, October 4, 2011, *available at* http://www.apple.com/apple-events/october-2011 ............................................................................... 5, 8, 14, 17

Gibson, Dunn &
Crutcher LLP

APPLE INC.'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. 4:12-CV-01127-CW

1    **NOTICE OF MOTION AND MOTION**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that, on June 21, 2012, at 2:00 p.m. or as soon thereafter as counsel

4    may be heard before the Honorable Claudia Wilken, United States District Judge, in Courtroom 2 of

5    the above-captioned court, located at 1301 Clay Street, Oakland, California 94612, Defendant Apple

6    Inc. ("Apple") will and hereby does move for an order dismissing Plaintiffs' Consolidated Class

7    Action Complaint ("Complaint" or "CC") under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

8          This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

9    Authorities, the Declaration of Scott Maier, all other papers submitted in support of the Motion, the

10   records on file in this case, the arguments of counsel, and any other matter that the Court may

11   properly consider.

12                        **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

13                              **I.      ISSUES TO BE DECIDED**

14         1.      Do certain Plaintiffs lack standing to sue under California's Unfair Competition Law

15   ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA")?

16         2.      Do Plaintiffs fail to plead their claims against Apple with the level of particularity

17   required by Federal Rule of Civil Procedure Rule 9(b)?

18         3.      Do Plaintiffs fail to state a viable claim for relief when they rely on a selective reading

19   of the challenged representations that impermissibly ignores specific disclosures and allege only non-

20   actionable statements?

21         4.      Do Plaintiffs otherwise fail to allege sufficient facts in support of any of their claims?

22                              **II.      INTRODUCTION**

23         Plaintiffs seek to certify a nationwide class action on behalf of all purchasers of Apple's

24   extremely popular iPhone 4S—the most successful iPhone launch of all time—based upon their

25   claimed dissatisfaction with one of its many new features.  Specifically, Plaintiffs seek to recover

26   some unspecified portion of their purchase price because Apple's breakthrough Siri software—which

27   uses cutting-edge speech-recognition technology that enables users to do things like make calls, send

28   text messages or emails, schedule meetings and reminders, make notes, search the Internet, find local

Gibson, Dunn &
Crutcher LLP

businesses, and get directions with voice commands—allegedly "does not perform as advertised."

Plaintiffs do not tell the Court how Siri's operation allegedly differs from any particular

representation they relied on in purchasing their iPhones.  They offer only general descriptions of

Apple's advertisements, incomplete summaries of Apple's website materials, and vague descriptions

of their alleged—and highly individualized—disappointment with Siri.  Tellingly, although Plaintiffs

claim they became dissatisfied with Siri's performance "soon after" purchasing their iPhones, they

made no attempt to avail themselves of Apple's 30-day return policy or one-year warranty—which

remains in effect.  Instead, they seek to take an alleged personal grievance about the purported

performance of a popular product and turn it into a nationwide class action under California's

consumer protection statutes.  The Complaint does not come close to meeting the heavy burden

necessary to sustain such claims.

As a threshold matter, two of the named Plaintiffs—along with all out-of-state purchasers in

the putative class—lack standing to pursue claims under California's consumer protection statutes

because they are not residents of California and did not purchase their iPhones in California.

Moreover, Plaintiffs' sweeping allegations that Apple engaged in a unified course of fraudulent

conduct to disseminate false and misleading statements in its advertising and marketing of iPhone

4S's Siri software fail as a matter of law because Plaintiffs do not allege a single actionable

misstatement that could support any of the claims in the Complaint.  The few specific representations

they identify all fail as a basis for liability because they rely on a selective reading of the challenged

representations that impermissibly ignores specific disclosures or because they are not actionable as a

matter of law.  And even if Plaintiffs had alleged an actionable misstatement, they nowhere allege

that they relied on—or even saw—any particular representation they claim is misleading.  As a result

of these fatal shortcomings and those described below, Plaintiffs' core theory and each of their claims

fail for multiple independent reasons.

*First*, Plaintiffs Frank Fazio and Daniel Balassone (as well as all out-of-state purchasers in the

putative class) lack standing to pursue claims under California's consumer protection statutes because

they reside in other states, purchased their iPhones in other states, and apparently were exposed to

Apple's advertisements in other states.  Under Ninth Circuit authority, the consumer protection laws

of the state of purchase—*not* the consumer protection laws of California—govern such claims by out-of-state purchasers.

*Second*, Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims fail to satisfy Federal Rule of Civil Procedure 9(b). Plaintiffs' entire Complaint sounds in fraud because Plaintiffs allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis for each of their claims. But Plaintiffs come nowhere close to satisfying the stringent pleading requirements of Rule 9(b) because they fail to allege any supposed misrepresentation with particularity and do not allege when they were exposed to the purportedly misleading advertisements, which ones they found material, how and why they were false, or which they relied upon in purchasing their iPhones. Plaintiffs' generalized descriptions of Apple's marketing campaign and Plaintiffs' alleged disappointment with Siri's functionality are insufficient under Rule 9(b) because they neither identify actionable misrepresentations nor connect any alleged performance issue with Siri to any particular misrepresentation.

*Third*, Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims also fail because they are premised impermissibly on a selective reading of the challenged representations that ignores Apple's specific disclosures, and because the few specific representations Plaintiffs identify are not actionable (*e.g.*, "the best iPhone yet"; an "amazing assistant").

*Finally*, all of Plaintiffs' claims—for alleged violations of the UCL, FAL, CLRA, and Magnuson-Moss Warranty Act, and for breach of express warranty, breach of the implied warranty of merchantability, intentional misrepresentation, negligent misrepresentation, and unjust enrichment—fail for a multitude of additional reasons. First and foremost, Plaintiffs fail to allege sufficient facts in support of any of these claims. Moreover, these claims fail for various independent reasons, including: the CLRA does not apply to software such as Siri; Plaintiffs failed to provide the requisite pre-suit notice of an alleged breach of warranty; Apple properly disclaimed any implied warranty of merchantability; and Plaintiffs do not adequately explain the theory on which their purported unjust enrichment claim is based.

For these reasons, the Complaint is insufficient as a matter of law to support any of the claims alleged, and therefore the Court should dismiss the Complaint in its entirety.

## III.    FACTUAL BACKGROUND

### A.    iPhone 4S And Its Siri Software

On October 4, 2011, Apple announced its newest mobile phone:  iPhone 4S.  CC ¶ 4.  As noted in the press release accompanying the announcement,[1] iPhone 4S introduced numerous new features and improvements from the prior model (iPhone 4), including:  "Apple's dual-core A5 chip for blazing fast performance and stunning graphics"; "an all new [8 megapixel] camera with the most advanced optics of any phone"; "full 1080p HD resolution video recording"; and an improved dual-antenna design, making iPhone 4S "the first phone to intelligently switch between two antennas to send and receive," "support[ing] twice the download speed [of iPhone 4] with HSDPA of up to 14.4 Mbps," and making iPhone 4S "a world phone."  Press Release, Apple Launches iPhone 4S, iOS 5, and iCloud (Oct. 4, 2011) ("Press Release").[2]  iPhone 4S is available in a 16GB model for $199, a 32GB model for $299, and a 64GB model for $399.  *Id.*  In addition, Apple's previous model— iPhone 4—remains available in an 8GB model for $99.  *Id.*

With iPhone 4S, Apple also introduced a new feature called Siri, "an intelligent assistant that helps you get things done just by asking."  *Id.*  Siri is voice-activated software that "helps you make calls, send text messages or email, schedule meetings and reminders, make notes, search the Internet, find local businesses, get directions and more."  *Id.*  Siri replies to users' requests by displaying the text of what the user said and either providing a response or asking the user questions if it requires

---

[1]    In ruling on a motion to dismiss, the Court may consider documents (including internet pages) specifically referred to in the Complaint and whose authenticity no party questions, even if the documents are not physically attached to the Complaint.  *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that "the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material"); *Clerkin v. MyLife.com, Inc.*, No. 11-CV-0527, 2011 WL 3809912, at *1 & n.2 (N.D. Cal. Aug. 29, 2011).  Because the Complaint specifically refers to and relies upon alleged representations on Apple's website (www.apple.com), the Court may consider the complete contents and context of these statements when assessing Plaintiffs' allegations. *See, e.g.*, *Knievel*, 393 F.3d at 1076-77.

[2]    *See* CC ¶ 34; Decl. of Scott Maier ("Maier Decl.") Ex. 1; *see also* http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud.html (last visited May 10, 2012).

Gibson, Dunn & Crutcher LLP

more information in order to respond.[3]  Siri utilizes information from users' iPhones—including their contacts, music library, calendars, and reminders—in order to "respond[] more accurately" when users ask, for example, to make a phone call, play music, or create an appointment or reminder.[4] Moreover, because Siri uses voice recognition algorithms to categorize voices into one of the dialects or accents it understands, "[a]s more people use Siri and it's exposed to more variations of a language, its overall recognition of dialects and accents will continue to improve, and Siri will work even better."[5]

As a cutting-edge technology still under development, Siri was released (and remains) in "beta."  *See* CC ¶¶ 48, 50.  Apple disclosed Siri's beta status both during the October 4, 2011 press event in which Apple announced iPhone 4S and in the accompanying Press Release.  *See* Video: Apple Special Event, October 4, 2011 ("beta" discussion at 72:56 and 86:41) ("Press Event")[6]; Press Release ("Siri will be available in beta on iPhone 4S in English (localized for US, UK and Australia), French and German.").  At the Press Event, the presenter expressly noted that users "can't ask [Siri] everything, and it's not perfect."  Press Event at 82:49.  In addition, Apple featured Siri's beta status prominently on its website.  Although Plaintiffs acknowledge that the Siri "FAQ" page and a footnote on the "iPhone Features" section of Apple's website disclose Siri's beta status (CC ¶¶ 48, 50), they neglect to mention that, as shown below, both the Siri section on the "iPhone 4S Features" page[7] and the "Siri Features" page[8] to which it links also prominently disclose Siri's beta status:

---

[3]    *See* CC ¶¶ 48, 50; Maier Decl. Ex. 2; *see also* http://www.apple.com/iphone/features/siri-faq.html (last visited May 10, 2012).

[4]    *Id.*

[5]    *Id.*

[6]    *See* CC ¶ 24; Maier Decl. Ex. 3; *see also* http://www.apple.com/apple-events/october-2011 (last visited May 10, 2012).

[7]    *See* CC ¶ 50; Maier Decl. Ex. 4; *see also* http://www.apple.com/iphone/features/#siri (last visited May 10, 2012).

[8]    *See* CC ¶¶ 41-43, 48, 50; Maier Decl. Ex. 5; *see also* http://www.apple.com/iphone/features/siri.html (last visited May 10, 2012).





In the months following the release of iPhone 4S, Apple aired several television advertisements highlighting one or more of its many new features, such as its improved camera, its interface with iCloud, and Siri.[9]  The Complaint focuses on two such advertisements:  "Road Trip" (which depicts a couple asking Siri various questions while driving to California, such as where to find the best barbeque in Kansas City, how big the Grand Canyon is, and whether there are gas stations in walking distance (CC ¶ 37)); and "Rock God" (which depicts a teenager asking Siri how to play particular songs and guitar chords and directing Siri to create a text message (*id.* ¶¶ 38-39)).

**B.    Plaintiffs' Allegations**

      **1.    Frank M. Fazio**

Plaintiff Frank M. Fazio ("Fazio") is a citizen and resident of New York.  CC ¶ 20.  On November 19, 2011, Fazio purchased a 32GB iPhone 4S from a Best Buy store in Brooklyn, New York, for $299.  Fazio alleges in a generic fashion that he "purchased the iPhone 4S because he saw and relied upon Apple's television advertisements and Apple's representations made about Siri during various presentations and on Apple's website."  *Id.*  The Complaint describes neither the

---

[9]    *See* CC ¶¶ 7, 25-26, 36-40, 45-46, 49, 51; Maier Decl. Ex. 6; *see also* http://www.apple.com/iphone/videos/ (last visited May 10, 2012).

particular "television advertisements," "various presentations," or areas of "Apple's website" nor the specific representations on which Fazio allegedly relied. Fazio alleges with stunning vagueness that "[p]romptly after the purchase of his iPhone 4S, [he] realized that Siri was not performing as advertised." *Id.* ¶ 21. According to the Complaint, when Fazio asked Siri unspecified questions, "Siri either did not understand what Fazio was asking," "responded with the wrong answer," or "was unable to answer Fazio's questions properly." *Id.* The Complaint sets forth neither the specific questions asked nor the responses Siri provided. Neither does it allege that Fazio reported his problems to Best Buy or Apple or otherwise sought warranty service for his iPhone 4S.

### 2. Carlisa S. Hamagaki

Plaintiff Carlisa S. Hamagaki ("Hamagaki") is a citizen and resident of California. CC ¶ 22. Hamagaki purchased a 16GB iPhone 4S through Apple's website (www.apple.com) "at or about the time of its release," for $199. *Id.* Like Fazio, Hamagaki generically alleges that she "purchased the iPhone 4S because she saw and relied upon Apple's television advertisements and Apple's representations related to Siri on its website." *Id.* Again, the Complaint does not describe the specific advertisements or representations upon which Hamagaki allegedly relied.

Notwithstanding her intention to represent a class of consumers suing for alleged performance issues with the Siri software, Hamagaki expressly admits "Siri was able to respond to" her requests "such as 'find me a gas station' or 'find me Thai food.'" CC ¶ 23. Notably, these requests are quite similar to queries depicted in Apple's advertisements. *See id.* ¶ 37 ("[Are there] any gas stations we can walk to?" "Where is the best barbeque in Kansas City?"). Despite this admission, she alleges, again with no specificity whatsoever, that "[s]oon after purchasing her iPhone 4S, [she] realized that Siri was not working as advertised or expected" because "when asked anything more complex, Siri could not come up with an answer." *Id.* ¶ 23. The Complaint does not specify which "more complex" questions Siri allegedly could not answer, nor whether such questions were depicted in any of Apple's advertisements. In addition, although she allegedly discovered Siri's purported defects "soon after" her purchase, Hamagaki does not claim that she attempted to return the device under Apple's 30-day return policy, reported the issue to Apple, or sought warranty service. Finally, despite admitting that Siri functions as advertised, Hamagaki asserts that, as a result of Siri's alleged

defects, "the iPhone 4S is nothing but a more expensive iPhone 4." *Id.* Hamagaki's allegation ignores that the $99 iPhone 4 also has only half the storage capacity of the $199 iPhone 4S Hamagaki purchased and lacks numerous other new features including the dual-core A5 chip, the 8 megapixel camera with all-new advanced optics, and the improved dual-antenna design. *See* Press Release.

### 3. Daniel M. Balassone

Plaintiff Daniel M. Balassone ("Balassone") is a citizen and resident of New Jersey. CC ¶ 24. On October 20, 2011, Balassone purchased a 32GB iPhone 4S from an Apple retail store in Rockaway, New Jersey, for $299. *Id.* Balassone alleges that he "purchased the iPhone 4S[] because he saw and relied upon Apple's representations regarding the Siri feature." *Id.* Balassone allegedly "relied on the statements and interactive demonstrations performed at Apple's October 4, 2011 press conference" (though he does not say which ones), as well as unspecified "other representations." *Id.* Balassone makes no attempt to explain what was allegedly false or misleading about these unspecified statements and demonstrations, and given that "Siri was asked live" questions at the event (*id.*), it is difficult to imagine how a real-time demonstration could be false. The Complaint also neglects to mention that the presenter referred to Siri's beta status twice during the keynote address, or that the presenter specifically stated that users "can't ask [Siri] everything, and it's not perfect." *See* Press Event at 72:56, 82:49, and 86:41. Nor does the Complaint acknowledge that more than half of the iPhone 4S presentation focused on the numerous non-Siri-related features and improvements of iPhone 4S over iPhone 4, as discussed above. *See id.* at 52:10-71:40.

Balassone does not allege that he saw or relied upon any other specific advertisements or representations. Nonetheless, he also repeats the vague allegation that after purchasing his iPhone 4S, he "realized that Siri was not performing as advertised." CC ¶ 25. According to the Complaint, Balassone "attempted to mirror the command[s] given to Siri in the Apple advertisements," but "when [he] asked Siri to show him guitar chords as seen in Apple's 'Rock God' television advertisement, Siri did not answer in the same manner as the television advertisement." *Id.* Notably, the Complaint does not allege that Balassone relied upon the "Rock God" advertisement prior to purchasing his iPhone 4S, or that Balassone attempted to return the device under Apple's 30-day return policy, reported the issue to Apple, or sought warranty service.

1    **4.    Benjamin Swartzman**

2        Plaintiff Benjamin Swartzman ("Swartzman") is a citizen and resident of California.  CC ¶ 27.

3    On January 7, 2012, Swartzman purchased a 16GB iPhone 4S from an Apple retail store in San Luis

4    Obispo, California, for $199.  *Id.*  Swartzman alleges that he purchased the iPhone 4S because he

5    "relied on Apple's advertisements showing that Siri would accurately provide information based on

6    verbal commands, would permit accurate dictation of emails and would substantially shorten and

7    simplify research time."  *Id.*  The Complaint does not specify which advertisements Swartzman

8    allegedly saw or relied upon to formulate this belief.  Nonetheless, Swartzman generically alleges

9    that "[s]oon after the purchase of his iPhone 4S, [he] realized that Siri was not performing as

10   advertised and frequently gave [him] wrong information or failed to respond."  *Id.* ¶ 28.  Despite

11   allegedly realizing Siri's deficiencies "soon after" purchasing his iPhone 4S, Swartzman—like the

12   other named Plaintiffs—does not allege that he attempted to return the device under Apple's 30-day

13   return policy, reported the issue to Apple, or sought warranty service.

**IV.    ARGUMENT**

14

**A.    Legal Standard**

15

16       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

17   sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint should be

18   dismissed for failure to satisfy Federal Rule of Civil Procedure 8(a) when Plaintiffs fail to proffer

19   "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

20   U.S. 544, 570 (2007).  Although "[a]ll allegations of material fact are taken as true and construed in

21   the light most favorable to the nonmoving party," *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

22   38 (9th Cir. 1996), "courts are not bound to accept as true a legal conclusion couched as a factual

23   allegation."  *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted).   To avoid dismissal, a

24   complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability,"

25   and, instead, must set forth enough factual information to make it "plausible," not merely "possible,"

26   that the defendant is liable.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

27   at 557).

28       Where, as here, a complaint alleges claims sounding in fraud, "'irrespective of whether the

1    substantive law at issue is state or federal,'" it must further satisfy the heightened pleading standard

2    of Federal Rule of Civil Procedure 9(b), which requires Plaintiffs to "state with particularity the

3    circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567

4    F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th

5    Cir. 2003)).  Pursuant to Rule 9(b), Plaintiffs must allege "the who, what, when, where, and how of

6    the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent]

7    statement, and why it is false."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th

8    Cir. 2011) (quotation marks and citation omitted); *see also Kearns*, 567 F.3d at 1124.

9    **B.    Out-Of-State Plaintiffs Lack Standing To Pursue UCL, FAL, And CLRA Claims**

10            Plaintiffs Fazio and Balassone (and all out-of-state purchasers in the putative class) lack

11    standing to pursue claims under California's consumer protection statutes because they are not

12    California residents and did not purchase their iPhones in California.  *See Mazza v. Am. Honda Motor*

13    *Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012).  *Mazza* also explicitly forecloses any argument that

14    California's consumer protection statutes—including the UCL, FAL, and CLRA claims alleged

15    here—can be applied to a nationwide class.  *See id.* at 594 (vacating district court order certifying

16    nationwide class under the UCL, FAL, and CLRA); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-

17    2176, 2012 WL 892427, at *7 (N.D. Cal. Mar. 14, 2012) ("*Mazza*'s holding . . . precludes the

18    certification of a nationwide class asserting claims under the UCL and the CLRA.").  Rather, "each

19    class member's consumer protection claim should be governed by the consumer protection laws of

20    the jurisdiction in which the transaction took place."  *Mazza*, 666 F.3d at 594.[10]

21            Here, Fazio and Balassone lack standing to pursue UCL, FAL, or CLRA claims because they

22    reside in New York and New Jersey, respectively, bought their iPhones in those states, and—though

23    the Complaint fails to specify—presumably were exposed to Apple's advertisements in those states

24

---

25    [10]    Although Plaintiffs reference a choice-of-law clause in the iPhone software license agreement
providing for the application of California law, that clause by its plain terms applies only to claims
26    arising out of the license agreement itself, not to unrelated claims on behalf of consumers like those
alleged here.  *See* CC ¶ 62(h); Maier Decl. Ex. 7, § 12 ("*This License* will be governed by and
27    construed in accordance with the laws of the State of California, excluding its conflict of law
principles.") (emphasis added); *see also* http://images.apple.com/legal/sla/docs/ios5.pdf (last accessed
28    May 10, 2012); http://images.apple.com/legal/sla/docs/ios51.pdf (last accessed May 10, 2012).

as well.  CC ¶¶ 20, 24.  As a result, the Complaint's UCL, FAL, and CLRA claims should be dismissed as to Fazio, Balassone, and all out-of-state purchasers in the putative class.  *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing UCL, FAL, and CLRA claims as to non-California resident plaintiffs "who purchased their iPad and data plans outside of California").

### C.  **Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To Satisfy Rule 9(b)**

It is established in this Circuit that Rule 9(b)'s heightened pleading standards apply to Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims—yet Plaintiffs come nowhere close to satisfying the stringent standard for pleading their claims under that rule.  *See Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to UCL and CLRA claims); *Vess*, 317 F.3d at 1102-05 (applying Rule 9(b) to UCL, FAL, and CLRA claims); *Herrington v. Johnson & Johnson Consumer Co.*, No. 09-CV-1597, 2010 WL 3448531, at *6-7, 11 (N.D. Cal. Sept. 1, 2010) (applying Rule 9(b) to UCL, FAL, CLRA, and intentional and negligent misrepresentation claims).  Specifically, as noted above, plaintiffs asserting UCL, FAL, CLRA, and misrepresentation claims premised on fraud must allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso*, 637 F.3d at 1055 (quotation marks and citation omitted).  Plaintiffs also must allege "the circumstances in which they were exposed" to the allegedly false or misleading statements, as well as "upon which of the[] misrepresentations they relied in making their purchase."  *Herrington*, 2010 WL 3448531, at *7; *see also Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 789-90 (N.D. Cal. 2011).

Here, the allegations in the Complaint make clear that Plaintiffs' claims are based on the indispensable elements of a fraud claim, namely, allegations of misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage.  *See Kearns*, 567 F.3d at 1126; *see, e.g.*, CC ¶¶ 6, 9, 11-13, 15, 16, 21, 23, 26, 31, 48, 49, 51, 52, 68, 69, 75, 80-82, 106, 122-25, 127-29.  But as shown below, the Complaint fails even to describe the "what" of any alleged misrepresentation, much less the "who," "when," "where," or "how."  For this reason, Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims should be dismissed.

### 1.    Plaintiffs Do Not Allege Any Misrepresentation With Particularity

Plaintiffs fail to allege "the particular circumstances surrounding" any alleged misrepresentation regarding Siri and therefore fail to satisfy Rule 9(b)'s heightened pleading requirements.  *See Kearns*, 567 F.3d at 1126 (plaintiff failed to satisfy Rule 9(b) where he did not "specify what the television advertisements or other sales material specifically stated"); *Herrington*, 2010 WL 3448531, at *8 (plaintiffs failed to satisfy Rule 9(b) where they did not "plead affirmative misrepresentations with particularity" or "aver how the statements were false or misleading").

Plaintiffs' vague allegations—for example, that "Siri does not work as shown in Apple's popular advertisements" (CC ¶ 8), "Defendant's advertisements regarding the Siri feature are fundamentally and designedly false and misleading" (*id.* ¶ 11), "the iPhone 4S's Siri feature does not perform as advertised" (*id.*), and "Defendant's misrepresentations concerning the Siri feature of the iPhone 4S are misleading, false and reasonably likely to deceive" (*id.* ¶ 12)—completely fail to identify any specific, actionable misrepresentations, and therefore do not satisfy Rule 9(b).  Likewise, Plaintiffs' general descriptions of Apple's advertisements do not satisfy Rule 9(b) because Plaintiffs fail to set forth what is false or misleading about them or to explain why they are false.  For example, Plaintiffs allege:

> [I]n many of Apple's television advertisements, individuals are shown using Siri to make appointments, find restaurants, craft text messages, learn the guitar chords to classic rock songs and how to tie a tie.  Indeed, Siri is also shown to understand and respond to a voice command given by someone who is in the middle of running.  In the commercials, all of these tasks are done with ease with the assistance of the iPhone 4S's Siri feature; a represented functionality contrary to the actual operating results and performance of Siri.

*Id.* ¶ 7; *see also* ¶ 36.  Plaintiffs make no attempt to specify what is allegedly false or misleading about these depictions or to explain why they are false; indeed, *they do not even allege that Siri does not perform the specific tasks demonstrated in these advertisements*.  To the contrary, Hamagaki expressly admits that Siri responded to her requests to "'find me a gas station' or 'find me Thai food'" (*id.* ¶ 23), in accordance with advertisements demonstrating these very capabilities (*id.* ¶ 37) ("[Are there] any gas stations we can walk to?" "Where is the best barbeque in Kansas City?").

Although the Complaint also provides quotations and general descriptions of various

statements by Apple—the Press Release (CC ¶ 34), the "Road Trip" commercial (*id.* ¶ 37), the "Rock God" commercial (*id.* ¶¶ 38-39), the iPhone tab on Apple's website (*id.* ¶ 41), and a video entitled "Watch the iPhone 4S Video" (*id.* ¶¶ 42-43)—such quotations and descriptions standing alone cannot satisfy Rule 9(b) because Plaintiffs must "set forth *more* than the neutral facts necessary to identify the transaction" by specifying what was allegedly false or misleading about it and explaining why it was false. *See Kearns*, 567 F.3d at 1124, 1126 (quotation marks and citation omitted). The Complaint contains no such details; the alleged falsity is never explained.

The named Plaintiffs' "specific" allegations fare no better, each failing to specify what was allegedly false or misleading about any particular representation:

- Fazio alleges that he "asked Siri to compare the fat content between two meals, the location of a children's party venue, information related to the 'guided reading' teaching method and directions to a doctor's office located in Brooklyn. Siri was unable to answer Fazio's questions properly." CC ¶ 21. Even accepting such allegations as true, the Complaint utterly fails to connect these allegations with any statement by Apple, let alone identify any specific misrepresentation or explain why such alleged misrepresentation was false.

- Balassone alleges that Apple's "statements and interactive demonstrations" at the Press Event "showed that a user was able to ask Siri a question and that Siri was then able to determine what a user wanted to know and then respond with the right information," but that after purchasing his iPhone he "realized that Siri was not performing as advertised" because Siri gave him "wrong information or failed to respond." CC ¶¶ 24-25. The only particular statement that Balassone identifies is that "Siri was introduced at the press conference as a 'digital assistant'" (*id.* ¶ 24), but the Complaint fails even to allege that this statement was false or misleading, let alone explain how and why it was allegedly false or misleading. Moreover, it is unclear how the live, interactive demonstrations of Siri's real-time performance could be considered "false." *See id.* Balassone's additional allegations regarding his "attempt[] to mirror the command[s] given to Siri" in Apple's "Rock God" advertisement (*id.* ¶¶ 25-26) are insufficient to satisfy Rule 9(b)—even if true— because, as discussed in the next section, neither he nor any of the other named Plaintiffs purports to have relied on any representations in that advertisement in purchasing their iPhones. *See Herrington*,

1   2010 WL 3448531, at *7 (dismissing UCL, FAL, and CLRA claims because "[e]ven if [plaintiffs]

2   alleged false or misleading statements, they do not plead the circumstances in which they were

3   exposed to these statements.  Nor do they plead upon which of these misrepresentations they relied in

4   making their purchase . . .").

5          •       Swartzman alleges that he "attempted to use Siri to make phone calls or send emails,

6   and Siri repeatedly gave the wrong names and numbers of people that he was trying to contact.

7   When he asked Siri the weather in Palm Springs, Siri did not understand what he was asking for.

8   Recently, Swartzman asked Siri, 'When is St. Patrick's Day?' and Siri responded, 'Sorry, I don't

9   understand 'When is St. Patrick's Day.''" CC ¶ 28.  As with Fazio, these allegations, even if true,

10  fail to connect these alleged performance issues with any specific representation, much less identify

11  what was false or misleading about it or explain why it was false.

12         •       Hamagaki's generic allegation that she "realized that Siri was not working as

13  advertised or expected" not only fails to specify any alleged misrepresentation, but also is belied by

14  the very next sentence, in which Hamagaki concedes that "Siri was able to respond to very general

15  requests, such as 'find me a gas station' or 'find me Thai food.'" CC ¶ 23.  Given Hamagaki's

16  successful experience with Siri, Plaintiffs fail to explain how Apple's television advertisements—

17  which, as Plaintiffs acknowledge, demonstrate these very capabilities (*id.* ¶¶ 36-37)—were false or

18  misleading.  Although Hamagaki alleges that "when asked anything more complex, Siri could not

19  come up with an answer," she fails to specify what "more complex" questions Siri was allegedly

20  unable to respond to—a significant failing considering Apple explicitly advised consumers that they

21  "can't ask [Siri] everything, and it's not perfect."  *See* Press Event at 82:49.

22         In short, none of the Plaintiffs has alleged either (1) how or why any of the advertisements to

23  which they may have been exposed was false or misleading or (2) how any of their personal

24  experiences with Siri relate in any way to those advertisements.  As a result, these claims should be

25  dismissed.  *See Kearns*, 567 F.3d at 1126 (affirming dismissal of UCL and CLRA claims where

26  plaintiff "failed to plead his averments of fraud with particularity"); *Wehlage*, 791 F. Supp. 2d at 789-

27  90 (dismissing CLRA claim where plaintiff failed to "allege the circumstances in which she viewed

28  [the allegedly fraudulent] materials or what was false about them"); *Baltazar v. Apple Inc.*, No. 10-

1   CV-3231, 2011 WL 588209, at *3-4 (N.D. Cal. Feb. 10, 2011) (dismissing CLRA and

2   misrepresentation claims where plaintiffs failed to "ple[ad] with specificity the content of the alleged

3   misrepresentations made by Apple in its commercials and advertisements").

4       **2.      Plaintiffs Do Not Allege Reliance With Particularity**

5           Even if Plaintiffs had pleaded particular misrepresentations with the requisite specificity to

6   satisfy Rule 9(b)—which they do not—their claims still would fail because the Complaint does not

7   specify when Plaintiffs allegedly were exposed to any purported misrepresentations, which ones they

8   found material, or which ones they relied upon in purchasing their iPhones. *See Kearns*, 567 F.3d at

9   1126 (plaintiff failed to satisfy Rule 9(b) where he did not specify "when he was exposed to" the

10  advertisements or sales materials, "which ones he found material," or "which sales material he relied

11  upon in making his [purchase] decision").

12          The Complaint is utterly devoid of any allegations describing when Fazio, Hamagaki, or

13  Swartzman allegedly were exposed to any advertisements, which ones they allegedly found material,

14  or which they allegedly relied upon in deciding to purchase their iPhones. *See* CC ¶¶ 20, 22, 27

15  (generically alleging that they "saw and relied upon Apple's television advertisements and Apple's

16  representations made about Siri during various presentations and on Apple's website"). Under Rule

17  9(b), this failing is fatal to their claims. As to Balassone, although he does allege that he "relied on

18  the statements and interactive demonstrations performed at Apple's October 4, 2011 press

19  conference" (*id.* ¶ 24), he fails to specify which particular statements and demonstrations he relied

20  upon and, as discussed in the previous section, fails to identify what was false about those particular

21  statements or demonstrations and makes no attempt whatsoever to connect any alleged software

22  performance issues with any particular alleged misrepresentations.[11] As a result, these claims should

23  be dismissed. *See Herrington*, 2010 WL 3448531, at *7, 11 (dismissing UCL, FAL, CLRA, and

24  misrepresentation claims where plaintiffs pleaded neither "the circumstances in which they were

---

26  [11]      The Complaint also provides general descriptions of the Press Release (CC ¶ 34), the "Road
27  Trip" commercial (*id.* ¶ 37), the "Rock God" commercial (*id.* ¶¶ 38-39), the iPhone tab on Apple's
    website (*id.* ¶ 41), and a video entitled "Watch the iPhone 4S Video" (*id.* ¶¶ 42-43). However,
    Plaintiffs fail to allege that they relied on any of these representations in purchasing their iPhones,
28  and these allegations therefore cannot satisfy Rule 9(b). *See Kearns*, 567 F.3d at 1126.

exposed to these [allegedly false or misleading] statements" nor "upon which of these misrepresentations they relied in making their purchase"); *Baltazar*, 2011 WL 588209, at *3 (dismissing CLRA and misrepresentation claims because "the mere assertion of 'reliance' is insufficient" and requiring plaintiffs to "allege the specifics of [their] reliance on the misrepresentation to show a bona fide claim of actual reliance") (citation omitted).

**D.      Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To State A Claim Under Rule 12(b)(6) Because They Are Premised On A Selective Reading Of The Challenged Representations And Rely On Non-Actionable Statements**

Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims not only fail to satisfy Rule 9(b) but also fail to state a claim under Rule 12(b)(6).  Each of these claims is governed by a "reasonable consumer" standard, which requires a showing that "members of the public are likely to be deceived."  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation marks and citation omitted); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971, 973 (N.D. Cal. 2008). Plaintiffs' allegations do not make such a showing.

As in *Freeman*—in which the Ninth Circuit affirmed dismissal of FAL and UCL claims alleging that a sweepstakes mailing was deceptive because language qualifying the allegedly deceptive statement "appear[ed] immediately next to the representations it qualifie[d] and no reasonable reader could ignore it"—Plaintiffs impermissibly premise their claims on a selective reading of the challenged representations regarding Siri that ignores specific disclosures.  *See* 68 F.3d at 289-90.  For example, while Plaintiffs allege that "the bulk of Apple's massive marketing and advertising campaign, including its dominant and expansive television advertisements, fail to mention the word 'beta' and the fact that Siri is, at best, a work-in-progress" (CC ¶ 49), they admit that Apple's website discloses that "Siri is currently in beta and we'll continue to improve it over time" (*id.* ¶ 48).  Plaintiffs' attempt to avoid this full disclosure by alleging that "it is only through following a series of links within Apple's website, including a footnote at the bottom of a page, that one would learn that Siri is only a work-in-progress" (*id.* ¶ 50) fails because their allegation is flatly contradicted by multiple other statements available on Apple's website, which Plaintiffs ignore (notwithstanding their reliance on these very webpages throughout the Complaint—*see, e.g.*, CC ¶¶ 41-43, 48, 50).  For example, as exhibited above, both the Siri section on the iPhone 4S Features page

Gibson, Dunn &
Crutcher LLP

and the title on the Siri Features page to which it links prominently feature Siri's beta status. Moreover, the presenter referred to Siri's beta status twice during the very Press Event upon which Balassone allegedly relied in purchasing his iPhone 4S (*id.* ¶ 24; Press Event at 72:56 and 86:41); indeed, the presenter specifically stated that users "can't ask [Siri] everything, and it's not perfect." *See* Press Event at 82:49.  The accompanying Press Release likewise disclosed Siri's beta status ("Siri will be available in beta on iPhone 4S in English (localized for US, UK and Australia), French and German.").  Plaintiffs' "cherry-picking" of statements ignores specific disclosures and is therefore insufficient to establish that members of the public are likely to be deceived.  *See Freeman*, 68 F.3d at 289.

Furthermore, the few specific representations regarding Siri that the Complaint identifies are not actionable and are insufficient to support Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims.  These statements, discussed below, are a far cry from being "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact," as required to be actionable.  *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  Specifically, Plaintiffs' allegations that iPhone 4S "has been touted by Apple as 'the best iPhone yet'" (CC ¶ 33), that "Apple marketed the iPhone 4S nationwide in a video stating, 'How do you improve on something so extraordinary?'  The answer: 'now we're introducing Siri'" (*id.* ¶ 35), that the iPhone 4S Video describes Siri as an "amazing assistant" (*id.* ¶ 43), and that "Apple uniformly advertises the iPhone 4S as 'amazing,' and 'impressive'" (*id.* ¶ 79), cannot form the basis for Plaintiffs' claims.  *See, e.g., Oestreicher*, 544 F. Supp. 2d at 973-74 (dismissing FAL and UCL claims because representations that a laptop was of "superb, uncompromising quality," was "faster, more powerful, and more innovative than competing machines," and offered "higher performance," "longer battery life," "richer multimedia experience," and "faster access to data" amounted to non-actionable puffery), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

**E.    Plaintiffs' Claims Fail Under Rule 12(b)(6) For Additional Reasons**

In addition to the reasons set forth above, each of Plaintiffs' claims for relief also fails to state

Gibson, Dunn &
Crutcher LLP

1   a claim under Rule 12(b)(6) for the reasons detailed below.[12]

2        **1.      Plaintiffs Fail To State A Claim Under The UCL**

3        Plaintiffs' UCL claim fails not only for the reasons previously stated, but also because

4   Plaintiffs fail to allege sufficient facts to show that Apple engaged in an "unlawful, unfair or

5   fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Complaint does not

6   specifically allege what purported practices violate the UCL's "fraudulent" prong, making only the

7   generic assertion that "Defendant's claims, non-disclosures and misleading statements, as more fully

8   set forth above, were false, misleading, and/or likely to deceive the consuming public within the

9   meaning of the UCL" and that "Defendant has thus engaged in . . . fraudulent business acts and

10   practices." CC ¶¶ 91, 93. As demonstrated above, these generalized claims of "false" and

11   "misleading" statements are insufficient. *See, e.g.*, *Kearns*, 567 F.3d at 1126; *Herrington*, 2010 WL

12   3448531, at *8.

13        Moreover, Plaintiffs fail to state a claim for violation of the UCL's "unlawful" prong, which

14   "borrows violations of other laws" and "makes those unlawful practices actionable under the UCL,"

15   such that "a violation of another law is a predicate for stating a cause of action under the UCL's

16   unlawful prong." *In re Actimmune Marketing Litig.*, No. 08-CV-2376, 2009 WL 3740648, at *15

17   (N.D. Cal. Nov. 6, 2009) (quotation marks and citations omitted). Plaintiffs allege that Apple

18   engaged in "unlawful" conduct "by, *inter alia*, engaging in false and misleading advertising and

19   omitting material facts . . . and violating California Civil Code §§ 1572-1573, 1709-1711 and 1770,

20   and the common law." CC ¶ 86. All of these statutory sections, however, are species of fraud that

21   require allegations of misrepresentation that satisfy Rule 9(b).[13] As explained, the Complaint does

22   not satisfy Rule 9(b) or plead any actionable misrepresentation or omission by Apple, and thus

23   Plaintiffs fail to state a claim under the UCL's "unlawful" prong. *See Baltazar*, 2011 WL 588209, at

24

25   [12]     Plaintiffs' FAL and intentional and negligent misrepresentation claims fail to state a claim

26   under Rule 12(b)(6) because they are premised on a selective reading of the challenged representations and rely on non-actionable statements, as detailed in section D, and thus these claims are not specifically addressed in this section.

27   [13]     *See, e.g.*, Cal. Civ. Code §§ 1572 ("Actual fraud"); 1573 ("Constructive fraud"); 1709

28   ("Deceit"); 1710 ("Deceit defined"); 1711 ("Deceit to defraud public or particular class").

*5 (dismissing claim under the UCL's "unlawful" prong because "[p]laintiffs so far have failed to state a viable claim for fraud, intentional or negligent misrepresentation, or any other actionable wrongdoing").

Likewise, Plaintiffs fail to allege that Apple engaged in any "unfair" conduct within the meaning of the UCL. Indeed, Plaintiffs make no attempt to specify any conduct by Apple that could be deemed "unfair," but instead rely on a single, boilerplate claim that "Defendant's acts, omissions, misrepresentations, practices and non-disclosures alleged herein also constitute 'unfair' business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct." CC ¶ 89. This "formulaic recitation" of elements is insufficient even under the more lenient strictures of Rule 8(a) because proper pleading "requires more than labels and conclusions." *See Twombly*, 550 U.S. at 555. Moreover, because Plaintiffs' bare contention that Apple's conduct is "unfair" arises from the same allegations as their claims under the FAL (as well as the UCL's "fraudulent" and "unlawful" prongs), this claim too sounds in fraud, and it likewise fails to meet the heightened pleading requirements of Rule 9(b) for the reasons stated above. *See, e.g.*, *Actimmune*, 2009 WL 3740648, at *14 (dismissing plaintiffs' claims under the "unfair" UCL prong because they "overlap entirely with their claims of fraud" and fail under Rule 9(b) for the same reasons); *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. 04-CV-1664, 2004 WL 2496163, at *5-6 (N.D. Cal. Nov. 5, 2004) (dismissing UCL claim because a party "alleging unfair business practices under the [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation") (quotation marks and citation omitted).[14]

---

[14]   Plaintiffs also fail to plead facts demonstrating "unfair" conduct under any accepted definition of the term. Plaintiffs' conclusory allegations fail to plead sufficient facts to demonstrate how Apple's actions "offend[ed] an established public policy" or are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008); *Buena Vista, LLC v. New Res. Bank*, No. 10-CV-1502, 2010 WL 3448561, at *6 (N.D. Cal. Aug. 31, 2010). Nor are Plaintiffs' allegations "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" in Apple's industry, as would be required to establish "unfairness" under the definition in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186-87 (1999).

Gibson, Dunn & Crutcher LLP

### 2. Plaintiffs Fail To State A Claim Under The CLRA

As explained above, Plaintiffs' CLRA claim fails because it lacks the particularity required by Rule 9(b), is premised impermissibly on a selective reading of the challenged representations, and relies on non-actionable statements. More fundamentally, this claim fails because the CLRA applies only to "goods" and "services," not to computer software such as Siri. *See* Cal. Civ. Code § 1770. The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes," and defines "services" as "work, labor, and services for other than a commercial or business use." *Id.* § 1761(a)-(b). As courts in this Circuit have held, software is neither a "good" nor a "service" under these definitions. *Wofford v. Apple Inc.*, No. 11-CV-0034, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) ("California law does not support Plaintiff's contention that software is a tangible good or service for the purposes of the CLRA."); *In re iPhone Application Litig.*, No. 11-MD-2250, 2011 WL 4403963, at *10 (N.D. Cal. Sept. 20, 2011) ("Software is neither a 'good' nor a 'service' within the meaning of the CLRA."); *Ferrington v. McAfee, Inc.*, No. 10-CV-1455, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) (holding that "the software Plaintiffs purchased is not a good covered by the CLRA" and "software generally is not a service for purposes of the CLRA").

The Complaint describes and attacks only Apple's purported representations regarding iPhone 4S's Siri software, and Plaintiffs' claims relate exclusively to the Siri software—not to iPhone 4S itself or any other "good" or "service." *See, e.g.*, CC ¶ 5 ("In this case, Plaintiffs challenge Defendant's actions in connection with its misleading and deceptive advertising related to the iPhone 4S's Siri feature."). Therefore, the CLRA does not apply to Plaintiffs' software-related claims, and Plaintiffs' CLRA claim should be dismissed.

### 3. Plaintiffs Fail To State A Claim For Breach Of Express Warranty

"To state a claim for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty that proximately caused plaintiff's injury." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)); *see also Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010). A plaintiff

"also must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach"—*i.e.*, prior to filing suit. *Stearns*, 763 F. Supp. 2d at 1142; Cal. Com. Code § 2607(3)(A); U.C.C. § 2-607(3)(A); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("[T]he notice requirement means pre-suit notice."); *Baltazar*, 2011 WL 588209, at *2.

### a.  Plaintiffs Failed To Provide The Requisite Pre-Suit Notice Of Breach

Plaintiffs fail to plead that they provided notice of any alleged breach to Apple within a reasonable time after discovery of the alleged breach, in violation of California Commercial Code § 2607(3)(A). Instead, they baldly allege that "[a]ll conditions precedent to Defendant's liability" for breach of express warranty, "including notice, as described above, have been performed by Plaintiffs and the Class." CC ¶ 110. However, the only notice "described above" is that "on March 6, 2012, Plaintiff Fazio sent Apple a letter advising Apple that it was in violation of the [CLRA] and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of California Civil Code § 1770." *Id.* ¶ 72.

Because the CLRA demand letter in question makes no mention of any alleged breach of express warranty and was sent simultaneously with the filing of Fazio's original complaint, Plaintiffs cannot satisfy the pre-suit notice requirement, and their breach of warranty claim should be dismissed with prejudice.[15] *See Alvarez*, 656 F.3d at 932 (affirming dismissal of breach of warranty claim without leave to amend for failure to satisfy the pre-suit notice requirement where plaintiffs alleged only that they provided notice of alleged breach by letter and by filing a lawsuit and there was "undisputed evidence that [they] sent their notice letter simultaneously with the complaint").[16]

---

[15]    *See* CC ¶¶ 72, 74, 110; Maier Decl. Ex. 8 (Letter from Mark Dearman, Counsel for Frank M. Fazio, to Tim Cook, Chief Exec. Officer, Apple Inc. (Mar. 6, 2012)); Class Action Compl., *Fazio v. Apple Inc.*, No. 12-CV-1127 (N.D. Cal. Mar. 6, 2012), Dkt. No. 1.

[16]    Plaintiffs do not allege that they contacted Apple to seek a repair of any alleged defects or a replacement iPhone 4S, as required by the iPhone 4S hardware warranty. The express terms of that warranty require Plaintiffs to submit a warranty claim to Apple in order to qualify for repair or replacement of, or a refund of the purchase price for, their allegedly defective iPhones. *See* CC ¶¶ 95-110; Maier Decl. Ex. 9; *see also* http://www.apple.com/legal/warranty/products/iphone-english.html (last visited May 10, 2012). Plaintiffs' failure to do so undermines the purpose of the notice requirement, which "is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Alvarez*, 656 F.3d at 932.

### b.    Plaintiffs' Claim For Breach of Express Warranty Fails

Even if Plaintiffs had provided proper pre-suit notice of any alleged breach, they nonetheless would fail to state a claim for breach of express warranty because they do not allege "the exact terms of the warranty" or "reasonable reliance thereon."  *See Tietsworth*, 720 F. Supp. 2d at 1140. Plaintiffs' vague allegation that "[t]he terms of the contract include the promises and affirmations of fact and express warranties made by Defendant on its website and through its marketing and advertising campaign that the iPhone 4S's Siri feature performs as advertised" (CC ¶ 104) is not equivalent to the requisite recitation of the exact terms of an alleged warranty.  *See Nabors v. Google, Inc.*, No. 10-CV-3897, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011) (dismissing breach of warranty claim because "[g]eneral assertions about representations or impressions given by Google about the phone's 3G capabilities are not equivalent to a recitation of the exact terms of the underlying warranty"); *Baltazar*, 2011 WL 588209, at *2 (dismissing breach of warranty claim because "[g]eneral assertions that Plaintiffs relied on 'a commercial' or 'the commercial' or 'advertisements online' are not equivalent to a recitation of the exact terms of the underlying warranty").

Similarly, Plaintiffs' bare assertion that they "were exposed to these statements and reasonably relied upon such the [sic] promises and affirmations of fact contained in Apple's marketing campaign" (CC ¶ 106) fails either to "identify the particular commercial or advertisement upon which they relied" or to "describe with the requisite specificity the content of that particular commercial or advertisement."  *See Baltazar*, 2011 WL 588209, at *2 (dismissing breach of warranty claim because each named plaintiff must "allege with greater specificity his or her reasonable reliance on the particular commercial or advertisement").

### 4.    Plaintiffs Fail To State A Claim For Breach Of Implied Warranty

The California Commercial Code implies a warranty of merchantability that goods "[a]re fit for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314(2)(c).  This warranty "provides for a minimum level of quality" such that a breach occurs only "if the product lacks even the most basic degree of fitness for ordinary use."  *Birdsong v. Apple Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quotation marks and citations omitted).  Thus, "[t]he mere manifestation of a

Gibson, Dunn &
Crutcher LLP

1    defect by itself does not constitute a breach of the implied warranty of merchantability.  Instead, there

2    must be a fundamental defect that renders the product unfit for its ordinary purpose."  *Tietsworth*, 720

3    F. Supp. 2d at 1142 (quotation marks and citations omitted).

4                       a.        **Apple Properly Disclaimed The Implied Warranty Of Merchantability**

5              A merchant may properly disclaim the implied warranty of merchantability as long as the

6    disclaimer "mention[s] merchantability" and is "conspicuous."  *Kowalsky v. Hewlett-Packard Co.*,

7    771 F. Supp. 2d 1138, 1156 (N.D. Cal. 2010) (citing Cal. Com. Code § 2316(2)), *vacated in part on*

8    *other grounds*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011).  Here, Apple properly disclaimed the implied

9    warranty of merchantability in both the iPhone 4S's one-year hardware warranty[17] and the iPhone

10   software license agreement.[18]  *See Kowalsky*, 771 F. Supp. 2d at 1156.  Plaintiffs could have rejected

11   Apple's terms by returning their iPhones within a reasonable period after receiving them and reading

12   the warranty documents.  *See id.* (rejecting argument that disclaimer of implied warranty was "not

13   effective because it was not disclosed as part of the purchase transaction, but as a separate document

14   that may or may not be read prior to purchase" where disclaimer "was available on HP's website"

15   and plaintiff could have returned the product within a reasonable period).

16                       b.        **Plaintiffs' Claim For Breach Of Implied Warranty Fails**

17             Even if Apple had not disclaimed the implied warranty of merchantability, Plaintiffs still fail

18   to plead sufficient facts to make it plausible that the ordinary and intended purpose of iPhone 4S is to

19   "us[e] the Siri intelligent assistant feature to send messages, schedule appointments, seek information

20   and directions and to learn new tasks."  *See* CC ¶¶ 112, 113; *see also id.* ¶ 116.  As Plaintiffs

21   acknowledge, iPhone 4S is much more than Siri, "function[ing] as a mobile phone, an iPod and an

22   Internet communications device all in one and featur[ing] desktop-class email, web browsing,

23   searching, and maps."  *Id.* ¶ 3.  Likewise, Plaintiffs fail to plead sufficient facts to make it plausible

24   that "[t]he iPhone 4S is not fit for its warranted, advertised, ordinary and intended purpose" (*id.*

25   ¶ 116), particularly given Hamagaki's acknowledged successful experience with Siri (*id.* ¶ 23).

26

27   [17]       *See* Maier Decl. Ex. 9, *supra* note 16.

28   [18]       *See* Maier Decl. Ex. 7, *supra* note 10.

1

**5.     Plaintiffs' Failure To State A Claim For Breach Of Warranty Under State Law Necessarily Constitutes A Failure To State A Claim Under The Magnuson-Moss Warranty Act**

2

3       Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA") "stand[s] or fall[s]

4  with [their] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler*

5  *Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Because Plaintiffs fail to state a claim for breach of

6  express warranty or for breach of the implied warranty of merchantability, their MMWA claim

7  necessarily fails as well.  *See Birdsong*, 590 F.3d at 958 n.2 (MMWA claims "require the plaintiffs to

8  plead successfully a breach of state warranty law," and because "plaintiffs have failed to state a claim

9  for breach of an express or implied warranty, their claims under [the MMWA] are also properly

10  dismissed"); *Herrington*, 2010 WL 3448531, at *13 (because plaintiffs' state law warranty claims

11  failed, "their MM-WA claims must be dismissed for the same reasons").

12       **6.     Plaintiffs Fail To State A Claim For Unjust Enrichment**

13       Although there is a split of authority regarding the viability of unjust enrichment as an

14  independent claim, *see, e.g.*, *Herrington*, 2010 WL 3448531, at *13, to the extent that restitution may

15  be awarded under an unjust enrichment theory, Plaintiffs must "adequately explain the theory on

16  which [their] unjust enrichment claim is based" and cannot "merely incorporate[] the other facts of

17  the [complaint] by reference and make[] a conclusory allegation that defendants have been 'unjustly

18  enriched' . . . ."  *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009)

19  (dismissing unjust enrichment claim where plaintiff alleged that defendants "have been 'unjustly

20  enriched' by 'retaining profits, income and ill-gotten gains at the expense of plaintiff who acted in

21  detrimental reliance upon the defendants' false assurances, representations and promises' with

22  respect to 'facts, terms and conditions as above stated to defraud Plaintiff'").

23       As in *Rosal*, Plaintiffs "merely incorporate[] the other facts of the [complaint] by reference"

24  and allege in a conclusory fashion that Apple has somehow been unjustly enriched.  CC ¶¶ 130-135;

25  *see* 671 F. Supp. 2d at 1133.  Because Plaintiffs' unjust enrichment claim merely repeats the same

26  allegations that support their other claims, it should be dismissed.  *See In re Apple & AT&T*, 802 F.

27  Supp. 2d at 1077 (dismissing unjust enrichment claim because "plaintiffs [cannot] assert unjust

28

1    enrichment claims that are merely duplicative of statutory or tort claims") (citations omitted).[19]

2                           **V.    CONCLUSION**

3         Plaintiffs Fazio and Balassone—and all out-of-state purchasers in the putative class—lack

4    standing to pursue claims under California's consumer protection statutes because they are not

5    California residents and did not purchase their iPhones in California, and such claims should be

6    dismissed.  In addition, Plaintiffs fail to plead their claims against Apple with the level of

7    particularity required by Rule 9(b), impermissibly rely on a selective reading of the challenged

8    representations that ignores specific disclosures, allege only non-actionable statements, and otherwise

9    fail to allege sufficient facts in support of any of their claims.  Because the Complaint is insufficient

10   as a matter of law to support any of the claims alleged, Apple respectfully requests that this Court

11   dismiss the Complaint in its entirety.

12

13   DATED: May 10, 2012                  Respectfully submitted,

14                                          GIBSON, DUNN & CRUTCHER LLP

15

16                                    By:  _____*/s/* Gail E. Lees_____

17                                            Gail E. Lees

18                                   GAIL E. LEES
                                  MATTHEW S. KAHN

19                                   BENJAMIN M. GLICKMAN
                                  GIBSON, DUNN & CRUTCHER LLP

20                                   333 South Grand Avenue
                                  Los Angeles, CA  90071-3197

21                                   Telephone:  213.229.7000
                                  Facsimile:  213.229.7520

22                                   glees@gibsondunn.com

23                                   mkahn@gibsondunn.com
                                  bglickman@gibsondunn.com

24                                   Attorneys for Defendant APPLE INC.

25   _____

26  [19]     Furthermore, if this Court were to conclude that Plaintiffs have adequately stated any other
claim upon which relief can be granted, Plaintiffs' unjust enrichment claim would necessarily fail

27   because they would have an adequate remedy at law.  *See, e.g.*, *Rhynes v. Stryker Corp.*, No. 10-CV-
5619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff

28   *may* entitle her to an adequate remedy at law, equitable relief is unavailable.") (emphasis in original).