ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*Pro Hac Vice*)
ERICH P. SCHORK (*Pro Hac Vice*)
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

GARDY & NOTIS, LLP
JENNIFER SARNELLI (242510)
JAMES S. NOTIS (*Pro Hac Vice*)
501 Fifth Avenue, Suite 1408
New York, NY  10017
Telephone:  212/905-0509
212/905-0508 (fax)
jsarnelli@gardylaw.com
jnotis@gardylaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re IPHONE 4S CONSUMER LITIGATION | Master File No. 4:12-cv-01127-CW |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS |
| ALL ACTIONS. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF FACTS .....................................................................2

III. ARGUMENT ..........................................................................................5

    A. Standard of Review ....................................................................5

    B. Plaintiffs Fazio and Balassone Have Standing ..........................6

    C. Plaintiffs Satisfy Rule 9(b).........................................................7

        1. Plaintiffs Sufficiently Plead Fraud Claims ......................8

        2. Plaintiffs Sufficiently Allege Reliance ..........................10

    D. Plaintiffs' UCL, FAL, CLRA, and Misrepresentation Claims Are Based upon Actionable Statements ...........................................................12

        1. Plaintiffs Adequately Plead that the Public Was Likely to Be Deceived by Apple's Advertising Campaign ...............................12

        2. Apple's Statements Are Not Mere Puffery.....................15

    E. Plaintiffs Properly Plead Their UCL, CLRA, Breach of Warranty, MMWA and Unjust Enrichment Claims ...................................16

        1. Plaintiffs State a Claim Under the UCL .........................16

        2. Plaintiffs State a Claim Under the CLRA........................18

        3. Plaintiffs State a Claim for Breach of Express Warranty ........................19

            a. Plaintiffs Provided the Requisite Notice........................19

            b. Plaintiffs State a Claim for Breach of Express Warranty .............20

        4. Plaintiffs State a Claim for Breach of Implied Warranty ........................22

        5. Plaintiffs State a Claim Under the MMWA........................23

        6. Plaintiffs State a Claim for Unjust Enrichment ........................24

IV. CONCLUSION......................................................................................25

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Aaronson v. Vital Pharm., Inc.*,
5
    No. 09-CV-1333 W(CAB), 2010 WL 625337
    (S.D. Cal. Feb. 17, 2010) ...........................................................................20

6

*Allen v. Hylands, Inc.*,
7
    No. CV 12-1150 DMG (MANx), 2012 WL 1656750
    (C.D. Cal. May 2, 2012) ................................................................................6

8

*Ashcroft v. Iqbal*,
9
    556 U.S. 662 (2009) ......................................................................................5

10

*Asis Internet Servs. v. Subscriberbase Inc.*,
    No. 09-3503 SC, 2010 WL 1267763
11
    (N.D. Cal. Apr. 1 2010) .........................................................................12, 15

12

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
13
    No. C 08-04397 WHA, 2008 WL 6742224
    (N.D. Cal. Dec. 18, 2008) .....................................................................15, 16

14

*Baltazar v. Apple, Inc.*,
15
    No. CV-10-3231-JF, 2011 WL 588209
16
    (N.D. Cal. Feb. 10, 2011)......................................................................11, 21

17

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) ...............................................................................25

18

*Bardin v. DaimlerChrysler Corp.*,
19
    136 Cal. App. 4th 1255 (2006) ..................................................................17

20

*Bates v. UPS*,
21
    511 F.3d 974 (9th Cir. 2007) ........................................................................6

22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................1, 5

23

*Blakemore v. Superior Court*,
24
    129 Cal. App. 4th 36 (2005) .......................................................................17

25

*Brooks v. ComUnity Lending, Inc.*,
    No. C 07-4501 JF (PVT), 2010 WL 2680265
26
    (N.D. Cal. July 6, 2010) ...............................................................................7

27

28

Page

*Brothers v. Hewlett-Packard Co.*,
   No. C-06-02254 RMW, 2007 WL 485979
   (N.D. Cal. Feb. 12, 2007)...................................................................24

*Bruno v. Eckhart Corp.*,
   No. SACV 11-0173 DOC (Ex), 2012 WL 752090
   (C.D. Cal. Mar. 6, 2012). ....................................................................7

*CCBN.com, Inc. v. C-call.com, Inc.*,
   73 F. Supp. 2d 106 (D. Mass. 1999) ..................................................14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..................................................................16, 17

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011),
   *cert. denied*, __ U.S. __, 132 S. Ct. 456 (2011)....................................6

*Comerica Bank v. McDonald*,
   No. C-06-03735 RMW, 2006 WL 3365599
   (N.D. Cal. Nov. 17, 2006)...............................................................8, 10

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ........................................................................12

*Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990) ..............................................................15

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1998) ................................................................7

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) .............................................................17

*Ferrington v. McAfee, Inc.*,
   No. 10-CV-01455-LHK, 2010 WL 3910169
   (N.D. Cal. Oct. 5, 2010).....................................................................19

*Fid. Union Trust Co. v. Field*,
   311 U.S. 169 (1940)..............................................................................7

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
   No. S-09-580 FCD/JFM, 2009 WL 2462505
   (E.D. Cal. Aug. 11, 2009 ....................................................................15

**Page**

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ...............................................................................13, 14

*Fundin v. Chi. Pneumatic Tool Co.*,
    152 Cal. App. 3d 951 (1984) ........................................................................................20

*Germain v. J.C. Penney Co.*,
    No. CV 09-2847 CAS (FMOx), 2009 WL 1971336
    (C.D. Cal. July 6, 2009) ................................................................................................10

*Google, Inc. v. United States*,
    95 Fed. Cl. 661 (Fed. Cl. 2011).....................................................................................18

*Gottreich v. S.F. Inv. Corp.*,
    552 F.2d 866 (9th Cir. 1977) ........................................................................................10

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
    No. C 09-1597 CW, 2010 WL 3448531
    (N.D. Cal. Sept. 1, 2010) ..............................................................................................11

*Hirsch v. Bank of Am.*,
    107 Cal. App. 4th 708 (2003) .................................................................................24, 25

*IBM Corp. v. Visentin*,
    No. 11 Civ. 399 (LAP), 2011 WL 672025
    (S.D.N.Y. Feb. 16, 2011), *aff'd*, 437 F. App'x 53 (2d Cir. 2011) ...............................18

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011)..........................................................................15

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963
    (N.D. Cal. Sept. 20, 2011) ............................................................................................19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .............................................................................................17, 18

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (Cal. App. 2007)..........................................................................23

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002)...................................................................................................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................................11

Page

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ................................................................................7

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1138 (N.D. Cal. 2010), *vacated in part on other*
  *grounds*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................22

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000) ...................................................................25

*Lima v. Gateway, Inc.*,
  710 F. Supp. 2d 1000 (C.D. Cal. 2010) ............................................ 12, 15

*Malmen v. World Sav. Inc.*,
  No. CV 10-9009 AHM (JEMx), 2011 WL 1464587
  (C.D. Cal. Apr. 18, 2011)........................................................................15

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ...........................................................2, 3, 6, 7

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  No. C-11-03058 JCS, 2012 WL 1029502
  (N.D. Cal. Mar. 26, 2012).......................................................................24

*Metowski v. Traid Corp.*,
  28 Cal. App. 3d 332 (1972) ....................................................................20

*Micro Data Base Sys. v. Dharma Sys.*,
  148 F.3d 649 (7th Cir. 1998) ..................................................................14

*Morey v. NextFoods, Inc.*,
  No. 10 CV 761 JM (NLS), 2010 WL 2473314
  (S.D. Cal. June 7, 2010)..........................................................................21

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) .......................................................8, 12, 18

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459 (1992) ............................................................................6, 7

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ........................................................................7

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ..................................................24

PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS - 4:12-cv-01127-CW      - v -

1

2                                                                                                          **Page**

3    *Pastoria v. Nationwide Ins.*,
        112 Cal. App. 4th 1490 (2003) ...................................................................17
4

5    *RealPage, Inc. v. Yardi Sys., Inc.*,
        No. CV 11-00690 ODW (JEMx), 2011 WL 3565112
6       (C.D. Cal. Aug. 11, 2011) ......................................................................... 18

7    *Schlagal v. Learning Tree Int'l*,
        No. CV 98-6384 ABC (Ex), 1998 WL 1144581
8       (C.D. Cal. Dec. 23, 1998) ...........................................................................7

9    *Starr v. Baca*,
        652 F.3d 1202 (9th Cir. 2011),
10      *cert. denied*, __ U.S. __, 132 S. Ct. 2101 (2012) ....................................5

11   *Stickrath v. Globalstar, Inc.*,
        No. C07-1941 TEH, 2008 WL 5384760
12      (N.D. Cal. Dec. 22, 2008) .........................................................................18

13   *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
        17 Cal. 4th 553 (1998) ..............................................................................16
14

15   *Thomas v. Olin Mathieson Chem. Corp.*,
        255 Cal. App. 2d 806 (1967) ......................................................................21
16

17   *Ticketmaster L.L.C. v. RMG Techs.*,
        No. CV 07-2534 ABC JCx, 2007 WL 2989504
18      (C.D. Cal. Oct. 12, 2007) ...............................................................8, 11, 12

19   *United States v. Smithkline Beecham Clinical Labs.*,
        245 F.3d 1048 (9th Cir. 2001) .....................................................................8
20

21   *Vess v. Ciba-Geigy Corp.*,
        317 F.3d 1097 (9th Cir. 2003) ...................................................................11

22   *Walters v. Fid. Mortg. of Cal.*,
        No. 2:09-cv-3317 FCD/KJM, 2010 WL 1493131
23      (E.D. Cal. Apr. 14, 2010).........................................................................24
24

25   *Wehlage v. EmPres Healthcare, Inc.*,
        791 F. Supp. 2d 774 (N.D. Cal. 2011) ......................................................11

26   *Weinstat v. Dentsply Int'l, Inc.*,
        180 Cal. App. 4th 1213 (2010) ..................................................................19
27

28

1

2                                                                              **Page**

3    *Williams v. Gerber Prods. Co.*,
         552 F.3d 934 (9th Cir. 2008) ................................................................ 12, 13, 15

4

5    *Wofford v. Apple Inc.*,
         No. 11-CV-0034 AJB NLS, 2011 WL 5445054
6        (S.D. Cal. Nov. 9, 2011) ............................................................................19

7    *Wolph v. Acer Am. Corp.*,
         No. C 09-01314 JSW, 2009 WL 2969467
8        (N.D. Cal. Sept. 14, 2009) .......................................................................23

9    **STATUTES, RULES AND REGULATIONS**

10   15 U.S.C.
         §1 ..............................................................................................................18
11       §2310(e) ...................................................................................................24

12   Federal Rules of Civil Procedure
         Rule 9(b) .........................................................................7, 10, 11, 16, 25
13       Rule 12(b)(6) ...................................................................................5, 25

14   California Business and Professions Code
         §17200 ..............................................................................................16, 20
15       §17500 ..............................................................................................16, 20

16   California Civil Code
         §1572 .......................................................................................................16
17       §1573 .......................................................................................................16
         §1709 .......................................................................................................16
18       §1710 .......................................................................................................16
         §1711 .......................................................................................................16
19       §1761 .......................................................................................................18
         §1792 .......................................................................................................22
20       §1793 .......................................................................................................22

21   California Commercial Code
         §2313(a) ...................................................................................................20
22       §2313(b) ...................................................................................................20
         §2313(c)(2) ...............................................................................................20
23       §2314 .......................................................................................................22
         §2314(2)(c) ...............................................................................................22
24       §2607(3)(A) ..............................................................................................19

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

In October 2011, Apple Inc. ("Apple") introduced the iPhone 4S.  In its ubiquitous advertising campaign, Apple distinguishes the iPhone 4S from the previous generation iPhone 4, released just 16 months earlier, based on a new feature called Siri.  Apple's extensive nationwide marketing blitz showcases the alleged capabilities of Siri, and gives the misleading impression that Siri is a so-called voice-activated "intelligent" personal assistant.  Apple's advertisements emphasize that Siri is more than just voice recognition software – it can purportedly understand an individual's natural speech and can act on it.  These advertisements depict individuals using Siri to look up answers to complex questions, aid in performing specific tasks, and to provide the user with requested information.  In reality, Siri is not capable of such functions in the manner suggested in Apple's marketing campaign, rendering Apple's advertisements false and misleading.  Plaintiffs do not allege that Siri is incapable of doing anything.  Rather, plaintiffs allege that Siri is incapable of doing all of the things Apple's advertisements suggest it can do, and that Siri fails in a substantial and material manner in that regard.

On April 10, 2012, plaintiffs, on behalf of themselves and all others similarly situated, filed their Consolidated Class Action Complaint ("CAC"), alleging claims relating to Apple's false and deceptive marketing of the iPhone 4S.  [D.E. #18]  Apple's Motion to Dismiss the Complaint ("Motion") mischaracterizes the nature of plaintiffs' claims and distorts the pleading standards. [D.E. #32]  Plaintiffs' claims relate to Apple's nationwide marketing campaign, through which it disseminated false and misleading information regarding the overall functionality of the iPhone 4S's Siri feature – not their individualized "dissatisfaction" or "personal grievances" with Siri, as Apple would have the Court believe.[1]  Moreover, plaintiffs' allegations are subject to routine federal pleading requirements, not the extraordinary "heavy burden" standard that Apple suggests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

---

[1]    Equally unconvincing is Apple's assertion that plaintiffs should have availed themselves of the return policy.  Having a return policy does not immunize Apple from liability for its misrepresentations.  Further, had plaintiffs returned their iPhone 4Ss they still may have incurred the costs of any accessories or apps purchased, restocking fees or penalties from the mobile carrier.

1    In addition to these inaccuracies, Apple's Motion fails for a number of other reasons. *First*,

2    contrary to Apple's assertion, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), is

3    inapplicable and plaintiffs Fazio and Balassone have standing to pursue their California claims.

4    *Second*, plaintiffs satisfy federal pleading requirements because they allege sufficient facts to support

5    that their claims are plausible and to put Apple on notice of the bases of their claims. *Third*, Apple's

6    comprehensive nationwide marketing campaign used a variety of mediums – including television

7    commercials, videos, press releases, and its website – to convey to consumers through numerous

8    representations and advertisements that Siri was able to operate as a voice-activated personal

9    assistant and was capable of performing tasks that, in reality, Siri was unable to perform. Not a

10   single advertisement or statement mentions that Siri cannot be expected to perform as advertised.

11   Nor do the vast majority of Apple's advertisements, including its television commercials, disclose

12   that Siri is in beta (or what that term actually means). It is absurd for Apple to argue that its

13   insertion of the word beta on a select few pages of its website immunizes it from any and all liability

14   relating to its false and deceptive marketing campaign as to Siri's capabilities. *Fourth*, plaintiffs'

15   UCL, CLRA, Breach of Warranty, Magnuson-Moss Warranty Act ("MMWA") and unjust

16   enrichment claims are all adequately pled. For these reasons, as detailed further herein, Apple's

17   Motion should be denied.

18   **II.    STATEMENT OF FACTS**

19   Apple designs, produces, and sells a variety of electronic products, including the iPhone 4S,

20   its most recent version of the iPhone, introduced in October 2011. ¶¶29, 32.[2] In conjunction

21   therewith, Apple engaged in an extensive multi-million dollar nationwide marketing campaign,

22   through which it showcased the alleged capabilities of Siri. ¶6. One Apple executive touted: "[Siri

23   is] like this amazing assistant that listens to you, understands you, can answer your questions and can

24   even accomplish tasks for you. . . . A lot of devices can recognize the words you say, but the ability

25   to understand what you mean and act on it, that's the breakthrough with Siri." ¶43. Apple

26   represented further: "Siri helps you make calls, send text messages or email, schedule meetings and

27   _____

28   [2]    All references to the CAC herein are designated as "¶__."

1    reminders, make notes, search the Internet, find local businesses, get directions and more.  You can

2    also get answers, find facts and even perform complex calculations just by asking." ¶34.  Siri is the

3    major selling point for the iPhone 4S and is the primary feature distinguishing the iPhone 4S from

4    prior versions of the iPhone.  ¶¶4, 35 (noting that one Apple video represents: "How do you improve

5    on something so extraordinary?" The answer: "now we're introducing Siri."), 40-41.

6         Apple's advertisements demonstrated specific functions that Siri could allegedly perform.

7    Many of Apple's advertisements depict individuals using Siri to make appointments, find

8    restaurants, send text messages, learn guitar chords to classic rock songs, and how to tie a tie.  ¶¶7,

9    34.  One Apple video shows a couple asking Siri numerous questions, including, "Where is the best

10   barbeque in Kansas City?," "Is there a rodeo in Amarillo today?," and "How big is the Grand

11   Canyon?"  ¶37.  In response to the question, "[Are there] any gas stations we can walk to?," Siri

12   answers, "I found two gas stations fairly close to you," and the names and star ratings of two gas

13   stations appear on the user's iPhone 4S screen.  *Id.*  Similarly, when asked "What does Orion look

14   like?" Siri responded with a map of the Orion constellation and states, "I found this for you."  *Id.*

15   Another Apple nationwide television advertisement entitled "Rock God" involves a guitar player

16   asking Siri numerous questions, including, "How do I play London Calling" and "[How do I play]

17   Whole Lotta Love?"  ¶38.  In response to the question "[How do I play] a B Minor Ninth?," Siri

18   responds with the proper notes, chord, and sheet music.  *Id.*  Moreover, when asked to "Tell Julie

19   and Kate our band is playing at the garage tonight," Siri responds, "Here is your message to Julie

20   and Kate," and immediately formulates a text message on the user's iPhone 4S screen.  ¶39.  In each

21   video and advertisement, Siri properly answers the question asked, provides the requested

22   information, and/or aids the user in performing the requested task with relative ease.  ¶7.

23        Apple's advertisements were intended to, and did, convey to consumers through a variety of

24   media (*i.e.*, television advertisements, Internet Videos, press releases, print ads, and Apple's website)

25   the overall message that Siri operates as a voice-activated personal assistant and could perform not

26   only the specific tasks depicted in Apple's advertisements, but other complex tasks, as well.  ¶¶6-7,

27   31, 51.  Apple's marketing campaign was designed to convince consumers to purchase the iPhone 4S

28   over other smart phones and older, less expensive versions of the iPhone based on the inclusion of

1    the "amazing" new Siri feature.  ¶¶4, 11, 15.  The iPhone 4S is currently available for between $199

2    and $399, while the iPhone 4, released just 16 months earlier, is available for $99.  Motion at 4; *see*

3    *also* ¶15.  Apple's campaign was successful, as Apple reported selling almost 33 million iPhone 4Ss

4    during its fiscal quarter ending December 31, 2011.  ¶10.

5         In reality, Siri does not function as represented in Apple's advertisements.  ¶8.  Plaintiffs

6    each saw and/or heard Apple's representations regarding the functionality of Siri and relied upon

7    such representations when purchasing the iPhone 4S.  ¶¶20, 22, 24, 27.  Contrary to Apple's

8    advertisements, Siri is unable to perform the functions of a voice-activated personal assistant, unable

9    to answer specific questions, and often gives plaintiffs wrong information or fails to respond.  ¶¶21,

10   23, 25, 28.  For example, when Plaintiff Fazio asked Siri for directions or to locate a store, Siri either

11   did not understand what Plaintiff Fazio was asking for or, after a very long wait, responded with the

12   wrong answers.  ¶21.  When Plaintiff Fazio asked Siri to compare the fat content between two meals,

13   the location of a children's party venue, information related to the "guided reading" teaching

14   method, and directions to a doctor's office, Siri was unable to answer his questions properly.  *Id.*

15   When Plaintiff Swartzman attempted to use Siri to make phone calls or send emails, Siri repeatedly

16   gave the wrong names and numbers of people he was trying to contact.  ¶28.  When Plaintiff

17   Swartzman asked Siri for the weather in Palm Springs, Siri did not understand what he was asking.

18   *Id.*  When Plaintiff Swartzman asked Siri, "When is St. Patrick's day," Siri responded, "Sorry, I

19   don't understand 'When is St. Patrick's day.'"  *Id.*  Plaintiff Balassone even attempted to mirror the

20   commands given in Apple's "Rock God" television advertisement, but Siri did not respond in the

21   same manner as in the television commercial.  ¶25.  When Plaintiff Balassone asked Siri: "how do

22   you play an A chord?" Siri responded, "OK, how about a web search for 'how do you plan a quart?"

23   ¶26.  And when Plaintiff Balassone asked "how do you play a B minor chord?" Siri responded,

24   "looking for a B minor chord," followed by "still thinking," and eventually responded "Sorry, I

25   couldn't find B minor chord in your music."  *Id.*

26        Plaintiffs' experiences with Siri failing to perform as advertised and represented are not

27   unique.  One *Huffington Post* blogger published an article entitled "Apple's Siri 'Rock God'

28   Commercial: How Accurate Is It, Really?"  ¶45.  The article was accompanied by a video entitled

1    "A Scientific Ex-Siri-Ment," wherein the blogger repeats every voice command prompt in Apple's

2    "Rock God" commercial, word-for-word. *Id.* Siri manages only to respond to two of seven prompts

3    on the first try, as it did with ease in the "Rock God" commercial, including one response that came

4    after an extreme time lag. ¶46. In addition, Siri usage dramatically increases an iPhone 4S's

5    monthly data usage, which can push users over their data plans. ¶47.

6          Importantly, Apple had actual or constructive knowledge of Siri's shortcomings prior to its

7    marketing blitz and the iPhone 4S's distribution. ¶48. While Apple's website associates the term

8    beta with Siri in a few select places (¶¶48-49), Apple never disclosed that Siri was in beta in its

9    nationwide television commercials, or indicated what beta meant as to Siri, all to the detriment of

10    plaintiffs and the putative class. Nor did it disclose that actual consumers using an iPhone 4S cannot

11    reasonably expect Siri to perform the tasks performed in Apple's commercials. ¶¶49, 51. Siri does

12    not perform in the manner that Apple has, and continues to, falsely tout it can.

13          Even one of Apple's co-founders, Steve Wozniak, has expressed dissatisfaction with the

14    functionality of the iPhone 4S's Siri feature, stating that when he asks Siri "What are the five biggest

15    lakes in California?," "[Siri] just misses. It gives me real estate listings," and when he asks Siri

16    "What are the prime numbers greater than 87?" "Now instead of getting prime numbers, I get listings

17    for prime rib, or prime real estate." *See Apple Co-Founder Talks Up Android, Disses Siri*,

18    PCMag.com (Jan. 17, 2012), available at http://www.pcmag.com/article2/0,2817,2398973,00.asp.

19    **III.    ARGUMENT**

20          **A.    Standard of Review**

21          "[U]nder the federal rules a complaint is required only to give the notice of the claim such

22    that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202,

23    1212 (9th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2101 (2012). Detailed factual allegations

24    are not required; rather, a complaint must only allege sufficient facts to "state a claim to relief that is

25    plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the

26    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27    defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

28    *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

1    courts "accept[] factual allegations in the complaint as true and construe[] the pleadings in the light

2    most favorable to the nonmoving party." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948,

3    955 (9th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 456 (2011).  When plaintiffs' plausible

4    claims are viewed in the light most favorable to them, Apple's Motion fails.

5        **B.    Plaintiffs Fazio and Balassone Have Standing**

6        Apple challenges the standing of only plaintiffs Fazio and Balassone, citing *Mazza*.[3]  But

7    Apple confuses standing with choice of law.  *Allen v. Hylands, Inc.*, No. CV 12-1150 DMG

8    (MANx), 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012).  *Allen* explains that "choice of law is

9    not the same thing as standing," and, like here, "[w]hether or not *certification* on a nationwide basis

10    is appropriate . . . is not an issue that is currently before the Court."  *Id.*

11        To satisfy standing, plaintiffs need only show that they suffered an injury in fact that is

12    traceable to the challenged conduct, and that the injury can be redressed by a favorable decision.  *Id.*

13    (citing *Mazza*, 666 F.3d at 595; *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007)).  Apple does not

14    challenge that this standard is met.  Plaintiffs were injured by Apple's misrepresentations and can be

15    made whole by a favorable decision providing appropriate relief and damages.  In fact, the Ninth

16    Circuit rejected Apple's standing argument in *Mazza*, "despite the court's conclusion that the

17    application of multiple jurisdictions' consumer protection laws precluded class treatment."  *Allen*,

18    2012 WL 1656750, at *2 (citing *Mazza*, 666 F.3d at 595).

19        *Mazza* is also inapplicable because all class members entered into agreements with Apple

20    that provided for the application of California law to all claims.[4]  California law recognizes the

21    strong policy considerations in favor of enforcing choice-of-law agreements.  *Nedlloyd Lines B.V. v.*

22    *Superior Court*, 3 Cal. 4th 459, 464-66 (1992).  Accordingly, under California law, choice-of-law

23    provisions agreed to by the parties – such as the provisions at issue here – are enforceable so long as

24    _____

25    [3]      There is no dispute that the other plaintiffs have standing to pursue all claims.

26    [4]      Apple argues that the software license is not applicable to the purchase of the iPhone 4S.
Motion at 10.  While plaintiffs dispute this point, it is of no consequence, as Apple's Web Site Terms
27    and Conditions of Use; Print Services Terms of Use; and, Print Services Sales Policies & Ordering
Information each designate the laws of California as the governing law and would apply to
28    iPhone 4S purchases and Apple's representations regarding Siri. http://www.apple.com/legal/terms/.

1   the agreed-upon state has a substantial relationship to the parties or their transactions and application

2   of the state's law would not be contrary to California public policy.[5] *Id.* Further, no choice-of-law

3   agreement was even at issue in *Mazza*.

4        Apple is wrong in asserting that *Mazza* changes California's choice-of-law rules by erecting a

5   *per se* barrier on the application of California's consumer protection statutes to the claims of non-

6   California residents. The court in *Bruno v. Eckhart Corp.*, rejected a similar argument, holding that

7   *Mazza* did not overrule the California Supreme Court's decisions regarding the choice-of-law

8   analysis required under California law, nor could it, because choice-of-law analysis is substantive

9   state law and a state's highest court is the final arbiter on state law. No. SACV 11-0173 DOC (Ex),

10  2012 WL 752090, at *6 (C.D. Cal. Mar. 6, 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

11  U.S. 487, 496 (1941); *Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177-78 (1940)).

12       **C.    Plaintiffs Satisfy Rule 9(b)**

13       Apple's selective reading of the CAC attempts to paint a picture that plaintiffs failed to

14  adequately plead their causes of action. Motion at 11-16. When the Court reviews the CAC as a

15  whole, though, it becomes clear that plaintiffs meet the requisite pleading requirements.

16       "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud

17  so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*,

18  6 F.3d 666, 671-72 (9th Cir. 1993) (citations omitted); *Brooks v. ComUnity Lending, Inc.*, No. C 07-

19  4501 JF (PVT), 2010 WL 2680265, at *9 (N.D. Cal. July 6, 2010). Thus, while Rule 9(b) imposes a

20  heightened standard, it does not require a plaintiff to allege each and every detail about the alleged

21  conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998) ("'we cannot make Rule 9(b) carry

22  more weight than it was meant to bear'"); *Schlagal v. Learning Tree Int'l*, No. CV 98-6384 ABC

23  _____

24  [5]    California has a substantial relationship to the Parties and transactions related to Plaintiff
    Fazio's and Plaintiff Balassone's UCL, FAL, and CLRA claims. Apple, a California corporation
25  headquartered in California, engaged in a marketing campaign that disseminated false and
    misleading information nationwide regarding the functionality Siri. ¶¶29-31. All critical decisions
26  regarding the Siri feature were made by Apple employees located in California. ¶30. Plaintiffs
    Fazio and Balassone saw and relied upon Apple's misrepresentations and deceptive advertisements
27  regarding the functionality of the Siri feature that emanated from California and each purchased an
    iPhone 4S as a result. ¶¶20, 24. Thus, there can be no dispute that application of the UCL, FAL,
28  and CLRA – California laws – would not be contrary to California public policy.

1    (Ex), 1998 WL 1144581, at *8 (C.D. Cal. Dec. 23, 1998) ("The Court must strike a careful balance

2    between insistence on compliance with demanding pleading standards and ensuring that valid

3    grievances survive.").

4          Moreover, while fraud "allegations 'must be accompanied "by the who, what, when, where,

5    and how" of the misconduct charged . . . the requirement of specificity is relaxed when the

6    allegations indicate that "the defendant must necessarily possess full information concerning the

7    facts of the controversy"' or 'when the facts lie more in the knowledge of the opposite party.'"

8    *Comerica Bank v. McDonald*, No. C-06-03735 RMW, 2006 WL 3365599, at *2 (N.D. Cal. Nov. 17,

9    2006).  The CAC sufficiently sets forth: "who" (Apple) (¶¶29-32); "what" (that Apple made specific

10   representations that Siri would act as an efficient personal assistant) (¶¶6-8, 11-12); "when" (Apple's

11   false representations to consumers began with the launch of the Siri feature on October 4, 2011 and

12   continue through the present) (¶¶4, 34); "where" (Apple markets and advertises the Siri feature of

13   the iPhone 4S nationwide through television, print ads and the Internet) (¶¶6, 33-43); and "how"

14   (Apple knew or should have known that Siri would not perform as advertised, yet it advertised Siri

15   acting as an efficient personal assistant to consumers nationwide) (¶¶13, 16, 45-52).

16          **1.    Plaintiffs Sufficiently Plead Fraud Claims**

17          Apple's claim that "Plaintiffs fail to allege the 'particular circumstances surrounding' any

18   alleged misrepresentation regarding Siri" (Motion at 12) is belied by the well-pled facts in the CAC.

19   Plaintiffs plead with particularity the alleged misrepresentations made by Apple in its nationwide

20   advertising campaign, and the specific representations each plaintiff viewed and relied upon.  ¶¶20-

21   20, 34-43.

22          Where, as here, a defendant made consistent misrepresentations over an extended period of

23   time, plaintiffs need not list each and every instance of such misrepresentations.  *Ticketmaster L.L.C.*

24   *v. RMG Techs.*, No. CV 07-2534 ABC JCx, 2007 WL 2989504, at *2 (C.D. Cal. Oct. 12, 2007)

25   (citing *United States v. Smithkline Beecham Clinical Labs.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001));

26   *accord Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1240, 1262 (2009) ("[W]here

27   a fraud claim is based upon numerous misrepresentations, such as an advertising campaign that is

28   alleged to be misleading . . . it is sufficient for the plaintiffs to provide a representative selection of

1 the advertisements or other statements to indicate the language upon which the implied

2 misrepresentations are based."). The examples quoted in the CAC describing Apple's

3 misrepresentations notify Apple of the circumstances of the alleged fraud.

4       Plaintiffs assert that Apple violated California law "through an extensive and comprehensive

5 nationwide marketing campaign, [that] has conveyed the overall misleading and deceptive message

6 that the iPhone 4S's Siri feature, a so-called voice-activated assistant, is able to perform various

7 tasks depicted in Apple's advertisements." ¶6. The CAC is replete with allegations that Apple

8 represented that Siri could, for example, "make appointments, find restaurants, craft text messages,

9 learn the guitar chords to classic rock songs and how to tie a tie." ¶¶7, 34, 36-39, 41-43. Apple

10 represented Siri as an "intelligent assistant" that can "make calls, send texts, set reminders, and

11 more"; and that consumers could "[j]ust talk the way you talk [and] Siri understands what you say

12 and knows what you mean." ¶41. Apple also has implemented an extensive television marking

13 campaign designed to demonstrate Siri's alleged features. ¶¶36-37. These advertisements show Siri

14 responding to various commands and questions by actors portraying iPhone 4S consumers; for

15 example, the Siri feature is shown immediately answering questions such as "[Are there] any gas

16 stations we can walk to?" and "[How do I play] a B Minor Ninth?" ¶¶37-39.

17       Further, plaintiffs provide a detailed account of the representations they viewed regarding the

18 alleged capabilities of Siri and their experience detailing that it did not work according to Apple's

19 representations. ¶¶20-21 (Plaintiff Fazio alleged he saw Apple television and Web advertisements,

20 and when he attempted to ask Siri specific questions, as the commercials represented was possible,

21 Siri did not understand or was unable to answer); ¶¶22-23 (Plaintiff Hamagaki alleged she saw

22 Apple television and Web advertisements, and when she asked Siri anything complex, it could not

23 come up with an answer); ¶¶24-26 (Plaintiff Balassone alleged he saw the October 4, 2012 press

24 conference wherein Siri was demonstrated answering questions quickly, he saw the "Rock God"

25 television advertisement, and he attempted to recreate the "Rock God" advertisement commands but

26

27

28

1  Siri failed to respond as it did on the  commercial)[6]; ¶¶27-28 (Plaintiff Swartzman alleged he saw

2  Apple's advertisements demonstrating that Siri would accurately provide information based on

3  verbal commands, permit accurate dictation of emails, and substantially shorten and simplify

4  research time, but when he asked Siri specific questions, it did not understand him).  These extensive

5  allegations – which include examples of misleading statements – sufficiently "identif[y] 'the

6  circumstances'" of the alleged fraud and provide Apple notice of conduct it must defend.  *Gottreich*

7  *v. S.F. Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977).

8       Additional details regarding its conduct are within Apple's control and will be revealed

9  through discovery.    *Germain v. J.C. Penney Co.*, No. CV 09-2847 CAS (FMOx), 2009 WL

10  1971336, at *5 (C.D. Cal. July 6, 2009) (finding description of defendants' roles sufficient and that

11  "[i]t would be unreasonable for the Court to require plaintiffs to plead the specific involvement of

12  each defendant in the scheme prior to discovery"); *Comerica*, 2006 WL 3365599, at *2 (specificity

13  required under Rule 9(b) relaxed where "full information" in defendant's control).

14       **2.    Plaintiffs Sufficiently Allege Reliance**

15       Contrary to Apple's unfounded argument (Motion at 14), plaintiffs precisely allege the

16  misrepresentations to which they were exposed, their reliance on those misrepresentations, and the

17  resulting harm.[7]  Plaintiffs specifically allege that, prior to making their purchases, they reviewed

18

---

19  [6]       Curiously, Apple contends plaintiffs "*do not even allege that Siri does not perform the

20  specific tasks demonstrated in these advertisements*."  Motion at 12.  Not only do plaintiffs make
   these allegations generally throughout the CAC, Plaintiff Balassone specifically alleges he attempted

21  to replicate the "Rock God" commercial and could not.  ¶¶25-26.  Moreover, plaintiffs cite the
   *Huffington Post* blog video that depicts Siri completing only two of seven prompts in the "Rock

22  God" commercial as it did in the advertisements, including one response that came after an extreme
   time lag.  ¶¶45-46.  This is just one example of Apple's mischaracterization of the CAC.

23  [7]       Apple again misreads the CAC by arguing that Plaintiff Balassone did not specify which

24  particular statements he relied upon or what was false concerning same.  Motion at 15.  In viewing
   the October 4, 2011 press conference, Balassone relied on statements including that Siri was

25  introduced at the press conference as a "digital assistant," and during the interactive demonstration
   when Siri was asked live "do I need a raincoat today," Siri promptly replied "it sure looks like rain

26  today" and displayed the weather forecast.  ¶24.  These representations showed that a user could ask
   Siri a question and that Siri could determine what a user wanted to know and respond with the right

27  information.  Plaintiff Bassalone also alleges that "Siri frequently gave him wrong information or
   failed to respond" when he asked Siri questions, contrary to the press conference and in Apple's

28  television advertisements. ¶¶25-26.

1    representations from Apple, which led them to believe that Siri would understand their commands

2    and answer their questions.  ¶¶20-28.  Plaintiffs further allege that these representations were

3    material to them, they relied on them in purchasing their iPhone 4Ss, and had they known the truth –

4    *i.e.*, that Siri would not be able to respond to their voice activated commands and questions in the

5    manner represented by Apple – they would not have purchased their iPhone 4Ss.  *Id.*

6        Apple's allegation that plaintiffs fail to state "when" they were exposed to its

7    misrepresentations lacks merit.  Motion at 15.  Plaintiffs allege that Apple made misrepresentations

8    beginning on October 4, 2011 through the present.  Plaintiffs further allege the dates that they made

9    their iPhone 4S purchases, and that they saw the misrepresentations before making such purchases.

10   ¶¶20-28.  These allegations provide Apple with notice of the timing of the relevant conduct and

11   satisfy Rule 9(b).  *Ticketmaster*, 2007 WL 2989504, at *2-*3 (finding allegations that defendant

12   made false promise numerous times over a specified extended period of time sufficiently "set out a

13   time frame for the repeated misrepresentations" to satisfy Rule 9(b)).

14       *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), cited by Apple, is wholly

15   inapposite.  In *Kearns*, the plaintiff's fraud-based claims were dismissed where he did not allege

16   defendant's misrepresentations, when he was exposed to them, what representations were material,

17   and what representations he relied upon; the court found that he failed to give defendant "the

18   opportunity to respond to the alleged misconduct."  *Id.* at 1125-26.  In contrast, plaintiffs here

19   sufficiently describe the misrepresentations at issue, what they said, that they were exposed to them

20   before making their purchases, and that they relied upon such promises in making their purchases.

21   ¶¶20-28.  Apple is plainly on notice as to the circumstances surrounding the alleged misconduct.  *Id.*[8]

22

23   [8]    The other cases cited by Apple are equally distinguishable.   In *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), unlike here, the plaintiffs failed to plead any facts that would support that the alleged representations were false or pled any misrepresentations they relied upon.  In *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011), the plaintiffs failed to "even claim to have reasonably relied on 'a commercial,'" nor did they claim that they relied on the representations they alleged were false.  *Id.* at *3.  In *Wehlage v. EmPres Healthcare, Inc.*, 791 F. Supp. 2d 774 (N.D. Cal. 2011), the plaintiff did not allege that she viewed specific materials, nor did she allege what was false about the promotional materials.  And in *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003), the plaintiffs disputed the applicability of Rule 9(b) to its causes and failed to provide the who, what, when and where of the alleged fraudulent conduct.

Because the misrepresentations at issue here were part of a consistent, broad marketing campaign by Apple over time, plaintiffs are not required to specify each and every time they were exposed to one of Apple's misrepresentations.  Rather, "it is sufficient for [Plaintiffs] to provide a representative selection of the advertisements or other statements to indicate the language upon which the implied misrepresentations are based." *Morgan*, 177 Cal. App. 4th at 1262 (citing *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 217-19 (1983)); *Ticketmaster*, 2007 WL 2989504, at *2.  No more is required at this stage.

### D.   Plaintiffs' UCL, FAL, CLRA, and Misrepresentation Claims Are Based upon Actionable Statements

Apple argues that plaintiffs ignore its "specific disclosures" regarding Siri's beta status and, as a result, plaintiffs' claims should be dismissed for failing to establish that the public is likely to be deceived.  Motion at 16-17.  Apple also argues that its statements and representations regarding Siri's functionality and capability are "not actionable" and "puffery."  Motion at 17.  Apple is wrong.

### 1.   Plaintiffs Adequately Plead that the Public Was Likely to Be Deceived by Apple's Advertising Campaign

Under the UCL, FAL, and CLRA, alleged misrepresentations "are governed by the 'reasonable consumer' test, under which a plaintiff must show that 'members of the public are likely to be deceived.'" *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  "'[T]hese laws prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."'" *Williams*, 552 F.3d at 938 (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).  Moreover, "[w]hether a business practice is deceptive will usually present a question of fact and therefore dismissal of a UCL claim for failure to state a deceptive practice will be appropriate only in 'the rare case.'" *Lima*, 710 F. Supp. 2d at 1007 (citing *Williams*, 552 F.3d at 938-39).  As such, Apple has a "relatively heavy burden" to demonstrate that plaintiffs' allegations are insufficient.  *See Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *3 (N.D. Cal. Apr. 1 2010).

1    Plaintiffs adequately allege that the public was likely to be deceived by Apple's advertising

2    campaign because Siri does not function as an "intelligent" personal assistant as represented by

3    Apple. ¶¶8-13, 31, 48-52.  While plaintiffs assert that these representations were likely to deceive as

4    a matter of law, at the very least they present questions of fact that are not suited for determination

5    on a motion to dismiss.  *Williams*, 552 F.3d at 938 (the question of "whether a business practice is

6    deceptive will usually be a question of fact" and not appropriate for decision on a motion to dismiss).

7    Apple argues that plaintiffs and other consumers should not have been deceived by its

8    advertising because it allegedly told them Siri did not work as it represented.  In so arguing, it relies

9    on *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995), where the plaintiff argued a mailer

10   misleadingly represented he had won a sweepstakes.  The Ninth Circuit held that defendants'

11   multiple qualifying statements about the conditions of winning prohibited a finding of deception

12   under the UCL because defendant had disclosed all the pertinent information:

13   > The promotions *expressly and repeatedly* state the conditions which must be met in
14   > order to win.  *None of the qualifying language is hidden or unreadably small*.  The
     > qualifying language appears *immediately next to the representations* it qualifies and
15   > no reasonable reader could ignore it.  Any persons who thought that they had won the
     > sweepstakes would be put on notice that this was not guaranteed simply by doing
16   > sufficient reading to comply with the instructions for entering the sweepstakes.

17   *Id.* at 289-90 (emphasis added).  Likewise, the court dismissed the plaintiff's claims under the CLRA

18   because, "when read reasonably and in context," the representations were not false.  *Id.* at 290.

19   Apple's reliance on *Freeman* is misguided, as its supposed disclosures are a far cry from

20   those in *Freeman* and anything but "prominently" displayed.  Motion at 5, 16.  Apple does not

21   dispute that its television advertisements fail even to mention the word beta.  Rather, Apple absurdly

22   contends that consumers, after watching or reading one of Apple's advertisements, are required to go

23   onto the Internet to determine whether what they viewed was true.  But even if a consumer were to

24   do what Apple suggests, its website, www.apple.com, advertises Siri approximately 21 separate

25   times,[9] yet the word beta is only mentioned four times.  It is only through following a maze of links

26   ---
     [9]    *See, e.g.*, www.apple.com/iphone (last visited June 1, 2011) (mentions Siri three times with
27   no mention of beta); www.apple.com/iphone/features/siri.html (last visited June 1, 2011) (mentions
     Siri five times with no mention of beta); www.apple.com/iphone/tips/ (last visited June 1, 2011)
28   (mentions Siri five times with no mention of beta); www.apple.com/iphone/features (June 1, 2011)

1   and hyperlinks that these website references can be viewed.  And of Apple's four press releases

2   touting the Siri's features, only one mentioned that Siri was in beta and it was hidden in the "Pricing

3   and Availability" section at the bottom of the release.  Notably, since the launch of the iPhone 4S,

4   Apple has embarked on an extensive nationwide television commercial campaign starring celebrities

5   such as Zooey Deschanel, Samuel L. Jackson, and John Malkovich.  As of the date of this

6   opposition, Apple launched nine commercials dedicated solely to Siri and its functionality – none

7   mention beta.[10]

8        In sum, Apple can only direct the Court to six separate references – a press event video, a

9   press release, and four references on Apple's website – where Apple states that Siri is in beta.

10  Motion at 5, 16.  But, beta is never explained except for a vague description on the "Frequently

11  Asked Questions" ("FAQ") page on Apple's website, which is three links in from its welcome

12  screen.[11]

13       Contrary to *Freeman*, Apple's beta statements are by no means "express or repeated"

14  throughout their advertisements because they are not contained in any of its television commercials,

15  and when the term is referenced, it is hidden, inconspicuous, and in most cases completely separated

16  from Apple's statements and representations touting Siri's functionality.  Put simply, Apple's

17  _____

18  (mentions Siri three times with no mention of beta); www.apple.com/iphone/features/siri-faq.html
    (last visited June 1, 2011) (mentions Siri multiple times with no mention of beta);
    www.apple.com/iphone/built-in-apps/facetime.html (last visited June 1, 2011) (mentions Siri once

19  with no mention of beta); http://www.apple.com/accessibility/iphone/vision.html (last visited June 1,
    2011) (mentions Siri once with no mention of beta);   http://store.apple.com/us/browse/home/

20  shop_iphone/family/iphone (last visited June 1, 2011) (mentions Siri once with no mention of beta).

21  [10]     *See* http://www.apple.com/iphone/videos/#tv-ads-joke (last visited June 1, 2011).

22  [11]     Beta is not a universally understood term.  *See, e.g.*, http://www.merriam-webster.com/
    dictionary/beta (last visited June 7, 2012) (defining beta as: (1) the 2d letter of the Greek alphabet;

23  (2) Beta Particle; (3) a measure of the risk potential of a stock or an investment portfolio expressed
    as a ratio of the stock's or portfolio's volatility to the volatility of the market as a whole; and (4) a

24  nearly complete prototype); http://dictionary.reference.com/browse/beta?s=t (last visited June 7,
    2012) (providing eight definitions of beta, none discussing beta being a prototype, work in progress,

25  etc.); *Micro Data Base Sys. v. Dharma Sys.*, 148 F.3d 649, 656 (7th Cir. 1998) (beta testing and
    acceptance testing must be defined in a contract until "definite trade usage emerges"); *CCBN.com,*

26  *Inc. v. C-call.com, Inc.*, 73 F. Supp. 2d 106, 111 n.3 (D. Mass. 1999) (beta is "this ubiquitous piece
    of computer jargon" with no conventional definition).  Consumers may have different views of what

27  beta means, if they even understand the term.  Apple's discussion of beta states only that more
    services will be added over time, which would not lead the average consumer to believe Siri cannot

28  perform the tasks shown on its advertisements, as Apple represented.

1    position is that consumers should ignore Apple's representations on its television commercials,

2    website and promotional videos in favor of a few hidden, vague statements.  Such a position,

3    however, is contrary to established precedent and Apple's motion should be denied.  *See Williams*,

4    552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected

5    to look beyond misleading representations on the front of the box to discover the truth from the

6    ingredient list in small print on the side of the box."); *Asis*, 2010 WL 1267763, at \*5-\*6 (defendants'

7    subject headings in emails were "likely to mislead a recipient acting reasonably," even where some

8    subject lines contained potentially "'conditional'" or "'qualifying'" phrases).

9            **2.    Apple's Statements Are Not Mere Puffery**

10           Apple's misrepresentations are actionable statements and not mere puffery.  "A statement is

11   puffery if the claim is extremely unlikely to induce consumer reliance."  *Autodesk, Inc. v. Dassault*

12   *Systemes SolidWorks Corp.*, No. C 08-04397 WHA, 2008 WL 6742224, at \*3 (N.D. Cal. Dec. 18,

13   2008).  Indeed, "[p]uffery is often described as 'involving outrageous generalized statements, not

14   making specific claims, that are so exaggerated as to preclude reliance by consumers.'"  *Franklin*

15   *Fueling Sys., Inc. v. Veeder-Root Co.*, No. S-09-580 FCD/JFM, 2009 WL 2462505, at \*4 (E.D. Cal.

16   Aug. 11, 2009) (quoting *Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv.*, 911 F.2d 242, 246

17   (9th Cir. 1990)).   The Ninth Circuit has stated that "'misdescriptions of specific or absolute

18   characteristics of a product are actionable.'"  *Cook, Perkiss & Liehe*, 911 F.2d at 246; *see, e.g.*, *In re*

19   *Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115-16 (S.D. Cal. 2011) (denying defendants' motion to

20   dismiss where defendants' statements such as "'tasty yet balanced breakfast'" were not puffery

21   under the UCL, FAL and CLRA).  What might be considered puffery on its own can be actionable if

22   it "contributes . . . to the deceptive context of the packaging as a whole."  *Williams*, 552 F.3d at 939

23   n.3.  Indeed, "[t]he relevant question is whether the statements, taken as a whole, are likely to

24   deceive members of the public."  *Lima*, 710 F. Supp. 2d at 1008.

25           Apple made numerous representations about Siri's specific characteristics, capabilities, and

26   performance.  *See, e.g.*, ¶¶25, 38-39.  Taking these representations and statements as a whole, they

27   present a clearly misleading picture of Siri's functionality.  As such, Apple's representations and

28   misrepresentations are actionable.  *See, e.g.*, *Malmen v. World Sav. Inc.*, No. CV 10-9009 AHM

1   (JEMx), 2011 WL 1464587, at *5 (C.D. Cal. Apr. 18, 2011) (finding defendant's statements

2   regarding the specific characteristics of a loan "do not amount to 'mere puffery' and cannot be

3   dismissed on that basis"); *Autodesk*, 2008 WL 6742224, at *3 (finding statements that users can

4   "'work easily with DWG files created by any version of AutoCAD software'" or "'open, edit, and

5   share DWG data,'" were not puffery because they describe specific characteristics of products that

6   could be tested).

        **E.**    **Plaintiffs Properly Plead Their UCL, CLRA, Breach of Warranty, MMWA and Unjust Enrichment Claims**

           **1.**    **Plaintiffs State a Claim Under the UCL**

          In addition to its Rule 9(b) challenges to plaintiffs' UCL claims, Apple argues that plaintiffs

have not sufficiently alleged violations of the UCL under either of its "unlawful," "unfair," or

"fraudulent" prongs.  Motion at 18-19.  Apple's argument fails.

          At the outset, the UCL prohibits "unfair competition," which is defined as "any unlawful,

unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising

and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the

Business and Professions Code."  Cal. Bus. & Prof. Code §17200.  "Unlawful" refers to practices

forbidden by law.  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 559-60 (1998).

Here, plaintiffs allege that Apple violated Cal. Civ. Code §§1572, 1573, 1709, 1710, and 1711 as a

result of its misrepresentations and omissions.  Apple acknowledges that plaintiffs may show these

violations by alleging an actionable misrepresentation or omission.  Motion at 18.  As stated above,

Apple violated these laws by misrepresenting Siri's functionality.  *See supra* §III.C.1.  Because

plaintiffs allege such misrepresentations, the underlying violations of the California Civil Code state

a claim under the UCL, even under Apple's argument.  *See* Motion at 18-19.

          Plaintiffs also adequately allege a violation of the "unfair" prong of the UCL.  "Unfair" is

determined under either the "*Cel-Tech*" test or a balancing test.  Under *Cel-Tech Commc'ns, Inc. v.

Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), conduct is "unfair" if it "threatens an incipient

violation of [a] law, or violates the policy or spirit of one of those laws because its effects are

comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

1  competition." *Id.* at 186-87.  An alternative test for unfairness is to assess whether the "'"practice

2  'offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or

3  substantially injurious to consumers,"'" and the "'gravity of the harm to the victim outweighs the

4  utility of the defendant's conduct.'"  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255,

5  1268-69 (2006); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  The

6  alternative test used by courts "draws on the definition of 'unfair' in section 5 of the Federal Trade

7  Commission Act (15 U.S.C. §45(n)), and requires that: '(1) the consumer injury must be substantial;

8  (2) the injury must not be outweighed by any countervailing benefits to consumers or competition;

9  and (3) it must be an injury that consumers themselves could not reasonably have avoided.'"  *Drum*,

10  182 Cal. App. 4th at 257 (citations omitted).  Omissions can be unfair under either test.  *See Pastoria*

11  *v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1498 (2003).

12       Here, Apple made misrepresentations and omissions about the capabilities of the iPhone 4S,

13  specifically with respect to Siri.  *See supra* §§III.C.1, III.D.2.  The presence of actionable

14  misrepresentations provides the requisite violations of the law for purposes of the unlawful prong,

15  which also violates the unfair prong as a violation of public policy.  *Cel-Tech*, 20 Cal. 4th 163.

16  Further, Apple has not attempted to argue that its practices outweigh any injury to consumers, thus

17  waiving any such claim.  Motion at 19.

18       Finally, a business act or practice is "fraudulent" if members of the public are likely to be

19  deceived.  *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2005).  A violation of the UCL

20  can be shown even in the absence of actual deception, reasonable reliance, and damage.  *Id.*

21  Notably, a business act or practice that is found to be a violation of UCL's fraud prong based upon

22  false advertising or promotional practices is also a violation of the false advertising law, and vice

23  versa.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Here, plaintiffs allege that Apple

24  made misrepresentations and omissions concerning the overall functionality of Siri, which are

25  incorporated explicitly by reference into the UCL claim.  ¶81.  Plaintiffs describe in detail many of

26  the advertisements concerning Siri's functionality that could not be replicated by plaintiffs or others.

27  *See supra* §III.C.1.  Such misrepresentations and omissions concerned the overall capabilities of one

28  of the iPhone 4S's primary features and were not only likely to deceive, but in fact deceived

1  plaintiffs and were a substantial factor in their decision to purchase the iPhone 4S.  *See Tobacco II*,

2  46 Cal. 4th 298.  Thus, plaintiffs adequately allege a violation of the UCL's fraudulent prong and the

3  false advertising law.  For the above reasons, plaintiffs adequately allege UCL violations.

### 2.      Plaintiffs State a Claim Under the CLRA

5      Apple incorrectly asserts that plaintiffs' CLRA claims do not implicate a "good" or "service"

6  as defined by the statute.  Motion at 20.  Plaintiffs' claims concern false advertising about a primary

7  feature of the iPhone 4S, which is unquestionably a "good" under the CLRA.  Even if the Court were

8  to analyze plaintiffs' claims narrowly as to Siri alone, Siri is a "service" under the CLRA, and

9  plaintiffs' claims must stand.

10      The CLRA covers all commercial goods and services.  *See* Cal. Civ. Code §1761.  Phones,

11  such as the iPhone 4S, are unquestionably "'goods'" under the CLRA.  *See Stickrath v. Globalstar,*

12  *Inc.*, No. C07-1941 TEH, 2008 WL 5384760, at *5 (N.D. Cal. Dec. 22, 2008) (finding plaintiff

13  alleged CLRA claim arising out of defendant's fraudulent omissions concerning phone at issue, but

14  dismissing due to statute of limitations); *Morgan*, 177 Cal. App. 4th 1235 (holding CLRA applied to

15  sale of mobile phone and wireless telephone service contract).  Plaintiffs' CLRA claims arise from

16  Apple's misrepresentations and material omissions concerning the iPhone 4S.  ¶¶68-69.  Siri is a

17  persistent, cloud computing system integrated into the hardware of the iPhone 4S and Apple's main-

18  servers, not a severable, standalone software product.  Siri is what Apple marketed: an essential

19  iPhone 4S component.  Plaintiffs' claims fall well within the CLRA.[12]

20

21  [12]      Apple acknowledges the iPhone 4S is a "good," but attempts to recast plaintiffs' claims as
22  limited to Siri, which it characterizes as a software program.  Yet, even under its faulty premise,
    Apple's arguments fail, as Siri is a "service" – a cloud computing service.  *See IBM Corp. v. Visentin*,
23  No. 11 Civ. 399 (LAP), 2011 WL 672025 (S.D.N.Y. Feb. 16, 2011) (cloud computing services are a
    continuum of services which may be accessed on as-needed basis), *aff'd,* 437 F. App'x 53 (2d Cir.
24  2011); *cf. RealPage, Inc. v. Yardi Sys., Inc.*, No. CV 11-00690 ODW (JEMx), 2011 WL 3565112, at
    *5 (C.D. Cal. Aug. 11, 2011) (cloud computing is a commercial service under the Sherman Act §1);
25  *Google, Inc. v. United States*, 95 Fed. Cl. 661, 664 n.6 (Fed. Cl. 2011) (federal law defines cloud
    computing as "'a style of computing where scalable and elastic IT-related capabilities are provided "as
26  a service" to customers using Internet technologies'").  Siri is a cloud computing service designed to
    provide answers to consumers' questions when using their iPhone 4S.  Even if Siri determines that a
27  local iPhone 4S handset can handle the entirety of a processing request, Siri still communicates over
    telecommunications infrastructure with database servers to give the "all clear."  Thus, for Siri to work,
28  iPhone 4S must be connected to the Internet using cellular data or Wi-Fi.

1    Apple's authorities do not prove otherwise. *Wofford v. Apple Inc.*, No. 11-CV-0034 AJB

2    NLS, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011), merely stands for the proposition that,

3    under the CLRA, plaintiffs must show damages as a result of defendants' illegal conduct.  In

4    *Wofford*, a free download of an operating service was found not to be a "sale or lease" under the

5    CLRA. *Id.*  In *dicta*, the court speculated that software was not a good or service, citing *Ferrington*

6    *v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010).  In

7    *Ferrington*, the court held it was a close issue as to whether downloadable software was a "good,"

8    but dismissed with leave to amend more particulars about the product to see if it was a service.  *See*

9    *id.*  And, in *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *10

10   (N.D. Cal. Sept. 20, 2011), plaintiffs alleged that Apple's privacy breaches ran afoul of the CLRA.

11   The court held that plaintiffs lacked standing because the data was used for commercial and

12   marketing purposes, not to damage consumers. *Id.*  Because plaintiffs had not alleged damages, their

13   CLRA claims failed.  In *dicta*, the court assumed that the iOS software at issue was outside the scope

14   of the CLRA based on a misreading of *Ferrington*. *Id.*

15   In sum, plaintiffs have stated claims under the CLRA because their iPhone 4S's are goods.

16   Even if the Court were to analyze the applicability of the CLRA to Siri, it meets the definition of a

17   service as a persistent cloud computing service.  Indeed, Siri is integral to iPhone 4S hardware and

18   functionality.  As such, plaintiffs have alleged claims under the CLRA.

19          **3.    Plaintiffs State a Claim for Breach of Express Warranty**

20   Under California law, "to prevail on a breach of express warranty claim, the plaintiff must

21   prove: (1) the seller's statements constitute an affirmation of fact or promise or a description of the

22   goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."

23   *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks

24   omitted).  As demonstrated below, the CAC satisfies this standard.

25          **a.    Plaintiffs Provided the Requisite Notice**

26   Dismissal would be improper here because plaintiffs provided pre-suit notice.  Cal. Com.

27   Code §2607(3)(A) (stating that notice shall be given "within a reasonable time after [the buyer]

28   discovers or should have discovered any breach").  Apple was notified of potential claims when, on

1   March 16, 2012, plaintiffs Balassone and Swartzman sent a joint CLRA letter notifying Apple of

2   their claims.  Apple inexplicably ignores the letter sent by plaintiffs.  The pre-suit notice,[13] sent

3   several days *before* their complaint was filed, notified Apple of the breach of warranty claims:

> This letter will constitute **FURTHER NOTICE** that the actions as set forth above
> also constitute violations of California's Business and Professions Code Sections
> 17200 and 17500 (Unfair Business Practices and False Advertising) as unfair
> business acts and practices, breach of express warranty and implied warranty of
> merchantability, unjust enrichment, and negligent misrepresentation.

7   The CAC also alleges that Apple was on notice of the defects in Siri from numerous media outlets

8   reporting on Siri's failures.  ¶¶45-47.  This alone satisfies the notice requirement in California.  *See*

9   *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) ("Conceivably, the statutory demand for

10  notice might be satisfied by proof of complaints from some but not all the buyers of the product.

11  Such an approach might be particularly appropriate where the failure of the merchandise to conform

12  to express warranties was known to or reasonably discoverable by the seller at the time of the

13  sales.").  Plaintiffs satisfied the notice requirements.

14              **b.      Plaintiffs State a Claim for Breach of Express Warranty**

15              Further, plaintiffs adequately pled their express warranty claims.  Pursuant to the California

16  Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which

17  relates to the goods and becomes part of the basis of the bargain creates an express warranty that the

18  goods shall conform to the affirmation or promise."  Cal. Com. Code §2313(a).  "Any description of

19  the goods which is made part of the basis of the bargain creates an express warranty that the goods

20  shall conform to the description."  Cal. Com. Code §2313(b).  To create an express warranty, the

21  seller/retailer need not use the word "warrant" or "guarantee" – and he need not even have the intent

22  to make the warranty.  Cal. Com. Code §2313(c)(2).  "Statements made by a manufacturer through

23  its advertising efforts can be construed as warranty statements."  *Aaronson v. Vital Pharm., Inc.*, No.

24  09-CV-1333 W(CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010); *Fundin v. Chi. Pneumatic*

25  *Tool Co.*, 152 Cal. App. 3d 951, 957 (1984) (holding that when a consumer relies on representations

26

27  ---
    [13]      A true and correct copy of the March 16, 2012 letter is attached to the accompanying

28  Declaration of Charles S. Germershausen at Exhibit A.

1  made by a manufacturer in labels or advertising material, recovery is allowable under express

2  warranty where the sales brochure described the technical capabilities and specifications of the

3  product); *Morey v. NextFoods, Inc.*, No. 10 CV 761 JM (NLS), 2010 WL 2473314, at *2-*3 (S.D.

4  Cal. June 7, 2010) (denying defendant's motion to dismiss because defendant's assertions about a

5  product were sufficient to state a claim of breach of express warranty); *Thomas v. Olin Mathieson*

6  *Chem. Corp.*, 255 Cal. App. 2d 806, 811 (1967) ("A statement in a newspaper advertisement may be

7  considered as part of the contract of sale and where a purchaser of a product relies on a

8  representation on a label or in advertising material, recovery from the manufacturer may be allowed

9  on the theory of express warranty without a showing of privity.") (citation omitted).

10         Apple argues that plaintiffs' express warranty claim fails because they have not sufficiently

11  pled the warranty's terms, relying on *Baltazar*, 2011 WL 588209.  Contrary to Apple's argument,

12  the CAC alleges "the particular commercial or advertisement upon which they relied" and described

13  "with the requisite specificity the content of that particular commercial or advertisement." *Id.* at *2

14  (stating the requirements that plaintiffs must plead when relying on a commercial and/or

15  advertisement for express warranties).  Additionally, the CAC also alleges "with great[] specificity

16  his or her reasonable reliance on the particular commercial or advertisement." *Id.*

17         The affirmations made in Apple's commercials sufficiently allege an express warranty

18  because they constitute an inducement to plaintiffs to purchase the iPhone 4S.  *See, e.g.*, ¶36.

19  Plaintiffs' CAC details two particular advertisements (the "Road Trip" and "Rock God"

20  commercials) and the specific content that plaintiffs relied upon.  ¶¶21, 25-26, 37-39.  But for

21  Apple's misrepresentations, plaintiffs would not have purchased the iPhone4S.

22         Accordingly, the CAC sufficiently alleges the particular commercials and/or advertisements

23  upon which plaintiffs reasonably relied (and even provided the links to the website containing the

24  commercials), that contained the affirmations of fact or promise made by Apple that related to Siri

25  and become part of the basis of the bargain, and how Siri failed to conform as portrayed in those

26  commercials.  Plaintiffs' breach of express warranty claim should not be dismissed.

27

28

1

### 4.    Plaintiffs State a Claim for Breach of Implied Warranty

2          Dismissal of plaintiffs' breach of implied warranty claim is not warranted.  Unless specific

3    disclaimer methods are followed, an implied warranty of merchantability accompanies every retail

4    sale of consumer goods in the State.  Cal. Civ. Code §1792.  Under Cal. Com. Code §2314, "[u]nless

5    excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for

6    their sale if the seller is a merchant with respect to goods of that kind."  For goods to be deemed

7    merchantable, they must be "fit for the ordinary purposes for which such goods are used."  Cal.

8    Com. Code §2314(2)(c).  Therefore, the iPhone 4S must be able to be used for its ordinary and

9    intended purpose of using the Siri intelligent assistant feature to send messages, schedule

10   appointments, seek information and directions and to learn new tasks.  Siri is not fit for this purpose,

11   and Apple did not properly exclude the warranty of implied merchantability.

12         Apple's argument that it properly disclaimed the implied warranty of merchantability fails.

13   Making a disclaimer is not enough; rather, Apple must make this disclaimer to consumers before the

14   purchase, but Apple presents no evidence stating that any such pre-sale representations were made.

15   Further, Apple's reliance on *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138 (N.D. Cal.

16   2010), *vacated in part on other grounds*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011), is misplaced.

17   Unlike in *Kowalsky*, plaintiffs here at no time concede that notice of any disclaimer was available on

18   Apple's website, nor do they concede that they received actual notice of the disclaimer prior to

19   purchase (or even within the time period to return the iPhone4S).  *See id.* at 1156 ("Plaintiff

20   acknowledges that the Limited Warranty . . . is available on HP's website.").  At no point during

21   Apple's argument does it demonstrate when plaintiffs were made aware of the iPhone 4S's hardware

22   warranty and software license agreement before the sale was complete.  Therefore, Apple fails to

23   meet its burden in demonstrating that it properly disclaimed the implied warranty of merchantability.

24         Furthermore, with respect to plaintiffs Hamagaki and Swartzman, Apple is barred from

25   disclaiming implied warranties under the Beverly-Song Act.  *See* Cal. Civ. Code §1793.  The

26   implied warranties guaranteed by the Beverly-Song Act apply to consumer goods sold at retail in

27   California.  *See* Cal. Civ. Code §1792 ("every sale of consumer goods that are sold at retail in this

28   state shall be accompanied by [an] implied warranty that the goods are merchantable").  Because

1    plaintiffs Hamagaki and Swartzman purchased their iPhone 4Ss in California, Apple is prohibited

2    from disclaiming the implied warranty of merchantability.

3         Apple's second argument that plaintiffs fail to plead sufficient facts for breach of implied

4    warranty, in part because the iPhone 4S is much more than just Siri, also fails.  Breaching the

5    implied warranty of merchantability does not require that the product be entirely unusable.  *See Isip*

6    *v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Cal. App. 2007) (holding that to show car

7    was unfit for ordinary purpose for implied warranty of merchantability did not require showing that

8    it was unfit for purpose of providing transportation).  Here, plaintiffs' properly plead a breach of the

9    implied warranty of merchantability for failing to provide goods that conform to the affirmations

10   made in Apple's advertisements.  Plaintiffs allege that through Apple's advertising, implied

11   representations were made to plaintiffs that Siri would function in a certain manner and that Apple

12   breached those implied warranties because Siri failed to conform and did not function as advertised.

13   ¶¶51-52, 112-116.  Plaintiffs and the Class purchased the iPhone 4S with the reasonable expectation

14   that they would receive a consistent intelligent verbal assistant.  Apple's advertisements constitute a

15   warranty that the products would operate as advertised during their useful life, upon which plaintiffs

16   and the Class acted.

17        The iPhone 4S is not fit for its warranted, advertised, ordinary and intended purpose of being

18   a consistent intelligent verbal assistant, including but not limited to, being fit to send messages,

19   schedule appointments, and teach new tasks, as advertised by Apple.  Siri's failure to be a consistent

20   intelligent verbal assistant has manifested for plaintiffs and Class members, as Siri does not

21   consistently understand commands and act upon those commands.  As such, the Court should not

22   dismiss plaintiffs' claim for breach of implied warranty because the CAC sufficiently alleges that:

23   (1) plaintiffs and the Class did not receive goods as impliedly warranted by Apple; and (2) the goods

24   were not fit for the purpose for which they were sold.

25           **5.**      **Plaintiffs State a Claim Under the MMWA**

26        Because plaintiffs properly allege that Apple failed to honor its express and implied warranty

27   claims under state law, plaintiffs adequately plead a claim under the MMWA.  *See Wolph v. Acer*

28   *Am. Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *3 (N.D. Cal. Sept. 14, 2009) (denying

1   motion to dismiss MMWA claims, as "the Court is not dismissing Plaintiffs' breach of express

2   warranty claim"); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 WL 485979, at *8

3   (N.D. Cal. Feb. 12, 2007) ("because the court has concluded that plaintiffs have stated a claim for

4   breach of warranty under California law, plaintiffs have also stated a claim under the [MMWA]").

5          Notice and an opportunity to cure prior to filing a class action are not required under the

6   MMWA.  Rather, the Act merely provides that the case cannot proceed beyond class certification

7   until the opportunity to cure has been made for the class as a whole:

8          No action (*other than a class action . . .*) may be brought under subsection (d) for
           failure to comply with any obligation under any written or implied warranty or
9          service contract, *and a class of consumers may not proceed in a class action under
           such subsection with respect to such a failure except to the extent the court
10         determines necessary to establish the representative capacity of the named plaintiffs*,
           unless the person obligated under the warranty or service contract is afforded a
11         reasonable opportunity to cure such failure to comply.  In the case of such a class
           action . . . brought under subsection (d) for breach of any written or implied warranty
12         or service contract, *such reasonable opportunity will be afforded by the named
           plaintiffs and they shall at that time notify the defendant that they are acting on
13         behalf of the class.*

14   15 U.S.C. §2310(e) (emphasis added).  Apple's argument fails on this issue.

15                 **6.     Plaintiffs State a Claim for Unjust Enrichment**

16         Apple fails to carry its burden that plaintiffs do not state a claim for unjust enrichment.

17   Plaintiffs acknowledge that California courts have some disagreement as to whether unjust

18   enrichment may be asserted as a stand-alone claim under California law.  *McNeary-Calloway v. JP

19   Morgan Chase Bank, N.A.*, No. C-11-03058 JCS, 2012 WL 1029502, at *31 (N.D. Cal. Mar. 26,

20   2012).  This Court has recognized that the confusion, however, is largely semantic.  *Nordberg v.

21   Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006).  "The court in *Nordberg* explained

22   that even though California law may not recognize unjust enrichment as an independent claim, such

23   a claim may be understood as one for restitution, which is recognized under California law."

24   *McNeary-Calloway*, 2012 WL 1029502, at *31.  Therefore, unjust enrichment claims can exist as a

25   separate cause of action when the "claim is grounded in equitable principles of restitution."  *Hirsch

26   v. Bank of Am.*, 107 Cal. App. 4th 708, 721-22 (2003).  For plaintiffs to state a claim for restitution,

27   they "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of

28   another.'"  *Walters v. Fid. Mortg. of Cal.*, No. 2:09-cv-3317 FCD/KJM, 2010 WL 1493131, at *12

1    (E.D. Cal. Apr. 14, 2010) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

2    Plaintiffs are entitled to restitution because Apple has benefited and been enriched through its

3    conduct, as alleged in the CAC.  Under these circumstances, it would be unjust to allow Apple to

4    retain these ill-gotten benefits.

5        If the Court is not inclined to find that restitution cannot survive as an independent claim,

6    however, the remedy still exists pursuant to plaintiffs' valid UCL claims.  The trial court is

7    empowered to "'make such orders or judgments . . . as may be necessary to *restore to any person in*

8    *interest* any money or property, real or personal, which may have been acquired by means of such

9    unfair competition.'"  *Hirsch*, 107 Cal. App. 4th at 717.  Through the UCL, plaintiffs may obtain

10   restitution against Apple for its unfair and/or unlawful practices in order to protect the public and

11   restore to the parties in interest money and/or property taken by means of the unfair competition.

12   ¶¶130-135.  There is no dispute that restitution is permitted under the UCL.  *Bank of the West v.*

13   *Superior Court*, 2 Cal. 4th 1254 (1992).  Because plaintiffs state causes of action under the UCL,

14   FAL and CLRA, Apple's motion to dismiss their unjust enrichment claim fails.

15   **IV.    CONCLUSION**

16       The CAC, in every respect, meets the pleading requirements of Federal Rules of Civil

17   Procedure 12(b)(6) and 9(b).  Thus, Apple's Motion should be denied.  However, should the Court

18   grant Apple's Motion in whole or in part, plaintiffs respectfully request leave to amend.

19   DATED:  June 11, 2012              Respectfully submitted,

20                                     ROBBINS GELLER RUDMAN
                                         & DOWD LLP
21                                     SHAWN A. WILLIAMS

22

23                                     _____
                                              s/ Shawn A. Williams
                                          SHAWN A. WILLIAMS

24

25                                     Post Montgomery Center
                                       One Montgomery Street, Suite 1800
                                       San Francisco, CA  94104
26                                     Telephone:  415/288-4545
                                       415/288-4534 (fax)

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
   & DOWD LLP
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
STUART A. DAVIDSON
MARK J. DEARMAN
KATHLEEN L. BARBER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  312/621-2000
312/641-5504 (fax)

GARDY & NOTIS, LLP
JENNIFER SARNELLI
JAMES S. NOTIS
501 Fifth Avenue, Suite 1408
New York, NY 10017
Telephone: 212/905-0509
212/905-0508 (fax)

GARDY & NOTIS, LLP
CHARLES A. GERMERSHAUSEN
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Telephone:  201/567-7377
201/567-7337 (fax)

Co-Lead Counsel for Plaintiffs

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 11, 2012, I authorized the electronic filing of the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6

CM/ECF participants indicated on the attached Manual Notice List.

7

I certify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.  Executed on June 11, 2012.

9

10

  s/ Shawn A. Williams
SHAWN A. WILLIAMS

11

ROBBINS GELLER RUDMAN

12

  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800

13

San Francisco, CA  94104
Telephone:  415/288-4545

14

415/288-4534 (fax)

15

E-mail:    swilliams@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:12-cv-01127-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Martin Stuart Bakst**
  msb@mbakst.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,b.barnow@barnowlaw.com

- **David Eldridge Bower**
  dbower@faruqilaw.com,ecf@faruqilaw.com,ecfca@faruqilaw.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com

- **Charles A Germershausen**
  cgermershausen@gardylaw.com

- **Benjamin Matthew Glickman**
  bglickman@gibsondunn.com,mmccrory@gibsondunn.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gail E. Lees**
  glees@gibsondunn.com,jwalker@gibsondunn.com,wlamb@gibsondunn.com,jjessen@gibsondunn.com

- **James S. Notis**
  jnotis@gardylaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jennifer Sarnelli**
  jsarnelli@gardylaw.com

- **Erich Paul Schork**
  e.schork@barnowlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,nnewton@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Kathleen          L. Barber
Robbins Geller Rudman & Dowd LLP
```

120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

**Matthew        S. Kahn**
Gibson Dunn and Crutcher
555 Mission Street, Suite 3000
San Francisco, CA 94105