**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IPHONE 4S CONSUMER LITIGATION, | No. C 12-1127 CW |
| _____/ | ORDER GRANTING MOTION TO DISMISS (Docket No. 32) |

Defendant Apple, Inc. moves to dismiss the consolidated class action complaint (CCAC) filed by Plaintiffs Frank M. Fazio, Carlisa S. Hamagaki, Daniel M. Balassone and Benjamin Swartzmann. Plaintiffs oppose Apple's motion. Plaintiff David Jones has also filed a supplemental opposition to Apple's motion. Having considered the arguments presented by the parties in their papers and at the hearing, the Court GRANTS Apple's motion to dismiss and grants leave to amend.

BACKGROUND

The following facts are taken from Plaintiffs' consolidated class action complaint and certain documents submitted by Apple, of which the Court takes judicial notice as discussed below. Apple manufactures, designs, produces and sells several types of electronic products, including, among others, personal computers, portable music players, cellular phones and other communication devices. CCAC ¶ 32. Among these products is the well-known iPhone 4S, launched in October 2011. Id. The iPhone 4S was the latest version of Apple's iPhone, which functions as a mobile phone, an music player and an Internet communications device all in one and features desktop-class email, web browsing, searching, and maps. Id. at ¶¶ 3-4. Plaintiffs claim that the iPhone 4S is distinguished by Apple from the previous iPhone devices, including

the iPhone 4, predominantly based on the inclusion of a feature called "Siri." Id. at ¶ 4.

According to Apple's October 4, 2011 press release introducing the feature, Siri is "an intelligent assistant that helps you get things done just by asking." Id. at ¶ 34. In the press release, Apple described the feature in the following way:

> Siri understands context allowing you to speak naturally when you ask it questions, for example, if you ask "Will I need an umbrella this weekend?" it understands you are looking for a weather forecast. Siri is also smart about using the personal information you allow it to access, for example, if you tell Siri "Remind me to call Mom when I get home" it can find "Mom" in your address book, or ask Siri "What's the traffic like around here?" and it can figure out where "here" is based on your current location. Siri helps you make calls, send text messages or email, schedule meetings and reminders, make notes, search the Internet, find local businesses, get directions and more. You can also get answers, find facts and even perform complex calculations just by asking.

Id. The press release noted that "Siri will be available in beta on iPhone 4S in English (localized for US, UK and Australia), French and German." Request for Judicial Notice (RJN), Ex. 1.

In the press release, Apple also advertised that the iPhone 4S had other "incredible new features" in addition to Siri, including a "dual-core A5 chip for blazing fast performance and stunning graphics; an all new camera with advanced optics;" and "full 1080p HD resolution video recording." Id.

On the same day that the press release was issued, Apple had a press conference in which it introduced Siri as a "digital assistant" and "the coolest feature of the new iPhone 4S." CCAC ¶ 24; see also RJN ¶ 3, Ex. 3 & "Apple Special Event: October 4, 2011," http://www.apple.com/apple-events/october-2011 (last accessed July 8, 2013). During the interactive demonstration,

Siri was asked live "do I need a raincoat today" and promptly replied "it sure looks like rain today" and displayed the weather forecast.  CCAC ¶ 24.

The presenter asked Siri many other questions and requests as well and got prompt and appropriate responses.  RJN ¶ 3, "Apple Special Event: October 4, 2011," http://www.apple.com/apple-events/october-2011.  For example, he asked, "What time is it in Paris?" and Siri responded that the "time in Paris, France is 8:16 PM," and showed a clock with that time.  Id.  He asked Siri to "wake me up tomorrow at 6 a.m." and Siri responded showing that an alarm was "on" and said, "OK, I set it for 6 am."  Id.  He also asked, "How is the NASDAQ doing today," and Siri responded that "the NASDAQ Composite is down right now, at 2,321.70" and showed a graph.  Id.  He told Siri, "Find me a great Greek restaurant in Palo Alto" and Siri displayed with a list of restaurants, sorted by rating.  Id.  He directed Siri, "Define Mitosis," and it responded, "Let me think about that.  I found this for you" and displayed a definition of Mitosis on the screen.  Id.  He also asked, "How many days are there until Christmas," and Siri responded, "Let me check on that. . . One moment . . .  I found this for you," and displayed a screen showing the number of days until Christmas Day, along with other information.  Id.  The presenter also reiterated that it was "easy" to use Siri and that users do not need to use precise words to use Siri but rather that Siri understands general words and "conceptual questions" to determine what the user is requesting.  Id.

During the presentation, various speakers mentioned that Siri was "beta" software or "not perfect."  Id.  At the start of the

3

United States District Court
For the Northern District of California

1  segment on Siri, the Apple representative introduced the person

2  who would do a demonstration of Siri and stated that "this demo

3  is, of course, of beta software." Id.  The presenter noted during

4  the demonstration, "You can't ask it everything and it's not

5  perfect." Id.  At the end of the segment, the Apple

6  representative reiterated, "As we have said, it will be beta at

7  the start, and you've seen how great it is already.  By beta, we

8  mean that we will add more languages over time and more services

9  over time as well." Id.

10      Apple engaged in an extensive multi-million dollar,

11  nationwide marketing campaign for the iPhone 4S that showcased the

12  Siri feature.  Id. at ¶¶ 6, 11.  In one video that Apple used to

13  market the iPhone 4S nationally, Apple asked, "How do you improve

14  on something so extraordinary?" and answered "now we're

15  introducing Siri." Id. at ¶ 35.  According to Apple's website,

16  four out of seven recent iPhone 4S television advertisements

17  focused solely on Siri.  Id. at ¶ 40.  See also RJN Ex. 6 (seven

18  out of Apple's ten television advertisements displayed featured

19  Siri).  Many of the video advertisements for the iPhone 4S

20  conveyed that Siri was able to perform various tasks that were

21  depicted therein, including that Siri could be used to make

22  appointments, find restaurants, send text messages, learn guitar

23  chords to classic rock songs and learn how to tie a tie.  CCAC

24  ¶¶ 6-7, 36.  Siri was also shown to understand and respond to a

25  voice command given by someone who is running.  CCAC ¶ 7.

26      As another example, Apple made a television advertisement

27  entitled "Road Trip" that showed a couple asking Siri numerous

28  questions while traveling to Santa Cruz, California, including

**United States District Court**
For the Northern District of California

"Where is the best barbeque in Kansas City?" "Is there a rodeo in Amarillo today?" and "How big is the Grand Canyon?" Id. at ¶ 37. In response to the question, "[Are there] any gas stations we can walk to?," Siri immediately answered, "I found two gas stations fairly close to you," and the name and review rating of two gas stations displayed on the user's iPhone 4S screen. Id. Similarly, when asked, "What does Orion look like?" Siri responded with a map of the Orion constellation and stated, "I found this for you." Id. When asked, "What is the best way to Santa Cruz, California?" Siri promptly responded with a map showing a route to that city. "Road Trip," http://www.apple.com/iphone/videos/#tv-ads-roadtrip (last accessed July 31, 2012).

In another television advertisement broadcast nationwide entitled "Rock God," a guitar player asked Siri numerous questions including, "How do I play London Calling?" and "[How do I play] Whole Lotta Love?" CCAC ¶ 38. In response to the question "[How do I play] a B Minor Ninth?" Siri displayed with the proper notes, chord and sheet music. Id. When directed, "Tell Julie and Kate our band is playing at the garage tonight," Siri responded, "Here is your message to Julie and Kate," and immediately showed on the user's iPhone 4S screen a message to "Julie, Kate" that read "Our band is playing at the garage tonight." Id. at ¶ 39.

Apple's website also touted Siri as a major selling point. Id. at ¶ 41. Selecting the "iPhone" tab on the website brought users to a welcome screen that stated, "Introducing Siri. The intelligent assistant that's there to help. Just ask. Ask Siri to make calls, send texts, set reminders, and more. Just talk the way you talk. Siri understands what you say and knows what you

**United States District Court**
For the Northern District of California

mean." Id.  That webpage also included a link labeled, "Watch the iPhone 4S Video," which directed to a video depicting multiple demonstrations involving Siri and its capabilities. Id. at ¶ 42. For instance, in response to the request, "Find me an Italian restaurant in North Beach," Siri answered, "Okay, these 25 Italian restaurants are in North Beach" and the iPhone 4S user screen showed the name and review ratings of twenty-five Italian restaurants located in North Beach. Id.  A jogger told Siri, "Move my meeting with Kelly Altech to 12:00 p.m." Id.  Siri responded, "Note that you already have a meeting about budgets at 12 p.m." Id.  During the video, Scott Forstall, Senior Vice President of iOS Software, further commented on Siri, stating, "It's like this amazing assistant that listens to you, understands you, can answer your questions and can even accomplish tasks for you . . .  A lot of devices can recognize the words you say, but the ability to understand what you mean and act on it, that's the breakthrough with Siri." Id.

Plaintiffs each purchased an iPhone 4S between October 2011 and January 2012, because they saw and relied upon Apple's representations regarding the Siri feature. Id. at ¶¶ 20, 22, 24, 27.  Fazio, a citizen of New York who purchased his iPhone at a Best Buy store in New York, "saw and relied upon Apple's television advertisements and Apple's representations made about Siri during various presentations and on Apple's website." Id. at ¶ 20.  Hamagaki, a citizen of California who purchased her iPhone on Apple's website, "saw and relied upon Apple's television advertisements and Apple's representations related to Siri on its website." Id. at ¶ 22.  Balassone, a citizen of New Jersey who

purchased his iPhone at an Apple store in New Jersey, "relied on the statements and interactive demonstrations performed at Apple's October 4, 2011 press conference and other representations." Id. at ¶ 24. Swartzmann, a citizen of California who purchased his iPhone at an Apple store in California, saw and "relied on Apple's advertisements showing that Siri would accurately provide information based on verbal commands, would permit accurate dictation of emails and would substantially shorten and simplify research time." Id. at ¶ 27.

Plaintiffs allege that they found after purchasing the iPhone 4S that Siri did not perform as advertised. Id. at ¶ 20-29. According to Fazio, Siri was unable to answer specific questions. Id. at ¶ 21. For instance, when Fazio asked Siri for directions to a certain place, or to locate a store, Siri either did not understand what Fazio was asking or, after a very long wait time, responded with the wrong answer. Id. Fazio asked Siri to compare the fat content between two meals, the location of a children's party venue, information related to the "guided reading" teaching method and directions to a doctor's office located in Brooklyn, and Siri was unable to answer Fazio's questions properly. Id.

Balassone attempted to mirror the commands given to Siri in the Apple advertisements, including in the "Rock God" commercial described above, but Siri did not answer in the same manner as in the commercial. Id. at ¶ 25. For example, Balassone asked Siri: "how do you play an A chord?" and Siri answered, "OK, how about a web search for 'how do you plan a quart?'" Id. Balassone asked "how do you play a B minor chord?" and Siri responded, "looking for B minor chord," followed by "still thinking," and eventually

responded, "Sorry, I couldn't find B minor chord in your music."
Id.

Swartzman also believed that Siri was not performing as advertised and that it frequently gave him wrong information or failed to respond.  Id. at ¶ 28.  For example, Swartzman attempted to use Siri to make phone calls or send emails, and Siri repeatedly gave the wrong names and numbers of people that he was trying to contact.  Id.  When he asked Siri the weather in Palm Springs, Siri did not understand what he was asking for.  Id. When Swartzman asked Siri, "When is St Patrick's Day?" Siri responded, "Sorry, I don't understand 'When is St Patrick's Day.'" Id.

Hamagaki had a similar experience.  Id. at ¶ 23.  For example, while Siri was able to respond to very general requests, such as "find me a gas station" or "find me Thai food," when asked anything more complex, Siri could not come up with an answer.  Id.

People other than Plaintiffs also found problems with Siri. Id. at ¶ 45.  The Huffington Post published an article entitled, "Apple's Siri 'Rock God' Commercial: How Accurate Is It, Really?", which was accompanied by a video called, "A Scientific Ex-Siri-Ment."  Id.  The video showed Huffington Post blogger, Jason Gilbert, repeating every voice command prompt in Apple's "Rock God" commercial word for word.  Id.  In Gilbert's video, Siri responded to only two of seven prompts in the "Rock God" commercial on the first try as it did in the advertisements, including one response that came after an extreme time lag.  Id. at ¶ 46.  Further, in response to the direction, "Tell Julie and

Kate our band is playing at the garage tonight," Siri responded with "Are band is playing at the garage tonight." Id.

Most of Apple's marketing and advertising campaign, including its dominant and expansive television advertisements, did not mention the word "beta" or the fact that Siri was, "at best, a work-in-progress." Id. at ¶ 49. On a webpage "buried in Apple's website," a page containing "Frequently Asked Questions" about Siri, Apple stated "Siri is currently in beta and we'll continue to improve it over time." Id. at ¶ 48; RJN, Ex. 2. Apple also noted on several other webpages that Siri is in "beta" without elaboration. RJN, Exs. 4, 5. "[I]t is only through following a series of links within Apple's website, including a footnote at the bottom of a page, that one would learn that Siri is only a work-in-progress." CCAC ¶ 50. "Apple never disclosed that the Siri transactions depicted in its television commercials are fiction and that actual consumers using actual iPhone 4Ss cannot reasonably expect Siri to perform the tasks performed in Apple's commercials." Id. at ¶ 51. "Instead, Apple chose to show consumers advertisements where Siri acts without complications, rather than how Siri actually performs." Id.

Plaintiffs also allege that "recent reports have shown that continuous Siri usage dramatically increases an iPhone 4S users' monthly data usage and can easily push users over their data plans." Id. at ¶ 48.

Plaintiffs seek to represent a class of all persons in the United States who purchased an Apple iPhone 4S for use and not for resale. Id. at ¶ 54. They allege that they and the putative class members were damaged by Apple's purported misrepresentation

United States District Court
For the Northern District of California

9

of Siri as "a consistent intelligent verbal assistant" in the amount of the purchase price of the iPhone 4S.  Id. at ¶¶ 109, 116.  Fazio, Balassone and Hamagaki allege that they lost money that they spent purchasing the iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature and would not have paid the price they did for the devices if they had not seen and relied upon these representations.  Id. at ¶¶ 21, 23, 26.

Plaintiffs allege that "Apple is a California corporation with its headquarters and principal place of business in Cupertino, California," and that all critical decisions, "including all decisions concerning the marketing and advertising of the iPhone 4S's Siri feature, were made by Apple employees located in California."  Id. at ¶¶ 29-30.

Plaintiffs assert claims against Apple on behalf of the class for (1) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civil Code. § 1750 et seq., (2) violation of California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500, et seq., (3) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, et seq., (4) violation of the Magnusson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, et seq., (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) intentional misrepresentation; (8) negligent misrepresentation; and (9) unjust enrichment.

Fazio filed his complaint on March 6, 2012 in this district. Docket No. 1.  On March 20, 2012, Balassone and Swartzmann initiated a separate action in this district.  Case No. 12-1384. On March 26, 2012, Fazio, Balassone and Swartzmann filed a stipulation to consolidate the two actions and appoint their

United States District Court
For the Northern District of California

attorneys as co-lead interim class counsel.  Docket No. 11.  The

Court granted their stipulation on March 29, 2012.

On March 27, 2012, Jones initiated his action against Apple

in the Central District of California.  The Jones action was

subsequently transferred to this district and related to the

consolidated cases.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to

state a claim, dismissal is appropriate only when the complaint

does not give the defendant fair notice of a legally cognizable

claim and the grounds on which it rests.  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  In considering whether the

complaint is sufficient to state a claim, the court will take all

material allegations as true and construe them in the light most

favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d

896, 898 (9th Cir. 1986).  However, this principle is inapplicable

to legal conclusions; "threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," are not

taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally

required to grant the plaintiff leave to amend, even if no request

to amend the pleading was made, unless amendment would be futile.

Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

F.2d 242, 246-47 (9th Cir. 1990).  In determining whether

amendment would be futile, the court examines whether the

United States District Court
For the Northern District of California

complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I. Apple's Request for Judicial Notice (RJN)

    Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question and there are no disputes over their relevance.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading"). This includes "internet pages as it does . . . printed material." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

    Apple asks the Court to take judicial notice of nine webpages or documents from its website, because "the Complaint specifically refers to and relies upon alleged representations on Apple's website (www.apple.com)."  Mot. at 4 n.1; see RJN ¶¶ 1-9.  No Plaintiffs dispute that contents of the website are alleged in the CCAC or the authenticity of the documents submitted by Apple. Only Plaintiff Jones opposes the request for judicial notice; the remaining Plaintiffs do not oppose it.

    Most of the webpages or documents of which Apple asks the Court to take judicial notice are specifically referred to in the CACC.  See RJN ¶¶ 1-4, 6-8, Exs. 1 (CCAC ¶ 34 & n.2), 2 (CCAC

12

United States District Court<br>For the Northern District of California

¶¶ 48, 50 & n.14, 16), 3 (CCAC ¶ 24), 4 (CCAC ¶ 50 & n.15), 6 (CCAC ¶¶ 37-40 & n.3-6), 7 (CCAC ¶ 62(h) & n.18) and 8 (CCAC ¶ 72).  The Court grants the request for judicial notice as to these documents.

Apple also requests that the Court take judicial notice of Exhibit 5 to the declaration of Scott Maier, which contains printouts from the "Siri Features Webpage."  RJN ¶ 5.  The CCAC does not directly refer to this webpage.  Apple argues that the CCAC "refers to or relies on webpages on Apple's website that contain information about the features of the iPhone 4s or its Siri software" in particular paragraphs.  Id.  However, the paragraphs that Apple cites refer to other specific webpages on its website and do not refer to the "Siri Features Webpage."  See, e.g., CCAC ¶¶ 41, 48, 50.

Apple contends that the Court should nevertheless take judicial notice of this page because it is "necessary to provide a complete picture of the representations challenged in the Complaint."  Reply at 9.  It argues that the judicial notice doctrine "seeks to prevent . . . the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent."  RJN at 3 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

In Knievel, the Ninth Circuit considered whether, on a motion to dismiss, a court could properly consider portions of a website other than those specifically alleged in the complaint.  393 F.3d

at 1076.  In that case, the plaintiffs had attached to their
complaint a particular picture and caption from the defendant's
website that they alleged was defamatory.  Id.  The Ninth Circuit
found that the court could properly consider the content of web
pages that a user would have had to view in order to access the
photograph.  Id.  In so holding, the court noted that, like "a
reader must absorb a printed statement in the context of the media
in which it appears, a computer user necessarily views web pages
in the context of the links through which the user accessed those
pages."  Id.

Apple makes no showing that the Siri Features Webpage is a
page that must be accessed in order to reach those pages whose
contents are specifically alleged in the CCAC or that a user who
went to those pages would necessarily see the Siri Features
Webpage.  Although Apple argues that one of Plaintiffs'
allegations "is flatly contradicted by multiple other statements
available on Apple's website" including the Siri Features Webpage,
this is not a proper reason to take judicial notice of a document
at the motion to dismiss stage.  Accordingly, the Court declines
to take judicial notice of the Siri Features Webpage.

Finally, Apple also requests that the Court take judicial
notice of Exhibit 9 to the declaration of Scott Maier, which
contains the one-year hardware warranty for the iPhone 4S.  Apple
contends that the Court should take judicial notice of this
warranty, because the CCAC "refers to or relies on alleged
breaches of express warranties."  RJN ¶ 9.  However, the CCAC does
not allege that this particular express warranty was breached or

14

directly refer to it.  Accordingly, the Court declines to take
judicial notice of this document.

II.  Standing of out-of-state Plaintiffs

Apple contends Fazio and Balassone lack standing to pursue
the claims under the UCL, FAL and CLRA, because they are not
California residents and did not purchase their devices in
California.  In its reply brief, Apple argues that choice-of-law
analysis compels the conclusion that California law should not be
applied to their claims.

Apple "conflate[s] two issues: the extraterritorial
application of California consumer protection laws (or the ability
of a nonresident plaintiff to assert a claim under California
law), and choice-of-law analysis (or a determination that, based
on policy reasons, non-forum law should apply)."  Forcellati v.
Hyland's, Inc., 2012 U.S. Dist. LEXIS 91393, at *9 (C.D. Cal.).
California courts have concluded that "state statutory remedies
may be invoked by out-of-state parties when they are harmed by
wrongful conduct occurring in California."  Norwest Mortg., Inc.
v. Superior Ct., 72 Cal. App. 4th 214, 224-225 (1999).  Plaintiffs
have alleged that their injuries were caused by Apple's wrongful
conduct in false advertising that originated in California.  Here,
Plaintiffs have alleged that Apple's purportedly misleading
marketing, promotional activities and literature were coordinated
at, emanate from and are developed at its California headquarters,
and that all "critical decisions" regarding marketing and
advertising were made within the state.  CCAC ¶¶ 30, 62.
California's presumption against the extraterritorial application
of its statutes therefore does not bar the claims of the out-of-

United States District Court
For the Northern District of California

state Plaintiffs, because this principle is "one against an intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute." <u>Diamond Multimedia Sys., Inc. v. Superior Ct.</u>, 19 Cal. 4th 1036, 1060 n.20 (1999) (emphasis in original).

Other courts have found allegations such as those made here to be sufficient to allow an out-of-state plaintiff to seek recovery under California law. For example, in <u>Wang v. OCZ Tech. Group, Inc.</u>, 76 F.R.D. 618 (N.D. Cal. 2011), the Washington plaintiff alleged that the "misleading marketing, advertising and product information" was "conceived, reviewed or otherwise controlled" from the defendant's California headquarters, that its executive offices are in California and that it had selected California as its forum for "website-based complaints." <u>Id.</u> at 630. The court found these allegations sufficient to support UCL, FAL and CLRA claims at the motion to dismiss stage. <u>Id.</u> Similarly, in <u>In re Mattel</u>, 588 F. Supp. 2d 1111 (C.D. Cal. 2008), the court held that non-California plaintiffs could assert California state law causes of action against the defendant, Mattel, where plaintiffs complained of "misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California." <u>Id.</u> at 1119; <u>see also</u> <u>In re Static Random Access Memory (SRAM) Antitrust Litig.</u>, 580 F. Supp. 2d 896, 905 (N.D. Cal. 2008) ("If Plaintiffs can allege specific California conduct underlying out-of-state [indirect purchaser] Plaintiffs' claims, they may continue to assert California state law claims on behalf of those Plaintiffs. . . . Defendants will

**United States District Court**
For the Northern District of California

1  have an opportunity to raise this issue again when Plaintiffs move

2  for class certification.").

3      Apple's citation of <u>In re Apple & AT&T iPad Unlimited Data</u>

4  <u>Plan Litig.</u>, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) does not

5  compel a contrary result.  In that case, the court concluded that

6  California's presumption against extra-territoriality and the fact

7  that AT&T's "choice of law provision in its Terms of Service

8  selects the law of each consumer's respective home state" barred

9  the claims of the non-California plaintiffs.  <u>Id.</u> at 1076.  Here,

10  the alleged harmful conduct took place at least partially within

11  California, and Apple does not argue that there is a choice of law

12  provision that selects another state in any agreement between

13  itself and consumers.

14      Apple relies heavily on the Ninth Circuit's decision in <u>Mazza</u>

15  <u>v. American Honda Motor Co., Inc.</u>, 666 F.3d 581 (9th Cir. 2012),

16  to argue that the non-California Plaintiffs lack standing.  In

17  <u>Mazza</u>, the Ninth Circuit reviewed the district court's decision to

18  grant class certification to a nationwide class to prosecute

19  claims under the FAL, UCL and CLRA and for unjust enrichment.  <u>Id.</u>

20  at 587-88.  The plaintiffs alleged that the defendant

21  "misrepresented and concealed material information in connection

22  with the marketing and sale" of certain vehicles.  <u>Id.</u> at 587.

23  After applying a detailed choice-of-law analysis, the Ninth

24  Circuit vacated the certification order because, under the facts

25  of that case, "each class member's consumer protection claim

26  should be governed by the consumer protection laws of the

27  jurisdiction in which the transaction took place."  <u>Id.</u> at 594.

28  The court expressed no opinion whether, on remand, it would be

appropriate to "certify a smaller class containing only those who purchased or leased" their vehicles "in California, or to certify a class with members more broadly but with subclasses for class members in different states." Id. Notably, the Ninth Circuit did not find the out-of-state class members lacked standing.

For several reasons, Mazza does not support a finding that the out-of-state Plaintiffs lack standing. First, in that decision, the court did not discuss whether the individual named plaintiffs may assert a claim against a defendant under California law. Instead, it addressed whether "differences between California consumer protection laws and the consumer protection laws of other states preclude class certification." Forcellati, 2012 U.S. Dist. LEXIS 91393, at *12. However, this case is currently at the pleading stage and "[w]hether or not certification on a nationwide basis is appropriate in this case is not an issue that is currently before this Court." Allen v. Hylands, Inc., 2012 WL 1656750, at *2 (C.D. Cal.) (emphasis in original); see also Donohue v. Apple, Inc., 2012 WL 1657119, at *7 (N.D. Cal.) ("Although Mazza may influence the decision whether to certify the proposed class and subclass, such a determination is premature" at the pleading stage.); Forcellati, 2012 U.S. Dist. LEXIS 91393, at *6 ("Mazza (and nearly every other case cited by Defendants) undertook a class-wide choice-of-law analysis at the class certification stage, rather than the pleading stage at which we find ourselves."). As Plaintiffs point out, "choice of law is not the same thing as standing." Allen v. Hylands, Inc., 2012 WL 1656750, at *2 (C.D. Cal.). Standing "requires that (1) the plaintiff suffered an injury in fact . . . (2) the injury is

fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." Mazza, 666 F.3d at 594 (internal quotations omitted).  Apple does not dispute that the out-of-state Plaintiffs have plead these elements.

Second, Mazza did not "explicitly foreclose[] any argument that California's consumer protection statutes . . . can be applied to a nationwide class," as Apple contends.  Mot. at 10. Apple argues that the Ninth Circuit found material differences between New York, New Jersey and California consumer protection laws and that this precludes application of California law to the claims of out-of-state plaintiffs in all consumer cases.  However, the "California Supreme Court has expressly held that California's choice-of-law analysis must be conducted on a case-by-case basis because it requires analyzing various states' laws 'under the circumstances of the particular case' and given 'the particular [legal] issue in question.'"  Bruno v. Eckhart Corp., 280 F.R.D. 540, 545 (C.D. Cal. 2012) (quoting Kearney v. Salomon Smith Barney, 39 Cal. 4th 95, 107-08 (2006)).  In Mazza, the Ninth Circuit "acknowledged that California law requires the defendant to show that differences in state law are 'material,' that is, they 'make a difference in this litigation,'" and expressly stated that its holding applied to the "facts and circumstances" of the case before it.  Bruno, 280 F.R.D at 547 (quoting Mazza, 666 F.3d at 590-94).  Following this ruling, various district courts have rejected the argument that Apple makes here, concluding that Mazza did not allow the defendants to substitute "Mazza's holding in lieu of [their] own careful analysis of choice-of-law rules as applied to this particular case."  Id. at 547 (nationwide class;

see also Forcellati, 2012 U.S. Dist. LEXIS 91393, at *5-7.  They
have done so in cases that included states at issue in Mazza.  See
Forcellati, 2012 U.S. Dist. LEXIS 91393, at *5-7 ("Until the
Parties have explored the facts in this case, it would be
premature to speculate about whether the differences in various
states' consumer protection laws are material in this case.")
(nationwide class, New Jersey named plaintiff).  Apple argues only
that the Ninth Circuit found differences between the consumer
protection laws of the relevant states to be material in Mazza and
fails to address how any such differences would also be material
to the facts of the instant litigation.

        Accordingly, the Court declines to find that Fazio and
Balassone lack standing to prosecute the state law claims at the
pleading stage.

III. Allegations of false and misleading statements

    A. Rule 9(b)

        Apple contends that Plaintiffs have not sufficiently plead
any specific false and misleading statements, including what about
the statements was false or misleading.  It also argues that all
specific statements that Plaintiffs have identified are not
actionable.  On this basis, Apple requests that Plaintiffs' UCL,
CLRA, FAL and misrepresentation claims be dismissed for failure to
comply with Rule 9(b).  Plaintiffs do not dispute that Rule 9(b)
applies to these claims, but do argue that they have sufficiently
alleged their fraud claims.

        Claims of deceptive labeling under these California statutes
are evaluated by whether a "reasonable consumer" would be likely
to be deceived.  Williams v. Gerber Prods. Co., 552 F.3d 934, 938

(9th Cir. 2008) (citing <u>Freeman v. Time, Inc.</u>, 68 F.3d 285, 289 (9th Cir. 1995)).  Common law claims for fraud and negligent misrepresentation similarly require that the consumer justifiably rely on a representation that is false or subject to a misleading omission.  <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal. 4th 979, 990 (2004) (common law fraud); <u>Century Sur. Co. v. Crosby Ins.</u>, Inc., 124 Cal. App. 4th 116, 129 (2004) (negligent misrepresentation).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1102 (9th Cir. 2003)).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, <u>id.</u> at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false."  <u>Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

In <u>Kearns</u>, the Ninth Circuit concluded that the plaintiff, who claimed that Ford engaged in a fraudulent course of conduct in

making false and misleading statements in its national commercials regarding its "Certified Pre-Owned" vehicles to induce purchasers to pay extra for such vehicles, printed sales materials and statements of sales personnel, failed to meet the Rule 9(b) standard for alleging fraud with specificity.  567 F.3d at 1122, 1126.  In so holding, the court stated,

> Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations.  Nowhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated.  Nor did Kearns specify when he was exposed to them or which ones he found material.  Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle.  Kearns does allege that he was specifically told "CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty."  Kearns does not, however, specify who made this statement or when this statement was made.  Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged.  The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct.

Id. at 1126.

Plaintiffs' claims here are also based on a fraudulent course of conduct.  Unlike in Kearns, Plaintiffs allege the contents of some specific pieces of advertising that Apple created, particularly the contents of certain television commercials released between October 4, 2011 and the time that the complaint was filed, the press release and statements on the website since then.  Plaintiffs also allege that these advertisements were "fundamentally and designedly false and misleading," and that Siri "does not perform as advertised."  CCAC ¶ 11.  They state that the commercials show tasks "done with ease with the assistance of the iPhone 4S's Siri feature; a represented functionality contrary to

the actual operating results and performance of Siri." Id. at
¶ 7.

However, Apple is correct that Plaintiffs have not alleged
sufficiently how these statements were misrepresentative or
fraudulent, and how Siri failed to perform as advertised.  For
example, Plaintiffs do not make clear in the CCAC whether their
theory is that the advertisements were misleading, because Siri
never responds to questions or is always inaccurate, does so more
slowly than shown in the ads, uses more data than advertised or is
less consistent than shown in the ads.  At the hearing, they
represented that their theory was "that it does answer some
questions some of the time, but it doesn't perform in the manner
in which Apple represents in the commercial that it will perform."
Docket No. 63, 8:1-4.  In summary, Plaintiffs have failed to
allege sufficiently the "how" of the purported misrepresentations.
They have not explained what exactly Apple led consumers to
believe in the commercials about Siri's performance, through what
particular statements, nor have they stated what about these
representations was in fact false.  They have not specified
precisely how Siri failed to meet the representations that they
claim Apple made, what the truth about Siri's performance actually
was and how Apple knew or should have known that these
representations were false.  These deficiencies deprive Apple of
the opportunity to respond to the allegations of misconduct that
Plaintiffs make.

Accordingly, the Court GRANTS Apple's motion to dismiss the
UCL, CLRA, FAL and misrepresentation claims for failure to comply
with Rule 9(b).  Plaintiffs are granted leave to remedy the

deficiencies identified herein, provided they are able to do so truthfully.

B. Selective reading

Apple also alleges that Plaintiffs base their claims of deception on a selective reading of the advertising and that, when read in context, it has adequately disclosed Siri's beta status. Plaintiffs respond that the disclosures do not appear in any television commercial, are in hard-to-find locations on only some webpages and press releases, are in small font and disclose simply that Siri is in "beta" without defining the term.

Apple relies on <u>Freeman v. Time, Inc.</u>, 68 F.3d 285 (9th Cir. 1995), in which the Ninth Circuit upheld the district court's dismissal of UCL and FAL claims, rejecting as unpersuasive the plaintiff's argument that readers will read only the large print on a promotion document and "ignore the qualifying language in small print." <u>Id.</u> at 289. In so holding, the court explained,

> The promotions expressly and repeatedly state the conditions which must be met in order to win. None of the qualifying language is hidden or unreadably small. The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it. Any persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes.

<u>Id.</u> at 289-90. Therefore, the court concluded, "Any ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole." <u>Id.</u> at 290.

Here, however, the commercials themselves do not disclose that Siri was in beta or otherwise unfinished. Some of the pages on the website, but not all, do disclose that Siri is in beta.

United States District Court
For the Northern District of California

Further, although Apple did sometimes put an orange label with the word next to Siri on the website, frequently the disclosure that Siri is in beta is at the bottom of the page in much smaller font, separated from the primary discussion of Siri's features. This is not "immediately next to the representations it qualifies," as in the <u>Freeman</u> case. Although Apple may be able to offer these qualifications as a defense on the facts, these qualifications are not sufficient to make the finding that it seeks as a matter of law upon a motion to dismiss.

C. Puffery

Apple argues that many of the statements cited in the CCAC are non-actionable puffery. Apple specifically points to Plaintiffs' allegations that Siri was described as "the best iPhone yet," that Apple marketed Siri in a video stating, "How do you improve on something so extraordinary? Now we're introducing Siri," and that Siri is described as an "amazing assistant," "amazing," and "impressive." Mot. at 17.

Plaintiffs respond that they are not basing their claims on Apple's statements that Siri was "amazing," "impressive" or an improvement to the previous iPhone. Instead, they argue that their claims are based on specific representations of how Siri was supposed to function and that Siri did not in fact work as shown.

"Advertising which merely states in general terms that one product is superior is not actionable." <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 246 (9th Cir. 1990) (internal quotations omitted). "However, misdescriptions of specific or absolute characteristics of a product are actionable." <u>Id.</u> (internal quotations omitted).

United States District Court
For the Northern District of California

1   Apple is correct that words like "amazing" and "impressive"

2   are "generalized, vague and unspecific assertions, constituting

3   mere 'puffery' upon which a reasonable consumer could not rely."

4   Glen Holly Entm't, Inc. v. Tektronix Inc., 352 F.3d 367, 379 (9th

5   Cir. 2003).  These representations thus cannot form the basis of

6   Plaintiffs' claims or be considered when determining if they have,

7   for example, met Rule 9(b)'s specificity requirement or properly

8   alleged reliance.  However, Apple's portrayals of the ways in

9   which Siri operated can be used to show "misdescriptions of

10  specific or absolute characteristics" of the claimed features and

11  thus can be the basis of these claims.

12  III. Reliance

13    A plaintiff seeking to prosecute a UCL and FAL claim is

14  required to plead actual reliance on the allegedly deceptive or

15  misleading statements.  Kwikset v. Superior Court, 51 Cal. 4th

16  310, 326 (2011).  The CLRA imposes a requirement that a violation

17  "caus[e] or result[] in some sort of damage."  Meyer v. Sprint

18  Spectrum, L.P., 45 Cal. 4th 634, 641 (2009).  Common law fraud

19  requires that the victim show reasonable reliance on the allegedly

20  deceptive representation.  In re Tobacco II Cases, 46 Cal. 4th

21  298, 312 (2009).

22    Apple argues that Plaintiffs did not specify which particular

23  advertisements or representations each was exposed to and relied

24  upon.  Although Plaintiffs state that they did do this, they did

25  not for any Plaintiff, except Balassone in part.  Plaintiffs

26  allege that Balassone relied on "the statements and interactive

27  demonstrations performed at Apple's October 4, 2011 press

28  conference," but they also say that he relied upon "other

representations," without saying which others.  CCAC ¶ 24.[1]
Plaintiffs allege that Fazio relied upon "Apple's television
advertisements and Apple's representations made about Siri during
various presentations and on Apple's website," Hamagaki relied
upon "Apple's television advertisements and Apple's
representations related to Siri on its website," and that
Swartzman relied upon "Apple's advertisements showing that Siri
would accurately provide information based on verbal commands,
would permit accurate dictation of emails and would substantially
shorten and simplify research time."  Id. at ¶¶ 20, 22, 27.
However, they do not specify particular commercials, presentations
or portions of the website.  They also do not state whether the
ones that Plaintiffs saw and relied upon were those whose contents
were alleged elsewhere in the CCAC.

Plaintiffs also respond that, because the misrepresentations
"were part of a consistent, broad marketing campaign by Apple over
time," they were "not required to specify each and every time they
were exposed to one of Apple's misrepresentations."  Opp. at 12.
In support of their argument, Plaintiffs rely on Morgan v. AT&T
Wireless Services, Inc., 177 Cal. App. 4th 1235, 1256 (2009),
which in turn follows the California Supreme Court's decision in
In re Tobacco II.  This Court has previously found that Morgan and

---

[1] The Court notes that, although Plaintiffs plead that
"Balassone attempted to mirror the command[s] given to Siri in the
Apple advertisements" and that he "asked Siri to show him guitar
chords as shown in Apple's 'Rock God' television advertisements,"
CCAC ¶ 25, they did not allege that he had relied on any
particular advertisement, including the Rock God commercial when
he purchased the iPhone 4S.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

In re Tobacco II do not support relaxing of the pleading
requirements under Rule 9(b).  In Herrington v. Johnson & Johnson
Consumer Companies, Inc., 2010 WL 3448531 (N.D. Cal.), the Court
stated that, in In re Tobacco II, in "addressing the allegations
necessary to plead reliance to establish standing to bring a UCL
claim, the California Supreme Court stated that 'where . . . a
plaintiff alleges exposure to a long-term advertising campaign,
the plaintiff is not required to plead with an unrealistic degree
of specificity that the plaintiff relied on particular
advertisements or statements.'"  Id. at *8.  In addition to
finding that the plaintiffs in that case did not allege exposure
to the advertising campaign itself, the Court explained that "In
re Tobacco II merely provides that to establish UCL standing,
reliance need not be proved through exposure to particular
advertisements; the case does not stand for, nor could it, a
general relaxation of the pleading requirements under Rule 9(b)."
Id. (citing In re Actimmune Mktg. Litig., 2009 WL 3740648, at *13
(N.D. Cal.)).  In addition, in Delacruz v. Cytosport, Inc., 2012
U.S. Dist. LEXIS 51094 (N.D. Cal.), the Court rejected the
plaintiff's reliance on In re Tobacco II, because she "failed to
allege that Defendant's advertising campaign approached the
longevity and pervasiveness of the marketing at issue in Tobacco
II," which lasted for decades.  Id. at *9.  Here, the earliest
allegation was of a press release and conference that took place
on October 4, 2011.  The campaign was only about six months old
when the CCAC was filed.  As in Delacruz, Plaintiffs have not
alleged that the campaign here was comparable to that at issue in
Tobacco II.

Plaintiffs' reliance on <u>Ticketmaster LLC v. RMG Technologies</u>, 2007 WL 2989504 (C.D. Cal.), is also misplaced. In that case, the plaintiff alleged that the defendant used "automated devices to unlawfully enter into and navigate through Plaintiff's website, ticketmaster.com, and improperly purchase large quantities of tickets, circumventing security measures intended to prevent automated purchases and violating the website's Terms of Use." <u>Id.</u> at *1. The plaintiff brought suit alleging that "the defendant made a false promise to abide by the plaintiff's terms of use every time it used the plaintiff's website." <u>Id.</u> at *3. The court found that the plaintiff did not have to separately set out each of these thousands of individual, identical instances of fraud over the multi-year time period covered by the complaint, when it had sufficiently identified which statements were misleading, why, who was involved and the time period of the repeated misrepresentations. <u>Id.</u> Here, the transactions were not all materially identical.

Accordingly, the Court grants Apple's motion to dismiss the UCL, FAL, CLRA and common law fraud claims. Plaintiffs are granted leave to amend to allege with specificity which commercials or other misleading advertisements they each relied upon in purchasing their devices.

IV. CLRA claim

The CLRA imposes liability for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Such unlawful conduct includes "representing that

goods or services have . . . characteristics[,] . . . uses,
benefits, or qualities which they do not have," "representing that
goods or services are of a particular standard, quality, or grade
. . . if they are of another," "advertising goods or services with
intent not to sell them as advertised," and "representing that the
subject of a transaction has been supplied in accordance with a
previous representation when it has not."  Id. §§ 1170(a)(5), (7),
(9) and (16).

Apple does not dispute that the iPhone 4S is a good within
the meaning of the CLRA.  Instead, Apple contends that Plaintiffs'
CLRA claim fails as a matter of law because Siri itself is not a
good or service.  Plaintiffs respond that the subject of their
claims is the iPhone 4S itself and that Siri is a nonseverable
component thereof.  Plaintiffs also argue that, even if Siri were
to be analyzed by itself, it should be considered a service.

Apple contends that the CCAC "describes and attacks only
Apple's purported representations regarding the iPhone 4S's Siri
software, and that Plaintiffs' claims relate exclusively to the
Siri software--not to the iPhone 4S."  Reply at 20.  Apple's
arguments, however, misconstrue Plaintiffs' CLRA claim.

Plaintiffs alleged throughout the CCAC that Siri was a
"feature" of the iPhone 4S, that it was in fact the primary
distinction between the iPhone 4S and the earlier iPhone 4 and
that they would not paid the price that they did for the iPhone 4S
had it not been for Apple's portrayals of how that feature worked.
See, e.g., CCAC ¶¶ 4-16.  Plaintiffs specifically plead in the
CLRA claim that, among other things, Apple represented that the
iPhone 4S--not Siri--had characteristics and features that it did

30

not, that the iPhone 4S--not Siri--was of a particular standard, quality or grade, although it was not, and that Apple advertised the iPhone 4S--not Siri--with intent not to sell it as advertised. Id. at ¶ 68.

Apple primarily relies upon three cases in which district courts in the Ninth Circuit have found that software was not a good or service within the meaning of the CLRA. See Ferrington v. McAfee, 2010 U.S. Dist. LEXIS 106600, at *19 (N.D. Cal.); In re iPhone Application Litig., 2011 U.S. Dist. LEXIS 106865, at *33 (N.D. Cal.); Wofford v. Apple Inc., 2011 U.S. Dist. LEXIS 129852, at *6-7 (S.D. Cal.).

However, these cases are distinguishable.  Plaintiffs' CLRA claim is premised on the purchase of the iPhone 4S itself, of which Siri is alleged to be a feature.  Unlike Apple's cited cases, the CLRA claim is not based on the downloading or purchase of software.  As explained by another court in this district in In re iPhone Application Litig., 844 F. Supp. 2d 1040 (N.D. Cal. 2012), in discussing a claim related to a different feature of the iPhone, "the gravamen of the CLRA claim . . . is not that free apps downloaded by Plaintiffs were deficient, but rather that the iPhones (a 'good' covered by the CLRA) purchased by the class members did not perform as promised based on a specific functionality of the device."  Id. at 1071.  "Plaintiffs' claim thus arises out of the sale of a good, and not the downloading of free software."  Id.

Similarly, in the present case, Plaintiffs' CLRA claim is based on the theory that a specific function of the iPhone 4S did not perform as advertised.  Accordingly, because Plaintiffs have

United States District Court
For the Northern District of California

plead that the good at issue here was the iPhone 4S, the Court denies Apple's motion to dismiss this claim on this basis.

V.   Breach of express warranty

To plead a claim for breach of express warranty under California law, Plaintiffs must allege "that the seller: '(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.'"   Bilodeau v. McAfee, Inc., 2013 U.S. Dist. LEXIS 89226, at *38 (N.D. Cal.) (citation omitted).   In addition, they must plead that, "within a reasonable time after he or she discovers or should have discovered any breach," they notified Apple of the breach.   Cal. Com. Code § 2607(3)(A).   A buyer's failure to comply with the notice requirement results being "barred from any remedy."   Id.

A. Notice

"To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'"   Alvarez v. Chevron Corp., 656 F.3d 925, 932 (9th Cir. 2011) (quoting Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010)) (formatting in original).   "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court."   Id. (citing Cardinal Health 301, Inc. v. Tyco Elecs. Corp., 169 Cal. App. 4th 116, 135 (2008)).   To comport with the objectives of the

notice requirement, the notice must be served prior to service of the complaint and not simultaneously with it.  Id. at 932-33.

In their express warranty claim in the CCAC, Plaintiffs allege that "all conditions precedent to Defendant's liability under this express contract, including notice, as described above, have been performed by Plaintiffs and the Class."  CCAC ¶ 110. Elsewhere in the CCAC, Plaintiffs allege that, on March 6, 2012, the same date on which he filed his original complaint, Fazio sent a letter to Apple detailing purported breaches of the CLRA.  Id. at ¶ 72.  As Apple argues, because this letter was served at the same time Fazio's case was initiated, the letter cannot serve as notice of the breach of the express warranty, pursuant to the Ninth Circuit's holding in Alvarez.

Plaintiffs respond that Swartzman and Balassone sent Apple a letter pursuant to section 2607 on March 16, 2012, four days before their complaint was filed on March 20, 2012, Germershausen Decl., Ex. A, and that Jones sent Apple a similar letter on March 23, 2012, four days before his complaint was filed on March 27, 2012, Bower Decl., Ex. A.  However, as Apple has pointed out, these letters were not alleged in the CCAC or incorporated therein by reference, and Plaintiffs have not requested that the Court take judicial notice of these letters.

Plaintiffs argue that the notice requirement was satisfied nonetheless because they alleged in the CCAC that "Apple was on notice of the defects in Siri from numerous media outlets reporting on Siri's failures."  Opp. at 20 (citing CCAC ¶¶ 45-47). However, Plaintiffs do not offer any cases in which notice from media outlets was held to meet the statutory notice requirement.

United States District Court
For the Northern District of California

Plaintiffs rely only on Metowski v. Traid Corp. 28 Cal. App. 3d 332 (1972), in which the California Court of Appeal held the plaintiffs could maintain a class action on their breach of express warranty claims.  The defendants claimed a class action was not appropriate because timely notice of the breach of warranty could "be proved only by testimony from the individual purchasers." Id. at 340.  In its discussion of this argument, the court noted that, where "merchandise was sold under circumstances which indicate that the seller acted in bad faith and was aware of the breach at the time of the sale, demand for notice of the breach from each and every member of the class may be a meaningless ritual," but that the statutory requirement still applies.  The court stated, "Conceivably, the statutory demand for notice might be satisfied by proof of complaints from some but not all the buyers of the product.  Such an approach might be particularly appropriate where the failure of the merchandise to conform to express warranties was known to or reasonably discoverable by the seller at the time of the sales." Id. at 339. However, the court did not conclude that this approach could be used, and instead rejected the defendants' argument because, once liability was established on a class-wide basis, the "element of timely notice by each plaintiff could be shown in order to assess his own individual collectible damages." Id. at 341.  Thus, the Metowski court made that statement in dicta and still required that notice be provided by some purchasers, not by general media report.  See Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 950 (C.D. Cal. 2012) (rejecting a plaintiff's reliance on Metowski because the "statement was dicta . . . and plaintiffs cite no

authority specifically endorsing the concept of collective

notice"); see also Daugherty v. Am. Honda Motor Co., Inc., 144

Cal. App. 4th 824, 832 (2006) (rejecting reliance on Metowski when

no named plaintiffs had alleged that they provided the requisite

notice).

Accordingly, the Court finds that Plaintiffs have not plead

compliance with the notice requirement.  Plaintiffs are granted

leave to amend to remedy this deficiency, provided that they are

able to do so truthfully.

B. Claim elements

Under California law, "[a]ny affirmation of fact or promise

made by the seller to the buyer which relates to the goods and

becomes part of the basis of the bargain creates an express

warranty that the goods shall conform to the affirmation or

promise."  Cal. Comm. Code § 2313(1)(a).  "Any description of the

goods which is made part of the basis of the bargain creates an

express warranty that the goods shall conform to the description."

Id. at § 2313(1)(b).  A seller need not "use formal words such as

'warrant' or 'guarantee'" or "have a specific intention to make a

warranty."  Id. at § 2313(2).  However, Plaintiffs must plead the

"exact terms" of the express warranty.  See, e.g., Rossi v.

Whirlpool Corp., 2013 U.S. Dist. LEXIS 46167, at *7-11 (E.D. Cal.)

(failure to plead exact terms of the alleged express warranty

warrants dismissal).

In the CCAC, Plaintiffs allege that the "terms of the

contract include the promises and affirmations of fact and express

warranties made by Defendant on its website and through its

United States District Court
For the Northern District of California

marketing and advertising campaign that the iPhone 4S's Siri

feature performs as advertised, as described above."  CCAC ¶ 104.

As Apple argues, Plaintiffs have failed to allege the exact

terms of any warranty.  "General assertions that Plaintiffs relied

on 'a commercial' or 'the commercial' or 'advertisements online'

are not equivalent to a recitation of the exact terms of the

underlying warranty."  Baltazar v. Apple, Inc., 2011 U.S. Dist.

LEXIS 13187, at *6 (N.D. Cal.).  Plaintiffs must at least allege

which particular commercials and webpages they each relied upon,

must describe the content of those advertisements and pages with

particularity and must allege with specificity their reasonable

reliance thereon.  Id.; see also Nabors v. Google, Inc., 2011 U.S.

Dist. LEXIS 97924, at *10-11 (N.D. Cal.).  Plaintiffs' allegations

at this time are not sufficiently detailed to provide Apple with

meaningful notice of which particular advertisements and webpages

form the basis of their claim, or of what warranty terms

Plaintiffs maintain were created by those commercials and pages.

Accordingly, the Court grants Apple's motion to dismiss this

claim.  Plaintiffs are granted leave to amend to remedy these

deficiencies.

VI.  Breach of implied warranty of merchantability

Under California law, "every sale of consumer goods that are

sold at retail in this state shall be accompanied by the

manufacturer's and the retail seller's implied warranty that the

goods are merchantable."  Cal. Civ. Code § 1792.  The implied

warranty of merchantability provides, in part, that the goods must

be "fit for the ordinary purposes for which such goods are used."

Cal. Civ. Code § 1791.1(a); Cal. Com. Code § 2134(2)(c).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Apple argues that this claim is barred because it disclaimed the implied warranty of merchantability in the iPhone 4S's one-year hardware warranty and in the iPhone software license agreement.  Disclaimer of implied warranties is an affirmative defense upon which Apple bears the burden of proof.  See Andrade v. Pangborn Corp., 2004 U.S. Dist. LEXIS 22704, at *64 (N.D. Cal.).  An affirmative defense may only be raised on a motion to dismiss if it raises no disputed issues of fact.  Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).  "The statutory implied warranties of quality can, of course, be disclaimed by the seller, provided the buyer has knowledge or is chargeable with notice of the disclaimer before the bargain is complete."  Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 693 (1954).  "A disclaimer of warranties must be specifically bargained for so that a disclaimer in a warranty given to the buyer after he signs the contract is not binding."  Dorman v. Int'l Harvester Co., 46 Cal. App. 3d 11, 19-20 (1975).

Apple argues that a disclaimer was provided to customers within the packaging of the iPhone 4S and that Plaintiffs could have returned their iPhones within its thirty day return period after they had discovered and reviewed the warranty, if they did not want to consent to its limitations.  There is some authority within this district that supports that the disclaimer need not be provided prior to purchase, if the purchasers "were able to review the warranty upon purchase and to return the product if they were dissatisfied with the warranty's limitations."  Berenblat v. Apple, Inc., 2010 WL 1460297, at *4 (N.D. Cal.) (Fogel, J.); see also Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1138, 1156

(N.D. Cal. 2010) (Fogel, J.), <u>vacated in part on other grounds</u>, 771 F. Supp. 2d 1156 (N.D. Cal. 2011); <u>Tietsworth v. Sears, Roebuck & Co.</u>, 2009 WL 3320486, at *10 (N.D. Cal.).  However, Plaintiffs have not plead the existence of an unqualified return period and Apple has provided no evidence of such a period of which the Court can properly take judicial notice.

However, as Apple also argues, Plaintiffs have not plead "sufficient facts to make it plausible" that the iPhone 4S's "ordinary and intended purpose" is to use "the Siri intelligent assistant feature to send messages, schedule appointments, seek information and directions and to learn new tasks," instead of being a cell phone.  Mot. at 23 (quoting CCAC ¶¶ 112, 113, 116). Indeed, in arguing about their CLRA claim, Plaintiffs admitted that the iPhone 4S is at bottom a phone.  <u>See</u> Opp. at 18. Plaintiffs' argument here, that the ordinary purpose of the iPhone 4S is to use the Siri feature to send messages and complete other tasks is not consistent with that argument.

The iPhone 4S's intended and ordinary use is as a smartphone, "which the court safely presumes includes functions like making and receiving calls, sending and receiving text messages, or allowing for the use of mobile applications." <u>Williamson v. Apple, Inc.</u>, 2012 U.S. Dist. LEXIS 125368, at *24 (N.D. Cal.). Plaintiffs have not alleged that the iPhone 4S is deficient in any of these functions, but rather merely in providing the Siri feature to access these functions.

Finally, even if the ability to use Siri was part of the ordinary purpose of the iPhone 4S, Plaintiffs have not plead sufficiently that the implied warranty of merchantability was

**United States District Court**
For the Northern District of California

breached.  Plaintiffs have alleged that the Siri feature was
usable to some extent but was not "a <u>consistent</u> intelligent
assistant."  CACC ¶ 116 (emphasis added); <u>see also</u> <u>id.</u> at ¶ 23
(alleging that, for Hamagaki, "Siri was able to respond to very
general requests, such as 'find me a gas station' or 'find me Thai
food'").  "Unlike express warranties, which are basically
contractual in nature, the implied warranty of merchantability
arises by operation of law. . . . [I]t provides for a minimum
level of quality." <u>American Suzuki Motor Corp. v. Superior Court</u>,
37 Cal. App. 4th 1291, 1295-96 (1995).  A plaintiff must
demonstrate that the product "did not possess even the most basic
degree of fitness for ordinary use." <u>Mocek v. Alfa Leisure, Inc.</u>,
114 Cal. App. 4th 402, 406 (2003) (citing Cal. Com. Code
§ 2314(2)).  This means that Plaintiffs must show "more than that
the alleged defect was 'inconvenient'" but rather that the
products were unfit for their ordinary purpose. <u>Baltazar</u>, 2011
U.S. Dist. LEXIS 96140, at *10 (citing <u>Kent v. Hewlett-Packard</u>
<u>Co.</u>, 2010 U.S. Dist. LEXIS 76818, at *11-12 (N.D. Cal.).  Given
the acknowledgment that Siri could be used as an assistant for at
least basic purposes, Plaintiffs have not alleged sufficiently
that the function was unusable or that it did not have the most
basic degree of fitness.

Accordingly, Apple's motion to dismiss the implied warranty
of merchantability claim is granted and Plaintiffs are granted
leave to amend.

VII. Magnuson-Moss Warranty Act claim

"Violations of the Magnuson-Moss Warranty Act (MMWA) can rest
on breaches of warranties created under state law." <u>Herrington v.</u>

United States District Court
For the Northern District of California

Johnson & Johnson Consumer Cos., 2010 U.S. Dist. LEXIS 90505, at

*40-41 (N.D. Cal.) (citing Birdsong v. Apple, Inc., 590 F.3d 955,

958 n.2 (9th Cir. 2009); Clemens v. DaimlerChrysler Corp., 534

F.3d 1017, 1022 (9th Cir. 2008). Plaintiffs do not argue that

their MMWA claims rest on bases other than their state law

warranty claims.  They argue primarily that, because their other

warranty claims should not be dismissed, their MMWA claim also

should not be dismissed.  They also point out that, unlike for

breach of express warranties, notice and an opportunity to cure

prior to filing a class action is not required for a MMWA claim.

Because the Court dismisses Plaintiffs' state law warranty

claims for a number of reasons in addition to failure to allege

pre-filing notice, the Court also grants Apple's motion to dismiss

Plaintiffs' MMWA claim.  Plaintiffs are granted leave to amend.

VIII.  Unfair competition claim

The California Unfair Competition Law (UCL), Cal. Bus. &

Prof. Code § 17200 et seq., prohibits "any unlawful, unfair or

fraudulent business act or practice and unfair, deceptive, untrue

or misleading advertising."  Because section 17200 is written in

the disjunctive, it establishes three types of unfair competition.

Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593 (2009).

Therefore, a practice may be prohibited as unfair or deceptive

even if it is not unlawful and vice versa.  Podolsky v. First

Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).

Apple contends that Plaintiffs have failed to allege that it

engaged in any "unlawful, unfair or fraudulent business act or

practice" in violation of the UCL.  To the extent that Apple

argues that Plaintiffs have failed to state a claim for fraudulent

business acts and practices, the Court grants the motion for the same reasons that the common law fraud claim was dismissed above.

A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007).  Because the Court dismisses Plaintiffs' other claims, the Court also finds that Plaintiffs have failed properly to allege a claim under the unlawful prong of the UCL.

Further, "[t]o have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." Birdsong, 590 F.3d at 960 (citing Cal. Bus. & Prof. Code § 17204; Walker v. Geico Gen. Ins. Co., 558 F.3d 1025, 1027 (9th Cir. 2009)).  Here, Plaintiffs have failed to allege adequately that they were injured as a result of any particular deceptive or misleading statements made by Apple.  Accordingly, they have not properly alleged that they have UCL standing to prosecute this claim.

Accordingly, the Court grants Apple's motion to dismiss the UCL claim in its entirety.  Plaintiffs are granted leave to amend to remedy the deficiencies identified above.

IX.  Unjust enrichment claim

Plaintiffs assert a claim for unjust enrichment based on the same conduct that underlies their other causes of action.  The parties both acknowledge, as the Court has observed on previous occasions, that California courts are split on whether there is an independent cause of action for unjust enrichment.  See, e.g., Delacruz, 2012 U.S. Dist. LEXIS 51094, at *28-29; Lyons v.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  JPMorgan Chase Bank, N.A., 2011 U.S. Dist. LEXIS 74808, at *15-16

2  (N.D. Cal. 2011).

3      One view is that unjust enrichment is not a cause of action,

4  or even a remedy, but rather a general principle underlying

5  various legal doctrines and remedies.  McBride v. Boughton, 123

6  Cal. App. 4th 379, 387 (2004); see also Smith v. Ford Motor Co.,

7  462 Fed. App'x. 660, 665 (9th Cir. 2011) (denying as unmeritorious

8  plaintiffs' appeal from "the district court's ruling that unjust

9  enrichment is not an independent cause of action in California").

10 In McBride, the court construed a "purported" unjust enrichment

11 claim as a cause of action seeking restitution.  123 Cal. App. 4th

12 at 387.  There are at least two potential bases for a cause of

13 action seeking restitution: (1) an alternative to breach of

14 contract damages when the parties had a contract which was

15 procured by fraud or is unenforceable for some reason; and

16 (2) where the defendant obtained a benefit from the plaintiff by

17 fraud, duress, conversion, or similar conduct and the plaintiff

18 chooses not to sue in tort but to seek restitution on a quasi-

19 contract theory.  Id. at 388.  In the latter case, the law implies

20 a contract, or quasi-contract, without regard to the parties'

21 intent, to avoid unjust enrichment.  Id.; see also Paracor Fin.,

22 Inc. v. GE Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996)

23 ("Under both California and New York law, unjust enrichment is an

24 action in quasi-contract . . .").

25     A minority view is that there is a cause of action for unjust

26 enrichment and its elements are receipt of a benefit and unjust

27 retention of the benefit at the expense of another.  Lectrodryer

28

v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide

Sav. v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

The Court finds persuasive the cases which conclude that a

stand-alone claim for unjust enrichment cannot be maintained and

that, where the plaintiffs have failed properly to allege any

cognizable claim for relief upon which they may base their claim

for unjust enrichment or restitution, the unjust enrichment claim

must also be dismissed.  See, e.g., Berenblat v. Apple, Inc., 2009

U.S. Dist. LEXIS 80734, at *18-19 (N.D. Cal.) (stating that "a

claim for unjust enrichment cannot stand alone without a

cognizable claim under a quasi-contractual theory or some other

form of misconduct" and dismissing claim where other claims have

already been dismissed); Oestreicher v. Alienware Corp., 544 F.

Supp. 2d 964, 975 (N.D. Cal. 2008) ("since plaintiff's fraud-based

claims have been dismissed, plaintiff has no basis for its unjust

enrichment claim.").  Because all of the claims that could form a

theory of recovery for Plaintiffs have been dismissed, the Court

dismisses this claim as well.  Plaintiffs are granted leave to

amend.

CONCLUSION

For the reasons set forth above, the Court grants Apple's

motion to dismiss (Docket No. 32).  Plaintiffs are granted leave

to amend to remedy the deficiencies identified herein, within

fourteen days of the date of this Order.  In any amended

consolidated complaint, Plaintiffs may incorporate the allegations

made by Plaintiff Jones in his separate complaint.  Plaintiffs may

not add new claims.

United States District Court
For the Northern District of California

1    If Plaintiffs file an amended consolidated complaint, Apple

2 shall respond within fourteen days thereafter.  If Apple moves to

3 dismiss or strike the amended consolidated complaint, Plaintiffs

4 shall respond to the motion within fourteen days after it is

5 filed.  Apple's reply, if necessary, shall be due seven days

6 thereafter.  Any motion to dismiss or strike will be decided on

7 the papers.

8    Within fourteen days of the date of this Order, the parties

9 shall file a stipulation or, if they are unable to reach a

10 stipulation, a joint case management statement, setting forth a

11 proposed schedule resetting the case management dates that the

12 Court vacated on March 27, 2013.  See Docket No. 67.

13    IT IS SO ORDERED.

14

15 Dated: 7/23/2013

CLAUDIA WILKEN
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28