ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*Pro Hac Vice*)
ERICH P. SCHORK (*Pro Hac Vice*)
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

GARDY & NOTIS, LLP
JENNIFER SARNELLI (242510)
JAMES S. NOTIS (*Pro Hac Vice*)
501 Fifth Avenue, Suite 1408
New York, NY  10017
Telephone:  212/905-0509
212/905-0508 (fax)
jsarnelli@gardylaw.com
jnotis@gardylaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re IPHONE 4S CONSUMER LITIGATION | Master File No. 4:12-cv-01127-CW |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | AMENDED CONSOLIDATED CLASS ACTION COMPLAINT |
| ALL ACTIONS. | <u>DEMAND FOR JURY TRIAL</u> |

1    Plaintiffs Frank M. Fazio, Carlisa S. Hamagaki, Daniel M. Balassone, and Benjamin

2  Swartzman (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated,

3  upon personal knowledge of facts pertaining to them and on information and belief as to all other

4  matters, by and through Plaintiffs' Co-Lead Counsel, bring this Amended Consolidated Class Action

5  Complaint against defendant Apple Inc. ("Apple" or "Defendant"), and allege as follows.

6                                    **INTRODUCTION**

7    1.    This Amended Consolidated Class Action Complaint (the "Amended Complaint") is

8  filed pursuant to the Court's July 23, 2013 Order Granting Motion to Dismiss [D.E. 68].

9    2.    This is a consumer class action brought by Plaintiffs on behalf of themselves and all

10 other similarly situated consumers who purchased, for use and not resale, in the United States and its

11 territories and protectorates, Apple's iPhone 4S (the "iPhone 4S").

12    3.    The Apple iPhone, which includes several different versions (*e.g.*, iPhone 3, iPhone 4,

13 and iPhone 4S) functions as a mobile phone, an iPod, and an Internet communications device all in

14 one and features desktop-class email, web browsing, searching, and maps.  The iPhone is compatible

15 with both Mac and Windows-based computers.

16    4.    Apple introduced the iPhone 4S into the market on October 4, 2011.  Defendant

17 distinguished the iPhone 4S from its previous iPhone devices, including the iPhone 4 (released in

18 June 2010), predominantly based on the inclusion and touted benefits of a voice-activated personal

19 assistant feature named "Siri."

20    5.    In this case, Plaintiffs challenge Defendant's actions in connection with its misleading

21 and deceptive marketing and advertising related to the iPhone 4S's Siri feature, which induced

22 Plaintiffs and other members of the Class (as defined herein) into purchasing the iPhone 4S.

23    6.    Specifically, and as alleged in great detail below, through an extensive and

24 comprehensive nationwide marketing and advertising campaign, Defendant conveyed to the public

25 the misleading and deceptive message that the iPhone 4S's Siri feature, a so-called voice-activated

26 intelligent assistant, was and is able to perform the various tasks depicted in Apple's advertisements

27 on a consistent basis.

28

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - 4:12-cv-01127-CW                - 1 -

7.     For example, in many of Apple's television commercials, individual consumers are shown using Siri to perform various tasks, including make appointments, find restaurants, craft text messages, learn the guitar chords to classic rock songs, and learn how to tie a tie.  Siri is even shown to completely understand and respond to a voice command given by a consumer who is in the middle of running.  In the commercials, each and every one of these tasks are performed with ease using the iPhone 4S's Siri feature.  Apple's advertisements conveyed to consumers that upon command Siri would consistently be able to perform the various tasks shown in Apple's advertisements and others relating to its role as a personal assistant.  This represented functionality is contrary to the actual operating results and performance of Siri.  In reality, Siri is unable to make appointments, find restaurants, craft text messages, understand and respond to voice commands, and perform various other tasks on a consistent basis as represented and advertised by Apple.

8.     The truth is that Siri did and does not work as represented by Apple in its marketing and advertisements for the iPhone 4S.

9.     Defendant's advertising and marketing campaign for the iPhone 4S was specifically designed to distinguish the iPhone 4S from all prior iPhone models and other smart phones based upon the iPhone 4S's Siri feature, and to cause reasonable consumers, such as Plaintiffs, to purchase the iPhone 4S over other phones precisely because of Siri.

10.    To the detriment of Plaintiffs and the putative Class (as defined below), Defendant's marketing campaign was a complete success.  On January 25, 2012, Apple issued its financial results for its fiscal 2012 first quarter ending December 31, 2011, and reported selling approximately 37 million iPhones for the quarter.  According to an iPhone blog, approximately 89% of the 37 million iPhones sold that quarter, almost 33 million, were iPhone 4Ss.

11.    Defendant's advertisements regarding the Siri feature were fundamentally and decidedly false and misleading.  Notwithstanding Apple's extensive multi-million dollar marketing campaign showcasing the Siri feature, and the fact that the iPhone 4S was more expensive than the iPhone 4, the iPhone 4S's Siri feature does and did not perform as advertised, rendering the iPhone 4S merely a more expensive iPhone 4.

12.    Defendant's misrepresentations concerning the Siri feature of the iPhone 4S were misleading, false, and reasonably likely to deceive and have deceived Plaintiffs and members of the putative Class.

13.    Defendant knew or should have known that the iPhone 4S's Siri feature does and did not perform in accordance with Defendant's advertisements, marketing materials, and warranties disseminated by Defendant in its nationwide marketing and advertising campaign. As discussed below, testing of Siri did and/or would have revealed to Apple that Siri was unable to perform as advertised in Apple's advertisements, marketing materials, and warranties. Through this elaborate marketing and advertising campaign, Plaintiffs were led to believe that Siri could function on a consistent basis as a personal assistant by understanding spoken questions and/or commands, knowing what those questions and/or commands meant, and by providing an adequate response to them. However, after purchase, Plaintiffs learned that Siri was unable to consistently process commands similar to those displayed on television commercials, website representations, and direct email solicitations. Put simply, Siri proved inconsistent in the processing of the same commands which were being advertised and displayed by Apple on television commercials, website presentations and direct email solicitations.

14.    Apple has its headquarters in California and sells the iPhone 4S throughout the United States and its territories and protectorates. As a result of the misleading messages about the iPhone 4S's Siri feature, conveyed through its nationwide advertising and marketing campaign, Apple has been able to charge a significant price premium for the iPhone 4S.

15.    According to Apple's website, at the time the iPhone 4S was launched, its price started at $199, while the iPhone 4 started at $99.[1] Currently, an iPhone 4S starts at $99 and an iPhone 4 starts at $0, excluding a wireless service plan.[2] Siri is the primary difference between the iPhone 4 and the iPhone 4S, and Apple's marketing campaign was geared towards this so-called

---

[1]    *See* http://store.apple.com/us/browse/home/shop_iphone/family/iphone/iphone4s (last visited Feb. 28, 2012).

[2]    *See*    http://store.apple.com/us/buy/home/shop_iphone/family/iphone4s?product=IPHONE4S (last visited Aug. 5, 2013); http://store.apple.com/us/buy/home/shop_iphone/family/iphone4? product=IPHONE4 last visited Aug. 5, 2013).

1    "amazing" new feature to convince consumers to choose the more expensive iPhone 4S over the

2    iPhone 4.

3        16.    Plaintiffs bring this action on behalf of themselves and all other similarly situated

4    consumers who purchased the iPhone 4S, in order to halt the dissemination of Apple's false and

5    misleading advertising message and to obtain redress for those who have purchased an iPhone 4S.

6    Plaintiffs allege violations of the Consumers Legal Remedies Act, California Civil Code §1750, *et*

7    *seq.* (the "CLRA"); violations of the California False and Misleading Advertising Law, California

8    Business & Professions Code §17500, *et seq.* (the "FAL"); violations of the Unfair Competition

9    Law, California Business & Professions Code §17200, *et seq.* (the "UCL"); breach of express

10   warranty; intentional misrepresentation; and negligent misrepresentation.

**JURISDICTION AND VENUE**

12       17.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1), as modified by the

13   Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a

14   different state than Defendant, there are more than 100 members of the Class, and the aggregate

15   amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16       18.    Pursuant to 28 U.S.C. §1391(b), venue is proper in this District because a substantial

17   part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

19   **Plaintiffs**

20       19.    Plaintiff Frank M. Fazio ("Fazio") is a citizen and resident of the State of New York.

21   On November 19, 2011, Fazio purchased an iPhone 4S, Serial Number C39GFCDJDTFF, from a

22   Best Buy retail store in Brooklyn, New York, for the price of $299.  As discussed in further detail

23   below, Fazio purchased the iPhone 4S because he saw and relied upon Apple's representations

24   regarding the Siri feature.

25       20.    Fazio has been damaged in that he purchased an iPhone 4S and has lost the money he

26   spent purchasing his iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature.

27   He would not have paid the price he paid for the iPhone 4S if he had not seen and relied upon these

28   representations.

21.     Plaintiff Carlisa S. Hamagaki ("Hamagaki") is a citizen and resident of the State of California.  Shortly after Apple introduced the iPhone 4S and falsely advertised its Siri feature, Hamagaki pre-ordered her iPhone 4S, and on November 6, 2011, she purchased her iPhone 4S at an Apple retail store located at 1415 Third Street Promenade, Santa Monica, California, 90401 for the price of $199.  As discussed in further detail below, Hamagaki purchased the iPhone 4S because she saw and relied upon Apple's television commercials and Apple's representations related to Siri on its website in California.

22.     Hamagaki has been damaged in that she purchased an iPhone 4S and has lost the money she spent purchasing her iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature.  Hamagaki would not have paid the price she paid for the iPhone 4S if she had not seen and relied upon these representations.

23.     Plaintiff Daniel M. Balassone ("Balassone") is a citizen and resident of the State of New Jersey.  On October 20, 2011, Balassone purchased an iPhone 4S, Serial Number DNQGJ0YFDFTDC, from an Apple retail store in Rockaway, New Jersey, for the price of $299.  As discussed in further detail below, Balassone purchased the iPhone 4S because he saw and relied upon Apple's representations regarding the Siri feature.

24.     Balassone has been damaged in that he purchased an iPhone 4S and has lost the money he spent purchasing his iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature.  He would not have paid the price he paid for the iPhone 4S if he had not seen and relied upon these representations.

25.     Plaintiff Benjamin Swartzman ("Swartzman") is a citizen and resident of the State of California.   On January 7, 2012, Swartzman purchased an iPhone 4S, Serial Number DNPGYP8TDT9V, from an Apple retail store in San Luis Obispo, California, for the price of $199.  As discussed in further detail below, Swartzman purchased the iPhone 4S because he saw and relied upon Apple's representations regarding the Siri feature in California.

26.     Swartzman has been damaged in that he purchased an iPhone 4S and has lost the money he spent purchasing his iPhone 4S while being misled about the utility of the iPhone 4S's Siri

1  feature.  He would not have paid the price he paid for the iPhone 4S if he had not seen and relied

2  upon these representations.

3  **Defendant**

4        27.    Defendant Apple Inc. is a California corporation with its headquarters and principal

5  place of business in Cupertino, California, within this District.  Apple is the designer and

6  manufacturer of the iPhone 4S.  Apple transacts substantial business throughout the State of

7  California, through advertising, marketing, and ownership of Apple retail stores in several California

8  locations, including in this District, where many members of the Class purchased their iPhone 4Ss.

9        28.    All critical decisions made with respect to the iPhone 4S's Siri feature, including all

10  decisions concerning the marketing and advertising of the iPhone 4S's Siri feature, were made by

11  Apple employees located in California.  Apple sold the iPhone 4S through retail stores, the Internet,

12  and also through television and other advertisements, all of which led consumers to purchase the

13  iPhone 4S.

14        29.    Defendant's conduct has included the systematic and continuing practice of

15  disseminating false and misleading information throughout the United States, from California, via

16  pervasive multi-media advertising which was and is intended to induce unsuspecting consumers,

17  including Plaintiffs and the members of the Class, into purchasing the more expensive iPhone 4S

18  because of its Siri feature, which does not perform as advertised, although those advertisements

19  serve as the basis for consumers' decisions to purchase the iPhone 4S.

20                          **SUBSTANTIVE ALLEGATIONS**

21  **Background**

22        30.    Apple manufactures, designs, produces, and sells several types of electronic products,

23  including, among others, personal computers, portable music players, cellular phones, and other

24  communication devices.  Among these products is the iPhone 4S, launched in October 2011.

25  **Apple's Deceptive Marketing Campaign**

26        31.    Apple is well known for inventive consumer electronics.  The iPhone 4S, Apple's

27  fifth generation of mobile telephone, was touted by Apple as "the best iPhone yet."  Throughout the

28  relevant period, Apple spent considerable effort through an extensive web, television, and print

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - 4:12-cv-01127-CW

1   advertising campaign to distinguish the iPhone 4S from the previous generation iPhone 4, released

2   just 16 months earlier, by showcasing and highlighting the purported capabilities of the Siri feature

3   on the iPhone 4S.  In fact, as demonstrated below, Siri was *the* principal selling point for the iPhone

4   4S and was the *primary* feature distinguishing the iPhone 4S from prior versions of the iPhone.

5          32.     To be sure, upon the launch of the iPhone 4S, Apple marketed the iPhone 4S

6   nationwide in a video stating, "How do you improve on something so extraordinary?"  The answer:

7   "now we're introducing Siri."

8          33.     On October 4, 2011, Apple issued a press release introducing Siri to the world and

9   touted its benefits, stating:[3]

10         iPhone 4S also introduces Siri, an *intelligent* assistant that *helps you* get things done
           just by asking.  Siri *understands* context allowing you to speak naturally when you
11         ask it questions, for example, if you ask "Will I need an umbrella this weekend?" it
           *understands* you are looking for a weather forecast.  Siri is also *smart* about using
12         the personal information you allow it to access, for example, if you tell Siri "Remind
           me to call Mom when I get home" *it can find* "Mom" in your address book, or ask
13         Siri "What's the traffic like around here?" and *it can figure out* where "here" is
           based on your current location.  Siri *helps you* make calls, send text messages or
14         email, schedule meetings and reminders, make notes, search the Internet, find local
           businesses, get directions and more.  You can also *get answers, find facts and even*
15         *perform complex calculations just by asking.*

16         34.     On that same day, Apple also held a press conference where it introduced Siri as a

17   "digital assistant" and "*the coolest feature of the new iPhone 4S*" (the "iPhone 4S presentation").[4]

18   During the interactive demonstration, Siri was asked a variety of questions, and responded to each

19   and every one of those questions correctly.  Siri was asked live "Do I need a raincoat today?" and

20   promptly replied, "It sure looks like rain today" and displayed the weather forecast.  Throughout the

21   iPhone 4S presentation, the presenter also asked Siri, "What time is it in Paris?" and Siri responded

22   that the "time in Paris, France is 8:16 PM," and the iPhone 4S screen then showed a clock with that

23   time.  The presenter asked Siri to "wake me up tomorrow at 6 a.m.," and Siri responded showing that

24   an alarm was "on" and said, "OK, I set it for 6 am."  The presenter also asked, "How is the

25

26   ─────────────
     [3]  *See* http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud .html
     (last visited Feb. 27, 2012) (emphasis added).

27   [4]  *See* "Apple Special Event: October 4, 2011," http://www.apple.com/apple-events/october-2011
28   (last visited Aug. 1, 2013).

1  NASDAQ doing today?," and Siri responded that "the NASDAQ Composite is down right now, at

2  2,321.70" and showed a graph.  The presenter told Siri, "Find me a great Greek restaurant in Palo

3  Alto," and Siri displayed a list of restaurants, sorted by rating.  The presenter directed Siri to "define

4  Mitosis," and Siri responded, "Let me think about that.  I found this for you" and displayed a

5  definition of Mitosis on the screen.  The presenter also asked, "How many days are there until

6  Christmas," and Siri responded, "Let me check on that. . . One moment . . . I found this for you" and

7  displayed a screen showing the number of days until Christmas Day, along with other information.

8  The presenter also reiterated that it was "easy" to use Siri and that users do not need to use precise

9  words to use Siri but rather that Siri understands general words and "conceptual questions" to

10  determine what the user is requesting.

11        35.    Nowhere during the iPhone 4S presentation, in Apple's press release, or in Apple's

12  initial video did Apple disclose to consumers that the Siri feature would not be able to answer

13  questions or perform tasks on a consistent basis as represented by Apple in its advertisements and

14  marketing materials.  Among other things, Siri often failed to understand context or natural speech.

15  Siri failed to respond to questions based on the user's current location and was unable to respond to

16  conceptual questions.

17        36.    Also on or around October 4, 2011, Apple began sending its customers e-mails

18  announcing the launch of the iPhone 4S and giving customers the option to pre-order the iPhone 4S

19  (the "iPhone 4S pre-order email").  The iPhone 4S pre-order email stated, "iPhone 4S Dual-core A5

20  chip.  All-new 8MP camera and optics.  iOS 5 and iCloud.  And introducing Siri.  It's the most

21  amazing iPhone yet."  In addition, the e-mail included a link to  a video with the phrase "Watch the

22  iPhone 4S video" (the "iPhone 4S Video").

23        37.    When consumers clicked on the iPhone 4S Video, they were brought to Apple's

24  website, www.apple.com, where the video predominately displayed and depicted multiple

25  demonstrations involving Siri and its purported capabilities.[5]  The iPhone 4S Video goes on to show

26  various examples of users speaking naturally into Siri, Siri being able to understand their questions

27  _____

[5]  *See* Apple Inc., "Watch the iPhone 4S video," http://www.apple.com/iphone (last visited

28  Feb. 27, 2012).

1  and commands, and responding to those questions and/or commands accurately.  For example, in

2  response to "Find me an Italian restaurant in North Beach," Siri promptly answers, "OK these

3  25 Italian restaurants are in North Beach" as the iPhone 4S user screen shows the name and star

4  rating of 25 Italian restaurants located in North Beach.  Next, the iPhone 4S Video shows a man

5  jogging and asking Siri to "Move my meeting with Kelly Altech to 12:00 p.m."  Siri promptly

6  responds, "Note that you already have a meeting about budgets at 12 p.m."

7         38.    During the iPhone 4S Video, Scott Forstall, Senior Vice President iOS Software,

8  further comments on Siri, stating, "Siri is a whole new way of interacting with your iPhone, using

9  just your voice . . . . ***It's like this amazing assistant that listens to you, understands you, can***

10 ***answer your questions and can even accomplish tasks for you. . . . A lot of devices can recognize***

11 ***the words you say, but the ability to understand what you mean and act on it, that's the***

12 ***breakthrough with Siri***."

13        39.    Mr. Forstall's statements were false and misleading.  Siri was no breakthrough, was

14 not an amazing assistant, did not understand what consumers were asking it, did not answer

15 consumers' questions, and was unable to accomplish simple tasks.

16        40.    Nevertheless, Apple's website also touted Siri as ***the*** major selling point of the

17 iPhone 4S.  For example, throughout the relevant period, the iPhone tab on Apple's website would

18 bring customers to a welcome screen stating:[6]

19        Introducing Siri.

20        The intelligent assistant
         that's there to help. Just ask.

21

22        Ask Siri to make calls, send texts, set reminders, and more. Just talk the way you
         talk.  Siri understands what you say and knows what you mean.

23        41.    Moreover, the "Frequently Asked Questions" page of Apple's website touted Siri as

24 follows:[7]

25

26

_____

27  [6]  *See* http://www.apple.com/iphone/ (last visited Feb. 27, 2012).

28  [7]  *See* http://www.apple.com/iphone/features/siri-faq.html (last visited Feb. 27, 2012).

## What is Siri?

Siri is the intelligent personal assistant that helps you get things done just by asking. It allows you to use your voice to send messages, schedule meetings, place phone calls, and more. But Siri isn't like traditional voice recognition software that requires you to remember keywords and speak specific commands. Siri understands your natural speech, and it asks you questions if it needs more information to complete a task.

\*        \*        \*

### Do I have to say things a certain way to get Siri to respond?

No. You can speak to Siri as you would to a person — in a natural voice with a conversational tone. If you want to know what the weather will be like tomorrow, simply say "What will the weather be like tomorrow?" Or "Does it look like rain tomorrow?" Or even "Will I need an umbrella tomorrow?" No matter how you ask, Siri will tell you the forecast.

\*        \*        \*

## What Siri Can Do For You

### What types of things can I ask Siri about or ask it to do?

You can ask Siri to make a call, find a business and get directions, schedule reminders and meetings, search the web, and more. You can even ask Siri "What can you do for me?" or tap the "i" in the right corner of the screen when you bring Siri up. You'll see examples of things Siri can do, along with ways you can ask for things.

42.    As part of its nationwide marketing campaign for the iPhone 4S, Apple also aired various video advertisements, the vast majority of which focused exclusively on Siri. Indeed, seven out of the ten commercials Apple used to market the iPhone 4S focused solely on Siri.[8]

43.    These Siri commercials depicted individuals using Siri, without a single hiccup, to, among other things, make appointments, find restaurants, send text messages, learn guitar chords to classic rock songs, and how to tie a tie.

44.    On or around October 4, 2011, Apple began a nationwide marketing blitz for the iPhone 4S with a video advertisement entitled "Introducing Siri," which showed Siri being able to easily understand, answer, and/or perform the questions and commands of five different individuals' voice commands (including one that is in the middle of running).[9]  In the Introducing Siri commercial, when Siri is asked the vague question of "What's the traffic like around here?" Siri

---

[8]    *See* a true and correct copy of the web page containing videos of Apple's television commercials for the iPhone 4S, attached to the Declaration of Scott Maier in Support of Apple's Inc.'s Motion to Dismiss Consolidated Class Action Complaint as Exhibit 6 [D.E. 33-6].

[9]    *See* http://www.youtube.com/watch?v=8ciagGASro0 (last visited Aug. 1, 2013).

1    understands the question and promptly responds "Here's the traffic" and provides traffic patterns on

2    a map:



3

4

5

6

7

8

9

10

11        45.    The Introducing Siri commercial also shows Siri responding to users' questions and

12    commands by correctly and promptly reading text messages aloud, crafting and sending text

13    messages, playing a user's music mix, giving weather information for San Francisco and Napa

14    Valley, providing information related to how many cups are in 12 ounces, and setting the phone

15    timer for 30 minutes.  *Id.*

16        46.    Likewise, Apple's "Siri, Snow Today" commercial, which began airing around

17    October 31, 2011, shows Siri responding correctly and promptly to the various questions of four

18    different individuals, including a child.[10]  Siri is able to understand what the users are saying and

19    provide adequate and prompt responses to their commands and/or questions.  The Siri, Snow Today

20    commercial begins with a woman asking, "What's my day look like," and Siri promptly responds

21    with "Not bad, only two meetings today."  *Id.*  Next, a man asks Siri, "Can I walk to the Belvedere

22    Hotel from here?"  Siri promptly responds with "Here are directions to the Belvedere hotel," and a

23    map with directions appears on the user's iPhone 4S screen.  *Id.*  The commercial ends with a child

24    asking "Do you think it will snow today?"  Siri promptly responds stating, "It sure looks like snow

25    today," and the weather forecast appears on the user's iPhone 4S screen:

26

27

28    _____

    [10]   *See* http://www.youtube.com/watch?v=54P5PR0I6pU (last visited Aug. 1, 2013).



47.     On or about December 1, 2011, Apple began sending its customers e-mails marketing the iPhone 4S for the holiday season (the "iPhone 4S holiday email").  The iPhone 4S holiday email encouraged its recipients to give the iPhone 4S as a gift.  The iPhone 4S holiday email stated "Give the phone that everyone's talking about.  And talking to.  iPhone 4S comes with an all-new 8MP camera, iOS 5, iCloud, and Siri: the intelligent assistant you can ask to make calls, send texts, set reminders, and more."

48.     On or around February 10, 2012, Apple started airing another iPhone 4S commercial focusing on Siri entitled "Road Trip" that shows a couple asking Siri numerous questions while traveling to Santa Cruz, California, including "Where is the best barbeque in Kansas City?," "Is there a rodeo in Amarillo today?," and "How big is the Grand Canyon?"[11]  In response to the question "[Are there] any gas stations we can walk to?," Siri immediately answers, "I found two gas stations fairly close to you," and the names and star ratings of two gas stations show up on the user's iPhone 4S screen.  *Id.*  Similarly, when asked "What does Orion look like?"  Siri promptly responds with a map of the Orion constellation and states, "I found this for you."  *Id.*

49.     Likewise, in the television commercial for the iPhone 4S broadcast nationwide by Apple entitled "Rock God" that began airing around February 10, 2012, a guitar player asks Siri numerous questions including, "How do I play London Calling?" and "[How do I play] Whole Lotta

---

[11]  Apple Inc., "TV Ads,"http://www.apple.com/iphone/videos/#tv-ads-rockgod (last visited Feb. 27, 2012).

Love?"[12]  In response to the question "[How do I play] a B Minor Ninth?," Siri promptly responds with the correct notes, chord, and sheet music:



50.    Moreover, in Apple's Rock God commercial for the iPhone 4S, when Siri is asked to "Tell Julie and Kate our band is playing at the garage tonight," Siri promptly and adequately responds, "Here is your message to Julie and Kate" and immediately formulates the below message on the user's iPhone 4S screen:



---

[12]   Apple Inc., "TV Ads,"http://www.apple.com/iphone/videos/#tv-ads-roadtrip (last visited Feb. 27, 2012).

1    51.    As demonstrated above, Apple's extensive nationwide marketing campaign for the

2    iPhone 4S showcased Siri's alleged capabilities, and gave the distinct impression that Siri was a

3    "breakthrough" and a voice-activated, "intelligent," personal assistant.  Apple's advertisements for

4    the iPhone 4S emphasized that Siri was more than just voice recognition software – it could

5    purportedly understand an individual's natural speech and could correctly and promptly act on it.

6    Apple's advertisements depicted individuals using Siri to look up answers to complex and

7    conceptual questions, to aid in performing specific tasks, and easily and promptly provide the user

8    with requested information.    Apple never once mentioned that Siri was incapable of actually

9    performing as advertised and marketed.

10    52.    Apple's marketing campaign was a rousing success.  On January 25, 2012, Apple

11    issued its financial results for its fiscal 2012 first quarter ending December 31, 2011, where it

12    reported selling approximately 37 million iPhones for the quarter.  According to an iPhone blog,

13    approximately 89% of the 37 million iPhones sold that quarter were iPhone 4Ss.[13]  In addition, the

14    blog estimated that approximately 42% of current iPhone 4S users cancelled their contracts with

15    other carriers in order to purchase the iPhone 4S.[14]  Indeed, a Consumer Intelligence Research poll

16    of 6,316,365 iPhone users found that from October 2011 through the end of 2011, 36% of iPhone 4S

17    users had switched from a different platform.[15]

18    53.    In addition, because the iPhone 4S contained this new Siri feature so highly touted by

19    Apple, Apple was able to charge a substantial premium for the iPhone 4S.  According to Apple's

20    website, at the time the iPhone 4S was launched, its price started at $199, while the iPhone 4 started

21

22

23

24

---

25    [13]  *See*    http://www.theiphoneblog.net/iphone-4s-contributed-89-of-total-us-iphone-sales/    (last
visited Feb. 27, 2012).

26    [14]  *Id.*

27    [15]  *See* http://www.phonearena.com/news/Breaking-down-Apple-iPhone-4S-buyers-with-statistics_
28    id26184 (last visited Feb. 27, 2012).

1    at $99.[16]  Currently, an iPhone 4S starts at $99 and an iPhone 4 starts at $0, excluding a wireless

2    service plan.[17]

3    **Plaintiffs Purchase Their iPhone 4Ss Because of Siri**

4        **Plaintiff Fazio**

5        54.    On or around November 19, 2011, Fazio purchased an iPhone 4S, Serial Number

6    C39GFCDJDTFF, from a Best Buy retail store in Brooklyn, New York, for the price of $299.

7        55.    Fazio purchased the iPhone 4S because he saw and reasonably relied upon Apple's

8    television commercials and Apple's representations made about Siri during various presentations and

9    on Apple's website prior to the purchase of his iPhone 4S.  Specifically, Fazio saw and reasonably

10   relied upon Apple's "Introducing Siri" and "Siri, Snow Today" commercials, as well as Apple's

11   representations about Siri made on Apple's website, www.apple.com.

12       56.    According to Fazio, who speaks fluent English, Apple's commercials and

13   representations gave him the reasonable expectation that Siri would be able to understand his voice,

14   the questions and/or commands he was saying, know what those questions and/or commands meant,

15   and provide an adequate response to them on a consistent basis.  In addition, based upon Apple's

16   representations of what types of questions Siri could understand and was able to answer, Fazio

17   expected that he could speak to Siri in a natural, colloquial manner and that on a consistent basis Siri

18   would be able to understand and answer questions regarding general facts, locations, and directions

19   based on where he was when he spoke to Siri.

20       57.    Promptly after the purchase of his iPhone 4S, Fazio realized that Siri was not working

21   as Apple advertised it would or as he reasonably expected it would.  Instead of understanding what

22   Fazio was asking and answering his questions, Siri would either think for a long period of time and

23   never respond, or would respond with "I don't understand."

24

25   _____

[16]  *See* http://store.apple.com/us/browse/home/shop_iphone/family/iphone/iphone4s (last visited
26   Feb. 28, 2012).

27   [17]  *See* http://store.apple.com/us/buy/home/shop_iphone/family/iphone4s?product=IPHONE4S (last
     visited Aug. 5, 2013); http://store.apple.com/us/buy/home/shop_iphone/family/iphone4?product=
28   IPHONE4 (last visited Aug. 5, 2013).

1    58.    The following are examples of specific instances where Siri failed to meet Fazio's

2    expectations and failed to perform as advertised by Apple.

3         (a)    Within the first month of owning his iPhone 4S, Fazio asked Siri, "Which has

4    more fat?" and then mentioned two different McDonald's sandwich choices while at a McDonald's

5    drive-through.  Fazio expected that Siri would provide him with the fat content of the two

6    McDonald's sandwiches.  Siri did not correctly respond to Fazio's conceptual question.  Instead, and

7    after thinking for a long period of time, Siri eventually timed out and/or stated, "I don't understand."

8    The fat content of McDonald's sandwiches is easily found on google.com and comparable search

9    engines by searching "fat content Mcdonalds."

10        (b)    Within the first month of owning his iPhone 4S, Fazio asked Siri about the

11   teaching term "guided reading."  Fazio expected that Siri would respond with information related to

12   the guided reading teaching technique which assists students in reading.  Siri did not correctly

13   respond to Fazio's question.  Instead, Siri either timed out and/or stated, "I don't understand."

14   Information about the guided reading teaching technique is easily found on google.com and

15   comparable search engines by searching "guided reading."

16        (c)    Within the first month of owning his iPhone 4S, Fazio, while in Brooklyn,

17   New York, asked Siri for "directions to Dr. Fiasconaro."  Fazio expected that Siri would be able to

18   locate Dr. Fiasconaro's office, located in Brooklyn, New York.  Siri did not correctly respond to

19   Fazio's question.  Instead, Siri either timed out or stated, "I don't understand."  Dr. Fiasconaro's

20   office is located at 7502 Colonial Road Bay Bridge, Brooklyn, New York, 11209, and the address is

21   easily found on google.com and comparable search engines by searching "Dr. Fiasconaro."

22        (d)    Within the first month-and-a-half of owning his iPhone 4S, Fazio asked Siri,

23   "Where is Funtasia?" while driving in his car in Brooklyn, New York.  Fazio expected that Siri

24   would be able to locate Funtasia Party Place, a children's party venue located in Brooklyn, New

25   York, and respond with its address.  Siri did not correctly respond to Fazio's question.  Instead, and

26   after thinking for a long period of time, Siri eventually timed out and did not respond.  Funtasia

27   Party Place is located at 1726 Bath Avenue, Brooklyn, New York 11214, and is easily found on

28   google.com and comparable search engines by searching "Funtasia."

59.    According to Fazio, the types of questions and commands that he asked Siri were very similar to those he had seen Siri perform in Apple's Introducing Siri and Siri, Snow Today commercials, and consistent with the marketing materials about Siri he had read on Apple's website prior to purchasing his iPhone 4S.   Based on Apple's representations and the message they conveyed, Fazio reasonably expected that Siri would be able to respond to his questions on a consistent basis.  However, Siri was unable to meet Fazio's reasonable expectations that Siri would consistently be able to understand his questions and/or commands, understand context, permit him to speak naturally, direct him to locations based upon his current locations, know what he meant, and provide an adequate response to those questions and/or commands.  Siri failed to meet Fazio's expectations that Siri would work as advertised.

60.    Fazio has been damaged in that he purchased an iPhone 4S at a premium price and has lost money he spent purchasing his iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature.  He would not have paid the price he paid for the iPhone 4S if he had not seen and relied upon these representations.

**Plaintiff Hamagaki**

61.    Shortly after Apple announced the iPhone 4S and falsely promoted the benefits that Siri would provide, Hamagaki pre-ordered her iPhone 4S online through Apple's website, via a link that was included in Apple's iPhone 4S pre-order email.  On November 6, 2011, Hamagaki purchased and picked up her iPhone 4S at Apple's retail store located at 1415 Third Street Promenade, Santa Monica, California, 90401 for the price of $199.

62.    Hamagaki purchased the iPhone 4S because she saw and reasonably relied upon Apple's television commercials and Apple's representations made about Siri during various presentations and on Apple's website prior to the purchase of her iPhone 4S.

63.    Specifically, Hamagaki saw and reasonably relied upon the iPhone 4S Video, the Introducing Siri commercial, the iPhone 4S pre-order email, as well as Apple's representations about Siri made on Apple's website, including www.apple.com, www.apple.com/iphone, www.apple.com/iphone.features/siri, and www.apple.com/iphone/features/siri-faq.html.

64.    According to Hamagaki, who speaks fluent English, Apple's commercials, videos, and representations gave her the reasonable expectation that Siri would be able to understand her voice, the questions and/or commands she was saying, know what those questions and/or commands meant, and provide an adequate response to them on a consistent basis.  In addition, based upon Apple's representations of what types of questions Siri could understand and was able to answer, Hamagaki expected that she could speak to Siri in a natural, colloquial manner and that on a consistent basis Siri would be able to understand and answer questions regarding general facts, locations, and directions based on where she was when she spoke to Siri.

65.    Soon after she purchased her iPhone 4S, Hamagaki realized that Siri was not working as Apple advertised it would or as she reasonably expected it would.  Instead of understanding what Hamagaki was asking and answering her questions, Siri would think for a long period of time and respond with "I don't understand."  As a result, according to Hamagaki, the iPhone 4S is nothing but a more expensive iPhone 4.

66.    The following are examples of specific instances where Siri failed to meet Hamagaki's expectations and failed to perform as advertised by Apple.

(a)    On or around February or March 2012, Hamagaki, while in Los Angeles, California, asked Siri the locations of specific parks by name, stating, "Where is Mason Park?" and "Where is Balboa Park?"  Hamagaki expected that Siri would respond with the addresses of Mason Park and Balboa Park, both located in the Los Angeles, California area.  Instead, after thinking for a long period of time, Siri responded with "I don't understand."  Mason Park is located at 10500 Mason Avenue, Chatsworth, California 91311, and Balboa Park, also currently known as Anthony C. Beilenson Park, is located at 6300 Balboa Blvd., Van Nuys, California 91406.  Chatsworth and Van Nuys are districts located within the city of Los Angeles, California.  Both parks are easily found on google.com and comparable search engines by searching "mason park" and "balboa park."

67.    According to Hamagaki, the types of questions and commands that she asked Siri were very similar to those she had seen Siri perform in Apple's Introducing Siri commercial, the iPhone 4S Video, and consistent with what she had read about Siri on Apple's website prior to purchasing her iPhone 4S.  Based on Apple's representations and the message they conveyed,

1   Hamagaki expected that Siri would be able to respond to Hamagaki's questions on a consistent basis.

2   As demonstrated above, Siri was unable to meet Hamagaki's expectations that Siri would on a

3   consistent basis be able to understand her questions and/or commands, understand context, permit

4   her to speak naturally, direct her to locations based upon her current location, know what she meant,

5   and provide an adequate response to those questions and/or commands.  Siri failed to meet

6   Hamagaki's expectations that Siri would work as advertised.

7   68.    Hamagaki has been damaged in that she purchased an iPhone 4S at a premium price

8   and has lost the money she spent purchasing her iPhone 4S while being misled about the utility of

9   the iPhone 4S's Siri feature.  She would not have paid the price she paid for the iPhone 4S if she had

10  not seen and relied upon these representations.

11  **Plaintiff Balassone**

12  69.    On October 20, 2011, Balassone purchased an iPhone 4S, Serial Number

13  DNQGJ0YFDFTDC, from an Apple retail store in Rockaway, New Jersey, for the price of $299.

14  70.    Balassone purchased the iPhone 4S because he saw and reasonably relied upon

15  Apple's television commercials and Apple's representations made about Siri during presentations

16  and on Apple's website prior to the purchase of his iPhone 4S.  Specifically, Balassone saw and

17  reasonably relied upon the Introducing Siri commercial, as well as Apple's representations about Siri

18  during the interactive demonstrations performed during the iPhone 4S presentation.

19  71.    According to Balassone, who speaks fluent English, Apple's commercials and

20  representations gave him the reasonable expectation that Siri properly functioned as a "personal

21  assistant."  For example, Balassone expected that on a consistent basis Siri would be able to

22  understand his voice, the questions and/or commands he was saying, know what those questions

23  and/or commands meant, and provide an adequate response to them.  In addition, based upon

24  Apple's representations of what types of questions Siri could understand and was able to answer,

25  Balassone expected that he could speak to Siri in a natural, colloquial manner and that on a

26  consistent basis Siri would be able to understand and answer questions regarding general facts,

27  including weather and musical cords.  For example, at the iPhone 4S presentation, Siri was

28  introduced at the press conference as a "digital assistant," and during the interactive demonstration,

1  when Siri was asked live "Do I need a raincoat today," Siri promptly replied "It sure looks like rain

2  today" and displayed the weather forecast.

3      72.    Promptly after the purchase of his iPhone 4S, Balassone realized that Siri was not

4  working as Apple advertised it would or as he reasonably expected it would.  Instead of consistently

5  understanding what Balassone was asking and answering his questions, Siri frequently gave

6  Balassone wrong answers.

7      73.    The following are examples of specific instances where Siri failed to meet

8  Balassone's expectations and failed to perform as advertised by Apple.

9          (a)    On or around February 2012, Balassone attempted to mirror the commands

10  given to Siri in Apple's Rock God television commercial, discussed in further detail above.  For

11  example, Balassone asked Siri, "How do you play an A chord?"  Balassone expected that Siri would

12  respond with the proper notes, chord, and sheet music, as Siri does in the Rock God commercial in

13  response to the question, "[How do I play] a B minor Ninth?"  Siri did not correctly respond to

14  Balassone's question.  Instead, Siri answered, "OK, how about a web search for 'how do you plan a

15  quart?'"  As detailed above, Apple represented that Siri was able to understand and respond to an

16  almost identical question correctly in the Rock God commercial.

17          (b)    Also on or around February 2012, Balassone again attempted to mirror the

18  commands given to Siri in Apple's Rock God television commercial.  Balassone asked Siri, "How

19  do you play a B minor chord?"  Balassone expected that Siri would respond with the proper notes,

20  chord, and sheet music, as Siri does in the Rock God commercial in response to the question, "[How

21  do I play] a B minor Ninth?"  Siri did not correctly respond to Balassone's question.  Instead, Siri

22  responded, "looking for B minor chord," followed by "still thinking," and eventually responded

23  "Sorry, I couldn't find B minor chord in your music."  As detailed above, Apple represented that Siri

24  was able to understand and respond to an almost identical question correctly in the Rock God

25  commercial.

26      74.    According to Balassone, the types of questions and commands that he asked Siri were

27  very similar to those he had seen Siri perform in Apple's Introducing Siri commercial and in the

28  iPhone 4S presentation prior to purchasing his iPhone 4S.  In addition, the questions he asked Siri

1    were almost identical to what he had seen Siri understand and respond to correctly in Apple's Rock

2    God commercial. Based on Apple's representations and the message they conveyed, Balassone

3    reasonably expected that Siri would be able to respond to Balassone's questions on a consistent

4    basis. However, Siri was unable to meet Balassone's reasonable expectations that Siri would be able

5    to easily understand his questions and/or commands, understand context, permit him to speak

6    naturally, know what he meant, and provide an adequate response to those questions and/or

7    commands. Siri failed to meet Balassone's expectations that Siri would work as advertised.

8         75.    Balassone has been damaged in that he purchased an iPhone 4S at a premium price

9    and has lost money he spent purchasing his iPhone 4S while being misled about the utility of the

10    iPhone 4S's Siri feature. He would not have paid the price he paid for the iPhone 4S if he had not

11    seen and relied upon these representations.

12    **Plaintiff Swartzman**

13         76.    On January 7, 2012, Swartzman purchased an iPhone 4S, Serial Number

14    DNPGYP8TDT9V, from an Apple retail store in San Luis Obispo, California, for the price of $199.

15         77.    Swartzman purchased the iPhone 4S because he saw and reasonably relied upon

16    Apple's television commercials and Apple's representations made about Siri prior to the purchase of

17    his iPhone 4S. Specifically, Swartzman saw and reasonably relied upon Apple's iPhone 4S pre-

18    order email, iPhone 4S Video, and the iPhone 4S holiday email.

19         78.    According to Swartzman, who speaks fluent English, Apple's commercials and

20    representations gave him the reasonable expectation that Siri properly functioned as a "personal

21    assistant." For example, Swartzman expected that on a consistent basis Siri would be able to

22    understand his voice, the questions and/or commands he was saying, know what those questions

23    and/or commands meant, and provide an adequate response to them. In addition, based upon

24    Apple's representations of what types of questions Siri could understand and was able to answer,

25    Swartzman expected that he could speak to Siri in a natural, colloquial manner and that on a

26    consistent basis Siri would be able to understand and answer questions regarding general facts,

27    including weather and the timing of holidays.

28

79.    Promptly after the purchase of his iPhone 4S, Swartzman realized that Siri was not working as Apple advertised it would or as he reasonably expected it would.  Instead of understanding what Swartzman was asking and answering his questions, Siri frequently gave Swartzman wrong answers or did not understand what he was asking and would respond with "I don't understand."

80.    The following are examples of specific instances where Siri failed to meet Swartzman's expectations and failed to perform as advertised by Apple.

(a)    On or around March 17, 2012, Swartzman asked Siri "When is St Patrick's Day?"  Swartzman expected that Siri would respond with March 17, 2012.  Siri did not correctly respond to Swartzman's question.  Instead, Siri answered, "Sorry, I don't understand 'When is St. Patrick's Day.'"  The date of St. Patrick's day in 2012, as in every year, March 17, 2012, is easily found on google.com and comparable search engines by searching "st patrick day 2012."

(b)    On or around March 15, 2012, Swartzman asked Siri, "What is the weather in Palm Springs?"  Swartzman expected that Siri would respond with the current weather conditions in Palm Springs, California.  Siri did not correctly respond to Swartzman's question.  Instead, Siri did not understand what he was asking for, and provided him with something other than the weather in Palm Springs.  The current weather in Palm Springs, California is easily found on google.com and comparable search engines by searching "palm springs weather."

(c)    Swartzman also attempted to use Siri to make phone calls, asking Siri to "call" a specific person who was listed in his contacts.  Swartzman expected that Siri would call that person.  Siri did not correctly respond to Swartzman's question.  Instead, Siri would get the specific person's name wrong and/or answer, "I don't understand."  Swartzman also attempted to use Siri to send an email to a specific person who was listed in his contacts.  Swartzman expected that Siri would send an email to that specific person.  Instead, Siri would get the specific person's name wrong.  Siri repeatedly gave the wrong names and numbers of people that he was trying to contact.

81.    According to Swartzman, the types of questions and commands that he asked Siri were very similar to those he had seen Siri perform in Apple's iPhone 4S Video he saw prior to purchasing his iPhone 4S.  Based upon Apple's representations and the message they conveyed,

Swartzman expected that Siri would be able to respond to his questions on a consistent basis. However, Siri was unable to meet Swartzman's reasonable expectations that on a consistent basis Siri would be able to understand his questions and/or commands, understand context, permit him to speak naturally, know what he meant, and provide an adequate response to those questions and/or commands. Siri failed to meet Swartzman's expectations that Siri would work as advertised.

82.    Swartzman has been damaged in that he purchased an iPhone 4S at a premium price and has lost money he spent purchasing his iPhone 4S while being misled about the utility of the iPhone 4S's Siri feature. He would not have paid the price he paid for the iPhone 4S if he had not seen and relied upon these representations.

**Defendant Knew that Siri Did Not Perform As Advertised**

83.    Upon information and belief, Plaintiffs' problems with Siri are not unique, have always been present in the iPhone 4S, and continually occur. In fact, the *Huffington Post* published an article entitled "Apple's Siri 'Rock God' Commercial: How Accurate Is It, Really?," which was accompanied by a video entitled "A Scientific Ex-Siri-Ment" showing *Huffington Post* blogger, Jason Gilbert, repeating every voice command prompt in Apple's Rock God commercial word for word.[18]

84.    The video depicts Siri responding to only two of seven prompts in the Rock God commercial on the first try as it did in the advertisements, including one response that came after an extreme time lag. Moreover, in response to the "Tell Julie and Kate our band is playing at the garage tonight," Siri responded with "Are band is playing at the garage tonight" – using "Are" instead of "Our."

85.    In addition to the fact that Siri does not perform as advertised, news reports showed that continuous Siri usage dramatically increases an iPhone 4S users' monthly data usage and can easily push users over their data plans.[19]

---

[18] *See* http://www.huffingtonpost.com/jason-gilbert/apples-siri-rock-god-commercial-accuracy-test_b_1341769.html (last visited Apr. 3, 2012).

[19] *See* Jacqui Cheng, *Siri, how much data do you gobble up in a month?* ArsTechnica, http://arstechnica.com/apple/news/2011/11/how-data-heavy-is-siri-on-an-iphone-4s-ars-investigates.ars (last visited Mar. 6, 2012).

1    86.    Apple had actual or constructive knowledge of the shortcomings of the iPhone 4S's

2    Siri feature prior to its distribution.  Indeed, buried in small print on Apple's website is the

3    amorphous sentence: "Siri is currently in beta and we'll continue to improve it over time."[20]

4    87.    Even one of Apple's co-founders, Steve Wozniak ("Wozniak"), is reported to have

5    expressed criticism of Siri's inability to respond to basic questions and commands on a consistent

6    basis.  In a June 2012 interview, Wozniak referred to Siri as "poo-poo" and stated that he was "really

7    disappointed" with the quality of Siri, adding that Siri "should be smart enough to look at the words

8    you say and know what you're asking."[21]

9    88.    To the detriment of consumers, however, the bulk of Apple's massive marketing and

10   advertising campaign, including its dominant and expansive television commercials, failed to

11   mention the word "beta," what the term "beta" means, or the fact that Siri is, at best, a work-in-

12   progress.

13   89.    Indeed, it is only through following a series of links within Apple's website,

14   including a footnote at the bottom of a page,[22] that one would learn that Siri is only a work-in-

15   progress.[23]

16   90.    Similarly, Apple never disclosed to consumers that the Siri transactions depicted in its

17   television commercials are fiction and that actual consumers using actual iPhone 4Ss cannot

18   reasonably expect Siri to perform the tasks performed in Apple's commercials on a consistent basis.

19   Instead, Apple chose to show consumers advertisements where Siri acts without complications,

20   rather than how Siri actually performs in the real world.

21

22

23

24   [20]   *See* http://www.apple.com/iphone/features/siri-faq.html (last visited Feb. 27, 2012).

25   [21]   *See* Salvador Rodrigues, Apple cofounder Steve Wozniak isn't a fan of 'poo-poo' Siri,
     latimes.com (June 15, 2012), available at: http://articles.latimes.com/2012/jun/15/business/la-fi-tn-
26   wozniak-not-siri-fan-20120614 (last accessed Aug. 6, 2013).

27   [22]   *See* http://www.apple.com/iphone/features/#siri (last visited Feb. 27, 2012), at n.1.

28   [23]   *See* http://www.apple.com/iphone/features/siri-faq.html (last visited Feb. 27, 2012).

91.     The information withheld from Plaintiffs and the other Class members is material and would have been considered by a reasonable person, as are the misrepresentations regarding Siri, all as more detailed herein.

92.     In March 2012, Apple released a software update designed to address numerous software issues.  Balassone and Swartzman updated their software, but the update did not in any way improve Siri's functionality.[24]

## CLASS ACTION ALLEGATIONS

93.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the following Class:

All persons in the United States who purchased, for use and not resale, an Apple iPhone 4S (the "Class").  Specifically excluded from the proposed Class are Defendant and its officers, directors, agents, trustees, parents, corporations, trusts, representatives, employees, principals, partners, joint ventures, and entities controlled by Defendant; its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant; the Judge assigned to this action; and any member of the Judge's immediate family.

94.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment, amended complaint, or at class certification proceedings.

95.     **Numerosity**.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the Class contains millions of members.  The precise number of Class members is unknown to Plaintiffs.  The true number of Class members is known by Defendant, however, and, thus, may be notified of the pendency of this action by first class mail, electronic mail, and published notice.

96.     **Existence and Predominance of Common Questions of Law and Fact**.  Common questions of law and fact exist as to all members of the Class and predominate over any questions

---

[24]   The update did add languages understood by Siri but did not address Siri's overall deficiencies.

1   affecting only individual Class members. These common legal and factual questions include, but are

2   not limited to, the following:

3           (a)     Whether Siri works as advertised;

4           (b)     Whether Defendant knew that its representations about Siri were false and

5   misleading but continued to disseminate them;

6           (c)     Whether Defendant's claims are false, misleading, or reasonably likely to

7   deceive;

8           (d)     Whether Defendant engaged in false or deceptive advertising;

9           (e)     Whether Defendant violated the CLRA;

10          (f)     Whether Defendant violated the FAL;

11          (g)     Whether Defendant violated the UCL;

12          (h)     Whether Defendant breached any express warranty to Plaintiffs and the other

13  Class members;

14          (i)     Whether Defendant intentionally misrepresented material facts relating to the

15  character and quality of the iPhone 4S's Siri feature;

16          (j)     Whether Defendant negligently misrepresented material facts relating to the

17  character and quality of the iPhone 4S's Siri feature;

18          (k)     Whether Defendant failed to disclose material facts about the limitations of

19  the performance of the iPhone 4S's Siri feature;

20          (l)     Whether Plaintiffs and the other Class members have sustained monetary loss

21  and the proper measure of that loss;

22          (m)     Whether Plaintiffs and the other Class members are entitled to damages and

23  the proper measure of damages; and

24          (n)     Whether Plaintiffs and the other Class members are entitled to declaratory and

25  injunctive relief.

26          97.     **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class in

27  that Defendant manufactured, marketed, advertised, sold, and warranted the iPhone 4S, including its

28  Siri features, to Plaintiffs and all other members of the Class.

1    98.    **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the

2    interests of the Class.  Plaintiffs have retained counsel highly experienced in complex consumer

3    class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no

4    adverse or antagonistic interests to those of the Class.

5    99.    **Superiority.**  A class action is superior to all other available means for the fair and

6    efficient adjudication of this controversy.  The damages or other financial detriment suffered by

7    individual Class members is relatively small compared to the burden and expense that would be

8    entailed by individual litigation of their claims against Defendant.  It would thus be virtually

9    impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done

10   to them.  Furthermore, even if Class members could afford such individualized litigation, the court

11   system could not.  Individualized litigation would create the danger of inconsistent or contradictory

12   judgments arising from the same set of facts.  Individualized litigation would also increase the delay

13   and expense to all parties and the court system from the issues raised by this action.  By contrast, the

14   class action device provides the benefits of adjudication of these issues in a single proceeding,

15   economies of scale, and comprehensive supervision by a single court, and presents no unusual

16   management difficulties under the circumstances here.

17   100.    In the alternative, the Class may be also certified because:

18   (a)    The prosecution of separate actions by individual Class members would create

19   a risk of inconsistent or varying adjudication with respect to individual Class members that would

20   establish incompatible standards of conduct for Defendant;

21   (b)    The prosecution of separate actions by individual Class members would create

22   a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the

23   interests of other Class members not parties to the adjudications, or substantially impair or impede

24   their ability to protect their interests; and/or

25   (c)    Defendant has acted or refused to act on grounds generally applicable to the

26   Class thereby making appropriate final declaratory and/or injunctive relief with respect to the

27   members of the Class as a whole.

28

1    101.    Certification of the case as a class action under the laws of California is appropriate

2    because:

3        (a)    Apple is a corporation conducting substantial business in and from California;

4        (b)    Apple's principal and executive offices, as well as its corporate headquarters,

5    are located in California, where it employs hundreds of people;

6        (c)    Defendant promotes, markets, distributes, and sells iPhone 4Ss in and from

7    California;

8        (d)    Decisions regarding Apple's advertising and sale of the product were made in

9    California;

10        (e)    Apple's marketing, promotional activities, and literature are coordinated at,

11    emanate from, and/or are developed at its California headquarters;

12        (f)    The UCL and other claims asserted in this Amended Complaint on behalf of

13    the Class may be appropriately brought on behalf of California and out-of-state Class members;

14        (g)    A significant number of members of the Class reside in the State of California;

15        (h)    According to Apple's Software License Agreement governing the iPhone 4S

16    (the "License"), "the License will be governed by and construed in accordance with the laws of the

17    State of California, excluding its conflict of law principles";[25]

18        (i)    According to Apple's Application-Based Services Terms of Use "the laws of

19    the State of California, excluding its conflicts of law rules, govern these Terms and your use of the

20    Services;"

21        (j)    According to Apple's Sales Policies "All US sales are governed by California

22    law;" and

23        (k)    Various other agreements governing the relationship between Apple and the

24    Class similarly state that California law applies.

25

26    [25]  The California choice of law provision language is stated in Apple's iOS 5.1 Software License
     Agreement, iOS 5.0 Software License Agreement, iOS 4.1 Software License Agreement, and iPhone
27    OS 3.1 Software License Agreement.  *See* http://www.apple.com/legal/sla/ (last visited Apr. 5,
     2012).  In addition, both the iOS 5.1 Software License Agreement and iOS 5.0 Software License
28    Agreement specifically mention Siri.  *Id.*

1   102.   The claims asserted herein are applicable to all persons throughout the United States

2   who purchased, for use and not resale, the iPhone 4S.

3   103.   Adequate notice can be given to Class members directly using information

4   maintained in Defendant's records or through notice by publication.

5   104.   Damages may be calculated from the claims data maintained in Defendant's records,

6   so that the cost of administering a recovery for the Class can be minimized.  However, the precise

7   amount of damages available to Plaintiffs and the other members of the Class is not a barrier to class

8   certification.

9   **COUNT I**

10   **Violations of the Consumers Legal Remedies Act**
**California Civil Code §1750, *et seq.***

11

12   105.   Plaintiffs reallege and incorporate by reference the previous allegations as if fully set

13   forth herein.

14   106.   This count is brought pursuant to the CLRA.  Plaintiffs and the other Class members

15   are consumers as defined by California Civil Code §1761(d).  The product is a good within the

     meaning of the CLRA.

16

17   107.   Defendant violated and continues to violate the CLRA by engaging in the following

18   practices proscribed by California Civil Code §1770(a) in transactions that were intended to result in,

     and did result in, the sale of the product:

19

20        (a)     Representing that the iPhone 4S has characteristics and benefits which it does

21   not have;

22        (b)     Representing that the iPhone 4S is of a particular standard, quality, or grade,

23   which it is not;

24        (c)     Advertising the iPhone 4S with intent not to sell it as advertised; and

25        (d)     Representing that the iPhone 4S has been supplied in accordance with

     previous representations when it has not.

26

27   108.   Defendant knew, or should have known, that its representations and advertisements

28   regarding the iPhone 4S were false and misleading.

109.   Defendant's conduct is malicious, fraudulent, and wanton, and provides misleading information.

110.   Pursuant to California Civil Code §1782(d), Plaintiffs seek a Court Order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

111.   Pursuant to California Civil Code §1782, notice to Defendant was satisfied when, on March 16, 2012, Balassone and Swartzman sent a notice letter by certified mail to Defendant's Chief Executive Officer, Tim Cook ("Cook").  Balassone and Swartzman sent Apple a letter advising Apple that it was in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of California Civil Code §1770.[26]  Apple was further advised that in the event the relief requested has not been provided within 30 days, Balassone and Swartzman would seek monetary damages pursuant to the CLRA.

112.   Pursuant to California Civil Code §2012 and 28 U.S.C. §1746, Plaintiffs have each prepared and attached a declaration stating facts showing this action has been commenced in a court described as a proper place for the trial of the action.  *See* D.E. 18-1.

113.   Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil Code §1782.  As a result, Plaintiffs are seeking monetary damages under the CLRA.

114.   As a proximate result of Defendant's deceptive acts, Plaintiffs and the public, including the Class, have been damaged.

115.   Plaintiffs also seek injunctive relief for the violation of the CLRA.

116.   Plaintiffs seek attorney fees and costs as allowed by law.

---

[26]   A true and correct copy of Balassone and Swartzman's March 16, 2012 letter is attached hereto as ***Exhibit A***.  On March 6, 2012, prior to the filing of the Consolidated Complaint, Fazio also sent a letter by certified mail to Cook advising Apple that it was in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of California Civil Code §1770. Fazio also advised Apple that in the event the relief requested has not been provided within 30 days, he would seek monetary damages pursuant to the CLRA.  Cook was also sent a similar letter sometime prior to March 27, 2012 by Mr. David Jones.  *See Jones v. Apple Inc.*, No. 12-cv-02642-JFW-JC, Class Action Complaint (C.D. Cal. Mar. 27, 2012) [D.E. 1].

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**False and Misleading Advertising in Violation of
California Business & Professions Code §17500, *et seq.***

117.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

118.    Defendant's acts and practices as described herein have deceived and/or are likely to deceive members of the Class and the public.  Apple has spent millions of dollars to advertise, including through its website on the Internet, to call attention to, or give publicity to, Apple's iPhone 4S's improved features and functionality.  Apple uniformly advertises the iPhone 4S as "amazing" and "impressive," with images of Siri acting as an efficient and expeditious assistant.

119.    By its actions, Apple is disseminating uniform advertising concerning its products and services that by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §17500, *et seq.*  Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

120.    The above-described false, misleading, and deceptive advertising Apple disseminated continues to have a likelihood to deceive in that Apple has failed to disclose the true and actual performance and functionality of the iPhone 4S's Siri feature.  Apple has failed to instigate a public information campaign to alert consumers of the deficiencies in the iPhone 4S's Siri feature, which continues to create a misleading perception of the iPhone 4S's performance.

121.    In making and disseminating the statements alleged herein, Apple should have known its advertisements were untrue and misleading in violation of California Business & Professions Code §17500, *et seq*.  Plaintiffs and the other Class members based their decisions to purchase the iPhone 4S in substantial part on Defendant's misrepresentations and omitted material facts.  The revenues to Apple attributable to products sold in those false and misleading advertisements amount to millions of dollars for the iPhone 4S.  Plaintiffs and the Class were injured in fact and lost money or property as a result.

122.    The misrepresentations and non-disclosures by Apple of the material facts detailed above constitute false and misleading advertising and, therefore, constitute a violation of California Business & Professions Code §17500, *et seq*.

123.    As a result of Apple's wrongful conduct, Plaintiffs and the Class request that this Court enjoin Apple from continuing to violate California Business & Professions Code §17500, *et seq*. Such conduct is ongoing and continues to this date.  Plaintiffs and the Class are therefore entitled to the relief described below as appropriate for this count.

**COUNT III**

**Violation of California's Unfair Competition Law**
**California Business & Professions Code §17200, *et seq*.**

124.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

125.    The UCL prohibits any "unlawful . . . business act or practice."  Defendant violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, engaging in false and misleading advertising and omitting material facts, as set forth more fully herein, and violating California Civil Code §§1572-1573, 1709-1711, and 1770 and the common law.

126.    Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

127.    The UCL also prohibits any "unfair or fraudulent business act or practice."

128.    Defendant's acts, omissions, misrepresentations, practices, and non-disclosures alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

129.    As stated in this Amended Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in California resulting in harm to consumers.  Plaintiffs assert violations of the public policy of engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.  The conduct constitutes

1   violations of the unfair prong of the UCL.  There were reasonably available alternatives to further

2   Defendant's legitimate business interests, other than the conduct described herein.

3        130.    Defendant's claims, non-disclosures, and misleading statements, as more fully set

4   forth above, were false, misleading, and/or likely to deceive the consuming public within the

5   meaning of the UCL.

6        131.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and

7   the other Class members.  Plaintiffs have suffered injury in fact and have lost money as a result of

8   Defendant's unfair conduct.

9        132.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts and

10  practices in false advertising, entitling Plaintiffs and the other Class members to judgment and

11  equitable relief against Defendant as set forth in the Prayer for Relief.

12       133.    Additionally, pursuant to California Business & Professions Code §17203, Plaintiffs

13  seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent

14  business practices and requiring Defendant to engage in a corrective marketing campaign.

15                              **COUNT IV**

16                       **Breach of Express Warranty**

17       134.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set

18  forth herein.

19       135.    Plaintiffs and the other members of the Class formed a contract with Defendant at the

20  time Plaintiffs and the other Class members purchased Defendant's iPhone 4S.  The terms of the

21  contract include the promises and affirmations of fact and express warranties made by Defendant on

22  its website and through its marketing and advertising campaign that the iPhone 4S's Siri feature

23  performs as advertised, as described above.

24       136.    This marketing and advertising constitutes express warranties, became part of the

25  basis of the bargain, and are part of a standardized contract between Plaintiffs and the other members

26  of the Class on the one hand and Defendant on the other.

27

28

137.    Plaintiffs and the other members of the Class were exposed to these statements and reasonably relied upon such promises and affirmations of fact contained in Apple's marketing campaign.

138.    These warranties were not true, as Siri does not perform as advertised, as described above.

139.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the other members of the Class by not providing the products as advertised and described above.

140.    As a result of Defendant's breach of its contract and express warranties, Plaintiffs and the Class have been damaged in the amount of the purchase price of Defendant's product.

141.    All conditions precedent to Defendant's liability under this express contract, including notice, as described above, have been performed by Plaintiffs and the Class.

**COUNT V**

**Intentional Misrepresentation**

142.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

143.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, marketing, distributing, or selling the iPhone 4S.

144.    Defendant, acting through its officers, agent, servants, representatives, or employees, delivered the iPhone 4S to its own retail stores, distributors, and various other distribution channels.

145.    Defendant willfully, falsely, and knowingly misrepresented various material facts regarding the quality and character of the iPhone 4S's Siri feature. These misrepresentations are contained in various advertising and marketing disseminated or caused to be disseminated by Defendant, and such misrepresentations were further reiterated and disseminated by Defendant's officers, agents, representatives, servants, or employees acting within the scope of their authority, so employed by Defendant to merchandise and market the iPhone 4S. Specifically, Apple's television commercials showed Siri performing a variety of functions and tasks that Siri is incapable of performing in the manner advertised.

1    146.    Defendant's representations were made with the intent that the general public,

2  including Plaintiffs and the other Class members, rely upon them.  Defendant's representations were

3  made with knowledge of the falsity of such statements or in reckless disregard of the truth thereof.  If

4  Plaintiffs and the Class had been aware of these suppressed facts, Plaintiffs and the Class would not

5  have purchased the iPhone 4S at the price sold by Defendant.   In reliance upon these

6  misrepresentations, Plaintiffs purchased the iPhone 4S for use of Siri as described in Defendant's

7  advertising.

8    147.    Upon information and belief, Plaintiffs and the Class allege that Defendant

9  misrepresented material facts with the intent to defraud Plaintiffs and the Class.  The information

10 withheld from Plaintiffs and the other Class members is material and would have been considered by

11 a reasonable person, as are the misrepresentations regarding Siri, all as more detailed herein.

12   148.    Plaintiffs purchased the iPhone 4S under the impression that the iPhone 4S's Siri

13 feature functions as advertised, the direct and proximate results of which were injury and harm to

14 Plaintiffs and the Class.

15                                    **COUNT VI**

16                          **Negligent Misrepresentation**

17   149.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set

18 forth herein.

19   150.    Defendant negligently and recklessly misrepresented various material facts regarding

20 the quality and character of the iPhone 4S's Siri feature, under circumstances where Defendant either

21 knew or reasonably should have known that the representations were not true.   These

22 misrepresentations were contained in various advertising and marketing from Defendant, and such

23 misrepresentations were further reiterated and disseminated by the officers, agents, representatives,

24 servants, or employees of Defendant acting within the scope of their authority.

25   151.    The information withheld from Plaintiffs and the other Class members is material and

26 would have been considered by a reasonable person, as are the misrepresentations regarding Siri, all

27 as more detailed herein.

28

152.   Plaintiffs and the Class purchased the iPhone 4S under the impression that the iPhone 4S's Siri feature functions as advertised, the direct and proximate results of which were injury and harm to Plaintiffs and the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

A.   Certification of this action as a class action, appointment of Plaintiffs as Class Representatives, and appointment of Plaintiffs' Co-Lead Counsel as Class Counsel;

B.   An order declaring the actions complained of herein to be in violation of the statutory laws set forth above, including a preliminary injunction enjoining Defendant from further acts in violation of the CLRA, the UCL, and the FAL pending the outcome of this action;

C.   An order permanently enjoining and restraining Defendant from any further acts in violation of the CLRA, the UCL, and the FAL as set forth above;

D.   An award of compensatory damages, statutory damages, restitution, and all other forms of monetary and non-monetary relief recoverable under California law;

E.   An award of pre-judgment and post-judgment interest;

F.   An award of injunctive relief;

G.   An award of costs, including, but not limited to, discretionary costs, attorneys' fees, and expenses incurred in prosecuting this case; and

H.   Grant such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED: August 6, 2013                         ROBBINS GELLER RUDMAN
                                                         & DOWD LLP
                                              ROBERT M. ROTHMAN


                                              s/Robert M. Rothman
                                         _____
                                              ROBERT M. ROTHMAN

1

2          58 South Service Road, Suite 200
           Melville, NY  11747
3          Telephone: 631/367-7100
           631/367-1173 (fax)
4
           ROBBINS GELLER RUDMAN
5            & DOWD LLP
           RACHEL L. JENSEN
6          655 West Broadway, Suite 1900
           San Diego, CA  92101
7          Telephone:  619/231-1058
           619/231-7423 (fax)
8
           ROBBINS GELLER RUDMAN
9            & DOWD LLP
           STUART A. DAVIDSON
10         MARK J. DEARMAN
           KATHLEEN L. BARBER
11         120 East Palmetto Park Road, Suite 500
           Boca Raton, FL  33432
12         Telephone:  561/750-3000
           561/750-3364 (fax)
13
14         ROBBINS GELLER RUDMAN
             & DOWD LLP
15         SHAWN A. WILLIAMS
           Post Montgomery Center
16         One Montgomery Street, Suite 1800
           San Francisco, CA  94104
17         Telephone:  415/288-4545
           415/288-4534 (fax)
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  312/621-2000
312/641-5504 (fax)

GARDY & NOTIS, LLP
JENNIFER SARNELLI
JAMES S. NOTIS
501 Fifth Avenue, Suite 1408
New York, NY 10017
Telephone: 212/905-0509
212/905-0508 (fax)

GARDY & NOTIS, LLP
CHARLES A. GERMERSHAUSEN
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ  07632
Telephone:  201/567-7377
201/567-7337 (fax)

Co-Lead Counsel for Plaintiffs

1    <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on August 6, 2013, I authorized the electronic filing of the foregoing

3    with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4    the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5    caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6    CM/ECF participants indicated on the attached Manual Notice List.

7        I certify under penalty of perjury under the laws of the United States of America that the

8    foregoing is true and correct.  Executed on August 6, 2013.

9

10                                          s/Robert M. Rothman
                                         ROBERT M. ROTHMAN

11                                     ROBBINS GELLER RUDMAN
                                              & DOWD LLP
12                                     58 South Service Road, Suite 200
                                       Melville, NY  11747
13                                     Telephone: 631/367-7100
                                       631/367-1173 (fax)
14                                     E-mail: rrothman@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 4:12-cv-01127-CW

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Martin Stuart Bakst**
  msb@mbakst.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,b.barnow@barnowlaw.com,s.harris@barnowlaw.com,b.strautins@barnowlaw.com

- **David Eldridge Bower**
  dbower@faruqilaw.com,ecf@faruqilaw.com,mblackman@faruqilaw.com,ecfca@faruqilaw.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,swinkles@rgrdlaw.com

- **Charles A Germershausen**
  cgermershausen@gardylaw.com

- **Benjamin Matthew Glickman**
  benjamin.glickman@doj.ca.gov,bmglickman@gmail.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gail E. Lees**
  glees@gibsondunn.com,jwalker@gibsondunn.com,wlamb@gibsondunn.com,jjessen@gibsondunn.com

- **James S. Notis**
  jnotis@gardylaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jennifer Sarnelli**
  jsarnelli@gardylaw.com

- **Erich Paul Schork**
  e.schork@barnowlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,nnewton@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Kathleen          L. Barber
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road
```

Suite 500
Boca Raton, FL 33432

**Matthew          S. Kahn**
Gibson Dunn and Crutcher
555 Mission Street, Suite 3000
San Francisco, CA 94105