1  GAIL E. LEES, SBN 90363
   glees@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
3  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
4  Facsimile:  213.229.7520

5  MATTHEW S. KAHN, SBN 261679
   mkahn@gibsondunn.com
6  AIMEE M. HALBERT, SBN 279144
   ahalbert@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
8  San Francisco, CA 94105-2933
   Telephone:  415.393.8200
9  Facsimile:  415.393.8306

10 Attorneys for Defendant APPLE INC.

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  OAKLAND DIVISION

15 | | Master File No. 4:12-cv-01127-CW

16 | | CLASS ACTION

   In re iPHONE 4S CONSUMER LITIGATION

17 | | **APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

18

19 This Document Relates To:

20     ALL ACTIONS.

   **[[PROPOSED] ORDER FILED CONCURRENTLY]**

21

22 Hearing:        N/A
   Judge:          The Honorable Claudia Wilken

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ............................................................................................ 1

I.     ISSUES TO BE DECIDED ................................................................................................... 1

II.    INTRODUCTION ................................................................................................................. 2

III.   FACTUAL BACKGROUND ................................................................................................ 3

       A.     The Facts Regarding iPhone 4S And Its Siri Software ............................................ 3

       B.     The Named Plaintiffs' Allegations Regarding Their Exposure To Apple's
              Representations And Their Experiences Using iPhone 4S ....................................... 5

              1.     Frank M. Fazio ............................................................................................. 6

              2.     Carlisa S. Hamagaki ..................................................................................... 7

              3.     Daniel M. Balassone ..................................................................................... 8

              4.     Benjamin Swartzman ..................................................................................... 8

IV.    ARGUMENT ........................................................................................................................ 9

       A.     Legal Standard ........................................................................................................ 9

       B.     Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To Satisfy
              Rule 9(b) ................................................................................................................. 9

              1.     Plaintiffs Still Do Not Allege Any Knowing Misrepresentation With
                     Particularity ................................................................................................ 10

              2.     Plaintiffs Still Do Not Allege Reliance With Particularity ........................... 13

       C.     Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To State A
              Claim Under Rule 12(b)(6) Because They Are Premised On A Selective
              Reading Of The Challenged Representations And Rely On Non-Actionable
              Statements .............................................................................................................. 15

              1.     No Reasonable Consumer Would Believe That Apple Represented Siri
                     As An Infallible Product That Would Function Perfectly In All
                     Circumstances ............................................................................................. 15

              2.     Apple's Statements About Siri Are Not Actionable ..................................... 18

       D.     Plaintiffs' Claims Fail Under Rule 12(b)(6) For Additional Reasons ..................... 18

              1.     Plaintiffs Still Fail To State A Claim Under The UCL .................................. 18

              2.     Plaintiffs Still Fail To State A Claim For Breach Of Express Warranty ........ 22

       E.     The Court Should Not Grant Plaintiffs Further Leave To Amend ........................... 24

V.     CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011).................................................................................22, 23

*Animal Legal Defense Fund v. Mendes*,
160 Cal. App. 4th 136 (2008) ............................................................12, 19, 20

*Arroyo v. Chattem, Inc.*,
No. 12-cv-2129, 2012 WL 5412295 (N.D. Cal. Nov. 6, 2012) ..................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................9

*Baltazar v. Apple Inc.*,
No. 10-cv-3231, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ...........12, 13, 15, 16, 21

*Baltazar v. Apple Inc.*,
No. 10-cv-3231, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011)........................16, 17

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ...........................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................9, 22

*Birdsong v. Apple Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................................19, 20

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011).............................................................................9, 12

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996).....................................................................................9

*Castagnola v. Hewlett-Packard Co.*,
No. 11-cv-5772, 2012 WL 2159385 (N.D. Cal. June 13, 2012).........................17, 18

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999)..................................................................................18

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)...........................................................................15, 18

*Garcia v. Sony Computer Entm't Am., LLC*,
859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................................................14

*Herrington v. Johnson & Johnson Consumer Co.*,
No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..........................10, 14

*Ice Bowl v. Spalding Sales Corp.*,
56 Cal. App. 2d 918 (1943)..................................................................................23

ii

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Actimmune Marketing Litig.*,
No. 08-cv-2376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ..................... 21, 22

*In re Sony Gaming Networks & Customer Sec. Data Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................. 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................... 9, 10, 14

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ............................................................. 19, 20

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ........................................................ 15

*Maneely v. Gen. Motors Corp.*,
108 F.3d 1176 (9th Cir. 1997) ........................................................ 24

*Maxwell v. Unilever U.S., Inc.*,
No. 12-cv-1736, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) .................... 14

*McKinney v. Google, Inc.*,
No. 5:10-CV-01177, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ............ 12

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ....................................................... 19

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
No. 04-cv-1664, 2004 WL 2496163 (N.D. Cal. Nov. 5, 2004) ................... 21

*Sosa v. Bank of N.Y. Mellon Trust*,
No. 12-cv-144, 2012 WL 2568188 (N.D. Cal. July 2, 2012) ...................... 24

*Stuart v. Cadbury Adams USA, LLC*,
458 F. App'x 689 (9th Cir. 2011) ..................................................... 16

*Wehlage v. EmpRes Healthcare, Inc.*,
791 F. Supp. 2d 774 (N.D. Cal. 2011) ............................................... 10

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................... 18

Cal. Civ. Code § 1572 ..................................................................... 21

Cal. Civ. Code § 1573 ..................................................................... 21

Cal. Civ. Code § 1709 ..................................................................... 21

Cal. Civ. Code § 1711 ..................................................................... 21

Cal. Civ. Code § 1770 ..................................................................... 21

Gibson, Dunn &
Crutcher LLP

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Other Authorities**

Merriam-Webster.com, http://www.merriam-webster.com/dictionary/consistent (last visited
Aug. 20, 2013) ...................................................................................................... 11

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 15, 18

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Apple Inc. ("Apple") moves for an order dismissing Plaintiffs' Amended Consolidated Class Action Complaint ("Amended Complaint" or "ACC") under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Pursuant to the Court's July 23, 2013 Order granting Apple's motion to dismiss Plaintiffs' Consolidated Class Action Complaint ("Complaint"), this "motion to dismiss . . . will be decided on the papers." Dkt. 68 ("Order") at 44.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, materials of which this Court has taken or may take judicial notice, all other papers submitted in support of the Motion, the records on file in this case, and any other matter that the Court may properly consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ISSUES TO BE DECIDED

1.    Do Plaintiffs still fail to plead their claims against Apple for intentional misrepresentation, negligent misrepresentation, and violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") with the level of particularity required by Federal Rule of Civil Procedure ("Rule") 9(b) because they do not allege any specific misrepresentations or reliance on specific statements?

2.    Do Plaintiffs still fail to state a viable claim for relief that meets the requirements of Rule 12(b)(6) when they rely on a selective reading of the challenged advertisements that impermissibly ignores specific disclosures and allege only non-actionable statements?

3.    Do Plaintiffs still fail to state a claim under the UCL because (a) they lack standing where they have not suffered any economic injury, much less one that Apple caused, and (b) they do not allege sufficient facts to state a claim for violation of the UCL's "fraudulent," "unfair" or "unlawful" prongs?

4.    Do Plaintiffs still fail to allege sufficient facts to state a claim for breach of express warranty?

Gibson, Dunn &
Crutcher LLP

## II.    INTRODUCTION

The Amended Complaint should be dismissed for the same reasons the Court rejected Plaintiffs' original Complaint:  Plaintiffs do not identify any false or misleading representations or allege reliance on any statements by Apple.  Plaintiffs' new claim is that Apple represented that Siri would always work perfectly, "without a single hiccup," and would never fail to provide "adequate response[s]" to any and all questions and commands, in any and all scenarios in which Siri might be used.  *See, e.g.*, ACC ¶¶ 13, 43.  But Apple never made any such representation, the Amended Complaint does not identify one, and no reasonable consumer would believe a consumer product was infallible absent an explicit representation that it was.  To the contrary, Apple expressly cautioned consumers that Siri is "not perfect," Apple would "improve it over time," and users "can't ask [Siri] everything"—including in the very marketing materials Plaintiffs now allege they saw.

Nor have Plaintiffs alleged reliance on any particular statement by Apple.  This Court explained at the hearing on Apple's motion to dismiss Plaintiffs' Complaint that Plaintiffs must allege that they "relied on" "X, Y and Z *statement* on this ad and that ad . . . and this particular *representation* and that particular *representation* that . . . were statements."  Aug. 2, 2012 Hr'g Tr., Dkt. 63 ("Tr.") at 16:20-23 (emphases added).  The Amended Complaint is unable to allege a single particular statement on which any Plaintiff relied, instead alleging generically and vaguely that each Plaintiff relied on several marketing materials in their entireties.

It is not surprising that Plaintiffs still cannot plead valid claims.  The truth is that while Apple represented Siri as a "cool" and "amazing" new feature of iPhone 4S, it did *not* represent Siri as flawless or as capable of providing an "adequate" response (whatever that means) to any and all questions and commands, in every conceivable circumstance or environment.  As this Court already noted, consumers "might think, ah, [Siri is] new, it's interesting, it's a toy, it's novel, it's probably only going to answer [questions] 50 percent" or "75" percent of the time.  Tr. at 8:20-9:1.  Plaintiffs do not and cannot identify any representation by Apple that Siri would function perfectly *100 percent* of the time.  Nor did Apple represent Siri as the *sine qua non* of iPhone 4S.  To the contrary, as the Court recognized, "Apple also advertised that the iPhone 4S had other 'incredible new features' in addition to Siri."  Order at 2.

Gibson, Dunn & Crutcher LLP

1  The Court thus should dismiss the Amended Complaint without leave to amend because

2  Plaintiffs have been unable to cure the deficiencies identified by the Court, and there is no reasonable

3  possibility that Plaintiffs could do so in a further amended pleading. *First*, Plaintiffs' UCL, FAL,

4  CLRA, and misrepresentation claims fail to satisfy Rule 9(b) because they do not allege any

5  misrepresentation with particularity and do not allege Plaintiffs' reliance on any supposed

6  misrepresentation with particularity. *Second*, these claims also are insufficient under Rule 12(b)(6)

7  because no reasonable consumer would believe Siri was infallible, Plaintiffs' claims are premised on

8  a selective reading of the challenged advertisements, and the few specific representations Plaintiffs

9  identify are not actionable as a matter of law. *Third*, Plaintiffs' UCL claim also fails because

10  Plaintiffs lack standing to sue under the UCL, and they do not allege facts sufficient to plead claims

11  under any of the UCL's three prongs. *Fourth*, Plaintiffs have no breach of warranty claim where they

12  did not provide adequate notice of any alleged breach of express warranty or allege the exact terms of

13  any warranty.

### III.    FACTUAL BACKGROUND

14

15  **A.    The Facts Regarding iPhone 4S And Its Siri Software**

16  On October 4, 2011, Apple released iPhone 4S. ACC ¶ 4. As described in the press release

17  regarding its launch, iPhone 4S introduced numerous new features and improvements from the prior

18  model (iPhone 4), including "Apple's dual-core A5 chip for blazing fast performance and stunning

19  graphics"; "an all new [8 megapixel] camera with the most advanced optics of any phone"; "full

20  1080p HD resolution video recording"; and an improved dual-antenna design, making iPhone 4S "the

21  first phone to intelligently switch between two antennas to send and receive," "support[ing] twice the

22  download speed [of iPhone 4] with HSDPA of up to 14.4 Mbps," and making iPhone 4S "a world

23  phone." Dkt. 33-1;[1] *see also* Order at 2. iPhone 4S was also the first iPhone model to come with iOS

24  5, a "mobile operating system with over 200 new features," and iCloud, a "set of free cloud services"

25  that "automatically and wirelessly store[s]" users' content and pushes it to their devices. Dkt. 33-1.

26

27  [1]  The Court previously took judicial notice of Dkts. 33-1, 33-2, 33-3, 33-4, 33-6, 33-7, and 33-8.
     Order at 12-13; *see also* Tr. at 4:12-20 (noting that the Court would take judicial notice of the

28  videos located on the webpages, not just the webpages themselves).

With iPhone 4S, Apple also introduced Siri, a voice-activated "intelligent assistant." *Id.*; *see also* ACC ¶ 33.

Apple highlighted the many new features of iPhone 4S in its advertising materials, including, but by no means limited to, Siri. For example, Apple's e-mail offering customers the option to pre-order iPhone 4S stated: "iPhone 4S dual-core A5 chip. All-new 8MP camera and optics. iOS 5 and iCloud. And introducing Siri. It's the most amazing iPhone yet." ACC ¶ 36. Similarly, Apple's e-mail to customers marketing iPhone 4S for the holiday season stated: "iPhone 4S comes with an all-new 8MP camera, iOS 5, iCloud, and Siri: the intelligent assistant you can ask to make calls, send texts, set reminders, and more." *Id.* ¶ 47. Apple also released a five-minute video discussing the numerous new features of iPhone 4S ("iPhone 4S Video"), which spends approximately one minute introducing Siri and the remainder of the time introducing the other new features of iPhone 4S. *See id.* ¶¶ 36-38; Dkt. 33-3 at 87:20-92:22.[2] The video begins by discussing iPhone 4 and then asks, "how do you improve on something so extraordinary?" ACC ¶ 32. The full answer—not just the excerpt Plaintiffs cherry-pick in the Amended Complaint (*see id.*)—is:

> Well, with iPhone 4S, we did exactly that, by taking this amazing design and completely rethinking the inside. We started by adding the dual-core A5 chip, which is up to twice as fast. Then we completely redesigned the camera, which not only has 8 megapixels, but all new optics. iPhone 4S also comes with iOS 5, with over 200 new features, and iCloud. And now we're introducing Siri.

Dkt. 33-3 at 87:46-88:15.

From the very first introduction of Siri, Apple repeatedly disclosed that Siri, as a new and cutting-edge technology, was still under development. *See, e.g.*, ACC ¶¶ 86, 88-89. For example, during the October 4, 2011 press event in which Apple announced iPhone 4S ("Press Event"), the presenter cautioned that users "can't ask [Siri] everything, and it's not perfect." Dkt. 33-3 at 82:49; *see also* Order at 3-4. The Siri "FAQ" webpage advises consumers that Apple will "continue to improve [Siri] over time," and explains:

> [T]he more you use Siri, the better it will understand you. It does this by learning about your accent and other characteristics of your voice. Siri uses voice recognition algorithms to categorize your voice into one of the dialects or accents it understands. As more people use Siri and it's exposed to more

---

[2] The iPhone 4S Features webpage on Apple's website also contained a link to the iPhone 4S Video. *See* Dkt. 33-4.

> variations of a language, its overall recognition of dialects and accents will continue to improve, and Siri will work even better.

Dkt. 33-2. In addition, Apple disclosed that Siri is in "beta" during the Press Event (Dkt. 33-3 at 72:56, 86:41), in the accompanying press release (Dkt. 33-1), and on multiple pages on Apple's website (*e.g.*, Dkts. 33-2, 33-4).

In the months following the release of iPhone 4S, Apple aired several television advertisements highlighting one or more of its many new features, such as its improved camera, its interface with iCloud, and Siri. Dkt. 33-6. One such commercial was "Siri, Snow Today," which depicts individuals asking Siri various questions. ACC ¶ 46. Other commercials included "Road Trip" (*id.* ¶ 48) and "Rock God" (*id.* ¶¶ 49-50). All three of these commercials concluded with an express disclaimer: that the "sequences" they depicted had been "shortened." *See* Dkt. 33-6.[3] Apple also released a video on its website and YouTube channel entitled "Introducing Siri," which depicts Siri responding to various questions and commands but beyond that does not make any representations about Siri. ACC ¶¶ 44-45.

**B.    The Named Plaintiffs' Allegations Regarding Their Exposure To Apple's Representations And Their Experiences Using iPhone 4S**

The named Plaintiffs' new factual allegations, detailed below, still do not identify which *specific* statements by Apple they allegedly relied on, when or where they allegedly were exposed to such statements, *or* how those statements allegedly were false or misleading. Instead, each Plaintiff uniformly alleges that unspecified statements in various marketing materials, which they saw at unspecified times, led them to expect for unspecified reasons that Siri would, "on a consistent basis," "be able to understand [his/her] voice, the questions and/or commands [he/she] was saying, know what those questions and/or commands meant, and provide an adequate response to them." ACC ¶¶ 56, 64, 71, 78. The Amended Complaint does not explain what "an adequate response" means, or which particular statements by Apple allegedly led Plaintiffs to believe that Siri was guaranteed to work consistently. *See id.*

---

[3]  As alleged in the Amended Complaint, the Court may also view "Siri, Snow Today" at http://www.youtube.com/watch?v=54P5PR0I6pU. ACC ¶ 46 n.10.

Gibson, Dunn & Crutcher LLP

1    **1.    Frank M. Fazio**

2    Plaintiff Frank M. Fazio ("Fazio") purchased an iPhone 4S on November 19, 2011, from a

3    Best Buy store in New York.  ACC ¶¶ 19, 54.  Fazio alleges that he "purchased the iPhone 4S"

4    because he "saw and reasonably relied upon Apple's 'Introducing Siri' and 'Siri, Snow Today'

5    commercials, as well as Apple's representations about Siri made on Apple's website,

6    www.apple.com."  *Id.* ¶ 55.  Fazio ignores the Court's express instruction to identify the *particular*

7    webpages on Apple's website that he viewed.  *See* Tr. at 12:7-11 ("If it's web pages, what pages did

8    they look at, et cetera.").  He also ignores the Court's express instruction to identify the *particular*

9    statements or representations about Siri he saw and on which he allegedly relied in the two

10   commercials or on the website, or when exactly he saw them.  *See* Order at 23 (holding Plaintiffs

11   must "explain[] what exactly Apple led consumers to believe in the commercials about Siri's

12   performance, *through what particular statements*") (emphasis added); Tr. at 11:19-22 ("I do think

13   we've got a reliance issue.  I think we need to know . . . what *exactly* everybody relied on.")

14   (emphasis added).

15   Fazio purports to provide "examples of specific instances" in which Siri allegedly "failed to

16   perform as advertised by Apple," but he never links those instances to any specific representations by

17   Apple.  ACC ¶ 58.  This too is inconsistent with the Court's instructions.  *See* Tr. at 11:23-12:6

18   ("[O]nly things that he learned from [Apple's representations] would he be able to say he was

19   disappointed by.");  Order at 41 ("Plaintiffs have failed to allege adequately that they were injured as

20   a result of any particular deceptive or misleading statements made by Apple.").  In fact, Fazio admits

21   that the questions and commands he asked Siri were not the same as "those he had seen Siri

22   perform," but only were purportedly "very similar."  ACC ¶ 59.  And Fazio's allegations put the lie

23   to any claim of "similar[ity]."

24   For example, Fazio allegedly "asked Siri, 'Which has more fat?' and then mentioned two

25   different McDonald's sandwich choices," and he "expected that Siri would provide him with the fat

26   content of the two McDonald's sandwiches," but "Siri did not correctly respond to Fazio's conceptual

27   question."  *Id.* ¶ 58(a).  Fazio then alleges that he was disappointed because "[t]he fat content of

28   McDonald's sandwiches is easily found on google.com and comparable search engines by searching

'fat content Mcdonalds' [sic]."  *Id.*  Not only is this latter query a completely different question than what he allegedly asked Siri, but nowhere does the Amended Complaint allege that Siri is a "search engine" like google.com, or that Apple ever represented that a user who *speaks questions* to Siri will have identical experiences to users who *type search terms* into Google.  In other words, Fazio does not explain how Siri's alleged inability to answer his question or perform exactly like a search engine when asked a different query in a different way means that "Siri failed to perform *as advertised*."  *See Order* at 23 (emphasis added).  Fazio's additional "examples" repeat his complaint that Siri did not operate like Google.  ACC ¶¶ 58(b)-(d).

Despite his claim that he "has been damaged in that he purchased an iPhone 4S at a premium price" (*id.* ¶ 60), Fazio does not allege that he reported his complaints to Best Buy or Apple or that he sought to avail himself of any applicable warranty or return policy.

### 2.    Carlisa S. Hamagaki

Plaintiff Carlisa S. Hamagaki ("Hamagaki") pre-ordered an iPhone 4S through Apple's website and purchased it on November 6, 2011, from an Apple store in California.  *Id.* ¶¶ 21, 61.  Hamagaki alleges that she "purchased the iPhone 4S" because she "saw and reasonably relied upon the iPhone 4S Video, the Introducing Siri commercial, the iPhone 4S pre-order email, as well as Apple's representations about Siri made on Apple's website," including several specific webpages.  *Id.* ¶¶ 62-63.  Like Fazio, Hamagaki fails to comply with the Court's instructions because she does not allege any specific statements or representations about Siri on which she allegedly relied or when she saw them, instead pointing generically to the entirety of the advertising materials she saw.  *See id.* ¶¶ 55, 63.

Hamagaki purports to provide "examples of specific instances" in which Siri allegedly "failed to perform as advertised by Apple," but she identifies only one.  *See id.* ¶ 66.  Her complaint about that experience is identical to Fazio's and thus insufficient for the same reasons:  she allegedly asked Siri two questions supposedly "similar to" (but not the same as) "those she had seen Siri perform" (*id.* ¶ 67), and in response Siri purportedly did not function like Google.  *Id.* ¶¶ 66-66(a) (alleging she asked Siri, "Where is Mason Park?" and "Where is Balboa Park?," but Siri allegedly did not provide an adequate response even though "[b]oth parks are easily found on google.com and comparable

1    search engines by searching 'mason park' and 'balboa park'").  Hamagaki also does not allege that

2    she reported her complaints to Apple, attempted to return her iPhone 4S, or sought warranty service.

3        **3.    Daniel M. Balassone**

4        Plaintiff Daniel M. Balassone ("Balassone") purchased an iPhone 4S on October 20, 2011,

5    from an Apple store in New Jersey.  *Id.* ¶¶ 23, 69.  Balassone alleges that he "purchased the iPhone

6    4S" because he "saw and reasonably relied upon the Introducing Siri commercial, as well as Apple's

7    representations about Siri during the interactive demonstrations performed" at the Press Event.  *Id.*

8    ¶ 70.  Like his fellow Plaintiffs, Balassone is unable to allege any specific statements or

9    representations about Siri on which he relied.  He also omits that during the Press Event the presenter

10   referred to Siri's beta status twice and specifically advised Balassone and other viewers that users

11   "can't ask [Siri] everything, and it's not perfect."  *See* Dkt. 33-3 at 72:56, 82:49, 86:41; *see also*

12   Order at 4.  As the Court observed, this disclosure undercuts any claim by Plaintiffs that Apple

13   misled them about Siri's functionality during the Press Event.  *See* Tr. at 17:17-18:17.

14       As noted above, Fazio and Hamagaki are unable to allege that they asked Siri any questions

15   that Apple had shown Siri answering.  Balassone's failure is even more pronounced:  he claims that

16   he "attempted to mirror the commands given to Siri in Apple's Rock God television commercial"

17   (ACC ¶¶ 73(a)-(b)), but Plaintiffs admit the Rock God commercial "began airing around February 10,

18   2012" (*id.* ¶ 49)—*nearly four months after* Balassone purchased his iPhone 4S purportedly in

19   reliance on *other* Apple advertisements.  *See id.* ¶¶ 23, 69.  Balassone's alleged experiences trying to

20   "mirror the commands" from a commercial that aired months after he bought his phone are simply

21   irrelevant, since Balassone does not and cannot allege that he relied on Apple's representations in that

22   commercial.  At the time he purchased his iPhone 4S, Balassone cannot possibly have had any

23   "expect[ation] that Siri would respond . . . as Siri does in the Rock God commercial" that aired

24   months later.  *See id.* ¶¶ 73(a)-(b).  Balassone too does not allege that he reported his complaints to

25   Apple, attempted to return his iPhone 4S, or sought warranty service.

26       **4.    Benjamin Swartzman**

27       Plaintiff Benjamin Swartzman ("Swartzman") purchased an iPhone 4S on January 7, 2012,

28   from an Apple store in California.  *Id.* ¶¶ 25, 76.  Swartzman alleges that he "purchased the iPhone

4S" because he "saw and reasonably relied upon Apple's iPhone 4S pre-order email, iPhone 4S Video, and the iPhone 4S holiday email." *Id.* ¶ 77.  Like all other Plaintiffs, Swartzman does not identify a single specific statement about Siri on which he allegedly relied, or when he allegedly saw that statement.  His alleged experiences with Siri echo his fellow Plaintiffs as well, and for the same reasons his allegations are insufficient to support any claims. *See id.* ¶ 80(a) (alleging Siri did not perform like Google).  Swartzman too does not allege that he reported his complaints to Apple, attempted to return his iPhone 4S, or sought warranty service.

## IV.    ARGUMENT

### A.    Legal Standard

A complaint should be dismissed for failure to satisfy Rule 8(a) when Plaintiffs do not proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), as the Court already explained in this case, "this principle is inapplicable to legal conclusions; 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not taken as true."  Order at 11 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To avoid dismissal, a complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability," and, instead, must set forth enough information to make it "plausible," not merely "possib[le]," that the defendant is liable. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  The pleading burden is even higher where, as here, a complaint alleges claims sounding in fraud.  Then the complaint also must satisfy the more stringent pleading standard of Rule 9(b), which requires "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  There is no dispute here that Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading standard.  Order at 20, 23.

### B.    Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To Satisfy Rule 9(b)

Plaintiffs must allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and

1   citation omitted); *see also* Order at 22 (discussing *Kearns*, 567 F.3d at 1124).  In addition, as this

2   Court has held in prior cases, Plaintiffs also must particularly identify "upon which of the[]

3   misrepresentations they relied in making their purchase."  *Herrington v. Johnson & Johnson*

4   *Consumer Co.*, No. 09-cv-1597, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010); *see also*

5   *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 789-90 (N.D. Cal. 2011).

6          Plaintiffs' Complaint came nowhere close to meeting these pleading obligations (Order at 20-

7   23, 26-29), and the Amended Complaint does not remedy the deficiencies identified by the Court.

8   Plaintiffs still are unable to allege any misrepresentation with particularity, and they likewise repeat

9   their failure to plead any Plaintiff's reliance on any specific statement by Apple.  Because the

10  Amended Complaint does not cure the fatal flaws identified in the Order, the Court should dismiss

11  Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims without leave to amend.

12          **1.      Plaintiffs Still Do Not Allege Any Knowing Misrepresentation With Particularity**

13         This Court held that Plaintiffs' Complaint "failed to allege sufficiently the 'how' of the

14  purported misrepresentations" because Plaintiffs did not explain "what *exactly* Apple led consumers

15  to believe in the commercials about Siri's performance, through what *particular statements*, nor have

16  they stated what about these representations was in fact false."  Order at 23 (emphases added).  The

17  Amended Complaint fares no better.  Plaintiffs still do not explain "what particular statements" Apple

18  made about Siri's performance (other than non-actionable statements, as described below), much less

19  how through those (unidentified) statements Apple knowingly "led consumers to believe" something

20  that allegedly "was in fact false."  *See id.*

21         In an attempt to remedy their deficient initial allegations, Plaintiffs have invented a new

22  theory:  they claim Apple told the public that Siri would consistently function flawlessly, regardless

23  of how the user interacts with it and regardless of the conditions in which Siri is used.  Specifically,

24  Plaintiffs contend that Apple "conveyed to the public the misleading and deceptive message that the

25  iPhone 4S's Siri feature . . . was and is able to perform the various tasks depicted in Apple's

26  advertisements *on a consistent basis*," "*without a single hiccup*" and "*without complications*."  *See,*

27  *e.g.*, ACC ¶¶ 6, 43, 90 (emphases added).  The Amended Complaint uses the word "consistent" or

28  some derivation of it 27 times.  *Id.* ¶¶ 6, 7, 13, 35, 56, 59, 64, 67, 71, 72, 74, 78, 81, 87, 90.  Merriam-

Webster Dictionary defines "consistent" as "marked by harmony, regularity, or steady continuity: *free from variation* or contradiction." Merriam-Webster.com, http://www.merriam-webster.com/dictionary/consistent (last visited Aug. 20, 2013) (emphasis added).[4]

Plaintiffs' new theory fails because the Amended Complaint does not—and cannot—identify a single instance where Apple ever represented that users' experiences with Siri would be "free from variation." Indeed, Plaintiffs do not even try. Their Amended Complaint does not allege *any particular statement* by Apple that purportedly supports their new theory. Instead, just as in their initial Complaint, Plaintiffs merely "allege the contents of some specific pieces of advertising that Apple created" (*see* Order at 22) and then assert in conclusory fashion at the end of their summary recitation that the gestalt impact of that advertising all together is a promise of perfect functioning at all times, no matter the circumstances or environment in which consumers use Siri. *See* ACC ¶¶ 56, 64, 71, 78.

This Court already warned Plaintiffs that such allegations could not suffice to plead actionable misrepresentations. The Court held that Plaintiffs were required to "explain[] what exactly Apple led consumers to believe in the commercials about Siri's performance, through what particular statements" (Order at 23), and that they could plead their present theory "*only . . . if Apple*

_____

[4] If Plaintiffs intended to plead instead that Apple represented something *less* than perfection, the Court instructed Plaintiffs what they were required to allege. Specifically, the Court instructed Plaintiffs that if "you're not saying it had to answer every question right every time," then Plaintiffs would need to be "more clear" in the Amended Complaint "about what exactly [they] think the consumers were led to believe by the advertisements and in what exact way that didn't work, whether it was [Siri] could only answer simple questions and never answer hard questions, or [Siri] only answered them some percentage of time or something." Tr. at 8:1-8:12, 8:20-9:3, 10:21-11:6. But Plaintiffs did not comply with these instructions (no doubt because of the impact doing so would have had on their class certification goals). The Amended Complaint's repeated "consistent basis" allegations do not allege a specific "percentage of time" consumers were led to believe Siri could answer questions or the degree of difficulty consumers believed Siri could handle. *See id.*; *see also id.* at 7:22-25 ("[I]f you're going to say sometimes it does, but sometimes it doesn't, it seems like we need something a little more specific than that, like how often or why not? Or what type of question or so on."). Moreover, as this Court previously recognized, Plaintiffs already admitted that Siri *is* capable of performing the tasks Apple represented it could perform at least some of the time. *See* Order at 8, 39; Tr. at 17:2-7 ("[I]t says right in the Complaint that [Siri] could tell you where a restaurant and a gas station were."). The only theory Plaintiffs plead is that Apple represented Siri would work flawlessly in all circumstances. *Cf.* Tr. at 8:7-12 ("If you're not saying that it always has to answer every question correctly, then you're necessarily saying sometimes it does, and sometimes it doesn't. And then the question becomes how often? Is the 90 percent good enough? Would it have to be – is 50 percent not good enough? I mean, how would we . . . define such a thing?").

Gibson, Dunn &
Crutcher LLP

1   represented that [Siri] *always* answered every question correctly."  Tr. at 7:21-8:6 (emphases added).

2   Plaintiffs do not identify any such representation by Apple, because none exists.  *See McKinney v.*

3   *Google, Inc.*, No. 5:10-CV-01177, 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) ("McKinney

4   fails to specifically identify any representation . . . that the Nexus One would maintain consistent 3G

5   connectivity."); *Baltazar v. Apple Inc.*, No. 10-cv-3231, 2011 WL 588209, at *3-4 (N.D. Cal. Feb.

6   10, 2011) ("*Baltazar I*") (dismissing UCL, FAL, CLRA, and misrepresentation claims where

7   plaintiffs did not "ple[ad] with specificity the content of the alleged misrepresentations made by

8   Apple in its commercials and advertisements").

9          Nor can the named Plaintiffs' new allegations cure Plaintiffs' deficient pleading.  As

10  discussed above, not one of the Plaintiffs identifies a particular representation by Apple, specifies

11  "what is false or misleading about" that representation, or explains "why it is false" by connecting

12  any performance issue they allegedly experienced with Siri to that representation.  *See Cafasso*, 637

13  F.3d at 1055; Order at 23.  Instead, each Plaintiff offers the identical insufficient allegation that,

14  "[b]ased on Apple's representations and the message they conveyed" as a whole, he or she "expected

15  that Siri would be able to respond to" any and all "questions on a consistent basis."  ACC ¶¶ 59, 67,

16  74, 81.  Plaintiffs' purported "examples of specific instances where Siri failed to meet [their]

17  expectations and failed to perform as advertised" are untethered to any specific statement by Apple in

18  the marketing materials Plaintiffs claim to have relied on (*see id.* ¶¶ 58, 66, 73, 80), and thus they do

19  not show how Siri "is less consistent *than shown in the ads*."  Order at 23 (emphasis added).[5]

20  Consequently, Plaintiffs again "have not specified *precisely how Siri failed to meet the*

21  *representations* that they claim Apple made" (*id.* (emphasis added)), and they therefore do not plead

22  how any statement by Apple purportedly was false.[6]

---

23  [5]  The Amended Complaint's allegations regarding advertisements that no Plaintiff claims to have
         relied on (*e.g.*, ACC ¶ 33 (October 4, 2011 press release), ¶ 48 ("Road Trip" commercial), ¶¶ 49-
24       50 ("Rock God" commercial)) are irrelevant to Plaintiffs' claims.  *See, e.g.*, Tr. at 11:23-12:6
         (explaining that Plaintiffs can only allege that they were "disappointed" based on "things that
25       [they] learned from" the advertisements they actually saw).

26  [6]  That some Plaintiffs assumed Siri would answer certain questions in the same way as
         "google.com and comparable search engines" would answer different search queries posed in
27       different ways than what Plaintiffs asked Siri is a *non sequitur*.  *See* ACC ¶¶ 58, 66, 80.  Plaintiffs
         do not (and cannot) allege that Apple ever advertised Siri as a "search engine" like Google.  *See*
28       *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (2008) (affirming

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

Finally, Plaintiffs do not adequately plead any *knowing* misrepresentations by Apple.  The Amended Complaint, like the Complaint, alleges the bare (and already rejected) conclusion that "Apple had actual or constructive knowledge of the shortcomings of the iPhone 4S's Siri feature prior to its distribution."  *Compare* ACC ¶ 86 *with* Dkt. 18 ¶ 48.  It further claims, without elaboration, that "testing of Siri did and/or would have revealed to Apple that Siri was unable to perform as advertised."  ACC ¶ 13.  These vague and unsupported assertions do not comply with the Court's instruction to "specif[y] precisely . . . how Apple knew or should have known that [its] representations [about Siri] were false."  *See* Order at 23; *see also Baltazar I*, 2011 WL 588209, at *4 (rejecting conclusory allegation that "Apple must have known through its product testing about the alleged defects or shortcomings of the iPad").  Plaintiffs' "testing" allegations are further deficient because they are based on an Apple commercial that aired *after* all named Plaintiffs purchased their iPhones.  *See* ACC ¶¶ 49-50, 83-84.

In short, Plaintiffs have "deprive[d] Apple of the opportunity to respond to the allegations of misconduct that Plaintiffs make" because they have failed to explain, as required by the Court, "what exactly Apple led consumers to believe in the commercials about Siri's performance, through what particular statements" (Order at 23), much less that Apple ever knowingly represented that Siri was infallible.  Just as the plaintiffs in *Baltazar I* "fail[ed] to describe with specificity Apple's representations with respect to the operational capabilities of the iPad" and thus did not satisfy Rule 9(b), so too have Plaintiffs here failed to specify Apple's allegedly knowingly misrepresentative statements with respect to Siri.  *See* 2011 WL 588209, at *3.

### 2. Plaintiffs Still Do Not Allege Reliance With Particularity

The initial Complaint did not plead reliance with the specificity required by Rule 9(b) (Order

---

*(Cont'd from previous page)*

dismissal of UCL claims where plaintiffs did not "allege any false or misleading representations" by defendants regarding the treatment of defendants' cows, and therefore plaintiffs' "assumptions" about how the cows were treated "could not have been part of the 'bargain'"); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (affirming dismissal of UCL claims where plaintiffs did not show defendant made any representations regarding the exhaust manifolds in its vehicles; plaintiffs could not be deceived unless they "had an expectation or an assumption about" the manifolds based on representations defendants actually made).

Gibson, Dunn &
Crutcher LLP

13

at 26-29), and the Amended Complaint does not remedy this fatal flaw.  Although Plaintiffs now allege reliance on certain marketing materials *as a whole* (ACC ¶¶ 55, 63, 70, 77), they still are unable to allege a *single particular statement* in those materials that is false or misleading, "the circumstances in which [Plaintiffs] were exposed" to that statement, or that they relied upon it.  *See Herrington*, 2010 WL 3448531, at *7; *see also Kearns*, 567 F.3d at 1126.

This Court spelled out the pleading burden for Plaintiffs:  "It's got to be X, Y and Z *statement* on this ad and that ad . . . and this *particular representation* and that *particular representation* that weren't puffery but were *statements*.  And those are the things that we relied on."  Tr. at 16:20-23 (emphases added).  But the Amended Complaint does not comply with the Court's instruction. Instead, it merely alleges in a general fashion that, at unspecified times and places:

- Fazio relied on unidentified statements in Apple's "Introducing Siri" and "Siri, Snow Today" commercials;

- Hamagaki relied on unspecified statements in the iPhone 4S Video, the "Introducing Siri" commercial, the iPhone 4S pre-order e-mail, and various pages on Apple's website;

- Balassone relied on undescribed statements in the "Introducing Siri" commercial and unspecified "representations about Siri during the interactive demonstrations performed" at the Press Event; and

- Swartzman relied on unidentified statements in the iPhone 4S pre-order e-mail, the iPhone 4S Video, and the iPhone 4S holiday e-mail.

ACC ¶¶ 55, 63, 70, 77.

These allegations come nowhere near to satisfying Plaintiffs' pleading burden.  Plaintiffs must, but do not, allege what particular statements they saw, when they saw them, where they saw them, and that they relied on those particular statements.  *See, e.g., Maxwell v. Unilever U.S., Inc.*, No. 12-cv-1736, 2013 WL 1435232, at *2, 5 (N.D. Cal. Apr. 9, 2013) (dismissing UCL, FAL, and CLRA claims for failure to satisfy Rule 9(b) where named plaintiff alleged "that she relied on the statements located on the labeling and the websites when making her decision to purchase the products" but "fail[ed] to unambiguously specify . . . the particular statements [p]laintiff allegedly relied on when making her purchases"); *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (where complaint "generally asserts that the statements to be found on the PS3's packaging and Sony's website are misleading" but "does not specifically aver that Garcia

1  relied on those particular statements" this omission was "fatal under Rule 9(b)"); *Baltazar I*, 2011

2  WL 588209, at *3 (reliance not pleaded under Rule 9(b) where plaintiffs alleged only that they relied

3  on "a commercial" or "the commercial" but failed to identify specific representations in the

4  commercial on which they allegedly relied).[7]

5  **C.    Plaintiffs' UCL, FAL, CLRA, And Misrepresentation Claims Fail To State A Claim**
       **Under Rule 12(b)(6) Because They Are Premised On A Selective Reading Of The**
6      **Challenged Representations And Rely On Non-Actionable Statements**

7         Now that Plaintiffs have identified which marketing materials they saw, it is even more

8  apparent that their UCL, FAL, CLRA, and misrepresentation claims are impermissibly based on a

9  selective reading that ignores specific disclosures and disclaimers.  Indeed, the only statements

10 Plaintiffs allege Apple made in those marketing materials are not actionable as a matter of law.  As a

11 result, these claims not only fail to satisfy Rule 9(b), but they also are deficient under Rule 12(b)(6).

12        **1.    No Reasonable Consumer Would Believe That Apple Represented Siri As An**
              **Infallible Product That Would Function Perfectly In All Circumstances**
13

14        Plaintiffs' claims are governed by a "reasonable consumer" standard, which requires a

15 showing that "members of the public are likely to be deceived."  *See Freeman v. Time, Inc.*, 68 F.3d

16 285, 289 (9th Cir. 1995) (quotation marks and citation omitted); *see also* Order at 20-21.  "'Likely to

17 deceive' implies more than a mere possibility that the advertisement might conceivably be

18 misunderstood by some few consumers viewing it in an unreasonable manner"; rather, it must be

19 "probable that a significant portion of the general consuming public or of targeted consumers, acting

20 reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App.

21 4th 496, 508 (2003).  Plaintiffs' allegations do not make such a showing, because the marketing

22 materials Plaintiffs saw never could have deceived members of the public into believing that Siri

23 would always answer every question perfectly regardless of circumstances.

24 _____

25 [7]  Plaintiffs' reliance allegations also are deficient because, as discussed immediately below, they
     purport to have relied on marketing materials that include specific disclaimers or disclosures
26   regarding Siri's performance that render unreasonable any alleged belief that Siri will always
     work perfectly and never fail to answer a question or command.  While the Amended Complaint
27   alleges reliance on such materials generally and without identifying any precise statements Apple
     made in those materials, Apple can identify precise disclaimers and other disclosures in those
28   same materials, thereby refuting Plaintiffs' allegations of "reasonable" reliance.  *See* ACC ¶¶ 55,
     63, 70, 77.

As an initial matter, as demonstrated above, Apple never represented that Siri would perfectly answer all questions and perform all commands in all possible scenarios.  And the consuming public would not have reached such a conclusion without an affirmative representation.  The public understands that consumer products are not infallible, and that they may occasionally not work perfectly.  Consumers understand, for example, that even if an advertisement for a cellphone depicts individuals making phone calls, users' actual calls on that cellphone may be dropped or interrupted for various reasons, and users may not be able to make phone calls with that cellphone when they are underground or in the remote wilderness.  Absent a specific representation that a consumer product will work perfectly every time, in every context, without fail, reasonable consumers would not somehow form this belief.  *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690-91 (9th Cir. 2011) (affirming order granting motion to dismiss without leave to amend because "[o]nly an unreasonable consumer would be confused or deceived" into believing that teeth-whitening gum worked in all circumstances as opposed to only "in conjunction with an oral hygiene program"); *Baltazar I*, 2011 WL 588209, at *1, 4 (dismissing UCL, FAL, and CLRA claims because, while plaintiffs claimed reasonable consumers expected iPad to "function for prolonged use either outdoors, or in many warm conditions, for a variety of common uses," plaintiffs "d[id] not allege that Apple claimed that the iPad would function for any specific period of time or has particular operational capabilities under particular environmental conditions").

A later opinion in the *Baltazar* case is instructive.  After the court dismissed the complaint in *Baltazar I*, plaintiffs filed an amended complaint.  The court dismissed that complaint without leave to amend because, absent a specific representation that Apple's iPad would perfectly function uninterrupted in all conditions, plaintiffs could not pursue a UCL claim.  No. 10-cv-3231, 2011 WL 6747884, at *4 (N.D. Cal. Dec. 22, 2011) ("*Baltazar II*").  The court observed that the representations plaintiffs identified in the amended complaint "cannot be construed as a promise that the device will operate relentlessly outdoors in sunlight," and "there was no promise that the device would operate without interruption under all conditions."  *Id.* at *3.  The court continued:  "To use an obvious example, one could not conclude from the [representations] that the iPad would be expected to operate in a rain or snow storm simply because it is designed to operate at certain ambient

temperatures." *Id.* Thus, the court held that Apple's "advertisements and specifications could not be understood to represent or promise that the iPad would operate without interruption in the specific environmental conditions under which it allegedly tended to shut down." *Id.* at *4.

Moreover, Apple specifically represented the *opposite* of guaranteed "consistent" functioning in the very advertisements on which Plaintiffs claim to have relied. For example:

- Balassone saw the Press Event (*id.* ¶ 70), during which the presenter disclosed Siri's beta status and also expressly stated that users "can't ask [Siri] everything, and it's not perfect." Dkt. 33-3 at 72:56, 82:49, 86:41. *See In re Sony Gaming Networks & Customer Sec. Data Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) (rejecting claim that defendant "misrepresented the quality" of its product because, "in the presence of clear admonitory language that Sony's security was not 'perfect,'" which plaintiff saw, "no reasonable consumer could have been deceived").

- Hamagaki read the Siri FAQ webpage. ACC ¶ 63. But that webpage explains the ways in which Siri will "continue to improve . . . *over time*" and "work even better" *in the future*. Dkt. 33-2 (emphasis added). These disclosures plainly would convey to a reasonable consumer that Siri did not always work "consistently" at the time Hamagaki allegedly formed that belief. *See Castagnola v. Hewlett-Packard Co.*, No. 11-cv-5772, 2012 WL 2159385, at *8-10 (N.D. Cal. June 13, 2012) (dismissing UCL claim where plaintiffs claimed defendants deceived consumers into enrolling in fee-based membership but webpage in question contained disclosures and qualifying language so that, when viewed "as a whole," webpage was not deceptive).

- Fazio saw Apple's "Siri, Snow Today" commercial, which purportedly shows Siri "provid[ing] adequate and prompt responses" to various commands and questions. ACC ¶¶ 46, 55. But Apple prominently disclosed at the end of the commercial: "Sequences shortened." *See* Dkt. 33-6. This commercial would not deceive the general public into believing that Siri would provide an "adequate" and "prompt" response to any and all questions or commands. *See Baltazar II*, 2011 WL 6747884, at *4 ("In light of the clear disclaimers associated with the web video, plaintiffs have not alleged sufficient facts to support a conclusion that reliance upon any representations made in that video is reasonable.").

- Fazio and Hamagaki read Apple's website (ACC ¶¶ 55, 63), which states that "Siri is currently in beta and we'll continue to improve it over time." *Id.* ¶ 86.[8]

Thus, to reach their untenable conclusion of a reasonable consumer's belief, Plaintiffs impermissibly premise their claims on a selective reading of the challenged representations that ignores specific disclosures and disclaimers that Plaintiffs saw. For this independent reason, their

---

[8] Plaintiffs do not deny that they saw Apple's beta disclosures, or that they were aware when they bought their iPhones that Siri was in beta and they understood what beta meant. Plaintiffs' failure to deny these facts is conspicuous considering the extensive discussion of Siri's beta status in connection with Apple's last motion to dismiss. *See* Order at 24-25; Dkts. 32, 51, 59.

claims should be dismissed under Rule 12(b)(6).  *See, e.g.*, *Freeman*, 68 F.3d at 289-90 (rejecting argument that "the reader will review the large print and ignore the qualifying language in small print"); *Castagnola*, 2012 WL 2159385, at *8-10.

### 2. Apple's Statements About Siri Are Not Actionable

As discussed above, Plaintiffs do not identify any specific representation Apple made about Siri on which they allegedly relied.  And moreover, the few specific representations regarding Siri that the Amended Complaint does identify (but does not allege Plaintiffs relied on) are not actionable.  The statements alleged in the Amended Complaint are not "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact," as required to be actionable.  *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also* Order at 25-26.  Instead, Plaintiffs point to statements that Siri was "the coolest feature of the new iPhone 4S" (ACC ¶ 34); that iPhone 4S was "the best iPhone yet" (*id.* ¶ 31) and "the most amazing iPhone yet" (*id.* ¶ 36); that Siri is "like this amazing assistant" that is a "breakthrough" (*id.* ¶ 38); and that Siri is an "intelligent assistant" (*id.* ¶¶ 40, 47) and an "intelligent personal assistant" (*id.* ¶ 41).  The Court already has made clear that such statements "cannot form the basis of Plaintiffs' claims."  Order at 26.

### D. Plaintiffs' Claims Fail Under Rule 12(b)(6) For Additional Reasons

### 1. Plaintiffs Still Fail To State A Claim Under The UCL

In addition to the reasons stated above, Plaintiffs' UCL claim should be dismissed for the independent reasons that Plaintiffs lack standing to sue under the UCL and do not allege sufficient facts to show that Apple engaged in an "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

### a. Plaintiffs Lack Standing To Sue Under The UCL

The Order held that Plaintiffs "have not properly alleged that they have UCL standing" because they "failed to allege adequately that they were injured as a result of any particular deceptive or misleading statements made by Apple."  Order at 41.  The Amended Complaint does nothing whatsoever to remedy this deficiency.

To have standing under the UCL, "plaintiffs must establish that they (1) suffered an injury in

fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citations omitted). Initially, Plaintiffs nowhere claim that they are actually dissatisfied with their iPhones, thus demonstrating that in fact they have suffered no injury at all based on their iPhone 4S purchases.[9] But in any event, because Plaintiffs' allegations do not establish that they suffered an "economic injury" or that such injury was "caused by" Apple, they lack standing under the UCL. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

The phrase "lost money" as used in the UCL does not mean merely that "the money is 'no longer in [Plaintiffs'] possession,'" because such a broad definition would "encompass[] every purchase or transaction where a person pays with money." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008). Instead, Plaintiffs suffer economic injury *only* where they allege that they purchased a product based on a belief that a defendant's representation regarding the product was true, and that they would not have purchased the product had they known the representation was in fact false. *Kwikset*, 51 Cal. 4th at 316-17. But as a matter of law, purchasing a product that allegedly does not include an attribute that the product *was never represented to have* does not constitute economic injury under the UCL.

For example, in *Birdsong*, plaintiffs lacked UCL standing where they claimed Apple's iPod was defective because of the risk of noise-induced hearing loss. 590 F.3d at 960-62. Plaintiffs "d[id] not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time" and, indeed, they "admit[ted] that Apple provided a warning against listening to music at loud volumes." *Id.* at 961. Thus, plaintiffs' alleged injury was "premised on the loss of a 'safety' benefit that was not part of the bargain to begin with." *Id.*; *see also Animal Legal Defense Fund*, 160 Cal. App. 4th at 146-47 (plaintiffs lacked UCL standing where

---

[9] The marketing materials on which Plaintiffs claim to have relied also belie Plaintiffs' repeated claims that "Siri was *the* principal selling point for the iPhone 4S and was the *primary* feature distinguishing the iPhone 4S from prior versions of the iPhone." ACC ¶ 31 (emphases in original); *see also, e.g., id.* ¶¶ 4, 9, 15. For example, both the iPhone 4S pre-order e-mail, on which Hamagaki and Swartzman allegedly relied (*id.* ¶¶ 63, 77), and the iPhone 4S holiday e-mail, on which Swartzman allegedly relied (*id.* ¶ 77), demonstrate that Siri was just one of the many new features of iPhone 4S. The Court made this same observation in the Order (Order at 2), but Plaintiffs persist in mischaracterizing Apple's iPhone 4S marketing materials and pretending they focused on Siri alone in order to allegedly "convince consumers to choose the more expensive iPhone 4S over the iPhone 4." *See* ACC ¶ 15.

they alleged they would not have bought milk from certain dairies if they had known some of the cows were raised in cruel conditions, but they did not "allege any false or misleading representations that could be said to have become part of the purchase"; thus, any injury plaintiffs "suffered upon learning 'the truth' about industrial dairy farming was not economic").

Similarly here, Plaintiffs do not (and cannot) identify any statement by Apple that Siri would *consistently* successfully provide "an adequate response" to all questions and commands, no matter their nature or the circumstances in which the user interacted with Siri. As a result, Plaintiffs' unfounded assumption that Siri was infallible—notwithstanding Apple's statements to the contrary—could not have become part of any bargain with Apple. Any alleged injury Plaintiffs suffered upon learning the purported "truth" about Siri (*see* ACC ¶¶ 57, 65, 72, 79) thus was not economic and cannot confer standing under the UCL. *See Birdsong*, 590 F.3d at 960-62; *Animal Legal Defense Fund*, 160 Cal. App. 4th at 146-47.

Moreover, even if Plaintiffs could establish that they suffered an economic injury (they cannot), they nevertheless would lack standing because they still "fail[] to allege adequately that they were injured as a result of any particular deceptive or misleading statements made by Apple." *See* Order at 41. Plaintiffs "must demonstrate actual reliance on the allegedly deceptive or misleading statements," which requires them to "show that the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset*, 51 Cal. 4th at 326-27 (quotation marks and citation omitted). Put differently, "a UCL fraud plaintiff must allege he or she was motivated to act . . . based on the truth or falsity of a defendant's statement, *not merely on the fact it was made*." *Id.* at 327 n.10 (emphasis added). As discussed above, while Plaintiffs allege they bought their iPhones after seeing Apple's marketing materials, Plaintiffs are unable to identify any actionable misrepresentation in those materials and fail to plead actual reliance. Plaintiffs do not allege, as they must in light of their other allegations, that Apple falsely represented that Siri would work perfectly, that Plaintiffs saw and relied on that false representation in purchasing their iPhones, and that they would not have bought their iPhones otherwise based on Apple's other representations in the marketing materials Plaintiffs saw. *Cf. id.* at 327-28.

### b.    Plaintiffs Fail To Allege Sufficient Facts To Show That Apple Engaged In An Unlawful, Unfair, Or Fraudulent Business Act Or Practice

The Court dismissed Plaintiffs' UCL claim in its entirety because Plaintiffs did not allege sufficient facts to show that Apple engaged in any fraudulent, unfair, or unlawful business practice. Order at 40-41.  Plaintiffs' amended allegations fare no better.

The Amended Complaint once again does not specifically allege what purported practices violate the UCL's "fraudulent" prong, making only the exact same generic assertions as the Complaint.  *Compare* ACC ¶¶ 130, 132 *with* Dkt. 18 ¶¶ 91, 93.  As demonstrated above, these generalized claims of "false" and "misleading" statements are insufficient.  In addition, Plaintiffs still are unable to state a claim for violation of the UCL's "unlawful" prong, which "borrows violations of other laws" and "makes those unlawful practices actionable under the UCL," such that "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."  *In re Actimmune Marketing Litig.*, No. 08-cv-2376, 2009 WL 3740648, at *15 (N.D. Cal. Nov. 6, 2009) (quotation marks and citations omitted).  The Amended Complaint makes precisely the same assertions that Apple engaged in "unlawful" conduct as the Complaint did, including "by . . . violating California Civil Code §§ 1572-1573, 1709-1711, and 1770 and the common law." *Compare* ACC ¶ 125 *with* Dkt. 18 ¶ 86.  All of these statutory sections, however, are species of fraud subject to Rule 9(b).  Because the Amended Complaint does not satisfy Rule 9(b), Plaintiffs thus still do not state a claim under the UCL's "unlawful" prong.  *See Baltazar I*, 2011 WL 588209, at *5 (dismissing claim under the UCL's "unlawful" prong where "[p]laintiffs so far have failed to state a viable claim for fraud, intentional or negligent misrepresentation, or any other actionable wrongdoing").

Likewise, Plaintiffs still fail to allege that Apple engaged in any "unfair" conduct within the meaning of the UCL.  Plaintiffs make no attempt to specify any conduct by Apple that could be deemed "unfair," ignoring the requirement that a party "alleging unfair business practices under the [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. 04-cv-1664, 2004 WL 2496163, at *5-6 (N.D. Cal. Nov. 5, 2004) (quotation marks and citation omitted).  The Amended Complaint instead

alleges, without alteration, the same boilerplate claim as the Complaint did.  *Compare* ACC ¶ 128 *with* Dkt. 18 ¶ 89.  This "formulaic recitation" of elements is insufficient even under the more lenient strictures of Rule 8(a), because proper pleading "requires more than labels and conclusions."  *See Twombly*, 550 U.S. at 555.  And because Plaintiffs' bare assertion that Apple's conduct is "unfair" arises from the same allegations as their claims under the FAL as well as the UCL's "fraudulent" prong, this claim too sounds in fraud, and it does not meet the heightened pleading requirements of Rule 9(b) for the reasons stated above.  *See, e.g.*, *Actimmune*, 2009 WL 3740648, at *14 (dismissing plaintiffs' claims under the UCL's "unfair" prong because they "overlap entirely with their claims of fraud" and are deficient under Rule 9(b) for the same reasons).

**2.        Plaintiffs Still Fail To State A Claim For Breach Of Express Warranty**

The Order dismissed Plaintiffs' claim for breach of express warranty because the Complaint did not "plead compliance with the notice requirement" and "failed to allege the exact terms of any warranty."  Order at 35-36.  Because the Amended Complaint does not cure either of these deficiencies, the Court should dismiss Plaintiffs' claim for breach of express warranty with prejudice.

**a.        Plaintiffs Failed To Provide The Requisite Pre-Suit Notice Of Breach**

"To avoid dismissal of a . . . breach of warranty claim in California, a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (quotation marks and citation omitted).  The purpose of the notice requirement "is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court."  *Id.* (citation omitted).

Plaintiffs are unable to plead that they provided notice of any alleged breach of express warranty to Apple within a reasonable time after discovery of the alleged breach.  Instead, their Amended Complaint contains the same bald allegation as the Complaint that "[a]ll conditions precedent to Defendant's liability" for breach of express warranty, "including notice, as described above, have been performed by Plaintiffs and the Class."  *Compare* ACC ¶ 141 *with* Dkt. 18 ¶ 110. The only notice "described above" is that "on March 16, 2012," Plaintiffs "Balassone and Swartzman sent Apple a letter advising Apple that it was in violation of the CLRA."  ACC ¶ 111.

As an initial matter, the CLRA demand letter in question makes no mention of any alleged

breach of express warranty (*see id.*, Ex. A), and thus it cannot constitute "notice of the alleged breach." *See Alvarez*, 656 F.3d at 932. But even if a letter describing purported violations of the CLRA somehow could provide notice of an alleged breach of express warranty as well, Plaintiffs neither provided this notice within a reasonable time after discovery of the breach nor provided Apple sufficient opportunity to cure any alleged breach. Both Balassone and Swartzman allege that "[p]romptly after the purchase" of their iPhones—on October 20, 2011 and January 7, 2012, respectively—they "realized that Siri was not working as Apple advertised it would." ACC ¶¶ 69, 72, 76, 79. Yet they waited *months* before sending Apple the CLRA demand letter on March 16, 2012. *See id.* ¶ 111; *id.*, Ex. A. Plaintiffs therefore did not provide notice of any alleged breach "within a reasonable time after discovery of the breach." *See Alvarez*, 656 F.3d at 932; *see also Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 921-22 (1943) (delay of four months in providing notice of breach of warranty unreasonable as a matter of law).

Moreover, Balassone and Swartzman filed their complaint against Apple on March 20, 2012 (Order at 10, 33)—a mere *four days* after sending the CLRA demand letter, and despite the fact that the letter advised Apple that "Balassone and Swartzman would seek monetary damages pursuant to the CLRA" only if "the relief requested has not been provided within *30 days*." ACC ¶ 111 (emphasis added); *see id.*, Ex. A. Balassone and Swartzman thus did not give Apple any opportunity to cure any alleged breach in order to "avoid the necessity of litigating the matter in court." *See Alvarez*, 656 F.3d at 932. As the Court previously observed regarding this letter, "four days . . . certainly doesn't give one much time to try to fix anything." Tr. at 13:13-16.

### b.    Plaintiffs' Claim For Breach Of Express Warranty Fails

Even if Plaintiffs had provided proper notice of any alleged breach of express warranty within a reasonable time after discovery of the breach and had allowed Apple sufficient time to cure any such breach before filing suit, their claim nonetheless should be dismissed because they still "fail[] to allege the exact terms of any warranty." *See* Order at 36. Plaintiffs *have not changed a word* of their vague and rejected breach of warranty allegations. *Compare* ACC ¶ 135 *with* Dkt. 18 ¶ 104. The Court previously dismissed the breach of warranty claim based on these allegations, explaining that "Plaintiffs must at least allege which particular commercials and webpages they each relied upon,

must describe the content of those advertisements and pages with particularity and must allege with

specificity their reasonable reliance thereon." Order at 36; *see also* Tr. 14:2-11 (stating Plaintiffs'

allegations are "too vague to know what is warranted. . . . So if you want that theory, it's going to . . .

have to be more particular in terms of what exactly you say the warranty was and how it was

breached"). But Plaintiffs are not "more particular" (*id.*), and they are unable to identify "a specific

and unequivocal written statement" Apple made about Siri that constituted an "explicit guarantee[]."

*See Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997); *see also* Tr. at 14:2-11

(requiring Plaintiffs to plead a warranty "that can be stated expressly and proved or disproved").

Given Plaintiffs' utter inability to cure the deficiencies in their breach of express warranty claim, the

Court should dismiss this claim without leave to amend.

**E.    The Court Should Not Grant Plaintiffs Further Leave To Amend**

Despite having had two opportunities to do so, Plaintiffs have yet to allege a single actionable

misrepresentation Apple made about Siri in any of the advertising or marketing materials on which

they allegedly relied in purchasing their iPhones. There is no reason to believe that a third complaint

could fare any better. This is especially so considering that the Court's Order, and extensive dialogue

at the hearing, specifically pointed out the original Complaint's numerous deficiencies, and Plaintiffs'

Amended Complaint was unable to correct them. *See Arroyo v. Chattem, Inc.*, No. 12-cv-2129, 2012

WL 5412295, at *7-8 (N.D. Cal. Nov. 6, 2012) ("Plaintiff has already had an opportunity to amend

her complaint and was specifically instructed to add facts describing the circumstances *i.e.*, who,

what, when, where, and how of the purchase and Plaintiff's reliance on the particular statements that

were made in connection with the product. Because Plaintiff's FAC does not state claims with the

required particularity, the Court GRANTS Defendant's Motion to Dismiss, this time with prejudice.")

(quotations, citations and alterations omitted); *Sosa v. Bank of N.Y. Mellon Trust*, No. 12-cv-144,

2012 WL 2568188, at *4 (N.D. Cal. July 2, 2012) (dismissing UCL claim without leave to amend

where the allegations were "identical" to those "that the court found to be insufficient" previously).[10]

---

[10] Apple incorporates by reference the arguments it asserted in its motion to dismiss Plaintiffs' initial Complaint but that the Court rejected (*see* Order at 15-20, 30-32) and reserves the right to raise these arguments in response to any appeal by Plaintiffs from a final dismissal order, or otherwise.

Gibson, Dunn &
Crutcher LLP

1

## V.   CONCLUSION

2      Plaintiffs still fail to plead their claims against Apple with the level of particularity required

3  by Rule 9(b), still impermissibly rely on a selective reading of the challenged representations that

4  ignores specific disclosures, still allege only non-actionable statements, still lack standing to sue

5  under the UCL, and still do not otherwise allege sufficient facts in support of any of their claims.

6  Because the Amended Complaint is insufficient as a matter of law to support any of the claims

7  alleged, and because further amendment would be futile, Apple respectfully requests that this Court

8  dismiss the Amended Complaint in its entirety, without leave to amend.

9

10  DATED:  August 20, 2013                Respectfully submitted,

11                                         GIBSON, DUNN & CRUTCHER LLP

12

13                                         By:  _____/s/ Gail E. Lees_____
                                                           Gail E. Lees
14

15                                         GAIL E. LEES
                                           MATTHEW S. KAHN
16                                         AIMEE M. HALBERT
                                           GIBSON, DUNN & CRUTCHER LLP
17                                         333 South Grand Avenue
                                           Los Angeles, CA  90071-3197
18                                         Telephone:  213.229.7000
                                           Facsimile:  213.229.7520
19                                         glees@gibsondunn.com
                                           mkahn@gibsondunn.com
20                                         ahalbert@gibsondunn.com

21                                         Attorneys for Defendant APPLE INC.

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP