BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*Pro Hac Vice*)
ERICH P. SCHORK (*Pro Hac Vice*)
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

GARDY & NOTIS, LLP
JENNIFER SARNELLI (242510)
JAMES S. NOTIS (*Pro Hac Vice*)
501 Fifth Avenue, Suite 1408
New York, NY 10017
Telephone: 212/905-0509
212/905-0508 (fax)
jsarnelli@gardylaw.com
jnotis@gardylaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re IPHONE 4S CONSUMER LITIGATION | ) ) ) ) |
| | ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) ) ) ) ) ) ) ) |

Master File No. 4:12-cv-01127-CW

CLASS ACTION

**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Judge:    The Honorable Claudia A. Wilken

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

    A.    Apple's Deceptive Marketing Campaign Highlighted Siri.......................2

    B.    Plaintiffs Each Purchased an iPhone 4S Because of Siri, Which Does Not Work as Advertised.................................................................................6

    C.    Apple Knew Siri Did Not Perform as Advertised ..................................9

III.  ARGUMENT ......................................................................................................9

    A.    Standard of Review..................................................................................9

    B.    Plaintiffs' Claims Are Sufficiently Particularized and Meet the Requirements Outlined in the Court's Order ........................................10

        1.    Plaintiffs Sufficiently Plead Fraud Claims ................................10

        2.    Plaintiffs Sufficiently Allege Reliance .....................................15

    C.    Plaintiffs' UCL, FAL, CLRA, and Misrepresentation Claims Are Based upon Actionable Statements ..................................................................17

        1.    Plaintiffs Adequately Plead Apple's Siri Advertisements and Promotions Were Likely to Deceive Members of the Public ...................17

        2.    Apple's Statements About Siri Are Actionable .........................20

    D.    Plaintiffs' Claims Satisfy the Requirements of Rule 8 .........................20

        1.    Plaintiffs' Allegations Are Sufficient to State a UCL Claim....................20

        2.    Plaintiffs State a Claim for Breach of Express Warranty .........................24

        3.    Plaintiffs' Properly Allege a Breach of Express Warranty.......................25

IV.   CONCLUSION..................................................................................................25

1

## TABLE OF AUTHORITIES

**Page(s)**

2

**CASES**

3

*Aaronson v. Vital Pharm., Inc.*,
    No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010) ..................................... 25

4

*Animal Legal Def. Fund v. Mendes*,
    160 Cal. App. 4th 136 (2008) ............................................................................................... 23

5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 9

6

7

*Baltazar v. Apple, Inc.*,
    No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ................................................ 14

8

*Baltazar v. Apple, Inc.*,
    No. C. 20-03231-WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ................................... 14, 18

9

10

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ............................................................................................. 23

11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 9

12

13

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ............................................................................................... 22

14

*Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ......................................................................................................... 23

15

16

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ............................................................................................... 25

17

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. Cal. 1999) ........................................................................................ 20

18

19

*Colony Cove Props., LLC v. City of Carson*,
    640 F.3d 948 (9th Cir. 2011) ............................................................................................ 9, 10

20

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ............................................................................................... 20

21

22

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1998) ............................................................................................... 10

23

*Degelmann v. Advanced Med. Optics Inc.*,
    659 F.3d 835 (9th Cir. 2011) ........................................................................................... 22, 23

24

25

*Garcia v. Sony Computer Entm't Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................................................ 16

26

*Germain v. J.C. Penney Co.*,
    No. CV 09-2847 CAS (FMOx), 2009 WL 1971336 (C.D. Cal. July 6, 2009) .............................. 14

27

28

*Gottreich v. S.F. Inv. Corp.*,
  552 F.2d 866 (9th Cir. 1977) .................................................................................. 13

*Greenman v. Yuba Power Prods.*,
  59 Cal. 2d 57 (1963) ....................................................................................... 24, 25

*Fundin v. Chi Pneumatic Tool Co.*,
  152 Cal. App. 3d 951 (1984) ................................................................................. 25

*Henderson v. J.M. Smucker Co.*,
  No. CV-10-4524-GHK-VBK, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ..................... 18

*Herrington v. Johnson & Johnson Consumer Cos.*,
  No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................... 16

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................ 21

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ........................................................................................ 17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................... 16

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ..................................................................... 24

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .................................................................................... 20, 22

*Lima v. Gateway, Inc.*,
  710 F. Supp. 2d 1000 (C.D. Cal. 2010) ................................................................... 19

*Maxwell v. Unilever U.S., Inc.*,
  No. 12-cv-1736, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) ...................................... 16

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................................... 10

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................. 24, 25

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................................. 9

*Stuart v. Cadbury Adams USA, LLC*,
  458 F. App'x 689 (9th Cir. 2011) ........................................................................... 18

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................. 17, 18, 19, 22

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Civ. P. 8 ................................................................................................ 20, 25

Fed. R. Civ. P. 9(b) ...................................................................................... 2, 10, 25

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 9

Cal. Bus. & Prof. Code § 17200 *et seq.* ............................................ 2, 17, 20, 22, 23

Cal. Bus. & Prof. Code § 17204 .......................................................................... 20

Cal. Bus. & Prof. Code § 17500 *et seq.* .......................................................... 2, 17

Cal. Civ. Code § 1750 *et seq.* .......................................................................... 2, 17

Cal. Com. Code §2607(3)(A) ............................................................................... 24

Cal. Com. Code §2313(b) ..................................................................................... 25

# I.     INTRODUCTION

Plaintiffs' Amended Consolidated Class Action Complaint (the "ACC") (Dkt. No. 70) directly addresses and satisfies all of the Court's concerns with Plaintiffs' original complaint. Consistent with the Court's July 23, 2013 Order ("Order") (Dkt. No. 68), the ACC details how Apple Inc. ("Apple" or the "Company"), through an extensive nationwide marketing and advertising campaign, sold Apple's then-new iPhone 4S smartphone for a premium by conveying the false and misleading message that its new voice-activated intelligent assistant "Siri" is able to function on a consistent basis as a personal assistant by understanding spoken questions and/or commands, knowing what these questions and/or commands mean, and by providing an adequate response to them.

Through numerous television commercials, website representations, and direct email solicitations, Apple solicited consumers to purchase the iPhone 4S by representing that the iPhone 4S's new Siri feature could be used to get answers, find facts, and perform complex calculations. For example, Apple showed Siri consistently performing various tasks, including making appointments, finding directions, crafting text messages, and even learning guitar chords to classic rock songs. In fact, Apple's advertisements show Siri completely understanding and responding to every voice command given by the user. The ACC describes each of Apple's commercials, presentations, and website references in detail, and how such advertisements conveyed to consumers that Siri would consistently be able to perform the various tasks shown in Apple's advertisements and other promotions. The ACC further details how Plaintiffs experienced these representations, relied upon them when making their decision to purchase the iPhone 4S, and each Plaintiffs' expectation resulting from such advertisements about Siri's capabilities.

Unfortunately, Siri's represented functionality conveyed in Apple's advertisements was belied by its real-life performance. Contrary to each and every one of Apple's advertisements—and confirmed by Plaintiffs' own experiences—Siri is not able to get answers, find facts, or perform complex calculations on a consistent basis. Siri has been such an abysmal failure that Scott Forstall, former Apple Senior VP of iPhone Software and the "previous heir apparent to the Apple throne," departed the Company in

1  October 2012 after having "taken flak for Apple's overselling and underdelivering of . . . Siri—which

2  proved far less capable than Apple let on[.]"[1]

3       Apple's latest 12(b)(6) motion (Dkt. No. 72) ("MTD") fails for numerous reasons. *First*,

4  Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims satisfy both Fed. R. Civ. P. 9(b) and the

5  Court's Order by sufficiently alleging the "how" of Apple's misrepresentations and specifying the

6  commercials and/or other misleading advertising each Plaintiff relied upon in purchasing their iPhone

7  4S.  *Second*, Plaintiffs' UCL, CLRA, and breach of express warranty claims satisfy federal pleading

8  requirements because they allege sufficient facts to support that Plaintiffs' claims are plausible and to

9  put Apple on notice of the bases of their claims. *Third*, Plaintiffs have properly alleged that they have

10  UCL standing because Plaintiffs more than adequately allege that they were injured as a result of

11  particular deceptive or misleading statements made by Apple.  *Fourth*, Plaintiffs state a beach of express

12  warranty claim and have complied with the notice requirement. For these reasons, and because the ACC

13  meets every requirement to state a claim identified in the Court's Order, Apple's Motion should be

14  denied in its entirety.

15  **II.    STATEMENT OF FACTS**

16       Apple introduced the iPhone 4S in October 2011. ¶4.[2] The major selling point for the iPhone 4S

17  was Siri, which was the primary feature distinguishing the iPhone 4S from previous generations of the

18  iPhone. ¶¶4, 32 (noting that one Apple advertisement provided: "How do you improve on something so

19  extraordinary?" The answer: "now we're introducing Siri.").  In conjunction with the introduction of Siri

20  to potential consumers, Apple engaged in an extensive marketing campaign that showcased Siri's

21  alleged capabilities.  ¶6.

22  **A.    Apple's Deceptive Marketing Campaign Highlighted Siri**

23       On or around October 4, 2011, Apple began a marketing campaign of presentations, e-mail

24  solicitations, and video demonstrations showcasing Siri's specific functions and abilities.  For example,

---

26  [1]  Ted Samson, *Apple's former heir apparent to depart after Siri and Maps failures*,
    InfoWorld.com (Oct. 30, 2012), http://www.infoworld.com/t/technology-business/apples-former-heir-
27  apparent-depart-after-siri-and-maps-failures-205968.

28  [2]  All references to "¶_" refer to paragraphs in the ACC.

on October 4, 2011, Apple held a press conference where Siri was introduced as a "digital assistant" and "the coolest feature of the new iPhone 4S" (the "iPhone 4S presentation"). ¶34. The iPhone 4S presentation included an interactive demonstration where Siri was asked a variety of questions and to perform various tasks and responded to each and every one of the questions and requests correctly. For example, Siri was asked questions related to the weather, the current time in a different part of the world, and the stock market. *Id*. Siri responded to each question correctly. *Id*. Siri was also asked to set a wake up alarm and find a restaurant in a specific city. *Id*. Siri completed these tasks correctly. *Id*. The presenter of the iPhone 4S presentation also explained that users do not need to use precise words to use Siri, but rather that Siri understands general words and "conceptual questions" to determine what the user is requesting. *Id*.

Around that same time, Apple issued a press release highlighting Siri's ability to, among other things, "get answers, find facts and even perform complex calculations just by asking." ¶33. The press release touted Siri, stating: "iPhone 4S also introduces Siri, an intelligent assistant that helps you get things done just by asking. Siri understands context allowing you to speak naturally when you ask it questions . . . Siri helps you make calls, send text messages or email, schedule meetings and reminders, make notes, search the Internet, find local businesses, get directions and more." *Id*.

Apple also sent emails to consumers that showcased Siri to induce them to purchase the iPhone 4S. For example, on or around October 4, 2011, Apple sent consumers a pre-order e-mail (the "iPhone 4S pre-order email") that included a link that brought users to Apple's website and to a video (the "iPhone 4S Video") that predominately displayed Siri's purported capabilities. ¶¶36–37. The iPhone 4S Video showed multiple demonstrations involving Siri and its purported capabilities, including Siri being able to understand questions and commands. ¶37. For example, Siri was asked to find a restaurant in a particular location and to schedule a business meeting for a particular time, to which Siri responded correctly. *Id*. During the iPhone4S Video, one Apple executive touted: "[Siri is] like this amazing assistant that listens to you, understands you, can answer your questions and can even accomplish tasks for you. . . . A lot of devices can recognize the words you say, but the ability to understand what you mean and act on it, that's the breakthrough with Siri." ¶38. In addition, on December 1, 2011, Apple also sent its customers emails marketing the iPhone 4S (the "iPhone 4S holiday email"), which

1   encouraged its recipients to give the iPhone 4S as a gift and stated, "Give the phone that everyone's

2   talking about.  And talking to.  iPhone 4S comes with an all-new 8MP camera, iOS 5, iCloud, and Siri:

3   the intelligent assistant you can ask to make calls, send texts, set reminders, and more."  ¶47.

4           Apple's website, www.apple.com, also touted Siri as the major selling point of the iPhone 4S.

5   ¶40.  Indeed, Apple's website encouraged consumers to "Ask Siri to make calls, send texts, set

6   reminders, and more.  Just talk the way you talk.  Siri understands what you say and knows what you

7   mean." *Id.*

8           In addition to the presentations, videos, email solicitations, and website references, Apple began

9   airing nationwide TV advertisements *focused solely on Siri*, which depicted individuals using Siri to

10  make appointments, find restaurants, send text messages, learn guitar chords to classic rock songs, and

11  how to tie a tie.  ¶¶7, 42.  In fact, seven out of the ten commercials Apple used to market the iPhone 4S

12  focused solely on Siri.  ¶42.  The commercials aired by Apple include: "Introducing Siri," "Siri, Snow

13  Today," "Road Trip," and "Rock God."  ¶¶44, 46, 48, 49.[3]  In each of the commercials, Siri properly

14  answers the questions asked by the users, provides the requested information asked by the users, and/or

15  aids the users in performing the requested tasks with relative ease.  ¶7.

16          The "Introducing Siri" commercial began airing around October 4, 2011, and showed Siri being

17  able to easily understand, answer, and/or perform the questions and commands of five different

18  individuals' voice commands (including one person in the middle of running).  ¶44.  During the

19  commercial, a user asked Siri, "What's the traffic like around here?"  The commercial showed Siri

20  understanding this question and responding "Here's the traffic" and providing the traffic patterns of the

21  user's location on a map.  *Id.*  The "Introducing Siri" commercial also showed Siri responding to users'

22  questions and commands by correctly reading text messages aloud, crafting and sending text messages,

23  playing a user's music mix, giving weather information for San Francisco and Napa Valley, providing

24  _____

25  [3]    Apple relies upon the fact that the "Siri, Snow Today," "Road Trip," and "Rock God"

26  commercials concluded with statements that the "sequences" depicted had been "shortened." MTD at 5.
    Plaintiffs' claims have nothing to do with Siri's slow response time. Instead, Plaintiffs' claims are

27  related to Siri's failure to respond and/or understand Plaintiffs' questions and commands, and Siri
    providing wrong responses to Plaintiffs' questions and commands. The fact that Apple's Siri

28  commercials contained the phrase "sequences have been shortened" is a red herring.

1   information related to how many cups are in 12 ounces, and setting the iPhone 4S internal timer for 30

2   minutes. ¶45. Siri worked perfectly and never faltered.

3       The "Siri, Snow Today" commercial began airing around October 31, 2011, and showed Siri

4   being able to easily understand, answer, and/or perform the questions and commands of four different

5   individuals, including a child. ¶46. During the commercial, users asked Siri such questions as, (1)

6   "What's my day look like," to which Siri understood the question and responded with "Not bad, only

7   two meetings today"; (2) "Can I walk to the Belvedere Hotel from here?", to which Siri understood the

8   questions and responded with "[h]ere are directions to the Belvedere hotel," and a map with directions

9   appears on the user's iPhone 4S screen; and (3) "Do you think it will snow today?", to which Siri

10   understood the question and responded, "It sure looks like snow today," and the weather forecast appears

11   on the user's iPhone 4S screen. *Id*. Again, Siri worked perfectly and never faltered.

12       The "Rock God" commercial began airing around February 10, 2012, and involved a guitar

13   player asking Siri numerous questions, including, "How do I play London Calling" and "[How do I play]

14   Whole Lotta Love?" ¶49. In response to the question "[How do I play] a B Minor Ninth?," Siri responds

15   with the proper notes, chord, and sheet music. *Id*. Also, when Siri was asked to "Tell Julie and Kate our

16   band is playing at the garage tonight," the commercial shows Siri responding, "Here is your message to

17   Julie and Kate," and immediately formulates a text message on the iPhone 4S screen. ¶50.

18       As intended, Apple's media blitz conveyed to consumers the overall message that Siri operates as

19   a well-functioning voice-activated personal assistant and could perform not only the specific tasks

20   depicted in Apple's advertisements, but other complex tasks as well. ¶¶6–7, 31, 51. In addition, Apple's

21   marketing conveyed the message that Siri would consistently understand an individual's natural speech,

22   correctly understand what as being asked, and provide accurate answers to those questions. ¶¶7, 51. Put

23   simply, Apple's marketing campaign was designed to convince consumers to purchase the iPhone 4S

24   over other smartphones and older, less expensive versions of the iPhone based on the inclusion of Siri.

25   ¶¶4, 11, 15. In reality, Siri does not function as represented in Apple's advertisements. ¶8. Plaintiffs

26   each saw and/or heard Apple's representations regarding the functionality of Siri and relied upon such

27   representations when purchasing the iPhone 4S. ¶¶19, 21, 23, 25. Contrary to Apple's advertisements,

28   Siri is unable to perform the basic functions of a voice-activated personal assistant, is unable to answer

1   specific questions, and often gave Plaintiffs wrong information or failed to respond at all.  ¶¶57–58, 65–
2   66, 72–73, 79–80.

3       **B.    Plaintiffs Each Purchased an iPhone 4S Because of Siri, Which Does Not Work as Advertised**

4       **Plaintiff Fazio.**  On November 19, 2011, after seeing and relying on Apple's "Introducing Siri"
5   and "Siri, Snow Today" commercials, as well as Apple's representations about Siri on www.apple.com,
6   Fazio purchased an iPhone 4S from a Best Buy retail store in Brooklyn, New York. ¶¶54–55. Based
7   upon Apple's representations he saw prior to his purchase, Fazio reasonably expected that Siri would
8   properly answer the questions he asked, provide the information he requested, and/or aid him in
9   performing requested tasks with relative ease. ¶7. Within the first month of purchasing his iPhone 4S,
10  Fazio learned that Siri was not working as Apple advertised. ¶58. Fazio asked Siri questions very similar
11  to those he saw in Apple's Siri advertisements, such as asking Siri conceptual questions as in
12  "Introducing Siri" and for directions as in "Siri, Snow Today." ¶58. Instead of understanding what Fazio
13  was asking and answering his questions, Siri would either think for a long period of time and never
14  respond, or would respond with "I don't understand."  ¶57.  For example, as detailed in the ACC, when
15  Fazio asked Siri to compare the fat content between two meals, the location of a children's party venue,
16  information related to the "guided reading" teaching method, and directions to a doctor's office, Siri was
17  unable to answer his questions, even though the types of questions and commands that he asked Siri
18  were the precise types of questions and commands Apple led him to believe Siri could help him
19  accomplish in the "Introducing Siri" and "Siri, Snow Today" commercials, and consistent with the
20  marketing materials about Siri he had read on Apple's website prior to purchasing his iPhone 4S.  ¶¶58–
21  59.

22      **Plaintiff Hamagaki.**  After seeing and relying on the "Introducing Siri" commercial, the iPhone
23  4S Video, as well as Apple's representations about Siri made on www.apple.com,
24  www.apple.com/iphone, www.apple.com/iphone.features/siri, and www.apple.com/iphone/
25  features/siri-faq.html, Hamagaki pre-ordered her iPhone 4S through Apple's website and on November
26  6, 2011 purchased her iPhone 4S from an Apple retail store in Santa Monica, California.  ¶¶61, 63.
27  Shortly after purchasing her iPhone 4S, Hamagaki learned that Siri was not working as Apple had
28

advertised. ¶65. Hamagaki asked Siri questions very similar to those she saw in Apple's Siri advertisements, such as asking Siri conceptual questions as in "Introducing Siri" and in the iPhone 4S Video and discussed on Apple's website. ¶66. Instead of understanding what Hamagaki was asking and answering her questions like Siri did in Apple's advertisements, Siri would either think for a long period of time and never respond, or would respond with "I don't understand." ¶¶65–66. For example, as detailed in the ACC, when Hamagaki asked Siri for the locations of two specific well known parks by name, Siri did not understand what Hamagaki was asking for and responded with "I don't understand," even though these were the precise types of questions Apple led her to believe Siri could answer based upon Apple's "Introducing Siri" commercial and the iPhone4S Video, and consistent with the marketing materials about Siri she had read on Apple's website prior to purchasing her iPhone 4S. ¶67.

**Plaintiff Balassone.**  On October 20, 2011, after seeing and relying on the "Introducing Siri" commercial, as well as Apple's representations about Siri during the iPhone 4S presentation, Balassone purchased an iPhone 4S from an Apple retail store in Rockaway, New Jersey. ¶¶69–70. After purchasing his iPhone 4S, Balassone learned that Siri was not working as Apple advertised and instead of understanding what Balassone was asking and answering his questions properly, Siri would give him wrong answers. ¶72. Balassone asked Siri similar types of questions that he saw in Apple's Siri advertisements and on its website, and relied upon them when purchasing his iPhone 4S. ¶73. As detailed in the ACC, Balassone even attempted to mirror the commands given in Apple's "Rock God" television advertisement, but Siri failed to respond in the same manner as in the television commercial. ¶73. For example, when Balassone asked Siri, "How do you play an A chord?"  he expected that Siri would respond with the proper notes, chord, and sheet music, as Siri does in the "Rock God" commercial in response to the question, "[How do I play] a B minor Ninth?"  *Id.*  However, Siri did not correctly respond to Balassone's question and instead Siri answered, "OK, how about a web search for 'how do you plan a quart?'" ¶73. Balassone again attempted to mirror the commands given to Siri in Apple's "Rock God" commercial by asking Siri, "How do you play a B minor chord?"  *Id.*  Again, Siri did not correctly respond to Balassone's question and responded, "looking for B minor chord," followed

1   by "still thinking," and eventually responded "Sorry, I couldn't find B minor chord in your music."

2   ¶73.[4] When Balassone asked Siri the types of questions and commands he had seen Siri perform in

3   Apple's "Introducing Siri" commercial and in the iPhone 4S presentation prior to purchasing his iPhone

4   4S, Siri did not understand what Balassone was asking for and responded with the wrong answers even

5   though these were the precise types of questions Apple led him to believe Siri could answer based upon

6   the marketing he saw. ¶74.

7       **Plaintiff Swartzman.**   On January 7, 2012, after seeing and relying on Apple's iPhone 4S pre-

8   order email, iPhone 4S Video, and the iPhone 4S holiday email, Swartzman purchased an iPhone 4S

9   from an Apple retail store in San Luis Obispo, California. ¶¶76–77. Soon after purchasing his iPhone 4S,

10  Swartzman learned that Siri was not working as Apple advertised.  Swartzman asked Siri to perform

11  similar types of commands or ask similar questions to those he saw in the iPhone 4S Video and

12  advertised through Apple's e-mails that he relied upon when purchasing his iPhone 4S. ¶78. Instead of

13  understanding what Swartzman was asking or performing his requested commands, Siri would do

14  nothing at all or would respond with "I don't understand." ¶79. For example, as detailed in the ACC,

15  when Swartzman attempted to use Siri to make phone calls or send emails, Siri did not understand what

16  he was saying and repeatedly gave him the wrong names and numbers of the people he was trying to

17  contact. ¶80.  When Swartzman asked Siri for the weather in Palm Springs, Siri did not understand what

18  he was asking.  *Id*.  When Swartzman asked Siri, "When is St. Patrick's day," Siri responded, "Sorry, I

19  don't understand 'When is St. Patrick's day.'"  *Id*.  When Swartzman asked Siri these questions, Siri did

20  not understand what Swartzman was asking for and responded with the wrong answers, even though

21  Apple led him to believe Siri could answer these questions and perform these commands based upon the

22  iPhone 4S Video, and consistent with the marketing materials about Siri in Apple's emails. ¶81.

23  _____

24      [4]   Apple misconstrues Balassone's allegations in arguing that this Court should disregard
    Balassone's experiences with Apple's "Rock God" advertisement because the commercial aired after his
25  purchase. Balassone does not allege that he relied on the "Rock God" commercial in deciding to
    purchase the iPhone 4S.  Rather, after purchasing his iPhone 4S, Balassone attempted to mirror the
26  commands that worked in the "Rock God" commercial to see if Siri was capable of answering the
    questions Apple specifically showed Siri answering—Siri could not answer these questions.  This is
27  relevant because it further supports that Siri failed to perform as demonstrated and represented in
    Apple's advertisements.

28

C.    **Apple Knew Siri Did Not Perform as Advertised**

Apple had actual or constructive knowledge of Siri's shortcomings prior to its marketing blitz and the iPhone 4S's distribution. ¶86. While Apple's website, through a labyrinth of links and hyperlinks, associates the term "beta" with Siri in a few select places, Apple never disclosed in a single one of is nationwide television commercials or videos that Siri was in beta, nor did Apple ever explain what beta meant as to Siri. ¶¶86, 88–89. Indeed, Apple completely failed to disclose that actual consumers using an iPhone 4S could not reasonably expect Siri to perform tasks like those performed in Apple's commercials. *Id*.

Plaintiffs' experiences with Siri are not unique. ¶13. In fact, a *Huffington Post* blogger published an article entitled "Apple's Siri 'Rock God' Commercial: How Accurate Is It, Really?" which was accompanied by a video entitled "A Scientific Ex-Siri-Ment," wherein the blogger repeats every voice command prompt in Apple's "Rock God" commercial, word-for-word. ¶83. The video shows that Siri is only able to respond to two of seven prompts on the first try, even though Siri responded to all questions with ease in the televised "Rock God" commercial. ¶84. Even one of Apple's co-founders, Steve Wozniak, expressed dissatisfaction with the functionality of the iPhone 4S's Siri feature. ¶87. During a June 2012 interview, Wozniak referred to Siri as "poo-poo" and stated that he was "really disappointed" with the quality of Siri, adding that Siri "should be smart enough to look at the words you say and know what you're asking." *Id*.

III.   **ARGUMENT**

A.    **Standard of Review**

"[U]nder the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Detailed factual allegations are not required; rather, a complaint must only allege sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts "accept[] factual allegations in the complaint as true and construe[]

the pleadings in the light most favorable to the nonmoving party." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).

### B. Plaintiffs' Claims Are Sufficiently Particularized and Meet the Requirements Outlined in the Court's Order

"A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993) (citations omitted). While Rule 9(b) imposes a heightened standard, it does not require a plaintiff to allege each and every detail about the alleged conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998) ("we cannot make Rule 9(b) carry more weight than it was meant to bear").

Consistent with the Court's directives, the ACC sufficiently sets forth: "who" (Apple) (¶¶27–29); "what" (that Apple made specific representations that Siri would act as an efficient personal assistant) (¶¶6-8, 11–12); "when" (Apple's false representations to consumers began with the launch of the Siri feature on October 4, 2011 and continue through the present) (¶¶4, 33–50); "where" (Apple markets and advertises the Siri feature of the iPhone 4S nationwide through television, print ads, emails, and the Internet) (¶¶6, 33–51); and "how" (Apple knew or should have known that Siri would not perform as advertised, yet it advertised Siri acting as an efficient personal assistant to consumers nationwide) (¶¶13, 83–91).

#### 1. Plaintiffs Sufficiently Plead Fraud Claims

Pursuant to this Court's Order, Plaintiffs' ACC has: (1) "explained what exactly Apple led consumers to believe in the commercials about Siri's performance" including "particular statements" with an explanation as to "what about these representations was in fact false"; (2) what the truth about Siri's performance actually was and "specified precisely how Siri failed to meet the representations that they claim Apple made; and (3) how Apple knew or should have known that these representations were false." Order at 23. Plaintiffs precisely followed this Court's direction in the ACC and have pleaded their claims with the requisite particularity. Therefore, Apple's Motion should be denied.

a.     **Apple's Advertisements and Misstatements Misled Consumers to Believe Siri Was Able to Consistently Perform Tasks as Advertised**

The ACC alleges that Apple conveyed to consumers the misleading and deceptive message that the iPhone 4S's Siri feature "functions on a consistent basis as a personal assistant by understanding spoken questions and/or commands, knowing what those questions and/or commands meant, and by providing adequate responses to them." ¶13.  Apple represented that Siri is an "intelligent assistant" that could be used by consumer to, for example, "make appointments, find restaurants, craft text messages, learn the guitar chords to classic rock songs and how to tie a tie," "make calls, send texts, set reminders, and more." ¶7. Apple claimed Siri would enable consumers consistently to get answers, find facts and even perform complex calculations just by asking. ¶33. Because Siri purportedly was able to "understand [] context," Apple also represented that consumers could "[j]ust talk the way you talk [and] Siri understands what you say and knows what you mean"—"the breakthrough with Siri" was its "ability to understand what you mean and act on it." ¶¶33, 38, 41.  None of this was true.

Apple implemented an extensive television marking campaign designed to demonstrate Siri's alleged features. ¶¶44–50. These advertisements show Siri responding to various commands and questions by actors portraying iPhone 4S consumers. *Id*. Through this campaign, Siri is shown answering simple questions and commands such as, "What's the traffic like around here?," "What's my day look like?," "Can I walk to the Belvedere Hotel from here?," "Do you think it will snow today?," "Where is the best barbeque in Kansas City?," "How big is the Grand Canyon?," "How do I play London Calling?," "[How do I play] a B Minor Ninth?," and "Tell Julie and Kate our band is playing at the garage tonight." ¶¶7, 37, 44–46, 48–50.  In Apple's commercials featuring Siri, each and every one of these tasks were performed with ease using Siri, and with Siri providing the user with requested information.

For example, in response to Siri being asked "What's the traffic like around here?" Apple's advertisement shows Siri understanding the question and responding, "Here's the traffic" and providing traffic patterns on a map.  ¶44.  When Siri was asked, "Do you think it will snow today?" in the "Siri, Snow Today" commercial, Siri was shown responding to the question by stating, "It sure looks like snow today," and the weather forecast appeared on the user's iPhone 4S screen.  ¶46.  In the "Rock

1  God" commercial, when Siri was asked,"[How do I play] a B Minor Ninth?," the commercial showed

2  Siri responding to the question with the correct notes, chord, and sheet music. ¶49.

3          As intended by Apple, the above advertisements led consumers to believe that Siri was a

4  "breakthrough" and a voice-activated, "intelligent," personal assistant. ¶51. Indeed, Apple's

5  advertisements for the iPhone 4S emphasized that Siri was more than just voice recognition software and

6  depicted individuals using Siri to look up answers to complex and conceptual questions, to aid in

7  performing specific tasks, and easily and consistently provide the user with requested information. *Id*.

8                    **b.        Siri Does Not Perform as Advertised**

9          As alleged in the ACC, the truth is that Siri did not and does not perform as represented by Apple

10  in all of its marketing and advertisements, and Apple's representations of Siri's functionality in these

11  advertisements are false. ¶¶7, 58, 66, 73, 80, 83–85.  In reality, Siri is unable to make appointments, find

12  restaurants, craft text messages, understand and respond to voice commands, and perform various other

13  tasks on a consistent basis as represented and advertised by Apple. ¶¶7–8. After Plaintiffs relied on

14  Apple's representations about Siri and purchased their iPhone 4Ss, Plaintiffs learned that Siri was unable

15  to consistently process commands similar to those displayed on television commercials, website

16  representations, and direct email solicitations.

17          Consistent with the Court's Order, the ACC sufficiently set forth "with specificity which

18  commercials or other misleading advertisements they each relied upon when purchasing their devices."

19  Order at 29. To that end, Plaintiffs provide a detailed account of the representations each Plaintiff

20  viewed and relied upon regarding Siri's alleged capabilities, each Plaintiffs' experience with Siri, and

21  the details as to how Siri did not perform according to Apple's representations. ¶¶55–59 (Fazio alleged

22  that he saw and reasonably relied upon Apple's "Introducing Siri" and "Siri, Snow Today" commercials,

23  as well as Apple's representations about Siri made on Apple's website, and when he attempted to ask

24  Siri specific questions, as the commercials represented were possible, such as directions to his doctor's

25  office or the location of a children party venue, Siri did not understand or was unable to answer.); ¶¶62–

26  67 (Hamagaki alleged that she saw and reasonably relied upon the iPhone 4S Video, the Introducing Siri

27  commercial, the iPhone 4S pre-order email, as well as Apple's representations about Siri made on

28  Apple's website, and when she attempted to ask Siri specific questions, as the commercials represented

---

1    was possible, such as the location of a park by name, Siri did not understand and was unable to answer.);

2    ¶¶70–74 (Balassone alleged that he saw and reasonably relied upon Apple's commercial entitled

3    "Introducing Siri," as well as Apple's representations about Siri during the interactive demonstrations

4    performed during the iPhone 4S presentation, and when he attempted to ask Siri specific questions, as

5    the commercials represented was possible, such as the questions similar to those in the "Rock God"

6    commercial, Siri did not understand what he was asking and provided him with the wrong answers.);

7    ¶¶77–82 (Swartzman alleged that he saw and reasonably relied upon Apple's iPhone 4S pre-order email,

8    iPhone 4S Video, and the iPhone 4S holiday email, and when he attempted to ask Siri specific questions,

9    as the commercials represented was possible, such as the weather or to call a specific person in his

10   contact list, Siri did not understand or gave him wrong answers.).[5]

11        Plaintiffs have therefore provided a detailed account of the representations they viewed regarding

12   the alleged capabilities of Siri and their experiences with Siri detailing that Siri did not work according

13   to Apple's representations. These extensive allegations—which include examples of misleading

14   statements—sufficiently "identif[y] 'the circumstances'" of the alleged fraud and provide Apple notice

15   of conduct it must defend. *Gottreich v. S.F. Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977).

### c.    Apple Knew or Should Have Known Its Representations Were False

18        Apple knew or should have known that Siri did not perform in accordance with the

19   advertisements disseminated by Apple in its nationwide marketing and advertising campaign. ¶¶13, 83–

20   84, 86, 88–90. As discussed *supra* in Section II.C., Apple had actual or constructive knowledge of the

---

23        [5]   Apple takes issue with Plaintiffs mentioning of "google.com and comparable search engines" in
24   the ACC. This information in the ACC about Google and other comparable search engines directly
     addresses this Court's concern as to whether or not there were indeed answers to Plaintiffs' questions.
25   *See* Tr. at 17:8-11 ("It couldn't find a doctor in Brooklyn. Well, was there that doctor in Brooklyn?
     Should it have been able to find a doctor in Brooklyn? We don't know."). Plaintiffs are not alleging
26   that they expected Siri to work like Google, or that Apple advertised Siri as being Google. Rather,
     Plaintiffs reference to Google and other comparable search engines to show Plaintiffs were asking Siri
27   simple questions with concrete and easily accessible answers that (based on Apple's advertisements) Siri
     should have been able to answer.

1  shortcomings of Siri prior to its distribution because its testing of Siri would have revealed that Siri was

2  unable to perform as advertised. ¶¶13, 83–84.[6]

3        Defendant'fs reliance on *Baltazar* is misplaced.  In *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF,

4  2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ("*Baltazar I*"), the plaintiffs asserted that Apple's iPad did

5  not function outdoors as represented by Apple because the iPad would overheat causing it to

6  automatically shut down. *Id.* at *1. In making their allegations, plaintiffs referred generally to marketing

7  materials that simply depicted the iPad being used in outdoor environments.  *Id.*  The court in *Baltazar I*

8  found that the plaintiffs failed to "even claim to have reasonably relied on 'a commercial,'" nor did they

9  claim that they relied on the representations they alleged were false. *Id.* at *3. By contrast, Plaintiffs here

10  identified the particular commercials and advertisements upon which they relied prior to purchasing their

11  iPhone 4S and described with specificity the content of those particular commercials or advertisements.

12  ¶¶44–50, 55, 63, 70, 77.  Indeed, Plaintiffs detailed what specific questions were asked of Siri, how Siri

13  answered and/or responded to them, how many different individuals were shown asking Siri questions,

14  and even included screen-shots of the specific commercials. *Id.* Apple's advertisements focusing on Siri

15  are a far cry from the iPad commercial which only briefly depicted the basis of the allegations in

16  *Baltazar*.  In *Baltazar II*, the court found:

17      As they did in their dismissed second amended complaint, plaintiffs yet again rely on a
   commercial containing seven brief scenes depicting the iPad in use in "outdoor
18  locations,". . . . Plaintiff fails to mention that the seven brief scenes are only a small
   fraction of the thirty-second commercial, which consisted of approximately thirty
19  different scenes. The images depiction [sic] outdoor use were fast and fleeting. . . The
   overall impression of the commercial is not that the iPad was an outdoor product, but a
20  mobile product.  In fact, the iPad was not even turned on in some of the scenes, but was
   merely being moved about handily.  Even under the most liberal pleading standard . . .
21  these brief depictions cannot be construed as a promise that the device will operate
   relentlessly outdoors in sunlight.

22  *Baltazar v. Apple, Inc.*, No. C. 20-03231-WHA, 2011 WL 6747884, at *3 (N.D. Cal. Dec. 22, 2011)

23  ("*Baltazar II*"). Here, it is beyond dispute that the iPhone 4S's Siri feature and its ability to answer

24

---

25      [6]    Additional details regarding its conduct are within Apple's control and will be revealed through
   discovery. *Germain v. J.C. Penney Co.*, No. CV 09-2847 CAS (FMOx), 2009 WL 1971336, at *5 (C.D.
26  Cal. July 6, 2009) (finding description of defendants' roles sufficient and that "[i]t would be
   unreasonable for the Court to require plaintiffs to plead the specific involvement of each defendant in the
27  scheme prior to discovery"); *Comerica*, 2006 WL 3365599, at *2 (specificity required under Rule 9(b)
   relaxed where "full information" in defendant's control).

28

---

1   questions and perform tasks was the crux of Apple's marketing campaign—Apple's representations

2   about Siri throughout these commercials were not just "brief scenes." In fact, 70% of Apple's

3   commercials for the iPhone 4S focused solely on Siri. ¶42.

4              **2.**     **Plaintiffs Sufficiently Allege Reliance**

5       The Court stated what Plaintiffs must allege in order to plead reliance with the specificity

6   required by Rule 9(b). The Court ordered that, "[p]laintiffs are granted leave to amend to allege with

7   specificity which commercials or other misleading advertising they each relied upon in purchasing their

8   devices." Order at 29. In the ACC, Plaintiffs follow this Court's direction precisely by alleging the

9   misrepresentations to which they were exposed and their reliance on those misrepresentations.

10      As discussed *supra* in Sections II.B and III.B, the ACC details each one of Apple's misleading

11  advertisements by name and date (*i.e.*, the October 4, 2011 press release, the iPhone 4S presentation, the

12  iPhone 4S Video, the Introducing Siri commercial, *etc.*), and then include direct quotes and screen shots

13  of each of these press releases, demonstrative presentations, email solicitations and commercials. ¶¶33–

14  50. Next, the ACC alleges what specific advertisements each Plaintiff relied upon: (1) Fazio purchased

15  his iPhone 4S after relying on Apple's "Introducing Siri" and "Siri, Snow Today" commercials, as well

16  as Apple's representations about Siri made on www.apple.com (¶55); (2) Hamagaki purchased her

17  iPhone 4S after relying on the "Introducing Siri" commercial, the iPhone 4S pre-order email, as well as

18  Apple's representations about Siri made on www.apple.com, www.apple.com/iphone,

19  www.apple.com/iphone.features/siri, and www.apple.com/iphone/features/siri-faq.html. (¶63); (3)

20  Balassone purchased his iPhone 4S after relying on the "Introducing Siri" commercial, as well as

21  Apple's representations about Siri during the interactive demonstrations performed at the iPhone 4S

22  presentation (¶70); and (4) Swartzman purchased his iPhone 4S after relying on Apple's iPhone 4S pre-

23  order email, iPhone 4S Video, and the iPhone 4S holiday email (¶77).

24      Plaintiffs specifically allege that, prior to making their purchases, they reviewed the Apple's

25  representations in its television commercials, press conference, website representations, and direct email

26  solicitations, which led them to believe that Siri would consistently understand their commands and

27  answer their questions—just as Siri did in each of those representations. ¶¶19–26, 54–82. Plaintiffs

28  further allege that these representations were material to them, they relied on them in purchasing their

1    iPhone 4Ss, and had they known the truth—*i.e.*, that Siri would not be able to respond to their voice

2    activated commands and questions in the manner represented by Apple—they would not have purchased

3    their iPhone 4Ss.  *Id.*

4            Contrary to Apple's arguments, Plaintiffs have met their burden by following this Court's

5    specific instructions.  Perhaps for that reason, Apple is forced to rely upon distinguishable case law to

6    advance its argument.  For example, in *Maxwell v. Unilever U.S., Inc.*, No. 12-cv-1736, 2013 WL

7    1435232 (N.D. Cal. Apr. 9, 2013), relied upon by Apple, the court found that the plaintiff's complaint

8    failed to specify the particular products that she purchased, such that the particular products plaintiff

9    purchased were ambiguous, leaving the court and the defendants to draw their own inferences based on

10   equivocal assertions. *Id*. at *5.  Here, the Court is not faced with any such ambiguity because the ACC

11   details the specific product, the iPhone 4S, that Plaintiffs purchased in addition to the specific

12   representations made by Apple that Plaintiffs relied on when purchasing their iPhone 4Ss.  Apple also

13   relies upon *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012), where

14   the plaintiff only generally asserted that statements found on a product's packaging were misleading.

15   The court there found this was not sufficient under Rule 9(b) because the plaintiff did not specially state

16   that he relied on those statements or even expressly state that he was aware of them. *Id*. at 1063. *Garcia*

17   is distinguishable from this action because Plaintiffs here allege with specificity which commercials or

18   other misleading advertising they each relied upon in purchasing their iPhone 4Ss. ¶¶55, 63, 70, 77.  In

19   *Baltazar I,* the plaintiffs failed to "even claim to have reasonably relied on 'a commercial,'" or claim that

20   they relied on the representations they alleged were false. *Id.* at *3. Here, Plaintiffs identified the

21   commercials and advertisements upon which they relied and described with specificity the content of

22   those particular commercials or advertisements. ¶¶44–50, 55, 63, 70, 77.[7]

23

24   _____

25      [7]    The other cases cited by Apple are equally inapt. In *Herrington v. Johnson & Johnson Consumer
        Cos.*, No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), unlike here, the plaintiffs failed
26      to plead any facts that would support that the alleged representations were false or pled any
        misrepresentations they relied upon.  In *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), the
27      plaintiff's fraud-based claims were dismissed where he did not allege defendant's misrepresentations,
        when he was exposed to them, what representations were material, and what representations he relied
28      upon.  *Id.* at 1125–26.  In contrast, Plaintiffs here sufficiently describe the misrepresentations at issue,

### C. Plaintiffs' UCL, FAL, CLRA, and Misrepresentation Claims Are Based upon Actionable Statements

#### 1. Plaintiffs Adequately Plead Apple's Siri Advertisements and Promotions Were Likely to Deceive Members of the Public

"[The UCL, FAL, and CLRA] prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). These laws are governed by the "reasonable consumer" standard, under which a plaintiff must show that "members of the public are likely to be deceived." *Id.* Plaintiffs' allegations plausibly support that Apple's advertisements and promotions regarding the functionality of Siri were likely to deceive members of the public.

Apple's advertisements and promotions depicted various individuals, including children, asking Siri in a natural colloquial manner for information relating to the weather, the time, scheduling, directions, the definitions of certain words, and for certain other information, and show Siri responding with accurate information. ¶¶7, 33–51. Plaintiffs' ACC specifically identifies numerous examples of these advertisements and promotions and provides extensive details as to what information was conveyed by Apple throughout. ¶¶33–51. The clear message of these advertisements and promotions by Apple was that Siri was capable of consistently understanding spoken questions or commands, knowing what these questions and/or commands meant, and providing adequate responses to them. ¶13. Indeed, conveying this message was the very purpose of these advertisements and promotions. ¶¶6, 7, 33–51, 56, 63, 71, 78. Unfortunately, Siri is unable to perform the tasks demonstrated in Apple's advertisements and promotions on a consistent basis. ¶¶7, 8, 58, 66, 73, 80. As such, a reasonable consumer could certainly have been deceived by the fact that Siri was unable to perform the tasks demonstrated in Apple's Siri advertisements and other marketing materials in a consistent manner.

Apple asks that the Court find as a matter of law that its Siri advertisements could not have deceived a reasonable consumer. In support of this argument, Apple: (1) improperly attacks allegations

what they said, that they were exposed to them before making their purchases, and that they relied upon such representations in making their purchases. ¶¶33–82.

1    not at issue in this case; (2) relies upon distinguishable authority, (3) mischaracterizes snippets from four

2    of its Siri advertisements and promotions while ignoring the clear messages conveyed by these

3    advertisements and promotions; and (4) repeats an argument that has already been rejected by this Court.

4    As an initial matter, Apple's argument is premature because whether a defendant's business

5    practices were deceptive under California consumer law is a question of fact that is rarely appropriate for

6    resolution at the motion to dismiss stage. *Williams*, 552 F.3d at 938–39; *Henderson v. J.M. Smucker Co.*,

7    No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *3 (C.D. Cal. Mar. 17, 2011) ("[I]t is a rare

8    situation where granting a motion to dismiss a false advertising claim is appropriate.").

9    Moreover, Apple's argument is premised on allegations that Plaintiffs have not made in support

10   of their claims. To be clear, nowhere in the ACC is it alleged that Siri would "answer all questions

11   perfectly regardless of the circumstances" or that "Siri would perfectly answer all questions and perform

12   all commands in all possible scenarios," as Apple suggests. *Id.* Apple's attacks on such non-existent

13   allegations should be ignored outright.

14   Apple next contends that a reasonable consumer could not possibly be deceived when a product

15   is unable to function in a consistent manner as specifically demonstrated during an advertisement absent

16   a "specific representation that a consumer product will work perfectly every time, in every context,

17   without fail." MTD at 16. This assertion flies in the face of California consumer law, which recognizes

18   that an advertisement can be deceptive and misleading without being literally false. *See Williams*, 552

19   F.3d at 938.

20   Apple relies upon inapplicable authority in attempting to support this flawed contention. The

21   court in *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011), found that the

22   defendant's failure to inform consumers that Trident White chewing gum only removes stains in

23   conjunction with an oral hygiene program could not have deceived a reasonable consumer, because

24   "[o]nly an unreasonable consumer would be confused or deceived by [the defendant's] failure to clarify

25   that Trident White gum works only if consumers continue to brush and floss regularly." Additionally,

26   the court in *Baltazar II*, 2011 WL 6747884, at *4, dismissed the plaintiffs' complaint because the

27   "advertisement and specifications could not be understood to represent or promise that the iPad would

28   operate without interruption in the specific environmental conditions under which it allegedly tended to

1  shut down."  Neither of these decisions reasonably supports that consumers could not be deceived when

2  a product is unable to consistently perform as advertised.

3          Moreover, Apple's use of selected snippets from four of the advertisements and promotions that

4  Plaintiffs saw does not operate to bar Plaintiffs' claims. Balassone saw and relied upon Apple's

5  representations and demonstrations regarding Siri performed during the Apple iPhone 4S presentation.

6  ¶70. As discussed above, the iPhone 4S presentation was an interactive demonstration during which Siri

7  is asked and accurately responds to questions regarding weather, the time in Paris, how the NASDAQ

8  was doing that day, and the definition of "mitosis." ¶34. The clear message of the demonstration was

9  that Siri was capable of consistently performing tasks similar to those demonstrated.  Apple's assertion

10 that it would be impossible for a reasonable consumer to believe that Siri could perform as advertised on

11 account of the presenter's comments that users "can't ask [Siri] everything, and it's not perfect" and that

12 Siri is "beta" is misguided and wrong. These few words do not operate to eviscerate the overwhelming

13 message conveyed during the presentation: that Siri could consistently perform the tasks demonstrated as

14 well as those similar thereto. *See Williams*, 552 F.3d at 939 n.3 ("This statement certainly contributes,

15 however, to the deceptive context of the packaging as a whole."); *Lima v. Gateway, Inc.*, 710 F. Supp.

16 2d 1000, 1007 (C.D. Cal. 2010) ("These statements, however, cannot be considered in isolation because

17 they contribute to the deceptive context of the advertising as a whole.").

18         Hamagaki read the Siri FAQ webpage, which expressly stated that "Siri understands your natural

19 speech," and, under the heading, "What types of things can I ask Siri about or ask it do?", instructed

20 "[y]ou can ask Siri to make a call, find a business and get directions, schedule reminders and meetings,

21 search the web, and more." ¶41. A reasonable consumer reading these statements would understand

22 them to mean that using a natural voice you can ask Siri to make a call, for directions, and to schedule

23 reminders and meetings, and that Siri was capable of responding with accurate information on a

24 consistent basis.  Apple's contention that the language "continue to improve . . . over time" and "work

25 even better" appearing on the page conveyed that Siri could not function consistently in this manner is

26 unreasonable and wrong. *See* MTD at 17.

27         Fazio, for example, saw and relied upon the "Siri, Snow Today" commercial.  This Apple

28 commercial shows individuals asking Siri for information regarding their schedule, the weather, and for

1  directions in a normal voice, and depicts Siri responding with accurate information.  ¶46. The phrase

2  "sequences shortened" at the end of the commercial does not, as Apple asserts, serve to communicate to

3  consumers that Siri could not provide accurate responses in the manner demonstrated.

4          Finally, Apple argues that its use of the term "beta" on its website act to bar Plaintiffs' claims.

5  The Court previously rejected this very argument.  Order at 24–25.  The same result is appropriate here.

### 2.      Apple's Statements About Siri Are Actionable

7          Plaintiffs' claims are premised upon actionable statements.  The Court's Order recognizes that

8  "misdescriptors of specific or absolute characteristics of a product are actionable."  Order at 25 (quoting

9  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).

10  Plaintiffs allege the specific content of Apple's advertisements and promotional demonstrations

11  regarding Siri's functionality and capabilities.  Plaintiffs also allege that Siri was unable to consistently

12  perform as shown and represented in these advertisements and promotions.[8]  Such deceptive and

13  misleading advertising is actionable under California law. *See* Order at 25.[9]

### D.      Plaintiffs' Claims Satisfy the Requirements of Rule 8

### 1.      Plaintiffs' Allegations Are Sufficient to State a UCL Claim

### a.      Plaintiffs Have Standing to Sue Under the UCL

17          Plaintiffs' allegations support that they have standing to sue under the UCL.  To have standing to

18  bring a claim under the UCL, a person must allege that they have "suffered injury in fact" and "lost

19  money or property" as a result of a fraudulent, unfair, or unlawful practice.  *Kwikset Corp. v. Superior*

20  *Court*, 51 Cal. 4th 310, 320-21 (2011) (quoting Cal. Bus. & Prof. Code §17204). This standing

21  requirement has been interpreted to include an economic injury element and a causation element.  *Id.* at

22  322.  The economic injury requirement is satisfied when a person alleges that they paid more for a

23  product than they otherwise would have absent a defendant's false, deceptive, or misleading

---

24

25      [8]   Apple's reliance on *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731
(9th Cir. 1999), where the court found that a company's statement that an escrow agent was "too small"
26  was puffery, is misplaced. Here, Plaintiffs allege the specific content of Apple's representations and
multiple examples of where such representations were false. ¶¶58, 66, 73, 80, 83–84.

27      [9]   Plaintiffs' claims are not based upon Apple's representations that Siri is "amazing" or
28  "incredible," as Apple would suggest. MTD at 18.

---

1    advertisements. *Id*. at 323. And, the causation element is satisfied upon alleging that a defendant's

2    fraudulent misrepresentation "played a substantial party, and so had been a substantial factor, in

3    influencing his decision" as to whether to purchase a product. *In re Tobacco II Cases*, 46 Cal. 4th 298,

4    326 (2009). Plaintiffs' allegations satisfy these requirements.

5        Plaintiffs specifically allege the Apple advertisements and promotions that they saw and relied

6    upon regarding Siri's functionality: (1) Fazio saw and relied upon Apple's Introducing Siri commercial,

7    Siri, Snow Today commercial, and Apple's representations made on www.apple.com (¶56); (2)

8    Hamagaki saw and relied upon the iPhone 4S video, the Introducing Siri commercial, the iPhone 4S pre-

9    order email, and statements made on Apple's website, including www.apple.com,

10    www.apple.com/iphone, www. apple.com/iphone.features/siri, and www.apple.com/iphone/features/siri-

11    faq.html) (¶63); (3) Balassone saw and relied upon the Introducing Siri commercial and interactive

12    demonstrations about Siri made during the iPhone 4S presentation (¶70); and (4) Swartzman saw and

13    relied upon Apple's iPhone 4S preorder email, iPhone 4S Video, and the iPhone 4S holiday email (¶77).

14        The specific contents of the advertisements and promotions that Plaintiffs saw is detailed

15    extensively in the ACC. *See* ¶¶34-35 (iPhone 4S presentation); ¶36 (iPhone 4S pre-order email); ¶¶37-

16    39 (iPhone 4S Video); ¶¶40-41 (Apple website); ¶¶44-45 (Introducing Siri commercial); ¶46 (Siri, Snow

17    Today commercial); ¶47 (iPhone 4S holiday email). These advertisements and promotions depict

18    individuals asking Siri questions in a normal voice regarding the weather, directions, the definitions of

19    certain terms, scheduling, and for other information, and show Siri responding in an accurate manner.

20    ¶¶34–47. Plaintiffs allege that the Apple advertisements, representations, and promotions gave them the

21    reasonable expectation that Siri would be able to understand his/her voice, the questions and/or

22    commands he/she was saying, know what those questions and/or commands meant, and provide an

23    adequate response to them on a consistent basis. ¶¶13, 56, 64, 71, 78. Additionally, based on Apple's

24    representations of what types of questions Siri could understand and was able to answer, Plaintiffs

25    expected that he/she could speak to Siri in a natural, colloquial manner and that on a consistent basis Siri

26    would be able to understand and answer questions regarding general facts, locations, and directions.

27    ¶¶13, 56, 59, 64, 67, 71, 74, 78, 81.

28

Plaintiffs purchased Apple's iPhone 4S because they saw and relied upon Apple's Siri advertisements and promotions and that they would not have paid the prices they paid for their iPhone 4Ss if they have not seen and relied upon Apple's Siri advertisements and promotions. ¶¶20, 22, 24, 26, 60, 68, 75, 82; *see also* ¶53 (the iPhone 4S sold at a $99 premium over the iPhone 4 due to its Siri feature). These allegations are sufficient to satisfy the UCL's statutory standing requirements. *See Kwikset Corp.*, 51 Cal. 4th at 323.

Apple's argument to the contrary relies upon the UCL applying only to representations that are literally false. That is, Apple argues that Plaintiffs cannot bring claims relating to Siri's inability to consistently perform as advertised, without alleging that Apple represented that Siri would be able to "consistently" provide an adequate response to all questions and commands under any and all possible circumstances. MTD at 20. No such requirement exists under California law. The UCL's fraud prong prohibits advertisements and representations that are untrue, deceptive, or misleading—not just representations that are literally false. *See Williams*, 552 F.3d at 938. Plaintiffs' allegations that they saw, relied upon, and were deceived by Apple's advertisements and promotions demonstrating the functionality of Siri, and that they would not have paid the prices they paid for their iPhone 4Ss had they not relied upon such advertisements are sufficient to establish standing under the UCL.

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), upon which Apple relies, has no bearing on this case. The plaintiffs in *Birdsong* alleged that Apple's sale of iPods violated the UCL because iPods posed an unreasonable risk of noise-induced hearing loss. *Id.* at 957. The Ninth Circuit found that the plaintiffs lacked standing because they did not allege that they had or would imminently suffer hearing loss from iPod use or that Apple represented to the public "that iPod users could safely listen to loud music for extended periods of time." *Id.* at 960-61. This holding has no reasonable application here, where Plaintiffs each identify the Apple advertisements and promotions they saw; allege that they relied upon Apple's representations and demonstrations regarding the functionality of Siri in their purchasing the iPhone 4S; allege that Siri was unable to perform in a consistent manner as depicted in Apple's advertisements and promotions; and allege that they would not have paid the price they paid for the iPhone 4S had they not seen and relied upon Apple's advertisements and promotions. *Compare*

*Degelmann v. Advanced Med. Optics Inc.*, 659 F.3d 835, 839 (9th Cir. 2011) (distinguishing *Birdsong* and finding standing where "the class representatives[]averred that they bought MoisturePlus, relying on the representation that it would disinfect their lenses, and would not have bought it had they known how poorly it actually worked.  They have shown injury in fact, economic harm.").[10]

### b.  Plaintiffs Allege Sufficient Facts to Show that Apple Engaged in Fraudulent and Unfair Business Practices in Violation of the UCL

Plaintiffs adequately allege a violation of the UCL's fraud prong.  An advertisement or representation violates the UCL's fraud prong if it is likely to deceive members of the public. *See Williams*, 552 F.3d at 938. As detailed *supra* at Section III.C, Plaintiffs' allegations support that Apple's advertisements and promotions were likely to deceive members of the public.

Plaintiffs also adequately allege a violation of the UCL's unfairness prong.  Conduct is unfair under the UCL if it "threatens an incipient violation of [a] law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competitions."  *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999). An alternative test for unfairness is whether a "practice offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the "gravity of the harm to the victim outweighs the utility of the defendant's conduct." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (2006) (citations omitted).

Advertising that a product can perform certain functions that it cannot actually perform on a consistent basis violates public policy.  Thus, Plaintiffs' allegations that Apple advertised and promoted Siri as capable of performing a number of specific tasks—often specifically showing Siri performing such tasks with ease—that Siri was not, in fact, capable of performing in a consistent manner are sufficient to state a cause of action under the UCL's unfairness prong.

---

[10]  Likewise, Apple's reliance on an *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (2008), is also misplaced, where the court dismissed UCL claims because the plaintiffs failed to allege any false or misleading representations.

1

2.      **Plaintiffs State a Claim for Breach of Express Warranty**

2      Plaintiffs' allegations satisfy applicable pre-suit notice requirements.  Pre-suit notice must be

3  provided "within a reasonable time after [the buyer] discovers or should have discovered any breach."

4  Cal. Com. Code §2607(3)(A). Balassone and Swartzman sent Apple a letter on March 16, 2012,

5  notifying Apple that Siri was unable to perform as represented.  ¶¶111 n.26; Ex. A.  Additionally, Fazio

6  sent a letter to Apple on March 6, 2012, notifying Apple that Siri was unable to perform as represented.

7  ¶111 n.26.  These allegations are sufficient to satisfy pre-suit notice requirements.

8      Apple's statement that the demand letter sent by Balassone and Swartzman did not notify Apple

9  of a breach of express warranty is false.[11]  The letter expressly states that Siri's failure to perform as

10  advertised constitutes, *inter alia*, a breach of express warranty. (Dkt. No. 70-1, at 3) ("This letter will

11  constitute **FURTHER NOTICE** that the actions as set forth above also constitute violations of . . .

12  breach of express warranty . . . .").  Apple's statement that the only notice described in the ACC is the

13  letter sent from Balassone and Swartzman to Apple is also false.  As noted above, the ACC identifies the

14  letter sent by Fazio to Apple on March 6, 2013 providing Apple further notice of Siri's failure to perform

15  as advertised.  ¶111 n.26.  Apple's assertion that Plaintiffs failed to allege pre-suit notice because they

16  waited up to four months to provide Apple with notice that Siri was unable to perform as warranted

17  simply fails.  Four months is by no means an unreasonable amount of time.  Apple's reliance on a 70-

18  year-old case in support this position speaks volumes and further supports the weakness of its argument

19  in this regard.

20      Moreover, California's pre-suit notice requirement does not apply to Fazio's express warranty

21  claims.  The pre-suit notice requirement only applies when products are purchased directly from a

22  manufacturer. *See Keegan v. Am. Honda Motor Co.,* 838 F. Supp. 2d 929, 949–50 (C.D. Cal. 2012);

23  *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (quoting *Greenman v. Yuba Power*

24  *Prods*., 59 Cal. 2d 57, 61 (1963)).  This rule is "designed to protect a consumer who 'would not be aware

25  of his rights against the manufacturer . . . . [A]t least until after he has had legal advice it will not occur

26

27      [11]      Apple's statement that the ACC includes the same allegations as the original consolidated complaint is wrong.  Allegations relating to the notice letter sent by Balassone and Swartzman were not included in the original consolidated complaint.

28

1  to him to give notice to one with whom he has had no dealings.'"  *Sanders*, 672 F. Supp. 2d at 989

2  (quoting *Greenman*, 59 Cal. 2d at 61).  Fazio purchased his iPhone 4S at a Best Buy retail store. ¶19.

3  Therefore, he was never required to provide Apple with pre-suit notice under California law.

### 3.   Plaintiffs' Properly Allege a Breach of Express Warranty

5  Plaintiffs adequately plead a breach of express warranty.  "Any description of the goods which is

6  made part of the basis of the bargain creates an express warranty that the goods shall conform to the

7  description."  Cal. Com. Code §2313(b).  Advertisements can be construed as warranty statements.

8  *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W(CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb. 17,

9  2010); *Fundin v. Chi Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 957 (1984) (holding that when a

10  consumer relies on representations made by a manufacturer in labels or advertising materials, recovery is

11  allowable under express warranty).  The Court's Order instructs that "Plaintiffs must at least allege

12  which particular commercials and webpages they each relied upon, must describe the content of those

13  advertisements and pages with particularity and must allege with specificity their reasonable reliance

14  thereon."  Order at 36 (citations omitted). As detailed *supra* at Sections II.B and III.B, this is exactly

15  what Plaintiffs have done in the ACC.  Plaintiffs allege the specific advertisements and promotions that

16  they each saw, describe the specific content of these advertisements and demonstrations—in many cases

17  word by word—and expressly and specifically allege their reliance thereon.  Plaintiffs revised the ACC

18  to directly address the Court's directions in its Order dismissing the consolidated complaint.  Plaintiffs'

19  express warranty count incorporates these revisions. ¶134.  Apple's contention that Plaintiffs' express

20  warranty allegations are the same as those included in Plaintiffs' prior consolidated complaint is wrong.

## IV.   CONCLUSION

22  The ACC, in every respect, meets the pleading requirements of Federal Rules of Civil Procedure

23  8 and 9(b). Thus, Apple's Motion should be denied.[12]

24  _____

25  [12]   As detailed herein, Plaintiffs believe their allegations to be sufficient under Fed. R. Civ. P. 8 and

26  9(b). Notwithstanding, if the Court determines that one or more of Plaintiffs' claims is not sufficiently
    alleged in accordance with Federal Rules, and future amendment could in the Court's view possibly cure

27  this perceived deficiency, Plaintiffs would ask that they be granted leave to amend. *See Carvalho v.
    Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("Under Federal Rule of Civil Procedure

28  15(a), leave to amend shall be freely given when justice so requires.").

1   DATED:  September 3, 2013                Respectfully submitted,

2

3                                                   s/ BEN BARNOW

4                                           BARNOW AND ASSOCIATES, P.C.
                                            BEN BARNOW
5                                           ERICH P. SCHORK
                                            One North LaSalle Street, Suite 4600
6                                           Chicago, IL  60602
                                            Telephone:  312/621-2000
7                                           312/641-5504 (fax)

8                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
9                                           SHAWN A. WILLIAMS
                                            Post Montgomery Center
10                                          One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
11                                          Telephone:  415/288-4545
                                            415/288-4534 (fax)
12
                                            ROBBINS GELLER RUDMAN
13                                             & DOWD LLP
                                            RACHEL L. JENSEN
14                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
15                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
16
                                            ROBBINS GELLER RUDMAN
17                                             & DOWD LLP
                                            STUART A. DAVIDSON
18                                          MARK J. DEARMAN
                                            KATHLEEN L. BARBER
19                                          120 East Palmetto Park Road, Suite 500
                                            Boca Raton, FL  33432
20                                          Telephone:  561/750-3000
                                            561/750-3364 (fax)
21
                                            ROBBINS GELLER RUDMAN
22                                             & DOWD LLP
                                            ROBERT M. ROTHMAN
23                                          58 South Service Road, Suite 200
                                            Melville, NY  11747
24                                          Telephone: 631/367-7100
                                            631/367-1173 (fax)
25

26

27

28

PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT – Case No. 4:12-CV-01127-CW          26

1

2 GARDY & NOTIS, LLP
 JENNIFER SARNELLI
3 JAMES S. NOTIS
 501 Fifth Avenue, Suite 1408
4 New York, NY 10017
 Telephone: 212/905-0509
5 212/905-0508 (fax)

6 GARDY & NOTIS, LLP
 CHARLES A. GERMERSHAUSEN
7 560 Sylvan Avenue, Suite 3085
 Englewood Cliffs, NJ 07632
8 Telephone:  201/567-7377
 201/567-7337 (fax)

9 Co-Lead Counsel for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 3, 2013.

 s/ Ben Barnow

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone:  312/621-2000
312/641-5504 (fax)
E-mail:    b.barnow@barnowlaw.com

# Mailing Information for a Case 4:12-cv-01127-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Martin Stuart Bakst**
  msb@mbakst.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,b.barnow@barnowlaw.com,s.harris@barnowlaw.com,b.strautins@barnowlaw.com

- **David Eldridge Bower**
  dbower@faruqilaw.com,ecf@faruqilaw.com,mblackman@faruqilaw.com,ecfca@faruqilaw.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,swinkles@rgrdlaw.com

- **Charles A Germershausen**
  cgermershausen@gardylaw.com

- **Aimee Marie Halbert**
  ahalbert@gibsondunn.com,dtom@gibsondunn.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Stewart Kahn**
  MKahn@gibsondunn.com,LChiou@gibsondunn.com

- **Gail E. Lees**
  glees@gibsondunn.com,jwalker@gibsondunn.com,wlamb@gibsondunn.com,jjessen@gibsondunn.com

- **James S. Notis**
  jnotis@gardylaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jennifer Sarnelli**
  jsarnelli@gardylaw.com

- **Erich Paul Schork**
  e.schork@barnowlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,nnewton@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Kathleen          L. Barber**
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432