IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE IPHONE 4S CONSUMER LITIGATION,

_____/

No. C 12-1127 CW

ORDER GRANTING MOTION TO DISMISS (Docket No. 32)

Defendant Apple, Inc. moves to dismiss the amended class action complaint (ACAC) filed by Plaintiffs Frank M. Fazio, Carlisa S. Hamagaki, Daniel M. Balassone, and Benjamin Swartzmann. Plaintiffs oppose Apple's motion. Having considered the arguments presented by the parties in their papers and at the hearing, the Court GRANTS Apple's motion to dismiss.

BACKGROUND

Unless otherwise noted, the factual background is taken from Plaintiffs' ACAC, taken as true for purposes of a motion to dismiss. On October 4, 2011, Apple introduced the iPhone 4S mobile phone at a press conference. ACAC ¶¶ 3-4. At the time the iPhone 4S was launched, it was priced starting at $199, while the previous iPhone model, the iPhone 4, was priced starting at $99. Id. ¶ 14. Apple distinguished the iPhone 4S from previous iPhone models such as the iPhone 4 in part by the inclusion of a voice-activated personal assistant feature named "Siri." Id. ¶ 4. Apple called Siri "the coolest feature of the new iPhone 4S." Id. ¶ 34. The October 4, 2011 presentation featured an interactive demonstration where Siri was asked to answer a series of questions and to perform various tasks (Siri presentation). Id. For example, Siri was asked to set a wake up alarm, find a restaurant in a specific city, and tell the user about the weather. Id.

United States District Court
For the Northern District of California

Siri responded to each question correctly.  Id.  The presenter

stressed that Siri can understand general words and "conceptual

questions," and respond by "get[ting] answers, find[ing] facts and

even perform[ing] complex calculations."  Id. ¶ 33-34.  The

presenter noted that Siri was still in "beta" and that one

couldn't ask Siri everything.  Docket No. 33-3 at 72:56, 82:49,

86:41.[1]

    Around the same time, Apple issued a press release touting

Siri.  ACAC ¶ 33.  The press release stated, "iPhone 4S also

introduces Siri, an intelligent assistant that helps you get

things done just by asking.  Siri understands context allowing you

to speak naturally when you ask it questions."  Id.  The press

release listed a number of Siri's functions, noting that it could

help "make calls, send text messages or email, schedule meetings

and reminders, make notes, search the Internet, find local

businesses, get directions and more."  Id.

I.   Apple's marketing campaign featuring Siri

    Shortly after the announcement of the iPhone 4S and Siri,

Apple began a marketing campaign of presentations, e-mail

solicitations, and video demonstrations highlighting Siri's

performance and functionalities.  See id. ¶¶ 5-6.

    Apple sent out emails to potential consumers showcasing Siri.

For example, on or about October 4, 2011, Apple sent out an iPhone

4S pre-order email that included a link to a video on Apple's

website demonstrating Siri's capabilities.  Id. ¶¶ 36-37.  During

---

    [1] The Court previously granted Apple's request for judicial
notice as to these documents and others to which this order
refers.  See Docket No. 68 at 12-13.

the video, Siri was described as an "amazing assistant that listens to you, understands you, can answer your questions and can even accomplish tasks for you . . . A lot of devices can recognize the words you say, but the ability to understand what you mean and act on it, that's the breakthrough with Siri."  Id. ¶¶ 38.  The iPhone 4S video also contained multiple Siri demonstrations.  Id. ¶ 37.  For example, Siri was asked to find a restaurant near a particular location and to schedule a business meeting for a certain time, to which Siri responded appropriately.  Id.

On December 1, 2011, Apple sent out another marketing email encouraging consumers to purchase the iPhone 4S for holiday gift-giving purposes (iPhone 4S holiday email), highlighting that it came with "an all-new 8MP camera, iOS 5, iCloud, and Siri: the intelligent assistant you can ask to make calls, send texts, set reminders, and more."  Id. ¶ 47.  Apple's website, www.apple.com, contained very similar descriptions, adding that "Siri understands what you say and knows what you meant" and that users could "[j]ust talk the way [they] talk."  Id. ¶ 40.

Apple also launched TV advertisements focused solely on Siri, depicting individuals using Siri's functions.  Id. ¶ 7, 42.  Seven out of ten commercials Apple used to market the iPhone 4S focused solely on Siri.  Id. ¶ 42.

In the commercial dubbed "Introducing Siri," which began airing around October 4, 2011, Siri was able to understand, answer, and perform requests with ease.  Id. ¶ 44.  For example, a user asked Siri, "What's the traffic like around here?" to which Siri responded, "Here's the traffic" and provided a map display of traffic around the user's location.  Id.  Upon the user's command,

Siri also read text messages aloud, sent text messages, played music, gave weather information, converted ounces into cups, and set the iPhone 4S internal timer.   Id. ¶ 45.

The "Siri, Snow Today" commercial began airing on or about October 31, 2011, and showed Siri answering questions and performing commands for four different individuals, including a child.   Id. ¶ 46.   When asked, "What's my day look like?" Siri responded, "Not bad, only two meetings today."   Id.   Siri also provided directions to "Belvedere Hotel."   Id.   When asked, "Do you think it will snow today?," Siri answered, "It sure looks like snow today" and displayed the weather forecast.   Id.

On or about February 10, 2012, Apple started airing "Road Trip," a Siri-focused commercial depicting a couple asking Siri several questions while traveling to Santa Cruz, California.   Id. ¶ 48.   They asked, "Where is the best barbeque in Kansas City?" "Is there a rodeo in Amarillo today?" and "How big is the Grand Canyon?"   Id.   When asked for nearby gas stations that the couple could walk to, Siri answered, "I found two gas stations fairly close to you" and provided the names and star ratings of two gas stations.   Id.   When asked, "What does Orion look like?" Siri responded with a map of the Orion constellation, stating, "I found this for you."   Id.

In the "Rock God" commercial which began airing on or about February 10, 2012, a guitar player user asked Siri how to play a number of songs, by querying, for example, "How do I play London Calling?" and "How do I play Whole Lotta Love?"   Id. ¶ 49.   In response to these questions, Siri provided the proper notes, chords, and sheet music.   Id.   The user then commanded, "Tell

4

Julie and Kate our band is playing at the garage tonight," which prompted Siri immediately to formulate a text message to "Julie, Kate" that read, "Our band is playing at the garage tonight." Id. ¶ 50.

In sum, each of these commercials depicted users asking Siri to answer questions or perform commands, which Siri did promptly and with ease. Each commercial, however, contained a disclaimer at the end stating "sequences shortened." Docket No. 33-6.

Plaintiffs allege that Apple's marketing gave consumers the false expectation that Siri could perform the basic tasks depicted (e.g. making appointments, finding restaurants, crafting text messages, displaying guitar chords, searching information) in Apple's advertisements "on a consistent basis." Id. ¶ 6-7. In reality, Siri is unable to perform many of these tasks "on a consistent basis." Id. ¶ 7. Others have found Siri to be similarly disappointing. Huffington Post published an article entitled, "Apple's Siri 'Rock God' Commercial: How Accurate Is It, Really?" which included a video wherein a Huffington Post blogger repeats word for word every voice command prompt in the "Rock God" commercial. Id. ¶ 83. Siri was only able to respond to two of seven prompts on the first try. Id. ¶ 84.

II.  Plaintiffs

A.  Fazio

On November 19, 2011, Fazio purchased an iPhone 4S after viewing the "Introducing Siri" and "Siri, Snow Today" commercials and looking through Apple's website. Id. ¶ 54-55. Fazio claims the representations made in the advertisements and website led him to believe that Siri would be able to understand his plain

United States District Court
For the Northern District of California

language questions and commands and provide an "adequate response"
"on a consistent basis." Id. ¶ 56.  Instead, Fazio found that
Siri did not work as he expected it would, often pausing for a
long period of time and not responding, or responding with "I
don't understand." Id. ¶ 57.  For example, Fazio asked Siri,
"Which has more fat?" and mentioned two different McDonald's
sandwiches. Id. ¶ 58.  Siri waited for a long period of time and
then stated "I don't understand." Id.  Siri also could not
provide the meaning of the term "guided reading" and could not
locate two places called "Dr. Fiasconaro's office" or "Funtasia."
Id.  Siri failed to meet Fazio's expectation that it would be able
to perform the features displayed in Apple advertising "on a
consistent basis." Id. ¶ 59.  Fazio paid a premium on the iPhone
4S based on the utility of the Siri feature, and would not have
done so if he had not relied on Apple's allegedly false and
misleading statements. Id. ¶¶ 20, 60.

     B.   Hamagaki

     After seeing and relying on the "Introducing Siri"
commercial, the iPhone 4S video, the iPhone 4S pre-order email,
and Apple's representations on its website, Hamagaki pre-ordered
her iPhone 4S through Apple's website and on November 6, 2011
purchased her iPhone 4S for $199. Id. ¶¶ 61, 63.  Hamagaki asked
questions she believed were very similar to the ones asked in
Apple's advertisements, such as "Where is Mason Park?" and "Where
is Balboa Park?" Id. ¶ 66.  Siri paused for a long period of time
and then responded with "I don't understand," even though the
addresses of those locations are available on www.google.com. Id.
Siri failed to meet Hamagaki's expectation that it would be able

United States District Court
For the Northern District of California

to perform the features displayed in Apple advertising "on a consistent basis." Id. ¶ 64. Hamagaki paid a premium on the iPhone 4S based on the utility of the Siri feature, and would not have done so if she had not relied on Apple's allegedly false and misleading statements. Id. ¶¶ 22, 68.

C.   Balassone

On October 20, 2011, after seeing and relying on the "Introducing Siri" commercial and Apple's representations during the iPhone 4S presentation, Balassone purchased an iPhone 4S for $299. Id. ¶ 69. Balassone asked Siri questions similar to those he saw in Apple's advertisements, but found that Siri was not working properly. Id. ¶ 73. For example, Balassone attempted to mirror the commands in Apple's "Rock God" television advertisement, such as, "How do you play an A chord?" to which Siri responded, "OK, how about a web search for 'how do you plan a quart?'" Id. ¶ 73. When Balassone asked Siri, "How do you play a B minor chord?" Siri said "looking for B minor chord," followed by "still thinking," and eventually, "Sorry, I couldn't find B minor chord in your music." Id. Siri did not meet his expectation that it could answer the same type of questions demonstrated in Apple's advertisements. Id. ¶¶ 77-81. Balassone paid a premium on the iPhone 4S based on the utility of the Siri feature, and would not have done so if he had not relied on Apple's allegedly false and misleading statements. Id. ¶¶ 24, 75.

D.   Swartzman

On January 7, 2012, after seeing and relying on the iPhone 4S pre-order email, the iPhone 4S holiday email, and the iPhone 4S video, Swartzman purchased an iPhone 4S for $199. Id. ¶ 76-77.

Swartzman found that Siri often could not perform tasks or answer questions similar to those demonstrated in Apple's advertisements. Id. ¶ 78. For example, Siri often gave the wrong names or contact information of people Swartzman tried to call or email. Id. ¶ 80. When Swartzman asked Siri for the weather in Palm Springs, Siri did not understand. Id. When Swartzman asked, "When is St. Patrick's day?" Siri responded with, "Sorry, I don't understand 'When is St. Patrick's day.'" Id. Swartzman paid a premium based on the inclusion of the Siri feature, and would not have done so if he had not relied on Apple's allegedly false and misleading statements. Id. ¶¶ 26, 82.

III. Procedural history

On March 6, 2012, Fazio filed a consolidated class action complaint against Apple. Docket No. 1. On March 20, 2012, Balassone and Swartzman initiated a separate action in this district. Case No. 12-1384. The parties jointly moved to consolidate the two cases, which the Court granted on March 29, 2012. Docket No. 14. On April 10, 2012, Plaintiffs amended their complaint, adding Hamagaki as Plaintiff. See Docket No. 18. On May 10, 2012, Apple filed a motion to dismiss, which the Court granted, but with leave to amend. See Docket No. 68. Plaintiffs filed their ACAC, asserting claims on behalf of the class for (1) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civil Code. § 1750 et seq., (2) violation of California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500, et seq., (3) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, et seq., (4) breach of express

warranty; (5) intentional misrepresentation; and (6) negligent misrepresentation.  See ACAC.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

In determining whether to allow leave to amend, the court considers four factors: "bad faith, undue delay, prejudice to the opposing party, and the futility of amendment."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

DISCUSSION

I.   Fraud-based claims

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Cal. Bus. & Prof. Code § 17200) (internal

United States District Court
For the Northern District of California

quotation marks omitted).  The FAL makes it unlawful to make or disseminate any "untrue or misleading" statement "in any newspaper or other publication, or any advertising device."  Cal. Bus. & Prof. Code § 17500.  The CLRA makes unlawful any "unfair methods of competition and unfair and deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer."  Kearns, 567 F.3d at 1125 (quoting Cal. Civ. Code § 1770).  Claims of deceptive labeling under these California statutes are evaluated by whether a "reasonable consumer" would be likely to be deceived.  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).  Common law claims for fraud and negligent misrepresentation similarly require that the consumer justifiably rely on a representation that is false or subject to a misleading omission.  Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004) (common law fraud); Century Sur. Co. v. Crosby Ins., Inc., 124 Cal. App. 4th 116, 129 (2004) (negligent misrepresentation).

A.   Rule 9(b)

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Because Plaintiffs allege that Apple deceived them, their allegations sound in fraud and are subject to the requirements of Rule 9(b).  Kearns, 567 F.3d at 1125.  To satisfy the heightened pleading standards of Rule 9(b), Plaintiffs must describe "the who, what, when, where, and how" of the misconduct charged.  Id. at 1124.  Plaintiffs must describe the

United States District Court
For the Northern District of California

alleged fraud in specific enough terms "to give defendants notice of the particular misconduct so that they can defend against the charge."  Id.

Apple contends that Plaintiffs' ACAC still fails to describe several of the key elements of the alleged misrepresentation.  The Court previously dismissed Plaintiffs' complaint on this ground:

> However, Apple is correct that Plaintiffs have not alleged sufficiently how these statements were misrepresentative or fraudulent, and how Siri failed to perform as advertised. For example, Plaintiffs do not make clear in the CCAC whether their theory is that the advertisements were misleading, because Siri never responds to questions or is always inaccurate, does so more slowly than shown in the ads, uses more data than advertised or is less consistent than shown in the ads.

Docket No. 68 at 23.  Moreover, the Court stated that the complaint must state "what particular statements" were false or misleading, and how Siri failed to meet those representations. Docket No. 68 at 23.  See also Maxwell v. Unilever v. U.S., Inc., 2013 WL 1435232, at *2, *5 (N.D. Cal.) (dismissing UCL, FAL, and CLRA claims for failure to satisfy Rule 9(b) where plaintiff did not "unambiguously specify . . . the particular statements Plaintiff allegedly relied on when making her purchases"); Garcia v. Sony Computer Entm't Am., LLC, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (holding complaint to be insufficient where it generally asserted that statements on the product's packaging and on Sony's website were misleading, but did not "specifically aver that Garcia relied on those particular statements").  Rule 9(b) therefore requires Plaintiffs to aver specifically the statements they relied upon in making their purchases, what is false or misleading about the statements, and why those statements turned

out to be false.  <u>Decker v. GlenFed, Inc. (In re GlenFed, Inc.</u>
<u>Sec. Litig.)</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) (vacated on other
grounds).

Plaintiffs contend that they have now crystallized their
theory.  They explain that, after viewing certain Apple
advertisements about Siri, they were "led to believe that Siri
could function on a consistent basis as a personal assistant by
understanding spoken questions and/or commands, knowing what those
questions and/or commands meant, and by providing an adequate
response to them."  ACAC ¶ 13.  Based on Apple's statements,
Plaintiffs believed they could use Siri to "make appointments,
find restaurants, craft text messages, learn the guitar chords to
classic rock songs and how to tie a tie," "make calls," "set
reminders," and more.  <u>Id.</u> ¶ 7.  Plaintiffs also believed Apple's
representation that Siri could understand "context" and
"understand[] what you mean and act on it."  <u>Id.</u> ¶¶ 33, 38, 41.
Plaintiffs also relied upon Apple's commercials depicting Siri
performing without issues.  The truth, however, was that Siri
could not answer similar questions "on a consistent basis" and
instead "frequently" gave Plaintiffs the wrong answer.  <u>See id.</u>
¶¶ 56, 57, 59, 64, 65, 67, 71, 72, 74, 77, 78, 81.  In other
words, Plaintiffs believed that Siri would be able to respond to
certain types of questions and commands, and further, that it
would be able to do so "on a consistent basis."

Plaintiffs still fail to isolate the particular statements at
issue and explain each statement's false and misleading nature.
Although the ACAC now names the advertisements that each

**United States District Court**
For the Northern District of California

individual Plaintiff viewed,[2] this is not equivalent to what the Court required, which is to identify the specific statements within those advertisements that were false and misleading. Although Plaintiffs generally describe the contents of those commercials or advertisements in a separate section of the ACAC, that does not give Apple sufficient notice of which representations caused the deception alleged.  The descriptions of those commercials and advertisements include a plethora of statements, including demonstrations of Siri's functionalities as well as general marketing statements about Siri.  See ACAC ¶ 38 (e.g., "It's like this amazing assistant that listens to you, understands you").  Apple would be hard-pressed to defend against an allegation that the overall impact of these commercials and advertisements misled Plaintiffs.  That does not meet the level of specificity required by Rule 9(b).  Additionally, because Plaintiffs have not isolated specific statements, they also have not explained how those statements were false or misleading.

This problem is especially pronounced in regards to the latter half of Plaintiffs' theory, which is that Siri could perform with consistency.  Descriptions of the product as "the coolest feature," "this amazing assistant," "breakthrough," and "an intelligent personal assistant" are mere puffery and are not actionable.  As the Court has already observed, while "misdescriptions of specific or absolute characteristics of a

---

[2] See, e.g., ACAC ¶ 55 ("Fazio saw and reasonably relied upon Apple's 'Introducing Siri' and 'Siri, Snow Today' commercials, as well as Apple's representations about Siri made on Apple's website, www.apple.com.").

United States District Court
For the Northern District of California

product" are actionable, "[a]dvertising that merely states in general terms that one product is superior" is not.  Docket No. 68 at 25.

Plaintiffs do not allege any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently.  See McKinney v. Google, Inc., 2011 WL 3862120, at *5 (N.D. Cal.) (dismissing complaint because plaintiff failed to identify specifically any representation "that the Nexus One would maintain consistent 3G connectivity").  The only statements that come close to stating explicitly that Siri would perform "consistently" are those that describe Siri as a "breakthrough" and an "intelligent" product that "understands what you mean."  But the Court has already held that such statements are non-actionable puffery.  Docket No. 68 at 25-27 (while Plaintiffs may target "misdescriptions of specific or absolute characteristics of a product," they may not rely on advertising "that merely states in general terms that one product is superior" in making their case).

Plaintiffs could instead show that Apple made a "perfectly true statement" "couched in such a manner that [was] likely to mislead or deceive the consumer," for example, by failing to disclose other relevant information.  Garcia, 859 F. Supp. 2d at 1062.  Plaintiffs appear to argue that, because the advertisements portrayed Siri responding to various questions and commands without issues, they expected real-life Siri to perform in a similarly flawless fashion every time.  As Plaintiffs note, the commercials depicted Siri performing "without a single hiccup" and "without complications," giving Plaintiffs the impression that

14

Siri would always operate adequately and "on a consistent basis." ACAC ¶ 43, 90.  But Plaintiffs fail to plead that theory with sufficient particularity.

The standard provided by Plaintiffs, "on a consistent basis," is unacceptably ambiguous.  The Court warned Plaintiffs at the hearing on Apple's first motion to dismiss that Plaintiffs would have to provide at least an estimate of Siri's level of performance in order to give proper notice of their charge.  The Court stated, "[I]f you're going to say sometime it does, but sometimes it doesn't, it seems like we need something a little more specific than that, like how often or why not?"  Tr. 7:22-25. The Court again reiterated that Plaintiffs would have to say how often they expected Siri to succeed, for example as measured by a certain percentage: "If you're not saying that it always has to answer every question correctly, then you're necessarily saying sometimes it does, and sometimes it doesn't.  And then the question becomes how often?  Is [] 90 percent good enough? . . . [I]s 50 percent good enough?"  Id. at 8:7-12.  Plaintiffs do not elaborate on the meaning of the term "on a consistent basis" anywhere in their complaint or their argument.  Apple and the Court are left to guess whether Plaintiffs expected Siri to operate without fail, or more often than not, or at any other level below perfection.  Apple, for one, argues that consistency denotes a standard of perfection.[3]  Plaintiffs disagree, but avoid

---

[3] Apple bases its interpretation on the definition of "consistent" as "marked by harmony, regularity, or steady continuity: free from variation or contradiction."  Merriam Webster, http://Merriam-webster.com/dictionary/consistent (last visited Jan. 16, 2014).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

providing any counter-definition, perpetuating the ambiguity.[4] The Court cannot determine whether Plaintiffs have properly plead that a misrepresentation occurred, including the questions of whether Plaintiffs were justified in inferring such a standard from the advertisements, whether a reasonable consumer would perceive the same standard, and whether Siri failed to meet such a standard, and how Apple would be shown to have known Siri did not meet the expected standard. Including this information is necessary to give Apple notice of what level of performance it must defend, framing the dispute for summary judgment and trial. Despite the Court's explicit admonition to do so, however, Plaintiffs declined to provide any kind of definition, and further did not elaborate on the definition of "consistent" when challenged by Apple.

Plaintiffs' fraud-based claims must therefore again be dismissed for lack of specificity.

B.    Rule 8(a)

Apple next contends that Plaintiffs' UCL, FAL, and CLRA claims should be dismissed because no reasonable consumer would believe that Siri would always operate perfectly. It is well-established that the plausibility of false or misleading advertising and unfair business practices claims "must be

---

[4] "To be clear, nowhere in the [ACAC] is it alleged that Siri would 'answer all questions perfectly regardless of the circumstances' or that 'Siri would perfectly answer all questions and perform all commands in all possible scenarios,' as Apple suggests. Apple's attacks on such non-existent allegations should be ignored outright." Docket No. 74 at 18 (internal citations omitted).

**United States District Court**
For the Northern District of California

evaluated from the vantage of a reasonable consumer." <u>Williams</u>,
552 F.3d at 938.  Courts must apply the "reasonable consumer" test
and ascertain whether plaintiffs have demonstrated that members of
the public are likely to be deceived.  <u>Id.</u>  At the motion to
dismiss stage, plaintiffs must put forth factual allegations which
"raise a right to relief above the speculative level."  <u>Id.</u>
(quoting <u>Twombly</u>, 550 U.S. 544).

Plaintiffs' allegations are that Apple's advertising campaign
led them to believe that Siri would operate "on a consistent
basis" as an intelligent assistant, but often failed to do so.  As
noted previously, Plaintiffs do not describe with particularity
the bounds of their allegations.  Without a clear concept of what
level of performance "consistent" denotes, the Court cannot
properly determine if a reasonable consumer would be deceived, or
if Plaintiffs have stated a claim.

Assuming for purposes of discussion that "consistency"
indicates operation that is virtually perfect, Plaintiffs cannot
show that a reasonable consumer would expect such a level of
performance based on the advertisements alleged.  Apple made no
promise that Siri would operate without fail.  A reasonable
consumer would understand that commercials depicting the products
they are intended to promote would be unlikely to depict failed
attempts.  Absent a representation that a product feature would
perform at a certain level, a reasonable consumer is unlikely to
be deceived by advertising that merely demonstrates a product has
such a feature.  <u>See</u> <u>McKinney</u>, 2011 WL 3862120, at *5 (N.D. Cal.)
(although phones were advertised as capable of connecting to a 3G
network, defendants never claimed that the phone would maintain 3G

connectivity for any specified period of time, and so a reasonable consumer would not be likely to be deceived).  See also Stuart v. Cadbury Adams USA, LLC, 458 F. App'x 689, 691 (9th Cir. 2011) ("[o]nly an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly"); Baltazar, 2011 WL 6747884, at *3 (even under "the most liberal pleading standard," brief depictions of the iPad being used or being taken outdoors "cannot be construed as a promise that the device will operate relentlessly outdoors in sunlight").

II. Breach of express warranty

To plead a claim for breach of express warranty under California law, a plaintiff must allege "that the seller: '(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.'"  Bilodeau v. McAfee, Inc., 2013 U.S. Dist. LEXIS 89226, at *38 (N.D. Cal.) (citations omitted).  In addition, a plaintiff must plead that he or she notified Apple of the breach.  Cal. Com. Code § 2607(3)(A). A buyer who fails to comply with the notice requirement is "barred from any remedy."  Id.

Apple argues that Plaintiffs have not properly alleged notice.  "To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'"  Alvarez v. Chevron Corp., 656 F.3d 925, 932 (9th Cir. 2011) (quoting Stearns v. Select

United States District Court
For the Northern District of California

Comfort Retail Corp., 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010))
(formatting in original).  The notice requirement "is designed to
allow the seller the opportunity to repair the defective item,
reduce damages, avoid defective products in the future, and
negotiate settlements." Cardinal Health 301, Inc. v. Tyco
Electronics Corp., 169 Cal. App. 4th 116, 135 (2008).  Notice also
serves to alert the seller of the need to preserve evidence and
prepare to defend suit, and further protects against stale claims.
Id.  The question of whether notice is reasonable is determined in
light of the circumstances.  Id. at 136.

     The Court previously ruled that Plaintiffs failed to plead
notice, but gave Plaintiffs leave to amend.  Plaintiffs' ACAC
alleges that, on March 16, 2012, Balassone and Swartzman sent
Apple's Chief Executive Officer Tim Cook a letter notifying him of
Apple's alleged breach regarding Siri's functionalities.  ACAC ¶
111, Ex. A.  On March 6, 2012, Fazio sent a similar letter.  ACAC
¶ 111, n.26.  Both letters advised that Plaintiffs would take
further action if the breach was not cured within thirty days.
See id.  However, Fazio filed suit on March 6, 2012, the same day
as he gave notice.  Balassone and Swartzman filed suit a mere four
days after giving notice, on March 20, 2012.  Plaintiffs therefore
failed to give reasonable notice because they gave little or no
opportunity for Apple to cure the alleged breach, contradicting
their letters.  See Alvarez v. Chevron Corp., 656 F.3d 925, 932
(9th Cir. 2011) (concluding that notice was unreasonable under
section 2607(3)(A) because the notice letter was sent to
defendants simultaneously with the complaint).  Plaintiffs did not
permit Apple time to "repair or remedy the problem by providing

**United States District Court**
For the Northern District of California

the opportunity to negotiate a settlement," which is the objective of the notice requirement.  <u>Id.</u> (internal quotations omitted).

Further, a breach of express warranty claim requires that the plaintiff identify a "specific and unequivocal written statement" about the product that constitutes an "explicit guarantee[]." <u>Maneely v. Gen. Motors Corp.</u>, 108 F.3d 1176, 1181 (9th Cir. 1997). Plaintiffs have not changed a word of their breach of warranty obligations.[5]  The Court advised Plaintiffs that they would have to allege "which particular commercials and webpages they each relied upon, must describe the content of those advertisements and pages with particularity and must allege with specificity their reasonable reliance thereon."  Docket No. 68 at 36.  Plaintiffs merely rely on the rest of the complaint to show that Siri did not perform "as advertised."  The Court has already found that Plaintiffs' fraud allegations are either non-actionable puffery or inadequately plead.  Without specifying what the express written statements are, and relying on inadequate fraud allegations, Plaintiffs do not properly state a claim for breach of express warranty.

III. Leave to amend

In dismissing the previous complaint, the Court advised Plaintiffs of exactly what they must allege for both their fraud-based claims and breach of express warranty claim, yet Plaintiffs

---

[5] Compare ACAC ¶ 135 with Docket No. 18 ¶ 104 ("The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant on its website and through its marketing and advertising campaign that the iPhone 4S's Siri feature performs as advertised, as described above.")

were unable to do so.[6]  Although Plaintiffs request leave to amend, they do not specify any additional facts they could provide in their amended complaint that would state a claim.  See Docket No. 74 at 25 n.12.  Because Plaintiffs have given no reason to believe that a fourth amended complaint would succeed in stating a claim, the ACAC is dismissed without leave to amend.

CONCLUSION

Plaintiffs' ACAC is dismissed with prejudice.

IT IS SO ORDERED.

Dated: 2/14/2014

CLAUDIA WILKEN
United States District Judge

---

[6] See Arroyo v. Chattem, Inc., 926 F. Supp. 2d 1070, 1081 (N.D. Cal.) ("Plaintiff has already had an opportunity to amend her complaint and was specifically instructed to add facts describing "the circumstances [i.e., who, what, when, where, and how] of the purchase and [Plaintiff's] reliance on the particular statements that were made in connection with the product . . . Because Plaintiff's FAC does not state claims with the required particularity, the Court GRANTS Defendant's Motion to Dismiss, this time with prejudice.").

United States District Court
For the Northern District of California